JEDEDIAH WAKEFIELD (CSB No. 178058)
jwakefield@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  415.875.2300
Facsimile:   415.281.1350

ANNASARA G. PURCELL (CSB No. 295512)
apurcell@fenwick.com
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA  98101
Telephone:  206.389.4510
Facsimile:   206.389.451

ARMEN NERCESSIAN (CSB No. 284906)
anercessian@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
Telephone:  650.988.8500
Facsimile:   650.938.5200

Attorneys for AUDIBLE, INC. and
AMAZON.COM, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(WESTERN DIVISION – LOS ANGELES)

| | |
|---|---|
| GRANT MCKEE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AUDIBLE, INC. and AMAZON.COM, INC.,<br><br>Defendants. | Case No.: 2:17-cv-01941 GW (Ex)<br><br>**DECLARATION OF JASON A. MASSELLO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS**<br><br>Date:    May 4, 2017<br>Time:    8:30 AM<br>Crtm:    9D<br>Judge:   George H. Wu<br>Trial Date: NONE SET |

I, Jason A. Massello, declare as follows:

1. I am a Corporate Counsel supporting Audible, Inc. ("**Audible**"), a wholly owned subsidiary of Amazon.com, Inc. (**"Amazon"**). My current responsibilities include supporting all aspects of Audible's service offerings and business operations, as well as working with the Amazon Litigation and Regulatory Department in identifying, reviewing and producing documents in litigation on behalf of Audible and Amazon. Based on my job responsibilities and my review of Audible's and Amazon's business records, I am familiar with the agreements, customer sign-up and order process, and customer history that I discuss in this declaration. I make this declaration based on personal knowledge and records that Audible and Amazon keep in the ordinary course of business, including information obtained from other Audible and Amazon personnel in the course of their duties. I am competent to testify to the matters stated here.

## Amazon and Its Services

2. Amazon is America's largest online, e-commerce marketplace. Its website, www.amazon.com, offers customers the ability to purchase countless different products or services, whether through Amazon itself or through third-party vendors. One of Amazon's popular offerings is Amazon Prime, a subscription service that provides customers with free two-day or same-day shipping on eligible items; unlimited online photo storage; streaming of movies and TV shows with Prime Video; music streaming; and the ability to borrow e-books through the Kindle Owners' Lending Library, among many other benefits. Customers can subscribe to Amazon Prime for a monthly or annual membership fee.

3. Audible, Inc. (**"Audible"**) is a digital audiobook and spoken audio information and entertainment service that Amazon acquired in 2008. Audible offers more than 250,000 audiobooks that users can listen to through the Audible app on a variety of mobile devices. Audible includes a subscription-based service:

a subscriber pays a monthly or annual fixed fee, which depends on the membership plan the customer chooses, and in exchange the customer receives a number of benefits. Audible membership benefits include a 30% discount on all Audible content purchases; unlimited listening to Audible Channels, an on-demand audio entertainment service that offers original audio series and curated audio playlists; and the Great Listen Guarantee, which allows subscribers who are not fully satisfied with an Audible audiobook purchase to return or exchange it within 365 days of the original date of purchase.

4. As a benefit of Audible membership plans, subscribers also receive a given number of Audible "credits" each month (or year). Subscribers can use membership credits to purchase audiobooks. Generally, one membership credit may be redeemed for one audiobook, regardless of the price of the book. For example, while the non-member price for the audiobook version of Ron Chernow's *Alexander Hamilton* is approximately $42.00, a member can download it for one membership credit. Audible also offers its members the flexibility to "roll over" those membership credits into a subsequent membership period, up to a maximum number that varies by membership plan. **Exhibit 1** is a webpage from Audible's online help center that explains the differences between Audible's available membership plans, including the different rollover credits available with each plan.

5. As with other audiobook purchases through Audible, once a subscriber redeems a credit for an audiobook, the audiobook is for the subscriber to keep— even if the customer subsequently cancels his or her subscription. However, membership credits, like other Audible membership benefits, expire when a user cancels his or her membership.

6. The Audible Service Terms of Use explain how membership credits work, including the fact that they expire immediately upon termination of membership:

**Credits**

> As part of a membership plan or a Service promotion, we may issue you credits redeemable for content on the Service ("Credits"). Credits may only be redeemed on the Service, have no cash value, are non-transferrable and non-refundable. All Credits are valid for a limited time as described in the membership terms and conditions and expire immediately upon the termination of your membership. Credits issued as part of a Service promotion expire in accordance with the applicable promotional terms.

**Exhibit 2** is the current version of the Audible Service Terms of Use, last updated June 7, 2016. These terms were in effect when Mr. McKee signed up for his Audible membership, and they remain in effect today.

7. In addition to explaining how credits work in the Audible Service Terms of Use, Audible provides information on its Help Center, under the title "What happens to my credits if I cancel my membership?" There, Audible explains:

> Because credits are considered a membership benefit, they are lost when an Audible customer chooses to discontinue their membership. It's highly recommended that you use any remaining credits prior to making changes to your plan. Once you have used your credits to purchase any title(s) of your choice, you can cancel your membership and all of your titles will remain in your library.

**Exhibit 3** is the webpage from Audible's online help center, titled "What happens to my credits if I cancel my membership?"

**Amazon's Conditions of Use and Arbitration Agreement**

8. Amazon's Conditions of Use (**"COUs"**) have contained an arbitration agreement and class action waiver since August 19, 2011. When Amazon updated its COUs in 2011, it sent a notice to all Amazon account holders, including Plaintiff, to inform them of the change in terms and the addition of the arbitration

provision. **Exhibit 4** is a copy of Amazon's current COUs, last updated June 21, 2016. **Exhibit 5** is a copy of the COUs in effect from December 5, 2012 until June 20, 2016. **Exhibit 6** is a copy of the COUs in effect from August 19, 2011 until December 4, 2012. The arbitration agreement appearing in all these COUs contains virtually identical language. The relevant provision of the most current COUs appears below:

> **Any dispute or claim relating in any way to your use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com will be resolved by binding arbitration, rather than in court**, except that you may assert claims in small claims court if your claims qualify. The Federal Arbitration Act and federal arbitration law apply to this agreement.
>
> **There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award on an individual basis the same damages and relief as a court (including injunctive and declaratory relief or statutory damages), and must follow the terms of these Conditions of Use as a court would.**
>
> To begin an arbitration proceeding, you must send a letter requesting arbitration and describing your claim to our registered agent Corporation Service Company, 300 Deschutes Way SW, Suite 304, Tumwater, WA 98501. The arbitration will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA's Supplementary Procedures for Consumer-Related Disputes. The AAA's rules are available at www.adr.org or by calling 1-800-778-7879. Payment of all filing, administration and arbitrator fees will be governed by the AAA's rules. We will reimburse those fees for claims totaling less than $10,000 unless the arbitrator determines the claims are frivolous. Likewise, Amazon will not seek attorneys' fees and costs in arbitration unless the arbitrator determines the claims are frivolous. You may choose to have the arbitration conducted by telephone, based on written submissions, or in person in the county where you live or at another mutually agreed location.

MASSELLO DECL. ISO
DEFENDANTS' MTN TO
COMPEL ARBITRATION                    5           Case No. 2:17-cv-1941 GW(Ex)

> **We each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action.** If for any reason a claim proceeds in court rather than in arbitration **we each waive any right to a jury trial**. We also both agree that you or we may bring suit in court to enjoin infringement or other misuse of intellectual property rights.

**Exhibit 4** at 4 (bold in original).

9. Since August 19, 2011, Amazon's COUs have also contained a consistent choice of law provision:

> By using any Amazon Service, you agree that the Federal Arbitration Act, applicable federal law, and the laws of the state of Washington, without regard to principles of conflict of laws, will govern these Conditions of Use and any dispute of any sort that might arise between you and Amazon.

**Exhibit 4** at 4.

10. Amazon customers must accept the Amazon COUs when they perform a number of different actions on the Amazon website. For instance, before a user even creates an Amazon account, the user must agree to Amazon's COUs. **Exhibit 7** is the Amazon's "Create account" webpage. To create an account, a user must press a "Create your Amazon account" button. Immediately under that button is the language: "By creating an account, you agree to Amazon's <u>Conditions of Use</u> and <u>Privacy Notice</u>." This language includes hyperlinks to the complete terms of Amazon's COUs and its privacy policy, respectively. A customer cannot create an account without first affirmatively clicking on this button. If a customer does not wish to accept the COUs, or the arbitration agreement contained there, then the customer may cancel the transaction.

11. Similarly, every time customers make purchases in Amazon using the standard checkout page, they have the opportunity to review and confirm their

MASSELLO DECL. ISO
DEFENDANTS' MTN TO
COMPEL ARBITRATION              6            Case No. 2:17-cv-1941 GW(Ex)

orders and, to complete their orders, they must accept the Amazon COUs.  **Exhibit 8** is an example of a standard Amazon checkout page.  It demonstrates that, to make a purchase, Amazon customers must click on a "Place your order" button. Immediately underneath this button is the following language, with a link to the COUs: "By placing your order, you agree to Amazon's privacy notice and conditions of use."  The words "conditions of use" are a blue highlighted hyperlink to the COUs.  A customer cannot checkout from this page without first clicking on this "Place your order" button.

12. Customers must also agree to the Amazon COUs before they sign up for a membership to Amazon Prime.  **Exhibit 9** is an example of the page from which a user can start a free trial membership to Amazon Prime.  Below the "Start your 30-day free trial" button is the following language: "By signing up, you agree to the Amazon Prime Terms. . . . "  This language contains a link to the Amazon Prime Terms.  **Exhibit 10** is a copy of the current Amazon Prime Terms, last updated December 13, 2016.  I also attach as **Exhibit 11** to the declaration the historical Amazon's Prime Terms from December 29, 2011, which were effective when Mr. McKee first became an Amazon Prime subscriber.  Both the current and historical Prime Terms include a link to the Amazon COUs, as have all Amazon Prime Terms during the relevant time period.  Furthermore, during all relevant times, the Amazon Prime Terms have required users signing up for a Prime membership to agree to the Amazon COUs.

13. Amazon also requires customers to agree to the Audible Service Terms of Use and Amazon's COUs when they sign up for an Audible subscription. **Exhibit 12** is an example of the page from which an existing Amazon member (like Mr. McKee) can start a free trial membership to Audible.  Below the "Start Your Free Trial Now" button is the following language: "By completing your purchase you agree to Audible's Conditions of Use and Privacy Notice and authorize

MASSELLO DECL. ISO
DEFENDANTS' MTN TO
COMPEL ARBITRATION          7          Case No. 2:17-cv-1941 GW(Ex)

Audible to charge you designated card or any other card on file." This language includes a link to the Audible Service Terms of Use, which I identify above as **Exhibit 2** to this declaration. The Audible Service Terms of Use incorporate the Amazon COUs by reference, and they explicitly describe and cross-reference the arbitration agreement in the Amazon COUs:

> "**Any dispute or claim arising from or relating to these Terms or your use of the Service is subject to the binding arbitration, governing law, disclaimer of warranties, limitation of liability and all other terms in the Amazon.com Conditions of Use.**"

**Exhibit 2** at 2 (bold in original).

### Grant McKee's Use of Audible and Agreement to the Conditions of Use

14. According to records Amazon maintains in the ordinary course of business, Grant McKee has been an Amazon customer since August 19, 2008, and he joined Amazon Prime in February 2012. He signed up for a free trial membership to Amazon Prime on February 10, 2012, which then converted to an annual paid membership on March 10, 2012. Mr. McKee remains an active Amazon Prime subscriber and Amazon customer.

15. On June 26, 2016, Mr. McKee signed up for a free trial membership with Audible (using his existing Amazon account), enrolling in the Gold Monthly Membership plan. To sign up, he was required to click on the "Start Your Free Trial Now" button as shown in Exhibit 12. From June 26, 2016 until he cancelled his Audible subscription, he accrued a total of six membership credits, including one credit he received during the free trial. While Mr. McKee was an Audible subscriber, he redeemed four of these credits.

16. At no point during his Audible membership or since did Mr. McKee contact Audible or Amazon customer support to express any dissatisfaction with his Audible service. Nor did Mr. McKee use Audible's Great Listen Guarantee, one of

his membership benefits, to return or exchange any of the audiobooks he had received in exchange for his membership credits.

17. On December 1, 2016, Mr. McKee cancelled his Gold Membership before redeeming the two membership credits that remained in his membership subscription. Before doing so, he could have redeemed those remaining membership credits for audiobooks from a collection of over 250,000 Audible audiobook titles, and kept them for future listening after cancelling his membership.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 5th day of April, 2017, at Newark, New Jersey.

_____
Jason A. Massello

MASSELLO DECL. ISO
DEFENDANTS' MTN TO
COMPEL ARBITRATION     9     Case No. 2:17-cv-1941 GW(Ex)