UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 17-1941-GW(Ex) | Date | May 4, 2017 |
|---|---|---|---|
| Title | *Grant McKee v. Audible, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Katie Thibodeaux | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Jamin Samuel Soderstrom | Jedediah Wakefield | |

**PROCEEDINGS:** DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS [18]

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. For reasons stated on the record, Defendants' motion is continued to June 22, 2017 at 8:30 a.m. Simultaneous supplemental briefs will be filed by May 31, 2017 and will not exceed 15 pages. Simultaneous responses will be filed by June 14, 2017 and will not exceed 10 pages.

: 40

Initials of Preparer   JG

<u>*Mckee v. Audible, Inc. et al.*</u>, Case No. CV-17-1941-GW (Ex)
Tentative Ruling on Defendants' Motion to Compel Arbitration


I. <u>**Background**</u>

Grant Mckee ("Plaintiff") sues, on behalf of himself and similarly situated individuals, Audible, Inc. ("Audible") and Amazon.com, Inc. ("Amazon") (collectively "Defendants") for (1) violation of the Lanham Act, 15 U.S.C. § 1125; (2) Violation of False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq.; (3) violation of the federal Credit Card Accountability Responsibility and Disclosures Act which amends the federal Electronic Funds Transfer Act, 15 U.S.C. § 1693l-1(a)(2)(B); (4) violation of Gift Certificate Law, Cal. Civ. Code § 1749.45 et seq.; (5) violation of California's Automatic Purchase Renewals Law, Cal. Bus. & Prof. Code § 17600 et seq.; (6) Conversion; (7) violation of Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq.; (8) violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 et seq.; and (9) Restitution, Unjust Enrichment, and Money Had and Received *See generally* Complaint ("Compl."), Docket No. 1.

In 2016 Plaintiff signed up for a free one-month trial with Audible on his smartphone. Declaration of Grant Mckee ("Mckee Decl."), Docket No. 21-1 at ¶ 6. Audible is an audiobook and spoken audio information and entertainment service that Amazon acquired in 2008. Declaration of Jason Massello in Support of Defendants' Motion to Compel Arbitration ("Massello Decl."), Docket No. 18-1 at ¶ 3. Audible offers a subscription based service, where subscribers pay a fixed fee, and in turn receive membership benefits, including access to exclusive original audio series, discounts on audiobooks, and membership credits, which they can redeem for audiobooks and other audio content. *Id.* ¶¶ 3-4. Each membership credit can be redeemed for one audiobook, regardless of the book's price. *Id.* ¶ 4. Pursuant to Audible's conditions of use ("Audible COU"), upon termination of an account, the user forfeits any unused credits. *Id.* ¶¶ 6-7. Following Plaintiff's initial 30-day trial, he was automatically enrolled in an Audible subscription. Mckee Decl. ¶¶ 8-9; Massello Decl. ¶ 15. In December 2016, Plaintiff cancelled his membership and forfeited several unused credits he had earned up to that point. Mckee Decl. ¶ 10. Plaintiff's causes of action stem from Audible's policy concerning unused credits. *See generally* FAC.

On June 26, 2016 Plaintiff used his standard size iPhone 7 smartphone to access

Audible's mobile website.  Mckee Decl. ¶ 6.  On Audible's home page he pressed a Try Audible Free box.  *Id.*  On the next page he pressed a Sign In box that signed him into Audible using the Amazon account he created in 2008.  *Id.*  He claims he did not see any disclosure of the Audible COU or Amazon COU near the Try Audible Free or Sign In boxes.  *Id.*  He then designated a credit card for any future Audible purchases he decided to make and pressed a Start Now box to accept a "free" 30-day trial membership and "free" credit.  McKee Decl. ¶¶ 6–7.  Plaintiff claims he was not prompted or required to scroll past the Start Now box, so he did not do so.  *Id.*  He claims he never saw a disclosure near the Start Now box stating that by accepting a free trial membership and credit he agreed to the Audible COU.  *Id.* ¶¶ 6–7.   Plaintiff claims he made no purchases on June 26, 2016.  *Id.* ¶ 7.

Plaintiff took several screenshots in 2017 of Audible's mobile website from his personal cellular device.  *See* Declaration of Jamin S. Soderstrom ("Soderstrom Decl.") Ex. 11, Docket No. 21-14 at p. 4  ("Audible Screenshots").  These pictures reflect that, immediately below the Start Now box Plaintiff admits he selected, the following disclosure appears:  "By completing your purchase, you agree to Audible's Conditions of Use and Privacy Notices and authorize us to charge your designation credit card or another available credit card on file."  *See* Audible Screenshots.  The phrase does not appear to be hyperlinked.  *Id.*  Immediately below the disclosure there is additional language that does contain a hyperlink to the "terms and policies" that apply to Audible Membership.  *Id.*[1]

Plaintiff claims he never saw the disclosure, or the hyperlink that followed.  McKee Decl. ¶¶ 6–7.  The parties do not dispute that Audible COA on June 26, 2016 contained the following provision:

> "Any dispute or claim arising from or relating to these Terms or your use of the Service is subject to the binding arbitration, governing law, disclaimer of warranties, limitation of liability and all other terms in the Amazon.com Conditions of Use."

*See* Massello Decl. Ex. 4, Docket No. 18-5 at p. 4.  The Amazon Conditions of Use ("Amazon COU") provide:

> **Any dispute or claim relating in any way to your use of any Amazon Service, or to any products or services sold or**

---

[1] In support of their Motion to Compel, Defendants attach screenshots from Audible's traditional, as in not Mobile website.  *See* Massello Decl. Ex. 12, Docket No. 18-13.  Unlike the mobile version, there is a hyperlink in the disclosure immediately below the Start Now button.  *Id.*

> **distributed by Amazon or through Amazon.com will be resolved by binding arbitration, rather than in court**, except that you may assert claims in small claims court if your claims qualify. The Federal Arbitration Act and federal arbitration law apply to this agreement.
>
> **There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award on an individual basis the same damages and relief as a court (including injunctive and declaratory relief or statutory damages), and must follow the terms of these Conditions of Use as a court would.**
>
> To begin an arbitration proceeding, you must send a letter requesting arbitration and describing your claim to our registered agent Corporation Service Company, 300 Deschutes Way SW, Suite 304, Tumwater, WA 98501. The arbitration will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA's Supplementary Procedures for Consumer Related Disputes. The AAA's rules are available at www.adr.org or by calling 1-800-778-7879. Payment of all filing, administration and arbitrator fees will be governed by the AAA's rules. We will reimburse those fees for claims totaling less than $10,000 unless the arbitrator determines the claims are frivolous. Likewise, Amazon will not seek attorneys' fees and costs in arbitration unless the arbitrator determines the claims are frivolous. You may choose to have the arbitration conducted by telephone, based on written submissions, or in person in the county where you live or at another mutually agreed location.
>
> **We each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action.** If for any reason a claim proceeds in court rather than in **arbitration we each waive any right to a jury trial**. We also both agree that you or we may bring suit in court to enjoin infringement or other misuse of intellectual property rights.

*Id.* (bold in original).

     Previous to signing up for Audible, Plaintiff had an Amazon account dating back to 2008, and an Amazon "Prime" Membership since 2012. Mckee Decl. ¶¶ 2, 4. When Plaintiff first joined Amazon in 2008 there was no arbitration provision contained in the Amazon COU but one was added on August 19, 2011. Massello Decl. ¶ 8. The current Amazon COU include the

3

arbitration provision cited above. *Id.* Defendants claim Amazon notifies its users regarding its updated COU by sending notice to all Amazon account holders. *Id.* Plaintiff joined Amazon Prime ("Prime") in February, 2012. Mckee Decl. ¶ 4. In order to join Prime a customer is required to press a button immediately above the following disclosure: "By signing up, you agree to the Amazon Prime terms." Massello Decl. ¶ 13; Ex. 9. This statement hyperlinks to the Prime terms, which in turn incorporate the Amazon COU. *Id.*; Massello Decl. Exs. 10-11. Each time an Amazon customer makes a purchase a disclaimer appears-on both the mobile and traditional sites-that indicates by purchasing the item the customer agrees to the Amazon COU. Massello Decl. ¶¶ 11-12. Plaintiff has made several purchases on both Amazon and with his Amazon Prime account. Massello Decl. ¶ 14; Mckee Decl. ¶ 5.

Plaintiff filed this action on March 10, 2017. *See generally* Compl. On April 5, 2017, Defendants filed this Motion to Compel Arbitration contending that Plaintiff agreed to Audible's Conditions of Use ("Audible COU"), which contained an arbitration provision, and that Plaintiff also agreed to Amazon's Conditions of Use ("Amazon COU"), containing the same provision. *See* Defendants' Motion to Compel Arbitration ("MTC"), Docket No. 18. Plaintiff has filed an opposition. *See* Plaintiff's Opposition to Defendants' Motion to Compel ("Opp'n"), Docket No. 21.

## II. Legal Standard

The Federal Arbitration Act ("FAA") reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2010) (citation omitted). A party aggrieved by the refusal of another party to arbitrate under a written arbitration agreement may petition the court for an order compelling arbitration as provided for in the parties' agreement. *See* 9 U.S.C. § 4. "By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985) (emphasis in original); *see also* 9 U.S.C. § 4. "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Daugherty v. Experian Info. Solutions, Inc.*, 847 F.Supp.2d 1189, 1193 (N.D. Cal. 2012) (quoting *Chiron Corp. v. Ortho Diagnostic*

*Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). "While the Court may not review the merits of the underlying case '[i]n deciding a motion to compel arbitration, [it] may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party.'" *Macias v. Excel Bldg. Servs. LLC*, 767 F.Supp.2d 1002, 1007 (N.D. Cal. 2011) (quoting *Ostroff v. Alterra Healthcare Corp.*, 433 F.Supp.2d 538, 540 (E.D. Pa. 2006)).

**III. Analysis**

    A. Choice of Law

Federal courts sitting in diversity look to the law of the forum state when making choice of law determinations. *Klaxon Co. v. Stentor Elec*. Mfg. Co., 313 U.S. 487, 496 (1941). Under California law, the parties' choice of law reflected in a contract clause will govern provided the chosen state bears a substantial relationship to the parties or their transaction and enforcement of the provision does not violate a fundamental public policy of California. *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182-83 (9th Cir. 2009) (quoting *Boracchia v. Biomet, Inc.*, No. C-07-0650 MMC, 2008 WL 512721, at *3 (N.D. Cal. Feb. 25, 2008)). A substantial relationship exists between a party and the state that party is domiciled, resides, or is incorporated in. *See Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 467 (1992) (holding incorporation and domicile status create substantial relationship); *see also Software, Ltd. v. Photon Infotech Private, Ltd.*, No. 5:12-CV-04382-EJD, 2014 WL 1728705, at *3, (N.D. Cal. May 1, 2014) (collecting cases holding that a party has a "substantial relationship" to its state of domicile or incorporation). Enforcing a choice of law provision does not violate a fundamental public policy of California if doing so would not create a conflict with California law. *Nedlloyd*, 3 Cal.4th at 466; *see also Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 916-17 (Cal. 2001). Washington law, at least in the context of consumer protection, does not conflict with California law. *See Fagerstrom v. Amazon.com, Inc.*, 141 F.Supp.3d 1051, 1063–64 (S.D. Cal. 2015) (noting that "[i]f the two state's laws are not equally protective of consumers, and equally hostile to unconscionable terms in consumer contracts, they are certainly close," and that "a plausible case can be made that Washington's unconscionability doctrine is more protective of consumers than California's") (emphasis in original). The burden is on the party opposing the choice-of-law provision to establish both the "fundamental conflict" and "materially greater interest" prongs. *See Wash. Mut.*, 24 Cal. 4th at 917 (Cal. 2001) ("If the proponent of the clause… demonstrates that the chosen state has a substantial relationship to the parties or their transaction… [the]

5

parties' choice generally will be enforced unless the other side can establish both that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the particular issue.").

Here, the parties do not dispute that the Amazon COU incorporated by reference in the Audible COU contains a choice of law provision that provides for the application of the laws of the state of Washington. Amazon COU at 4. Additionally, the parties do not dispute that Defendant Amazon has Washington as its principle place of business. MTC at 9:23-27. Defendant Amazon also wholly owns and operates Defendant Audible. Massello Decl. ¶ 3. Furthermore, there does not appear to be, nor has Plaintiff argued that Washington law conflicts with California law on the relevant issue of contract formation and the enforceability of arbitration provisions. *See* Opp'n at 10 n. 1. In fact, Plaintiff concedes Washington law may be more protective than California law. *Id.* Finally, the parties both concede that the choice of law will make no difference here. *Id.*; MTC at 9:23-10:10. As such, the Court would, in keeping with California choice of law principles, honor the parties' choice of law provision and apply Washington law.

    B.  <u>Whether a valid arbitration agreement exists</u>

"[T]he federal policy favoring arbitration is inapplicable to the determination of whether a valid agreement to arbitrate between the parties exists." *Campos v. Campos Family Farms, LLC*, No. 12-598-LJO, 2012 WL 2090303, at *8 (E.D. Cal. June 8, 2012) (citing *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006)). Rather, that determination is made by reference to ordinary state law contract principles. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). As the party moving to compel arbitration, Defendants bear the burden of proving by a preponderance of the evidence the existence of a valid arbitration agreement. *See Lucas v. Hertz Corp.*, 875 F.Supp.2d 991, 998 (N.D. Cal. 2012) (citing *Olvera v. El Pollo Loco*, 173 Cal. App. 4th 447, 453 (2009)).

Defendants argue Plaintiff agreed to the Audible COU on June 26, 2016, and agreed to the Amazon COU on multiple occasions since he became a member in 2008. MTC at 5:19-7:8. Defendants further argue the Audible COU incorporate the valid arbitration provision contained in the Amazon COU. *See* MTC at 11:14-18. Defendants also argue Plaintiff repeatedly agreed to the Amazon COU through his Amazon account and Amazon Prime Membership, and, in doing so, agreed to arbitrate his claims. *Id.* at 10:11-24.

6

i. *Mutual Assent*

Under Washington law in order to form a valid contract the parties must manifest their mutual assent. *See Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 177–78 (2004); *see also Hauenstein v. Softwrap Ltd.*, No. C07-0572-MJP, 2007 WL 2404624, at *2-3, 6 (W.D. Wash. Aug. 17, 2007). In the context of an electronic consumer transaction, the occurrence of mutual assent ordinarily turns on whether the consumer had reasonable notice of a merchant's terms of service agreement. *See, e.g.*, *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1173 (9th Cir. 2014) ("We agree with the district court that Barnes & Noble did not provide reasonable notice of its Terms of Use, and that Nguyen therefore did not unambiguously manifest assent to the arbitration provision contained therein."). Reasonable notice in this context requires that the consumer had either actual or constructive notice of the terms of service; constructive notice occurs when the consumer has inquiry notice of the terms of service, like a hyperlinked alert, and takes an affirmative action to demonstrate assent to them. *See id.* at 1176-79.

Mutual assent is clear where the user actually clicks a button explicitly agreeing to the terms of the contract. *See Riensche v. Cingular Wireless, LLC*, C06–1325Z, 2006 WL 3827477, at *1 (W.D. Wash. 2006) (concluding that plaintiff assented to arbitration clause when he indicated his agreement to the terms of service online); *see also Feldman v. Google*, Civil Action No. 06–2540, 2007 WL 966011, at *5–8 (E.D. Pa. March 27, 2007) (holding that where user had to "click" the "Yes, I agree to the above terms and conditions" button in order to proceed with the online transaction, there was reasonable notice of the terms and mutual assent to the contract). Courts have also found assent where sites contain a disclosure statement that indicates if a user signs up for a given service they accept the terms of service. *See Selden v. Airbnb, Inc.*, No. 16-CV-00933 (CRC), 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016) (finding that user was bound by an arbitration clause through a "sign-in wrap" agreement) (collecting cases); *Fteja v. Facebook, Inc.*, 841 F.Supp.2d 829, 835 (S.D.N.Y. 2012) (enforcing forum selection clause based on disclosure below "Sign Up" button); *Starke v. Gilt Groupe, Inc.*, No. 13 CIV. 5497 LLS, 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (enforcing arbitration clause, noting that plaintiff "was directed exactly where to click in order to review those terms, and his decision to click the 'Shop Now' button represents his assent to them").

Alternatively, some courts have refused to recognize assent where the disclosure statement, terms of the agreement, or the hyperlink to the terms of the agreement are blocked or

otherwise obstructed from view. *See, e.g.*, *Nguyen*, 763 F.3d at 1173 ("Where the link to a website's terms of use is buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it, courts have refused to enforce the browsewrap agreement."); *see also Sprecht v. Netscape Communications Corp.* 306 F.3d 17, 22-23 (2002) (refusing to enforce terms of use that "would have become visible to plaintiffs only if they had scrolled down to the next screen"); *Metter v. Uber Technologies, Inc.*, Case No. 16-cv-06652-RS, 2017 WL 1374579 (N.D. Cal. April 17, 2017) (denying motion to compel arbitration where sign-in agreement was only visible if user scrolled down, an action not necessary to complete the sign up process).

Here, Plaintiff was confronted with both the Amazon COU and Audible COU on several occasions. In 2012 he signed up for a Prime membership, which required him to select a sign up button directly above a disclosure stating that by signing up he was agreeing to the Prime terms of use, and in turn, the Amazon COU. Massello Decl. ¶ 14; Mckee Decl. ¶ 4. Then, Plaintiff repeatedly confronted a similar disclosure on Amazon's checkout page each time he made an Amazon purchase. Massello Decl. ¶¶ 11, 14. Most recently Plaintiff confronted a similar, though arguably more misleading disclosure when he signed up for Audible on June 26, 2016 using his smartphone. Massello Decl. ¶ 15; Mckee Decl. ¶ 6.

With the possible exception of Plaintiff's June 26, 2016 registration for Audible, the Court would find that Plaintiff was on constructive notice of, and repeatedly agreed to Amazon's COU. This is because the disclosure and hyperlink that appear on the Amazon checkout page are of the same nature as those upheld in courts across multiple districts, including those applying Washington law. *See, e.g.*, *Doe v. Project Fair Bid Inc.*, No. C11-809 MJP, 2011 WL 3516073, at *4 (W.D. Wash. Aug. 11, 2011) ("This kind of 'clickwrap' agreement has been upheld in several cases in this circuit and elsewhere."); *Hauenstein v. Softwrap Ltd.*, No. C07-0572MJP, 2007 WL 2404624, at *2-3, 6 (W.D. Wash. Aug. 17, 2007) (enforcing arbitration agreement because plaintiff "manifested his assent to the License Agreement by 'clicking' the appropriate box"); *see also Selden,* No. 16-CV-00933 (CRC), 2016 WL 6476934, at *5 (finding that user was bound by an arbitration clause through a "sign-in wrap" agreement) (collecting cases); *Fteja*, 841 F.Supp.2d at 835; *Starke*, No. 13 CIV 5497 LLS, 2014 WL 1652225, at *3 (enforcing arbitration clause, noting that plaintiff "was directed exactly where to click in order to review those terms, and his decision to click the 'Shop Now' button represents his assent to

them").

Further, unlike cases in which courts refused to enforce provisions where the disclosures were not visible without additional scrolling, the disclosure on Amazon's checkout page appear between the Place Your Order button and an order summary. *See* Massello Decl. Ex. 8. A disclosure also appears elsewhere on the screen directly next to, not above, another Place Your Order button. *See* Massello Decl., Ex. 8. This disclosure appears directly below a section that allows shoppers to review their items and shipping selections. *Id.* Unlike the cases on which Plaintiff relies, the checkout site does not bury the disclosures on a submerged screen, or obscure their view through pop ups. *See Sprecht*, 306 F.3d at 32 (finding "a reference to the existence of license terms on a submerged screen is not sufficient to place consumers on inquiry or constructive notice of those terms."); *see also Metter*, Case No. 16-cv-06652-RS, 2017 WL 1374579 (denying motion to compel arbitration where sign-in agreement was only visible if user scrolled down). In short, Plaintiff was on constructive notice of the Amazon COU and agreed to the Amazon COU each time he made a purchase with his account. The Court would thus find that an agreement existed, that if enforceable, covers Plaintiff's claims.[2] The same analysis applies to Plaintiff's decision to sign up for Amazon Prime in 2012. *See* Massello Decl. Ex. 9.

Plaintiff argues that the evidence produced by Defendants all assumes Plaintiff accessed Amazon and Audible using his smartphone exclusively. Opp'n at 2:16-26. However, while Plaintiff does claim to have only accessed Audible through his smart phone, he admits to accessing Amazon using other devices for at least some of his purchases. *See* Mckee Decl. ¶ 4. Specifically, Plaintiff states that he "usually" uses his smartphone to visit the Amazon site. *Id.* This is an admission he has used other devices. *Id.* Moreover, Defendants submit screen shots that demonstrate even when accessed by a mobile device, Amazon's checkout page contained a disclosure and hyperlink above, the Place Your Order button. *See* Reply Declaration of Jason A. Massello ('Reply Decl."), Ex. 7, Docket No. 22-8 at p. 2. While it may be the case that Plaintiff made some purchases on Amazon or otherwise engaged with the site without being put on constructive notice of the terms on each visit, the preponderance of the evidence shows he has been on constructive notice on several occasions *and agreed* to the Amazon COU. This finding is in line with at least two other courts that have examined purchases made on Amazon in similar contexts. *See Ekin v. Amazon Servs.*, LLC, 84 F.Supp.3d. 1172, 1175-78 (W.D. Wash. 2014);

---

[2] Plaintiff does not attempt to argue his claims fall outside the reach of the Amazon COU.

*Fagerstrom*, 141 F.Supp.3d at 1057-60.

Plaintiff's arguments as they relate to Plaintiff's Audible account, which he contends he only visited from his smartphone and that contains a less clear disclosure, may be more persuasive but ultimately the Court does not need to address whether Plaintiff assented on June 26, 2016. This is because he had repeatedly assented to the Amazon COU, and had signed into Audible using his Amazon Prime account. Mckee Decl. ¶ 6.[3]

### ii. *Unconscionability and Enforceability*

Having found that Plaintiff was on constructive notice of the Amazon COU and agreed to be bound by them, the Court turns to the enforceability of the arbitration agreement contained therein. Plaintiff argues the agreement is unconscionable both procedurally and substantively, and that it places users under duress. The Court would find, like several other courts interpreting virtually the same agreement that the arbitration agreement at issue is enforceable with the exception of a recently added provision appearing on the Audible website that the Court would sever.

Plaintiff bears the burden of establishing the defense of unconscionability. *See Zuver v. Airtouch Communications*, 153 Wn.2d 293, 302-03 (2004). Washington law recognizes both procedural and substantive unconscionability. *Id.* at 303. Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh. *Id.* Procedural unconscionability is the lack of meaningful choice, considering all the circumstances surrounding the transaction including the manner in which the contract was entered, whether each party had a reasonable opportunity to understand the terms of the contract, and whether the important terms [were] hidden in a maze of fine print. *Id.*; *see also Brinkley v. Monterey Fin. Servs., Inc.*, 242 Cal. App. 4th 314, 336 (2015) (applying Washington law). These three factors for determining procedural unconscionability are not applied mechanically without regard to whether in truth a meaningful choice existed. *Zuver*, 153 Wn.2d at 303.

### a. Procedural Unconscionability

Plaintiff argues the arbitration provision contained in the Amazon COU is procedurally unconscionable because, among other things it is a contract of adhesion, offered solely online,

---

[3] Neither side has argued what the result would be if Plaintiff only had assented to Amazon's COU and not specifically to Audible's. Given that Audible is accessed through the Prime membership, it would appear Plaintiff's claims are subject the arbitration clause either way. However, if Plaintiff contends otherwise, supplemental briefing may be in order.

allows for unilateral modification, contains tiny font, ambiguous labels, and incorporates by reference. *See* Opp'n at 19:19- 22:10.

The Court would agree the contract is one of adhesion. However, that alone does not render it procedurally unconscionable. *See Concepcion*, 563 U.S. at 346-47 (enforcing arbitration provision in an adhesion contract, noting "the times in which consumer contracts were anything other than adhesive are long past."); *see also Fagerstrom*, 141 F.Supp.3d at 1068 (holding Amazon COU were not procedurally unconscionable even though adhesive in nature). Similarly, the Court would not find that the fact the Amazon COU are only available online means the agreement is procedurally unconscionable because Plaintiff provides no authority for that proposition. In fact, courts have applied Washington law and upheld the Amazon COU at issue. *See*, *e.g.*, *Fagerstrom*, 141 F.Supp.3d at 1068. Furthermore, the Court already concluded Plaintiff was on reasonable, constructive notice via the hyperlinks that appear during the Amazon checkout process. *See supra* Section III.B.i (finding Amazon websites and mobile sites provided Plaintiff with constructive notice of the terms). As a result the Court would not find the size of the text makes the agreement procedurally unconscionable. *See Fagerstrom*, 141 F. Supp. 3d at 1068 ("The notice of the [Amazon] COUs may not dominate the entire checkout page display, but it is reasonable notice, and that is all that is required."). Plaintiff's incorporation by reference argument is also unavailing because the arbitration provision itself was contained in the Amazon COU in bold font of the same size as the surrounding text. *See Brown v. MHN Government Services, Inc.*, 176 Wash.2d 258, 267 (2013) (finding no procedural unconscionability where the arbitration provision was in the same typeface, font, and size as the rest of the terms of use). In sum, the Court does not find the Amazon COU to be procedurally unconscionable.

### b. Substantive Unconscionability

Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh. *Id.* "Shocking to the conscience", "monstrously harsh", and "exceedingly calloused" are terms sometimes used to define substantive unconscionability. *Nelson v. McGoldrick*, 127 Wn.2d 124, 131 (1995).

Plaintiff contends that the arbitration agreement is substantively unconscionable because it (1) permits unilateral modifications, (2) contains an IP carveout, (3) prohibits public injunctive relief, (4) limits liability, (5) contains a choice of law provision, (6) contains a class action waiver, and (7) includes "deceptive concessions." Opp'n at 22:11-24:9. Defendants contend

11

that the agreement contains several pro-plaintiff elements and is therefore not one sided. MTC at 15:3-16. The Court would agree with the other courts that have examined the Amazon COU and find that it is not substantively unconscionable. *See Ekin*, 84 F.Supp.3d. at 78 (finding that Amazon's arbitration provision was not unconscionable); *Fagerstrom*, 141 F.Supp.3d at 1064-76 (same); *Peters v. Amazon Servs. LLC*, 2 F.Supp.3d 1165, 1170 (W.D. Wash. 2013) (same).

As an initial matter, Plaintiff's class action waiver argument ignores the breadth of case law permitting such waivers. *Concepcion*, 131 S. Ct. at 1753; *see also Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (upholding class action waiver and noting that Rule 23 does not establish an entitlement to class proceedings for the vindication of statutory rights). While Plaintiff is correct the presence of a waiver may be a factor, it is not sufficient to demonstrate substantive unconscionability. Similarly, Plaintiff's choice of law argument is unavailing. As discussed above, Plaintiff admits Washington law is as protective of consumers if not more so than California. Opp'n at 10 fn. 1; *see also Fagerstrom*, 141 F. Supp. 3d at 1063. The Court is also not convinced that the Amazon COU contain deceptive concessions. Similarly, the Court agrees with Defendants that there is no prohibition on injunctive relief in the arbitration provision. *See* Reply at 18:2-11.

Plaintiff's unilateral modification argument fails because there are other limitations to Amazon's ability to abuse this power. *See Fagerstrom*, 141 F.Supp.3d at 1017. Specifically, the performance obligations of both parties, including the core obligation to arbitrate disputes, is fixed and in effect under the current Agreement, and (2) the implied duty of good faith and fair dealing requires Amazon to exercise its discretion in a manner consistent with the justified expectations of the parties. *Id.* The Court would also agree with the court in *Fagerstrom* that the IP carveout is not necessarily entirely one-sided as it is at least conceivable an Amazon user could end up in an IP dispute. *Id.* Moreover, the IP carveout, though it may be unequal, does not itself create substantive unconscionability. *Id.*; *see also* Rev. Code Wash. § 62A.2–302 ("The principle [of unconscionability] is one of the prevention of oppression and unfair surprise and not of disturbance of allocation of risks because of superior bargaining power.").

On the other hand, Plaintiff's argument concerning a provision that caps Audible's total amount of potentially liability at the amount of money a member has spent in the previous year is problematic for Defendants. *See* Opp'n at 23:9-28; Soderstrom Decl. Ex. 4, Docket No. 21-7. This is because that provision is wholly one-sided and arbitrarily caps damages. *See Zuver*, 153

12

Wash.2d at at 317-19 (finding remedy limitation provision unconscionable where it was one-sided). The Court would find that this term is unconscionable and sever that provision without disturbing the rest of the agreement. *Id.* at 320 ("Courts are generally loath to upset the terms of an agreement and strive to give effect to the intent of the parties . . . . Consequently, when parties have agreed to a severability clause in an arbitration agreement, courts often strike the offending unconscionable provisions to preserve the contract's essential term of arbitration. *See* . . . *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 683 (8th Cir. 2001) (holding that unconscionable damages provision could be severed to preserve the parties' 'contractual intent to arbitrate').").[4]

      Plaintiff's duress argument is not persuasive. Opp'n at 24:20-25:18. Plaintiff argues that because the only way a user can refuse to agree to a unilateral modification is to cancel its membership − a move that may require it to forfeit its stored credits − Audible effectively forces its users to give up the credits or accept the changes. This is because, to actually use the credits before cancellation, would be to accept the new terms. *Id.* The Court would find that this feature of the agreement is not unconscionable as much as part of the bargain. *See* Rev.Code Wash. § 62A.2–302 ("The principle [of unconscionability] is one of the prevention of oppression and unfair surprise and not of disturbance of allocation of risks because of superior bargaining power."). Defendants provide users credits as part of their Audible subscription, and those credits may be effected negatively should a user wish to terminate its membership. That reality does not render the arbitration provision unconscionable. Moreover, and as stated above, there are other limitations on the Defendants' unilateral ability to modify the agreement. *See Fagerstrom*, 141 F.Supp.3d at 1017.

      In sum, the Court would find that, apart from the offending limitation of liability provision, the Amazon COU and Audible COU are not unconscionable and are enforceable. As stated above, this conclusion is in line with the other courts that have examined this agreement. *See Ekin*, 84 F.Supp.3d. at 78 (finding that Amazon's arbitration provision was not unconscionable); *Fagerstrom*, 141 F.Supp.3d at 1064-76 (same); *Peters*, 2 F.Supp.3d at 1170 (same).

---

[4] Defendants do not address this liability limitation provision in their Reply. The Court would entertain argument on this point before finalizing the decision with regard to severing this term.

**IV. Conclusion**

      For the reasons stated above, the Court would GRANT Defendants' Motion to Compel Arbitration.