JEDEDIAH WAKEFIELD (CSB No. 178058)
jwakefield@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

ANNASARA G. PURCELL (CSB No. 295512)
apurcell@fenwick.com
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA 98101
Telephone: 206.389.4510
Facsimile: 206.389.451

ARMEN NERCESSIAN (CSB No. 284906)
anercessian@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

Attorneys for AUDIBLE, INC. and
AMAZON.COM, INC.

<div style="text-align:center; writing-mode:vertical-rl">FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW</div>

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(WESTERN DIVISION – LOS ANGELES)

| | |
|---|---|
| GRANT MCKEE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AUDIBLE, INC. and AMAZON.COM, INC.,<br><br>Defendants. | Case No.: 2:17-cv-01941 GW (Ex)<br><br>**FURTHER SUPPLEMENTAL DECLARATION OF JASON A. MASSELLO IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS**<br><br>Date: July 13, 2017<br>Time: 8:30 AM<br>Crtm: 9D<br>Judge: George H. Wu<br>Trial Date: NONE SET |

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

I, Jason A. Massello, declare as follows:

1.      As I have explained in my earlier declarations in this case, I am an attorney and serve as Corporate Counsel supporting Audible, Inc. ("**Audible**"), a wholly owned subsidiary of Amazon.com, Inc. (**"Amazon"**).  My current responsibilities include supporting all aspects of Audible's service offerings and business operations, as well as working with the Amazon Litigation and Regulatory Department in identifying, reviewing and producing documents in litigation on behalf of Audible and Amazon.  Based on my job responsibilities and my review of Audible's and Amazon's business records, I am familiar with the agreements, customer sign-up and order process, and customer history that I discuss in this declaration.  I make this declaration based on personal knowledge and records that Audible and Amazon keep in the ordinary course of business, including information obtained from other Audible and Amazon personnel in the course of their duties.  I am competent to testify to the matters stated here.

## Response to Exhibit in Plaintiff's Counsel's Declaration

2.      I have reviewed the Supplemental Declaration of Jamin S. Soderstrom in Support of Plaintiff's Opposition to Defendants' Motion to Compel Arbitration and Dismiss Claims, and I understand that Plaintiff's counsel attaches certain screenshots of Audible's mobile sign-up webpage as Exhibit 1 to this declaration (Dkt. No. 29-2).  Plaintiff's counsel attaches a screenshot in this Exhibit 1, labelled "SCREENSHOT OF VIEW SHOWING POP-UP KEYPAD OBSCURES DISCLOSURE."  Mr. Soderstrom claims that this shows that if a consumer "*takes an action* on the page other than press the 'Start Now' button, a keypad *may* pop up and obscure the disclosure."  Dkt. No. 29-1 at ¶ 2 (emphases added).  However, Mr. Soderstrom does not say what the "action" is that he took to create this exhibit.

3.      Based on my own investigation of Audible's mobile sign-up flow, the only way a person is able to replicate what counsel has caused to appear on

MASSELLO FURTHER SUPP.
DECL. ISO DFTS' MTN TO
COMPEL ARB.                    2          Case No. 2:17-cv-1941 GW(Ex)

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Audible's sign-up webpage in his Exhibit 1 is to take the following steps.  First, in the middle of the sign-up process, a user would need to select a search bar on the mobile webpage.  This allows a user to search for a book, which is not something that is part of the sign-in process.  To search for a book, one needs to type the name, and accordingly, clicking in the search field causes a virtual keyboard to appear.  If a consumer decided to stop the sign-up process and search for a book, he or she could do so, but after entering the book title and clicking "go," the mobile website would take the user to a different page, showing search results based on that user's search.  But that is not what Mr. Soderstrom did to create this exhibit.  Instead, it appears that he took the following steps: (1) he triggered the search field as if he were going to search for something, (2) instead of entering any text in the search field and searching, he left the keyboard open without using it, and (3) he scrolled down to the "Start Now" button while deliberately stopping short of the disclosure immediately underneath the "Start Now" button.  Needless to say, this is not how the sign-up process works.  In the ordinary sign-up process, the keyboard would not appear on this screen for existing Amazon customers with a credit card on file.  I also note that Mr. McKee does not claim he saw any popup keyboard on this page when he signed up for an Audible subscription.

4.    The Audible mobile sign-up webpage does not require or invite existing Amazon customers to enter any information on the final sign-up screen where the "Start Now" button appears.  Indeed, a user cannot use the keyboard to enter or change any information in the fields above the "Start Now" button.  If a user presses the "Change Payment" link on that page, Audible directs the user to another screen where the user can select a different payment method or enter a new one.  Moreover, if a user clicks the "Go" button on the keyboard after manipulating the webpage to display what is depicted in this screenshot, the user will not complete the Audible subscription sign-up process.  Instead, as noted above,

MASSELLO FURTHER SUPP.
DECL. ISO DFTS' MTN TO
COMPEL ARB.                              3          Case No. 2:17-cv-1941 GW(Ex)

Audible will direct the user to a page of search results based on what the user had entered in the search bar.

### Amazon Integration with Audible

5.      Plaintiff's complaint in this lawsuit asserts the same nine causes of action against both Amazon and Audible, referring to them collectively as "defendants." I understand that despite these claims, in opposing this motion to compel arbitration Plaintiff has argued that Mr. McKee's use of Amazon, and Amazon's conditions of use, are "irrelevant." *See* Dkt. No. 29 at 2. But Amazon's terms of use explicitly apply to Amazon affiliates, like Audible, and the services they provide, and Audible is closely integrated with Amazon.

6.      The Amazon Conditions of Use define "Amazon" as including "Amazon.com, Amazon Services LLC and/or its affiliates." As shown in Exhibit 16 to my supplemental declaration (Dkt. No. 30-17), the Amazon Conditions of Use in effect when Mr. McKee first joined Amazon Prime, and in effect when he signed up for Audible, provided as follows:

> We offer a wide range of Amazon Services, and sometimes additional terms may apply. When you use an Amazon Service (for example, Your Profile, Gift Cards, Amazon Instant Video, Your Media Library, or Amazon applications for mobile) you also will be subject to the guidelines, terms and agreements applicable to that Amazon Service ("Service Terms"). If these Conditions of Use are inconsistent with the Service Terms, those Service Terms will control.

Accordingly, except where an Amazon service has its own inconsistent terms, Amazon's Conditions of Use apply. The words "Amazon applications for mobile" were highlighted in blue text and contained a hyperlink, which linked to a webpage listing various Amazon mobile applications, including the Audible app.

7.      Both the Audible and Amazon websites promote the fact that Audible is an Amazon company. For example, as shown in both the mobile sign-up and mobile app sign-in that Mr. McKee used, and on the standard Audible website sign-

MASSELLO FURTHER SUPP.
DECL. ISO DFTS' MTN TO
COMPEL ARB.                                    4            Case No. 2:17-cv-1941 GW(Ex)

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

up, the webpages and app display the Amazon logo and state that Audible is "an Amazon company." *See* Exhibits 3, 4, and 10 to my supplemental declaration (Dkt. 30-4, 30-5, and 30-11).

8.     Audible's service also has deep integration with Amazon's products and platforms. For example, customers can purchase Audible audiobooks either through the Audible online storefront (at www.audible.com) or through the Amazon desktop and mobile websites. Purchases may also be made from the Audiobooks tab on Amazon's Fire Tablets, and a selection of Audible audiobooks are included in Kindle Unlimited and as part of the Prime Reading Room membership benefit, making them available everywhere those services are offered. Amazon does not require customers to hold an Audible subscription to purchase Audible audiobooks through the Amazon websites or tablets. Customers with an Audible subscription, however, have the option to use membership credits to purchase Audible audiobooks through these Amazon surfaces. Attached as **Exhibit 1** to this declaration are screenshots of the webpage from Amazon's mobile website for the audiobook of Richard Wright's *Native Son*; attached as **Exhibit 2** to this declaration are printouts of the webpage from Amazon's desktop website for the audiobook of Neil deGrasse Tyson's *Welcome to the Universe: An Astrophysical Tour*. Both the mobile webpage and the desktop webpage allow the user to listen to an "Audible Sample" and provide that the material is "Sold and delivered by Audible, an Amazon company." The mobile webpage identifies the format of the book as an "Audible Book," and the desktop webpage identifies the format using the Audible logo.

9.     Amazon also allows purchasers of Kindle e-books to add Audible narration to those e-books at a reduced price where Audible audiobook versions of those e-books are available. After a user purchases a paired Audible audio edition of a Kindle e-book, the user can switch back and forth between reading the Kindle

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

e-book and listening to the Audible narration without losing his or her place.

10.     Both the mobile Amazon.com webpage and the desktop Amazon.com webpage give Amazon customers with Audible subscriptions two options for purchasing the audio directly through Amazon.com: with membership credits or a credit card on file.  As I stated in my earlier declarations, Audible also requires new customers to use an Amazon account in order to start an Audible subscription, and that was true when Mr. McKee started his Audible subscription on June 26, 2016.

11.     The Amazon desktop website also features a personalized landing page for each Amazon account called "Your Amazon.com."  Attached as **Exhibit 3** to this declaration is a printout of the personalized "Your Amazon.com" page of an Amazon customer with an Audible membership.  At the top of the webpage, there is a frame that displays how many Audible membership credits the user has left and invites the user to "Shop with credits."  The page also recommends "Audible Audiobooks" that the user might enjoy.

12.     One of Amazon's most popular offerings is Amazon Prime, a subscription service that provides customers with free two-day or same-day shipping on eligible items; unlimited online photo storage; streaming of movies and TV shows with Prime Video; music streaming; and the ability to borrow e-books from Amazon and audiobooks from Audible through Prime Reading Room, among many other benefits.  Customers can subscribe to Amazon Prime for a monthly or annual membership fee.  Attached as **Exhibit 4** to this declaration is a printout of a webpage describing various benefits available with a Prime membership.  One membership benefit available to all Prime members is "Audible Channels for Prime," for which Amazon provides the following description: "Get access to Audible Channels, a $60/year value, for free.  Audible Channels includes unlimited listening to original audio series and playlists handcrafted for every interest.  You'll also receive access to Prime Exclusive Audiobooks, a collection of streaming

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

audiobooks including best sellers, family favorites, celebrity-narrated classics and more.  Just download the free Audible app and sign in with your Amazon account to start listening."  Prime members do not need to have an additional Audible subscription to enjoy the "Audible Channels for Prime" benefit.

13.    Users can listen to Audible audiobooks through the Amazon mobile app and on a number of different Amazon devices, including Amazon's Fire tablets, its Amazon Echo devices, and Fire TV devices that use the Alexa voice service.

14.    I understand that Plaintiff has compared Audible to another company owned by Amazon, Zappos, which sells shoes and other clothing.  However, Zappos does not have the same deep integration with Amazon and its Amazon.com website that Audible does.  Customers can purchase products on Zappos only through the Zappos online storefront (at www.zappos.com) or the Zappos mobile app, but not directly through Amazon.com.  In addition, the sign-in process for Zappos does not state that it is "an Amazon company" or display the Amazon logo.  Zappos has its own terms which do not incorporate by reference Amazon's Conditions of Use.  In contrast, Audible's Service Terms of Use expressly incorporate Amazon's Conditions of Use into its agreement with users.

## Mr. McKee Agreed to Amazon's COUs When He Signed Up for Prime

15.    As I stated in my earlier declarations, Mr. McKee's account history shows that he joined Amazon Prime in February 2012.  He signed up for a free trial membership to Amazon Prime on February 10, 2012, which then converted to an annual paid membership on March 10, 2012.

16.    Attached as **Exhibit 5** to this declaration is a printout of the historical Amazon Prime Terms & Conditions in place when Mr. McKee signed up for his Amazon Prime membership on February 10, 2012.  The first paragraph of the historical Amazon Prime Terms & Conditions reads as follows:

> Welcome to the terms and conditions (**"Terms"**) for Amazon Prime. These Terms are between you and

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Amazon Services LLC and/or its affiliates (**"Amazon.com"** or **"Us"**) and govern our respective rights and obligations. The Terms, together with applicable terms and conditions related to any promotional offers provided to you for use with Prime, constitute the entire agreement between you and Amazon.com related to the Prime membership. Please note that your use of the Amazon.com website and Prime membership are also governed by our <u>Conditions of Use</u> and <u>Privacy Notice</u>, as well as all other applicable terms, conditions, limitations, and requirements on the Amazon.com website, all of which (as changed over time) are incorporated into these Terms. If you sign up for a Prime membership, you accept these terms, conditions, limitations and requirements. Please read these Terms carefully.

The terms "Conditions of Use" and "Privacy Notice" appear in blue text and are hyperlinks. If Mr. McKee had clicked the "Conditions of Use" link when Mr. McKee signed up for his Amazon Prime membership, Amazon would have directed to the Amazon Conditions of Use that Amazon had in place at that time, which I attached as Exhibit 17 to my supplemental declaration (Dkt. No. 30-18). The Amazon Conditions of Use in place when Mr. McKee signed up for his Amazon Prime membership included the Amazon arbitration agreement.

### Mr. McKee Agreed Repeatedly Agreed to Amazon's COUs

17.     During his course of dealing with Amazon, Mr. McKee purchased a number of Amazon devices, which I describe in greater detail below. As I have stated in my previous declarations, each time a customer makes a purchase through Amazon's standard checkout page (whether on Amazon's desktop website, its mobile website, or its mobile app), the customer is required to accept Amazon's COUs. And that was true at the time that Mr. McKee made each of the purchases that I describe below. In addition, each Amazon device comes with its own set of terms, which govern the use of that device.

18.     Mr. McKee purchased a Kindle Fire Tablet on Wednesday, May 2, 2012. Attached as **Exhibit 6** to this declaration is a printout of the historical Kindle Terms that were in place when Mr. McKee purchased that Kindle Fire Tablet. The

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Kindle Terms state, "[i]f you place an order for or register a Kindle Fire, you also agree to the following additional terms" and then they provide a listing of hyperlinks, including a link to the "Amazon Prime Terms and Conditions" in place at that time.  Clicking on that link would have directed Mr. McKee to the historical Amazon Prime Terms & Conditions attached as Exhibit 5 to this declaration, *above*.

19.    Mr. McKee purchased a Fire TV Stick on Monday, October 27, 2014. Attached as **Exhibit 7** to this declaration is a printout of the historical Amazon TV Terms that were in place when Mr. McKee purchased that Fire TV Stick.  The Amazon Fire TV Terms state, "[i]f you place an order for or register an Amazon Fire TV, you agree to the following terms," and then they provide a listing of hyperlinks, including a link to the "Amazon Fire TV Terms of Use" in place at that time.  Attached as **Exhibit 8** to this declaration is a printout of the webpage that Mr. McKee would have seen had he clicked the "Amazon Fire TV Terms of Use" link when he purchased his Fire TV Stick, and which reflects the Amazon Fire TV & Fire TV Stick Terms of Use in place at the time.  The first paragraph of the Amazon Fire TV & Fire TV Stick Terms of Use stated:

> This is an agreement between you and Amazon Digital Services, Inc. (with its affiliates, "Amazon" or "we"). Please read these Amazon Fire TV Terms of Use, the Amazon.com Privacy Notice, the Amazon.com Conditions of Use, and the other applicable rules, policies, and terms posted on the Amazon.com website, on or through your Amazon Fire TV, or provided with any of the Services (collectively, this "Agreement") before using the Amazon Fire TV. By using the Amazon Fire TV, you agree to be bound by the terms of this Agreement. If you do not accept the terms of this Agreement, then you may not use the Amazon Fire TV, and you may return the Amazon Fire TV in accordance with the applicable return policy.

The terms "Conditions of Use" and "Privacy Notice" appeared in blue, underlined text and were hyperlinks.  If Mr. McKee had clicked the "Conditions of Use" link when Mr. McKee signed up for his Amazon Prime membership, Amazon would have directed to the Amazon Conditions of Use that Amazon had in place at that

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   time, which I attached as Exhibit 16 to my supplemental declaration (Dkt. No. 30-

2   17).  The Amazon Conditions of Use in place when Mr. McKee signed up for his

3   Amazon Prime membership included the Amazon arbitration agreement.

4          20.    As I discussed in my supplemental declaration (Dkt. 30-1), Mr. McKee

5   also purchased an Amazon Echo on Tuesday, April 19, 2016, and he activated his

6   Amazon Echo on April 27, 2016.  I described the process that Mr. McKee must

7   have gone through when activating his Amazon Echo through the Alexa companion

8   app in my supplemental declaration, and I attached a screenshot of the screen that

9   Mr. McKee must have seen during that process as Exhibit 11 to my supplemental

10  declaration (Dkt. No. 30-12).  For the avoidance of all doubt, the only possible

11  difference between what appears in Exhibit 11 to my supplemental declaration and

12  what Mr. McKee saw when activating his Amazon Echo is the user name that

13  appears in Exhibit 11 to my supplemental declaration ("venkatrk+testscreen").

14  Aside from that one exception, Mr. McKee must have seen all of the rest of the text

15  that appears in Exhibit 11 to my supplemental declaration; it all appeared on a

16  single screen on an iPhone, and Mr. McKee would not have needed to scroll down

17  to see the bottom of the image or any other part of the disclosure.  Moreover, the

18  screen did not require Mr. McKee to enter any information, and no element on the

19  screen would have triggered a keyboard to pop up and potentially obscure any part

20  of the disclosure that Mr. McKee saw.  In addition, at that time, Audible's standard

21  terms were entitled "Audible Conditions of Use," and they contained an arbitration

22  provision that is substantively identical to the arbitration provision in Amazon's

23  Conditions of Use.  Attached as **Exhibit 9** are printouts of archived Amazon

24  webpages promoting the Amazon Echo's integration with Audible, as they existed

25  before Mr. McKee purchased his Amazon Echo device.

26         I declare under penalty of perjury under the laws of the United States that the

27  foregoing is true and correct.

28

MASSELLO FURTHER SUPP.
DECL. ISO DFTS' MTN TO
COMPEL ARB.                    10        Case No. 2:17-cv-1941 GW(Ex)

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Executed on this 5th day of July, 2017, at Newark, New Jersey.

Jason A. Massello