1  **Jamin S. Soderstrom, Bar No. 261054**
2  **jamin@soderstromlawfirm.com**
   **SODERSTROM LAW PC**
3  **3 Park Plaza, Suite 100**
4  **Irvine, California 92614**
   **Tel:   (949) 667-4700**
5  **Fax:  (949) 424-8091**

6  *Counsel for Plaintiffs and the Proposed Class*

7

8              **UNITED STATES DISTRICT COURT**

9             **CENTRAL DISTRICT OF CALIFORNIA**

10            **(WESTERN DIVISION – LOS ANGELES)**

11

12 | **GRANT MCKEE and SETH BEALS,** | **Case No. 2:17-cv-01941 GW (Ex)** |
13 | **individually and on behalf of all others** | |
   | **similarly situated,** | |
14 | | **FIRST AMENDED CLASS ACTION** |
15 |         **Plaintiffs,** | **COMPLAINT** |
16 | **v.** | |
17 | **AUDIBLE, INC.,** | **DEMAND FOR JURY TRIAL** |
18 |         **Defendant.** | |
19 | | |
20

21

22

23

24

25

26

27

28

Plaintiffs Grant McKee and Seth Beals (collectively, "Plaintiffs") bring this action on behalf of a nationwide Class of consumers who purchased or received one or more prepaid audiobook "credits" from Defendant Audible, Inc. ("Audible") during the relevant period, and allege as follows:

## INTRODUCTION

1.     Audible engages in numerous unlawful and unfair business practices in connection with its so-called "memberships" and the "credits" it sells to consumers. These practices include making false and misleading representations concerning memberships and credits; designing credits to expire automatically within months (and possibly days); providing incomplete auto-pay disclosures; and asserting a right to charge automatically and without notice credit cards other than the card consumers specifically designate for payment to Audible. Each of these practices violates federal or California law, or both, and Audible applies each practice uniformly to Plaintiffs and other consumers who have purchased or received a credit in the relevant time periods.

2.     **False and Misleading Representations**. Audible represents to consumers that "one credit equals one audiobook," members "get 1 book each month," credits "do not expire," and members can "cancel anytime" with "no strings attached" while getting to "keep all your books." None of these representations is true; at best, each is misleading. A credit does not equal an audiobook. Regular credits are designed to expire automatically within months or days based on Audible's rollover and cancellation policies, and "gift" credits are designed to expire exactly six months after a "gift membership" ends. Consumers who cancel their recurring payments (i.e., their "membership") have their credits expire immediately and get neither a refund nor an audiobook. Plaintiffs and other consumers rely on these representations and substantially similar representations both when they sign up with Audible and as they continue making recurring purchases of prepaid credits each month or year.

3.     **Unlawful Expiration Terms**. Each Audible "credit" constitutes a gift certificate or gift card under both federal and California law. This is because each credit

FIRST AMENDED CLASS ACTION COMPLAINT

is (i) intended for personal, family, or household use by consumers, (ii) an electronic promise stored in a consumer's online Audible account, (iii) redeemable at Audible's or an affiliate's website for an audiobook or similar product or service, (iv) issued in a specified amount that may not be increased or reloaded, (v) purchased on a prepaid basis in exchange for payment, and (vi) honored by Audible or an affiliate upon presentation. Audible credits violate both federal and California gift certificate and gift card laws because they are designed to expire earlier than 5 years after they were issued.

4.      Audible formerly let members send regular credits to other consumers as gifts. Audible discontinued this practice in April 2017. Audible still sells "gift" credits as part of a so-called "gift membership," however. These gift credits are sold in sets of 3, 6, or 12 and are designed and advertised specifically for consumers to give as gifts to Audible members or non-members. Regular credits and gift credits are indistinguishable from each other except that regular credits have variable expiration dates based on Audible's "rollover" and cancellation policies, while gift credits automatically expire exactly six months after a "gift membership" ends. Audible cannot avoid gift certificate and gift card laws simply by omitting a dollar sign from their value/pricing scheme and using the term "credits" when they have all of the features of gift certificates or gift cards.

5.      **Incomplete Auto-Pay Disclosures**. Audible requires all consumers who sign up to designate a specific credit card for Audible to charge automatically each month or year, depending on the particular recurring payment plan. Audible fails, however, to properly disclose to consumers all of the required recurring payment and cancellation policies at the point of sale (i.e., at the "Start Now" or similar button). The limited disclosures Audible does provide are not clear and conspicuous, are not placed in close visual proximity to the button consumers are asked to click, do not make clear that Audible will automatically charge a different credit card without notice if the designated card is declined for any reason, and do not include the relevant cancellation terms. Audible also does not provide consumers who sign up with a written acknowledgement of the recurring payment and cancellation terms in a form that the consumers can easily

3

FIRST AMENDED CLASS ACTION COMPLAINT

retain. Audible's incomplete disclosures cause Plaintiffs and other consumers to allow Audible to charge their credit cards automatically and repeatedly without first being fully informed of all of the relevant terms.

6.     **Unauthorized Credit Card Terms and Charges**. Audible asserts a right to charge any credit card that is linked to an Audible member's separate Amazon account if the card the member designates to make automatic recurring payments to Audible is declined for any reason. This includes the purported right to charge an Audible member's separate personal card, a member's corporate credit card, or a non-member's credit card simply because they are stored on an Amazon account. Audible also disclaims any obligation even to inform a member when cards not designated for recurring payments are charged automatically. Not only is this recurring payment term inadequately disclosed to consumers, but the term itself is unconscionable and risks causing members to incur interest, fees, downgraded credit, and various other issues if the unauthorized charge is not immediately discovered and addressed appropriately and fully. Moreover, when Audible actually makes unauthorized charges on non-designated cards, it commits unlawful conversion by taking consumers' money without consent.

7.     Because Audible's unlawful and unfair business practices are applied uniformly to Plaintiffs and other consumers nationwide who have purchased or received Audible credits during the relevant time periods, this action is well-suited for class treatment.

## JURISDICTION AND VENUE

8.     This Court has original jurisdiction over this action under 28 U.S.C. § 1331 because it is being brought under the Lanham Act, 15 U.S.C. § 1125 ("Lanham Act"), and the Credit Card Accountability Responsibility and Disclosure Act, 15 U.S.C. § 1693*l*-1(a)(2)(B) ("CARD Act"), which amended the Electronic Funds Transfer Act, 15 U.S.C. § 1693 ("EFTA"). This Court also has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d) and 1453, because this is a class action in which (i) there are 100 or more Class members, (ii) at least one Plaintiff or Class

FIRST AMENDED CLASS ACTION COMPLAINT

member has a different state of citizenship than Audible, and (iii) the amount in controversy is more than $5,000,000. This Court is also empowered to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

9.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims because the state law claims and federal claims are so closely related that they form part of the same case or controversy.

10.     This Court has personal jurisdiction over Audible because (a) a substantial portion of the wrongdoing alleged in this action took place in California, (b) Audible is authorized to do business in California, has sufficient minimum contacts with California, and has intentionally availed itself of the markets in California through the promotion, marketing, and sale of products and services in California, and (c) the exercise of jurisdiction by this Court is permissible under traditional notions of fair play and substantial justice.

11.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and (2) because Audible has a significant presence in California and a substantial part of the events and omissions that give rise to Plaintiffs' and Class members' claims occurred in this District. Venue is also proper under California Code of Civil Procedure section 395.5 and California Business and Professions Code section 17203.

## PARTIES

12.     Plaintiff Grant McKee is a citizen and resident of Los Angeles County, California. After viewing Audible's advertisements and representations, he signed up for Audible in June 2016 and received a "free" 30-day trial membership and "free" credit. After 30 days, Audible began automatically charging his credit card for a "Gold Monthly" plan pursuant to which he purchased one credit each month. Audible represented that purchasing one credit each month was the equivalent of purchasing one audiobook each month. After paying for monthly credits and redeeming several credits for audiobooks, he cancelled his recurring payments in December 2016. Upon cancellation, his two remaining credits immediately and automatically expired. Audible

FIRST AMENDED CLASS ACTION COMPLAINT

1  did not refund him the money he paid for the expired credits or give him an audiobook

2  in exchange for each expired credit.

3       13.    Plaintiff Seth Beals is a citizen and resident of Michigan. After viewing

4  Audible's advertisements and representations, he signed up for Audible in April 2015

5  and received a "free" 30-day trial membership and "free" credit. After 30 days, Audible

6  began automatically charging his credit card for a "Gold Monthly" plan pursuant to which

7  he purchased one credit each month. Audible represented that purchasing one credit each

8  month was the equivalent of purchasing one audiobook each month. After paying for

9  monthly audiobook credits and redeeming his credits for audiobooks, he cancelled his

10 recurring payments in August 2015. Also in August 2015, Beals received a 12-month

11 "gift membership." The gift membership gave him 12 prepaid credits, all of which were

12 designed to expire exactly 18 months later in February 2017. Audible represented that

13 the 12 gift credits were the equivalent of 12 audiobooks. Beals redeemed 11 of his gift

14 credits, but the twelfth gift credit automatically expired before he redeemed it. Audible

15 did not refund him the value of the expired gift credit or give him an audiobook in

16 exchange for the expired gift credit.

17      14.    Defendant Audible, Inc. is a Delaware corporation with its principal place

18 of business in New Jersey. Audible is an affiliate of Amazon.com, Inc. Audible describes

19 itself as a leading provider of spoken audio entertainment, information, and educational

20 programming. It advertises and sells audiobooks and related products and services on

21 www.audible.com, among other places.

22                 **AUDIBLE'S UNLAWFUL BUSINESS PRACTICES**

23      15.    Audible engages in a host of unlawful and unfair business practices that

24 violate federal and California law.

25      16.    **False and Misleading Representations.** Audible's unlawful and unfair

26 business practices start with the representations it makes to consumers in its

27 advertisements and related online, print, and television promotions. When Plaintiffs and

28 other consumers sign up with Audible, or when they receive a gift credit from a friend or

family member (or purchase it for themselves), they are told that credits are equal to the same number of audiobooks. Audible represents that "one credit equals one audiobook," consumers will "get 1 book each month," credits "do not expire," and consumers can "cancel anytime" with "no strings attached" while getting to "keep all your books." Audible uses multiple variations of these statements online and in print and other media, all of which have the same theme: consumers who sign up to make recurring payments will get at least one audiobook each month and there is no penalty if they ever cancel.

17.     None of Audible's representations is true. Each is either literally false or highly misleading. A credit does not <u>equal</u> an audiobook. A consumer who signs up to purchase credits on a recurring basis does not <u>get an audiobook</u> each month, or even an irrevocable right to get an audiobook at a later time. All credits—both regular and gift— are designed to <u>expire automatically</u> within months (and possibly days). And consumers <u>lose their credits</u> immediately if they ever cancel their recurring payments and they get no refund and receive no audiobooks for their expired credits.

18.     Plaintiffs and other consumers sign up for Audible believing that each recurring payment they make is the equivalent of purchasing one or more audiobooks which they can pick at a later date and which they will own and keep even if they stop making recurring payments in the future. Their belief is justifiable but their reliance on Audible's representations is misplaced.

19.     Audible's so-called "memberships" are not even memberships in the traditional sense. Consumers simply sign up to make recurring monthly or annual payments in exchange for credits because they are told purchasing prepaid credits is equivalent to purchasing the same number of audiobooks. Audible entices consumers to sign up to make recurring credit purchases by offering what they describe as "complimentary" or "free" benefits as an added incentive, but purchasing prepaid credits automatically on a recurring basis is the *sine qua non* of Audible's so-called "memberships."

///

20.    Plaintiffs relied on Audible's false and misleading representations to their detriment. Had they known the truth about Audible's policies and practices concerning credits, expiration terms, and cancellation, they would not have signed up for Audible, agreed to purchase credits automatically and on a recurring basis, continued to make recurring payments for as long as they did, or paid as much for each credit knowing they may never get an audiobook for each credit they purchased.

21.    **Unlawful Gift Certificates or Gift Cards.** Audible's prepaid credits arrangement violates both federal and California gift certificate and gift card laws.

22.    Every Audible credit—both regular and gift—constitutes a gift certificate or gift card under federal law because each credit is (i) intended primarily for personal, family, or household use by a consumer, (ii) an electronic promise that is stored in each consumer's online Audible account, (iii) redeemable by the holder of the credit (whether by purchase or gift) at Audible's or an affiliate's online bookstore for an audiobook or similar good or service, (iv) issued in a specified amount that may not be increased or reloaded, (v) purchased on a prepaid basis in exchange for payment, and (vi) honored by Audible or an affiliate for an audiobook or other good or service upon presentation.

23.    *Personal use*. As intended by Audible, Plaintiffs and other consumers purchase or receive credits primarily for personal use.

24.    *Electronic promise*. When Plaintiffs and other consumers purchase a credit, that credit appears in an online account hosted by Audible on its website. The number of credits in the consumer's account constitute the number of promises Audible has made to the consumer with respect to redeeming such credits in exchange for audiobooks or other Audible products or services. A consumer who has purchased six credits and has three credits remaining will have an Audible account that shows "3 credits available."

25.    *Redeemable by the holder*. Whenever Plaintiffs and other consumers have a credit in their Audible account, they are entitled to redeem that credit at Audible's or its affiliate Amazon's online bookstore for an audiobook or other goods or services sold by Audible.

8

FIRST AMENDED CLASS ACTION COMPLAINT

26.     *Issued in a specified amount.* Audible issues each credit in a specified amount. While many Audible audiobooks can be purchased by redeeming one credit, Audible sells audiobooks and other goods and services that require consumers to redeem two or more (and in some cases as many as nine) credits to purchase them. When Plaintiffs and other consumers purchase or receive a credit, they are not entitled to redeem the credit for any audiobook regardless of the audiobook's "cash" value advertised by Audible; rather, they are only entitled to redeem the credit for an audiobook or other products or services up to the value fixed by Audible. Audible prices its audiobooks and related products and services in different increments (e.g., "purchase for 1 credit," "purchase for 5 credits," "purchase for 9 credits"), and it issues each credit in a specified amount where every credit can be redeemed for any audiobook or other product or service valued by Audible at up to 1 credit but not more than 1 credit.

27.     A credit can be redeemed for an inexpensive audiobook with an advertised cash price below the cost of purchasing a credit. Audible also sometimes permits multiple credits to be combined in connection with particular audiobook sales promotions (e.g., "buy 3 audiobooks for 2 credits"). But no single credit can be redeemed for an audiobook or other product or service that Audible values at more than 1 credit.

28.     Audible also sells "extra credits" separate and apart from automatically recurring purchases (e.g., "buy 3 extra credits") with no "complementary" or "free" benefits added to such credit purchases. These credits are subject to the same terms and practices as other credits purchased automatically through recurring payments.

29.     Audible has decided to use terminology that replaces the "cash" value of its products and services with its own unique and subjective "credit" value of the same products and services. Sometimes Audible's credit pricing scheme offers what some consumers would consider a good deal (e.g., a consumer can redeem one credit for an audiobook or other product or service with an advertised cash value of $20), and other times Audible's credit pricing scheme offers what some consumers would consider a bad deal (e.g., a consumer can redeem one credit for an audiobook or other product or service

9

with an advertised cash value of $10). But omitting a dollar sign from its pricing scheme when dealing in "credits" does not exempt Audible from federal gift certificate and gift card laws. Each Audible credit is issued in a specified amount whether or not Audible chooses to price its products and services in terms of "cash" value or "credit" value.

30.    *Cannot be increased*. The specific amount of an Audible credit cannot be increased even though the total number of individual credits in a consumer's account will automatically increase with every new credit purchase (subject to Audible's so-called "rollover" policy that caps the total number of credits a consumer can have in his or her account at one time and forces older credits to expire to "make room" for new credits). Each credit can be redeemed for any good or service Audible values at "1 credit," and once a credit is redeemed (or has expired) it no longer has any value. The value of an unredeemed credit is always "1 credit," and the value of a redeemed or expired credit cannot be increased.

31.    *Is not reloadable*. The specific amount of an Audible credit is not reloadable. Each credit purchase is a distinct transaction. Plaintiffs and other members do not have physical "credit" cards or electronic "credit" accounts that are "reloaded" with each new credit purchase. A member's Audible account stores each credit individually alongside each audiobook that has been purchased by such member. A redeemed or expired credit cannot be reloaded and become worth "1 credit" again; a subsequent credit purchase can simply replace a redeemed credit with a new, different credit. The total number of credits in a member's account will change over time based on purchases, redemptions, and expirations, but no credit can itself be reloaded.

32.    Even if an Audible credit was determined to be capable of being increased or reloaded, it would still constitute a "store gift card" even if it would not constitute a "gift certificate" because it satisfies all of the other requirements of federal law.

33.    An Audible "credit" also constitutes a gift certificate or gift card under California law. Audible formerly permitted and encouraged consumers to send individual prepaid credits to other consumers as gifts. In April 2017, Audible discontinued this

FIRST AMENDED CLASS ACTION COMPLAINT

"credit gifting" feature. Audible continues, however, to advertise and offer for purchase so-called "gift memberships" where consumers purchase sets of 3, 6, or 12 prepaid credits that they can either keep for themselves or give to others as gifts. Gift credits are priced the same or very similar to regular credits, with their distinguishing feature being that all gift credits automatically expire exactly six months after the "gift membership" period ends instead of based on Audible's rollover and cancellation policies applied to regular credits.

34.     When an Audible member receives a gift credit, it is intermingled with regular credits in the member's account and has the same features and limitations as a regular credit. A member may have two regular and two gift credits and his or her Audible account will say "4 credits available." When redeeming a credit, a member cannot choose whether to redeem a regular credit or a gift credit. This matters because regular and gift credits have different expiration terms and redeeming a credit that will not expire for five months before redeeming a credit that will expire in one week increases the chances that a credit will expire before it is redeemed. Audible members who receive gift credits do not receive any additional benefits with their gift credits.

35.     Plaintiffs and other consumers have been harmed by Audible's failure to ensure that its credits comply with gift certificate and gift card laws. They have each purchased or received one or more regular credits or gift credits that expired earlier than five years after the date each credit was issued. They did not receive a full refund of the purchase price for each expired credit, they did not receive an audiobook in exchange for each expired credit, and they paid more for each credit than they would have paid had they known the credits were designed to expire automatically within months. Moreover, the possibility of having credits expire within months (or immediately upon cancellation) causes Plaintiffs and other consumers to redeem credits for audiobooks they would not have purchased if they had more time to make a selection or wait to purchase a book that was not yet available from Audible.

///

FIRST AMENDED CLASS ACTION COMPLAINT

36.   **Incomplete Auto-Pay Disclosures.** The core benefit to Audible of its so-called "memberships" is the automatic recurring payments feature. To sign-up for Audible, every consumer is required to designate one credit card that Audible will automatically charge monthly or annually in perpetuity until the consumer affirmatively cancels the recurring payments. This auto-pay feature is the way Audible ensures it always gets paid whether or not consumers ever redeem their credits. When combined with Audible's rollover, expiration, and cancellation policies, every expired credit constitutes a cash windfall for Audible and avoids the expense of having to give the consumer an audiobook or other product or service in exchange for his or her credit purchase.

37.   Audible's cancellation policy causes consumers to continue paying for credits they do not want or believe they will not have time to use simply because the consumers want to avoid losing credits they already paid for. Had Plaintiffs and other consumers known their credits would expire automatically within months, they would have stopped making automatic payments when they believed they would not be able to redeem their existing credits before they expired. Moreover, for annual plans, the automatic purchase of multiple credits at once forces numerous credits to expire all at once based on Audible's artificial "rollover" limits that caps the total number of credits that can be in an account at the same time. Audible uses its cancellation and rollover policies to capitalize on consumer loss aversion and maximize windfall profits at consumers' expense. These windfall profits are precisely the profits gift certificate and gift card laws were enacted to prevent.

38.   To support its auto-pay feature, Audible uses a "free to pay" advertising tactic where consumers get a "free" 30-day trial membership and a "free" credit when they sign up. Consumers only start getting charged 30 days later if they fail to affirmatively cancel their free membership. While this "free to pay" tactic is not itself unlawful, it capitalizes on generalized consumer behavior that suggests consumers are likely to sign-up for free subscriptions when there are few hassles or requirements, but

are unlikely to cancel an existing subscription if doing so involves hassles or extra requirements. This tactic makes the auto-pay disclosures that are required by law all-the-more important to ensure that consumers are fully informed before they agree to recurring credit card charges that only come after a "free" trial period ends and take more effort to cancel than they do to set up.

39.     Audible fails to disclose to consumers at the point of sale all of the information required by law. The minimal information Audible does disclose to consumers is not presented clearly and conspicuously next to the "Start Now" or similar button. Furthermore, Audible does not adequately disclose to consumers that: (i) the credit card they designate when signing up for a "free" trial will automatically be charged every month in perpetuity unless the recurring payments are affirmatively cancelled; (ii) it will automatically charge (without notice to the consumer) a different credit card stored on a separate Amazon account if the designated credit card is declined for any reason, and it will continue making such charges until the non-designated card is itself declined; or (iii) cancellation requires a consumer to take certain specific steps which, if taken, will cause all credits to expire immediately without a refund or an audiobook. Audible also fails to provide a written acknowledgement of the relevant terms and information in a form that consumers can easily retain.

40.     Plaintiffs were harmed by Audible's incomplete auto-pay disclosures. Plaintiffs and other consumers have been charged regularly and automatically without being fully informed of all the payment and cancellation terms and policies. They would not have signed up for recurring payments had they known all of the information the law requires to be disclosed at the point of sale, or they would not have paid the same amount of money on a recurring basis for the same length of time had they been provided with all of the required disclosures before they signed up.

41.     **<u>Unauthorized Credit Card Charging Term and Practice.</u>** Audible asserts the right to charge any credit card linked to an Audible member's separate Amazon account if the credit card that the Audible member designated for automatic payment is

declined for any reason (e.g., it was cancelled or it expired). Not only does Audible assert the right to charge any card stored on a member's separate Amazon account (even corporate cards and friends' or family members' cards), it also disclaims any obligation to give members notice that it automatically charged a card that the consumer never designated for Audible automatic payments.

42.     Audible's alleged right to charge non-designated cards constitutes a prohibited and unconscionable term and practice imposed on Audible members. Audible fails to properly disclose such term in the first place, rendering the process and term procedurally unconscionable. And the substance of such term and practice is harsh, unfair, and shocks the conscience. It subjects Plaintiffs and other consumers (including non-members who simply have cards stored on an Audible member's Amazon account) to the risk of having cards charged automatically without their knowledge or authorization. If non-designated cards are charged, the member or card holder may incur interest, fees, credit score downgrades, embarrassment, and other adverse consequences on top of having to pay for a credit using a card they did not authorize for payment. Because the charges are recurring, this process continues until discovered and stopped.

43.     Moreover, when Audible actually accesses and automatically charges credit cards that were never designated to make recurring payments, Audible commits common law conversion by taking the card holder's money without authorization.

44.     Plaintiffs and other consumers who store more than one card on their separate Amazon account are all subject to and harmed by Audible's unconscionable credit card charging term and practice. The term is unconscionable and unenforceable whether or not Audible adequately discloses it to consumers (which it does not). And when Audible actually makes unauthorized charges, they are further harmed by unlawful conversion.

## CLASS ACTION ALLEGATIONS

45.     Plaintiffs bring this action as a proposed nationwide class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of all

members of the following Class and Subclasses. Plaintiffs reserve the right to amend the following definitions before the Court determines whether class certification is appropriate, or thereafter upon leave of Court.

<strong><u>Class</u></strong>

All individual consumers in the United States who have purchased or received an Audible credit within four years from the date this action was filed.

<strong><u>False Advertising Subclass</u></strong>

All individual consumers in the United States who signed up for Audible in reliance on Audible's representations concerning credits equaling audiobooks, credits not expiring, and/or cancelling without penalty.

<strong><u>Expired Credits Subclass</u></strong>

All individual consumers in the United States who have purchased or received an Audible credit that expired within five years from the date the credit was issued.

<strong><u>Incomplete Auto-Pay Disclosures Subclass</u></strong>

All individual consumers who signed up for Audible and were not provided all of the disclosures required by law in a clear and conspicuous manner at the point of sale.

<strong><u>Unauthorized Credit Card Charges Subclass</u></strong>

All individual consumers who had a payment method stored in an Amazon account that was charged by Audible automatically because the designated payment method provided to Audible was declined.

46.   Excluded from the proposed Class and Subclasses are Audible and their parents, subsidiaries, affiliates, officers, directors, and current and former employees; all individuals who make a timely election to be excluded from this proceeding using the

correct opt-out protocol; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

47. **Numerosity**. The members of the proposed Class and Subclasses are so numerous that joinder is impracticable. Thousands (possibly millions) of consumers have relied on Audible's representations, have purchased or received Audible credits during the relevant period, and have been subjected to and harmed by Audible's unfair and unlawful acts. The number and identity of individuals who fall within the proposed Class and Subclass definitions are easily identifiable and ascertainable based on Audible's business records.

48. **Commonality and Predominance**. Common questions of law or fact that will drive the resolution of this case include, but are not limited to:

a. Whether Audible made false, misleading, deceptive, untrue, or unfair statements in its advertisements related to membership plans, credits, cancellation, automatic payments, and credit card charging policies;

b. Whether Audible credits are governed by federal or California gift certificate or gift card laws;

c. Whether Audible's credit expiration policies comply with applicable federal and California gift certificate and gift card laws and/or are otherwise fair;

d. Whether Audible's automatic renewal payment policies and cancellation policies are properly disclosed to consumers;

e. Whether Audible's asserted right to access and automatically charge any credit card stored on a member's separate Amazon account if the designated credit card is declined for any reason is an unconscionable term; and

f. Whether Audible actually charging unauthorized credit cards is conversion.

49. In addition to the common questions of law and fact that will drive this case, Audible has engaged in a common course of conduct giving rise to violations of the legal

16

rights sought to be enforced by Plaintiffs and proposed Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved in this case and are applicable to Plaintiffs and most, if not all, of the proposed Class and Subclass members. Any individual questions that may arise in this action will pale in comparison to the numerous common questions.

50.    **Typicality**. Plaintiffs' claims are typical of the proposed Class and Subclass members' claims because:

a.    Plaintiffs and proposed Class members are subject to and detrimentally relied on Audible's uniform representations made to all consumers;

b.    Plaintiffs and proposed Class members are harmed by Audible's uniform policy that causes credits to expire within five years without a refund or an audiobook;

c.    Plaintiffs and proposed Class members are prevented from obtaining the full value of their prepaid credits (i.e., an audiobook or other product or service priced by Audible at "1 credit");

d.    Plaintiffs and proposed Class members are subject to Audible's uniform automatic renewal payment terms, policies, and disclosures;

e.    Plaintiffs and proposed Class members are subject to Audible's uniform policies concerning accessing and charging without notice credit cards that are not designated for payment;

f.    Audible is unjustly enriched by Plaintiffs' and proposed Class members' credit purchases and recurring automatic payments, the expiration of credits, and charging credit cards without authorization; and

g.    Plaintiffs' and proposed Class members' injuries flow from a common nucleus of operative facts, can be determined from Audible's business records, and can be calculated in an identical or substantially similar manner.

///



17

FIRST AMENDED CLASS ACTION COMPLAINT

51.     Given the similar nature of Plaintiffs' and proposed Class members' claims, and given the absence of material differences in the relevant statutes and common laws on which the claims are based, a nationwide Class and various nationwide or California Subclasses may be easily managed by the Court and the parties.

52.     **Adequacy of Representation**. Plaintiffs will fairly and adequately protect the interests of all proposed Class and Subclass members. Moreover, Plaintiffs have retained counsel experienced in complex commercial litigation and consumer class actions, and Plaintiffs and their counsel intend to prosecute this action vigorously. Plaintiffs have no interests that are adverse or antagonistic to those of the Class members. Plaintiffs' claims are typical of Class members' claims, and all Class members have been similarly affected by Audible's unlawful conduct.

53.     **Ascertainability**. Audible sells prepaid credits through its website and has collected detailed personal and financial information associated with each transaction. Accordingly, the precise number and identity of Class and Subclass members can easily be determined by reference to Audible's business records. As such, Class and Subclass members are easily ascertainable and can be personally notified of the pendency of this action by first class mail, electronic mail, and/or published notice calculated to reach all such members.

54.     **Superiority of a Class Action**. The proposed Class and each of the proposed Subclasses should be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure because:

     a.     Prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for Audible;

     b.     Prosecution of separate actions by individual Class members would create a risk of adjudications that would, as a practical matter, be dispositive of the interests of other Class members who are not parties to the adjudications, or

18

FIRST AMENDED CLASS ACTION COMPLAINT

would substantially impair or impede such Class members' ability to protect their interests;

c.  Individualized litigation would increase the delay and expense to all parties and the court system from the issues raised by this action; by contrast, the class action procedure provides the benefits of adjudicating these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and it presents no unusual management difficulties;

d.  Unless a class-wide injunction is issued, Audible will continue to commit the violations described herein, and the members of the Class and the general public will continue to be misled and injured;

e.  Because of the relatively small size of the individual Class members' claims, no Class member could afford to seek legal redress on an individual basis, making the class action procedure superior to alternative means of prosecution; and

f.  Audible has acted and failed to act on grounds generally applicable to Plaintiffs and Class members, thereby supporting the imposition of uniform relief to ensure compatible standards of conduct toward all Class members.

55.  For each of these reasons, this action should be certified as a nationwide class action.

## CAUSES OF ACTION

### First Cause of Action

### Violation of the Lanham Act, 15 U.S.C. § 1125

56.  Plaintiffs incorporate by reference all of the foregoing paragraphs.

57.  Audible constitutes a "person" under the Lanham Act.

58.  Audible has, in its commercial advertising or promotions in connection with the sale of its goods and services, including but not limited to its "credits," audiobooks, and related products and services, used in commerce (i) a combination of words, terms, names, symbols, and devices, (ii) false and misleading descriptions of fact, and (iii) false

SODERSTROM
LAW

and misleading representations of fact, all of which misrepresent the nature, characteristics, and qualities of Audible "memberships," "credits," audiobooks, and related products and services.

59.    Plaintiffs and Class members have been harmed and are likely to be harmed in the future by Audible's misrepresentations. Plaintiffs and other consumers have relied to their detriment on Audible's false, misleading, deceptive, unfair, and untrue commercial advertisements and promotions.

60.    The specific advertisements, promotions, and related statements and representations made by Audible and relied on by Plaintiffs and Class members include, but are not limited to the representations that:

a.    "one credit equals one audiobook;"

b.    membership "includes 1 audiobook each month;"

c.    credits "do not expire;" and

d.    there are "no strings attached" to cancelling a membership plan and consumers can "cancel anytime" while keeping all of their audiobooks.

61.    Audible has made these representations on its website and in other print, online, and television promotions, among other places.

62.    Audible intentionally used in commerce the representations described above and substantially similar representations. These representations are representations of fact used in Audible's commercial advertising and promotions. They misrepresent the nature, characteristics, and qualities of Audible's products and services, including specifically Audible's "credits," "memberships," and audiobooks. Any disclaimers Audible tries to use simply reinforce the fact that the representations themselves are not actually true and are likely to mislead consumers.

63.    The representations described above and substantially similar ones used by Audible are literally false as well as misleading and are therefore unlawful under the Lanham Act. These representations actually deceived Plaintiffs and Class members, and they have a tendency to deceive a substantial segment of consumers nationwide. These

representations are material because they influenced Plaintiffs' and Class members' sign-up and purchasing decisions. Audible caused these representations to enter interstate commerce via its website and other online, print, and television means and methods.

64.    Plaintiffs and other Class members have been damaged as a result of Audible's false and misleading representations, including by causing them to sign up for Audible, make recurring payments in exchange for credits, pay more than they would have paid had they not believed and relied on the representations, redeem credits for audiobooks they otherwise would not have purchased, and continue making recurring payments to avoid losing credits due to cancellation.

65.    Plaintiffs, individually and on behalf of all Class members similarly situated, seek an injunction and any other necessary orders or judgments that will prevent Audible from continuing to use these false and misleading representations, including but not limited to an order requiring corrective advertising and restitution. Plaintiffs also seek disgorgement of Audible's profits, an award of all damages suffered, an award of the costs of the action, treble damages, and attorneys' fees.

### Second Cause of Action

**Violation of False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.***

66.    Plaintiffs incorporate by reference all of the foregoing paragraphs.

67.    Audible has intentionally made and disseminated statements to Plaintiffs, Class members, and the general public concerning Audible's products and services, as well as circumstances and facts connected to such products and services, which are untrue and misleading, and which are known (or which by the exercise of reasonable care should be known) to be untrue or misleading. Audible has also intentionally made or disseminated such untrue or misleading statements to Plaintiffs, Class members, and the public as part of a plan or scheme with intent not to sell those services as advertised.

68.    Audible's statements include but are not limited to representations regarding (i) the use and value of credits, (ii) the terms of expiration of credits, and (iii) the terms of payment for and cancellation of a consumer's "membership." Specifically, Audible's

FIRST AMENDED CLASS ACTION COMPLAINT

representations that "one credit equals one audiobook," membership "includes 1 audiobook each month," credits "do not expire," and members may "cancel anytime" with "no strings attached" while keeping all of their audiobooks constitute false and deceptive advertisements under the FAL.

69.    Plaintiffs were deceived by Audible's statements, and there is a strong probability that Class members and members of the public were also or are likely to be deceived as well. Any reasonable consumer would be misled by Audible's false and misleading statements.

70.    Plaintiffs and other Class members have been injured as a result of Audible's statements, including by causing them to sign up for Audible, make recurring payments in exchange for credits, pay more than they would have paid had they not believed and relied on the representations, redeem credits for audiobooks they otherwise would not have purchased, and continue making recurring payments to avoid losing credits due to cancellation.

71.    Plaintiffs, individually and on behalf of all Class members, seek an injunction and any other necessary orders or judgments that will prevent Audible from continuing with its false and deceptive advertisements; restitution that will restore the full amount of their money or property; and disgorgement of Audible's relevant profits and proceeds. Plaintiffs also seeks an award of costs and reasonable attorneys' fees.

### **Third Cause of Action**

### **Violation of the CARD Act and EFTA, 15 U.S.C. § 1693*l*-1(a)(2)(B)**

72.    Plaintiffs incorporate by reference all of the foregoing paragraphs.

73.    The federal CARD Act, which amends the federal EFTA, prohibits the sale or issuance of gift certificates or gift cards that feature and are subject to expiration dates that are earlier than five years after the date on which a gift certificate or gift card is issued.

///

///

FIRST AMENDED CLASS ACTION COMPLAINT

74.     Audible markets and sells both regular and gift "credits" which, both in form and substance, constitute "gift certificates" or "store gift cards" as defined by the CARD Act. This is because each credit is:

a.     issued to consumers primarily for personal, family, or household purposes;

b.     an electronic promise that is stored in each consumer's online Audible account;

c.     redeemable by the holder of the credit (whether by purchase or gift) at Audible's online bookstore (or by an Audible affiliate) for an audiobook or other goods or services offered by Audible;

d.     issued in a specified amount that may not be increased or reloaded;

e.     issued on a prepaid basis in exchange for payment; and

f.     honored by Audible for audiobook (or a portion of an audiobook) or other goods or services upon presentation.

75.     Audible's sale and issuance of regular and prepaid credits violates the CARD Act because each credit is designed automatically to expire earlier than five years after it is issued by Audible. Regular credits are designed to expire within months of issuance based on Audible's "rollover" policy and they are designed to expire immediately upon cancellation (which could be one day after the credit was issued). "Gift" credits are designed to expire exactly six months after the so-called "gift membership" ends. This means gift credits issued as part of a 12-month gift membership (such as the one Beals received) are designed automatically to expire in 18 months. No credit issued by Audible is still available for use by a consumer five (or even two) years after the credit was issued.

76.     Audible credits are sold and issued to consumers through electronic fund transfer systems established, facilitated, and monitored by Audible. Credits are issued in electronic form. Audible provides an electronic means by which consumers can access their Audible accounts, view and redeem their credits, and download and listen to the goods they purchase (e.g., digital audiobooks and similar products). The regular and gift

credits that are the subject of this action are issued to and used by consumers independent of a loyalty, award, or promotional program. Audible markets and sells credits to the general public throughout the United States.

77.     Additionally, under the regulations implementing the CARD Act and EFTA, no person may sell or issue gift certificates with expiration dates unless there are policies and procedures in place to provide consumers with a reasonable opportunity to purchase a certificate with at least five years remaining until the certificate expiration date. *See* 12 C.F.R. § 205.20(e)(1). Audible is a "person" under the CARD Act and EFTA. Audible further violates the CARD Act and EFTA by failing to provide consumers with a reasonable opportunity to purchase credits with five years remaining until the expiration date.

78.     Because of its unlawful acts and conduct, Audible has deprived Plaintiffs and all Class members of the use of the money Audible has collected through the sale of credits with illegal expiration dates. Plaintiffs and other Class members have been injured as a result of Audible's unlawful credit expiration terms, including by causing them to sign up for Audible, make recurring payments in exchange for credits, pay more than they would have paid for each credit, redeem credits for audiobooks they otherwise would not have purchased, and continue making recurring payments to avoid losing credits due to cancellation. Plaintiffs have all been harmed by having one or more credits expire before they were redeemed and within five years of issuance.

79.     As authorized by 15 U.S.C. § 1693m, Plaintiffs, individually and on behalf of all Class members, seek actual and statutory damages to be determined by the Court, injunctive relief, the cost of this action, reasonable attorneys' fees, and all other available relief.

### **Fourth Cause of Action**

### **Violation of Gift Certificate Law, Cal. Civ. Code § 1749.45 *et seq.***

80.     Plaintiffs incorporate by reference all of the foregoing paragraphs.

///

81.   Audible's sale and issuance of credits violates California's Gift Certificate Law, Cal. Civ. Code § 1749.45 *et seq.*, which prohibits the sale of a gift certificate (including a gift card) that is subject to an expiration date.

82.   Audible advertises and sells credits to consumers, including to Plaintiffs and Class members.

83.   Audible violates the Gift Certificate Law by selling and issuing and/or agreeing to sell and issue to consumers "credits" that, in both form and substance, constitute gift certificates with explicit and implicit expiration dates. The explicit dates are governed by Audible's "rollover" policy, and the implicit dates are governed by Audible's cancellation policy. Additionally, Audible sells "gift" credits to consumers that are designed to expire exactly six months after the "gift membership" ends (which is at most 18 months after at 12-credit gift membership begins).

84.   Until April 2017, Audible permitted and encouraged its members to send individual credits to other consumers as "gifts" for the recipient to redeem whether or not the recipient was already an Audible member. Audible continues to offer so-called "gift memberships" that are simply packages of 3, 6, or 12 prepaid credits that consumers can purchase and either redeem themselves or send as gifts to Audible members or non-members. Audible expressly and implicitly treats both regular and gift credits (not simply already-purchased audiobooks, which also can be sent to other consumers under a separate Audible feature) as being a product that can be given by one consumer to another consumer as a gift.

85.   The fact that Audible credits can expire harms Plaintiffs and Class members in several ways, including by forcing them to either redeem their credits on an expedited schedule or lose their credits (and the money paid for them) without any refund or audiobook to show for them.

86.   As a result of Audible's unlawful acts and conduct, Plaintiffs and Class members have been deprived of the use of their money that was charged and collected by Audible through the sale of credits with illegal expiration dates. They have been


SODERSTROM
LAW

FIRST AMENDED CLASS ACTION COMPLAINT

injured as a result of Audible's unlawful credit expiration terms, including by causing them to sign up for Audible, make recurring payments in exchange for credits, pay more than they would have paid for each credit, redeem credits for audiobooks they otherwise would not have purchased, and continue paying to avoid losing due to cancellation credits they had already purchased. They have also had regular and/or gift credits expire before they were redeemed and within five years of issuance.

87.    Plaintiffs, individually and on behalf of Class members, seek compensatory damages, including actual and statutory damages, injunctive and declaratory relief, the costs of this action, and reasonable attorneys' fees.

## **Fifth Cause of Action**

### **Violation of California's Automatic Purchase Renewals Law**

### **Cal. Bus. & Prof. Code § 17600 *et seq.***

88.    Plaintiffs incorporate by reference all of the foregoing paragraphs.

89.    Audible imposes "automatically renewable" monthly or annual recurring payment terms on all consumers who sign up for Audible. Under California's Automatic Purchase Renewals Law, Cal. Bus. & Prof. Code § 17600 *et seq.*, Audible is required to disclose all recurring payment terms and related terms, such as the cancellation policy, to consumers in a clear and conspicuous manner at the point of sale (e.g., the "Start Now" or similar button). Plaintiffs and Class members rely on such disclosures when making their purchasing decisions, and the absence or incompleteness of Audible's disclosures harm them by causing them to agree to recurring payment terms without being fully informed.

90.    When they sign up for Audible, Plaintiffs and other consumers are not:

a.      provided in a clear and conspicuous manner using text that is larger than surrounding text, in contrasting type, font, or color, or otherwise set off from the surrounding text;

b.      expressly told that the credit card they designate will automatically be charged every month or annually in perpetuity;

FIRST AMENDED CLASS ACTION COMPLAINT

c.  expressly informed that any other credit card attached to their separate Amazon accounts (even corporate cards and other people's cards) will be charged automatically and in perpetuity without notice if the payment method given directly to Audible is declined for any reason;

d.  expressly informed of Audible's cancellation policy which provides that all credits will immediately and automatically expire if they ever cancel their recurring payments;

e.  affirmatively asked to consent to the relevant payment and cancellation terms and policies;

f.  provided notice of any changes to the payment and cancellation terms and policies and asked for affirmative consent thereto; or

g.  provided all of the relevant payment and cancellation terms and policies in a written acknowledgement that they can easily retain.

91.  Audible's failure to disclose all required terms and policies to Plaintiffs and Class members violates the Automatic Renewal Law, and Plaintiffs have been harmed by such violations. Because they were not fully informed of all of the relevant recurring payment and cancellation policies when they signed up for Audible, Plaintiffs and other consumers have lost or been deprived of their money because they have made more recurring payments than they otherwise would have and because they paid more than they otherwise would have paid had they been fully informed. This harm was a direct result of Audible's failure to fully and properly disclosed the required payment and cancellation terms and policies.

92.  Plaintiffs, individually and on behalf of all Class members, seek an order enjoining Audible's unlawful automatic renewal payment policies and practices; actual damages; restitution of their automatic payment amounts; the cost of this action; reasonable attorneys' fees; and all other available relief.

///

///



FIRST AMENDED CLASS ACTION COMPLAINT

**Sixth Cause of Action**

**Conversion**

93.    Plaintiffs incorporate by reference all of the foregoing paragraphs.

94.    Plaintiffs and other consumers have clear legal ownership and/or right to possession and exclusive use of the credit cards they provide to Audible and its affiliate Amazon.

95.    Audible has interfered intentionally and substantially with Plaintiffs' and other Class members' rights related to owning, possessing, and using their credit cards.

96.    Any time a credit card a consumer gives to Audible for a recurring payment is declined for any reason, Audible accesses the credit cards stored on the member's separate Amazon account and selects and charges one of those non-designated credit cards. Audible does so without the consumer's authorization and without giving the consumer prior or subsequent notice of such charges. Such unauthorized charges will continue under Audible's auto-pay policies until the consumer and/or cardholder takes some affirmative action (e.g., provides a new credit card or cancels future recurring payments).

97.    Audible's actions actually and substantially interfere with the ownership and possession of credit cards not designated for making payments to Audible.

98.    Audible never obtained Plaintiffs' or Class members' consent or authorization to make charges on credit cards that were not designated to make automatic recurring payments to Audible.

99.    Plaintiffs and other Class members have suffered harm in the amount charged on credit cards that were stored on an Amazon but never given to Audible for recurring payment.

100.    Plaintiffs, individually and on behalf of all Class members similarly situated, seek an injunction and any other necessary orders or judgments that will prevent Audible from making automatic and unauthorized charges to non-designated credit cards; damages in an amount that would fully compensate them; restitution that restores the full

28

1   amount of their money or property; and disgorgement of Audible's related profits and

2   proceeds.

3   **Seventh Cause of Action**

4   **Violation of Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.***

5   101.   Plaintiffs incorporate by reference all of the foregoing paragraphs.

6   102.   Audible has violated California's Consumers Legal Remedies Act, Cal. Civ.

7   Code § 1750 *et seq.* ("CLRA") in multiple ways by using unfair methods of competition

8   and unfair and deceptive acts and practices related to their sale of goods and services.

9   103.   **False and Misleading Advertising.** Audible has made false and misleading

10   representations in violation of the CLRA through its use of representations regarding (i)

11   the use and value of credits; (ii) the terms of expiration for credits; and (iii) the terms of

12   cancellation of a consumer's "membership." Specifically, the representations that "one

13   credit equals one audiobook," membership "includes 1 audiobook each month," credits

14   "do not expire," and members may "cancel anytime" with "no strings attached" while

15   keeping all of their audiobooks constitute false and misleading advertising. These

16   representations and substantially similar ones made by Audible violate the CLRA by:

17       a.   Representing that Audible's goods or services have characteristics, uses, and

18            benefits which they do not have, in violation of Section 1770(a)(5);

19       b.   Representing that Audible's goods or services are of a particular standard,

20            quality, or grade, or that goods are of a particular style or model, if they are

21            of another, in violation of Section 1770(a)(7);

22       c.   Advertising Audible's goods or services with intent not to sell them as

23            advertised, in violation of Section 1770(a)(9);

24       d.   Representing that a transaction with Audible confers or involves rights,

25            remedies, or obligations which it does not have or involve, in violation of

26            Section 1770(a)(14);

27   ///

28   ///



29

e.     Representing that the subject of a transaction with Audible has been supplied in accordance with a previous representation when it has not, in violation of Section 1770(a)(16); and

f.     Representing that the consumer will receive a rebate, discount, or other economic benefit from Audible, when the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction, in violation of Section 1770(a)(17).

104.   Audible's acts and practices were intentional.

105.   Plaintiffs and all Class members relied on these advertisements and related statements to their detriment and suffered damages as a result, including signing up for Audible and paying for credits, paying more for credits than they otherwise would have paid, redeeming credits for audiobooks they otherwise would not have purchased, and losing credits that expired without receiving a full refund or an audiobook.

106.   **Prohibited and unconscionable terms.** Audible's credit expiration policies, as well as its policy of charging non-designated credit cards automatically and without notice to the consumer, also violate Section 1770(a)(14) and Section 1770(a)(19) of CLRA because they constitute terms and practices that Audible applies to credits, memberships, and recurring payments that are prohibited by law and unconscionable.

107.   Designing prepaid credits to expire earlier than five years violates federal and California gift certificate and gift card laws. These expiration terms also constitute prohibited and unconscionable terms under the CLRA.

108.   Similarly, Audible's assertion of the right to access and automatically charge non-designated credit cards stored on a member's separate Amazon accounts (without giving any notice or obtaining authorization), constitutes a prohibited and unconscionable term and practice inserted by Audible into the contract formed with consumers.[1] Audible does not clearly and conspicuously disclose the term and practice

---

[1] While a contract is formed when consumers sign up for Audible and start paying for and receiving credits and other benefit, the terms of such contract are not comprised of

FIRST AMENDED CLASS ACTION COMPLAINT

to Plaintiffs and other consumers when they sign up for a "free" trial and designate a credit card for future automatic recurring payments, causing complete surprise when consumers later learn about such term and practice. This process makes the term and practice procedurally unconscionable.

109.   The term and practice are also substantively unconscionable. According to Audible, it can, without any prior or subsequent notice to Plaintiffs or other members or card holders, access and automatically charge credit cards that are never given to Audible or designated to make automatic recurring payments. Audible claims this right simply because the non-designated cards are stored on a separate Amazon account. Audible asserts the right to access and charge cards that are not even owned by the Audible member, including business cards and friends' and family members' cards that are stored on the member's separate Amazon account. Plaintiffs and other Audible members cannot consent to charges being made by Audible on cards they do not own (and that are never given to Audible). Nor are Plaintiffs and other Audible members given the opportunity to give their consent or obtain the non-member card holder's consent before charges are actually made because Audible makes such charges automatically and without notice.

110.   Plaintiffs and all Class members have suffered harm as a result of Audible's inclusion and use of prohibited and unconscionable terms in its policies and practices related to credits, memberships, and recurring payments. Plaintiffs and Class members signed up for Audible without knowing of its unlawful and unfair terms and practices, they have agreed to make recurring payments, have paid more money than they would have had they known in advance of such terms and practices, have allowed cards to be stored on their separate Amazon account not knowing Audible may obtain access and charge such cards without notice, and are continually at risk of having non-designated cards charged by Audible.

///



---

Audible's proposed "Terms of Use" because Audible does not properly disclose such "Terms of Use" and obtain consumers' express and unambiguous assent to such terms.

FIRST AMENDED CLASS ACTION COMPLAINT

111.   Under Sections 1780 and 1781 of the CLRA, Plaintiffs, individually and on behalf of all Class members similarly situated, seek to recover or obtain actual damages; an order enjoining Audible's unlawful methods, acts, and practices; restitution of payments; punitive damages; costs and reasonable attorneys' fees; and any other relief that the Court deems proper.

112.   Plaintiffs have each given Audible written notice by certified mail, return receipt requested, directed to the addresses provided by Audible, of the alleged violations of Section 1770 of the CLRA and demanded that Audible correct or otherwise rectify the services alleged to be in violation of Section 1770. *See* Exhibit A and Exhibit B. Audible has not identified or made a reasonable effort to identify all similarly situated consumers; has not notified such consumers that they will correct or otherwise remedy the unlawful acts and practices upon request; has not agreed to make such correction or offer such remedy within a reasonable time; and has not ceased from engaging in the unlawful acts and practices.

113.   Concurrently with the filing of this action, McKee filed an affidavit in support of this action stating facts showing that the action has been commenced in a county or judicial district that constitutes a proper place for the trial of this action. *See* Exhibit C.

### Eighth Cause of Action

### Violation of California's Unfair Competition Law,

### Cal. Bus. & Prof. Code § 17200 *et seq.*

114.   Plaintiffs incorporate by reference all of the foregoing paragraphs.

115.   Audible has engaged in unlawful, unfair, and fraudulent business acts and practices, and unfair, deceptive, untrue, and misleading advertisements that constitute unfair competition and false and misleading advertising under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL").

116.   Audible's unlawful acts, practices, and advertisements include but are not limited to representations regarding (i) the use and value of credits; (ii) the terms of

FIRST AMENDED CLASS ACTION COMPLAINT

expiration of credits, and (iii) the terms of cancellation of a consumer's "membership." Specifically, the representations that "one credit equals one audiobook," membership "includes 1 audiobook each month," credits "do not expire," and members may "cancel anytime" with "no strings attached" and keep all their audiobooks, and substantially similar representations, all violate the UCL.

117.   Audible's unlawful acts and practices under the UCL also include (i) selling and issuing credits which constitute unlawful gift certificates or gift cards based on their expiration dates, (ii) utilizing unlawful automatic renewal payment policies and making incomplete disclosures regarding such policies, and (iii) making unauthorized charges without notice to credit cards stored on a separate Amazon account but not provided by consumers directly to Audible for recurring payments.

118.   Audible's acts, practices, and advertisements were intentional.

119.   Plaintiffs and Class members relied on the above representations to their detriment, suffered actual injuries, and lost money or property as a result. Audible's misrepresentations caused their injuries, including losing money and credits.

120.   Plaintiffs' and other Class members' harm includes but is not limited to being deceived into making automatic recurring payments for credits, having credits expire before they were redeemed and without receiving a full refund or audiobooks, having to maintain a more expensive plan to avoid losing credits, having to use credits on a shorter time frame than otherwise preferred, being subject to automatically renewed credit card charges without full disclosure of relevant terms and conditions, and having credit cards other than the one provided directly to Audible be accessed and charged without authorization.

121.   Audible's acts and practices are unlawful under the UCL because they also violate other laws, and they independently unlawful and unfair in violation of the UCL.

122.   Plaintiffs, individually and on behalf of all Class members, seeks an injunction and any other necessary orders or judgments that will prevent Audible from continuing with its unlawful acts, practices, and advertisements; restitution that restores

FIRST AMENDED CLASS ACTION COMPLAINT

the full amount of Plaintiffs and other consumers' money or property; and disgorgement of Audible's related profits and proceeds. Plaintiffs also seek an award of costs and reasonable attorneys' fees.

## Ninth Cause of Action

### Restitution, Unjust Enrichment, and Money Had and Received

123.   Plaintiffs incorporate by reference all of the foregoing paragraphs.

124.   Alternatively to the claims stated above, Plaintiffs and Class members are equitably entitled to recover from Audible based on Audible's inequitable and deceptive acts and practices that include falsely advertising the benefits and cancellation terms of Audible recurring payment plans and credits, forcing consumers to lose the value of their prepaid credits through inequitable expiration and cancellation terms, failing to properly disclose the automatic renewal payment policies and related cancellation policies, and accessing and automatically charging unauthorized credit cards.

125.   Plaintiffs and Class members conferred specific economic benefits upon Audible by paying for credits and by refraining from cancelling or reducing the level of the recurring payments plan (e.g., "Gold Monthly"). Audible knowingly accepted and retained such benefits, but failed to provide the products and services as advertised and as required by law and equity. Plaintiffs and Class members expected to receive the products and services as advertised and not be subjected to unlawful terms, conditions, policies, and practices.

126.   Audible was unjustly enriched by the benefits it received from Plaintiffs and Class members, and it would be unjust and unconscionable to permit Audible to be so enriched and continue to be enriched in the future based on the same acts and practices. Audible should therefore be required to disgorge all amounts that it has been unjustly enriched, and Plaintiffs and Class members should recover such amounts, with interest, as restitution.

127.   Alternatively, under the common count of money had and received, Audible owes Plaintiffs and similarly situated Class members, money in the amount that was

charged on their designated credit cards and any credit card that was stored on an Amazon account but never given directly to Audible for authorized payments. Audible received money from Plaintiffs and similarly situated Class members and such money was intended to be used for the benefit of Plaintiffs and similarly situated Class members. But the money Audible received was not used for the benefit of Plaintiffs and similarly situated Class members; rather, it was used for Audible's own benefit, either as windfall profits based on an expired credit or to obtain unauthorized payment for a credit from a non-designated credit card that may not have even been requested or purchased by the actual cardholder. Audible has not returned the amount of money paid for each expired credit and it has not returned the money charged without authorization on non-designated credit cards.

128.   Plaintiffs, individually and on behalf of all Class members similarly situated, seek an injunction and any other necessary orders or judgments that will prevent Audible from continuing to use its inequitable credit expiration policies and from continuing to access and make charges on credit cards stored on a consumer's Amazon account but not given directly to Audible for payment; restitution that restores the full amount of the consumers' money or property; and disgorgement of Audible's related profits and proceeds.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of himself and all proposed Class members, request the following relief against Audible:

(1)   Certification of this action as a class action under Federal Rule of Civil Procedure 23, appointing Plaintiffs as class representatives and Soderstrom Law PC as class counsel;

(2)   An award of actual, consequential, and punitive damages to Plaintiffs and Class members in an amount sufficient to make them whole, compensate them for all harm, and punish and deter Audible's wrongful conduct;

///



FIRST AMENDED CLASS ACTION COMPLAINT

(3)     An award of restitution and/or disgorgement of profits and revenues to make Plaintiffs and Class members whole and to avoid unjust enrichment by Audible;

(4)     An award of individual and public declaratory and injunctive relief stating that Audible's acts and practices are unlawful and requiring corrective action as permitted by law, including but not limited to corrective advertising, correcting the expiration and forfeiture terms related to Audible "credits," correcting the disclosures related to the automatic renewal payment policies and cancellation policies, and prohibiting the practice of making automatic and unauthorized charges to credit cards not provided directly to Audible without notice to consumers; and

(5)     An award to Plaintiffs and Class counsel of reasonable litigation costs, expenses, and attorneys' fees under California Code of Civil Procedure section 1021.5, under the Lanham Act, under the CLRA, or under any other applicable rule or statute;

(6)     An award to Plaintiffs and Class members of pre-judgment and post-judgment interest, to the extent allowed by law; and

(7)     Any and all other relief as equity and justice requires.

Dated: August 11, 2017              SODERSTROM LAW PC

                                    By: */s/ Jamin S. Soderstrom*

                                    Jamin S. Soderstrom

                                    *Counsel for Plaintiffs and the Proposed Class*



FIRST AMENDED CLASS ACTION COMPLAINT

# JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury of all issues triable by jury.

Dated: August 11, 2017                SODERSTROM LAW PC

By: */s/ Jamin S. Soderstrom*

Jamin S. Soderstrom

*Counsel for Plaintiffs and the Proposed Class*

FIRST AMENDED CLASS ACTION COMPLAINT

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on August 11, 2017, I caused the foregoing document to be served on all counsel of record by the Court's CM/ECF electronic filing system.

By: */s/ Jamin S. Soderstrom*
Jamin S. Soderstrom

FIRST AMENDED CLASS ACTION COMPLAINT