JEDEDIAH WAKEFIELD (CSB No. 178058)
jwakefield@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  415.875.2300
Facsimile:   415.281.1350

ANNASARA G. PURCELL (CSB No. 295512)
apurcell@fenwick.com
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA  98101
Telephone:  206.389.4510
Facsimile:   206.389.451

ARMEN NERCESSIAN (CSB No. 284906)
anercessian@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
Telephone:  650.988.8500
Facsimile:   650.938.5200

Attorneys for AUDIBLE, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(WESTERN DIVISION – LOS ANGELES)

| | |
|---|---|
| GRANT MCKEE and SETH BEALS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AUDIBLE, INC.,<br><br>Defendant. | Case No.: 2:17-cv-01941 GW(Ex)<br><br>**AUDIBLE'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS AS TO SETH BEALS; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT THEREOF**<br><br>Date:       October 2, 2017<br>Time:       8:30 AM<br>Crtm:       9D<br>Judge:      George H. Wu<br>Trial Date:NONE SET |

AUDIBLE'S MOT. TO
COMPEL ARBITRATION
AND DISMISS AS TO BEALS                        Case No. 2:17-cv-1941 GW(Ex)

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 2

II.   BACKGROUND .................................................................................. 3

    A.    The Audible Service ................................................................. 3

    B.    Mr. Beals' Use of the Audible Service ................................... 4

III.  ARGUMENT ....................................................................................... 7

    A.    Washington Law Governs Plaintiff's Agreement With Audible and This Lawsuit. ........................................................................ 8

    B.    Plaintiff Repeatedly Agreed to Arbitrate Disputes Relating To His Use of Audible. ........................................................................ 9

    C.    Audible's Arbitration Provision Is Virtually Identical to the Amazon Provision That This Court Already Found Enforceable. ................... 14

    D.    The Audible Arbitration Agreement Covers Any Claim Arising From Mr. Beals' Use of the Audible Service. ............................... 16

    E.    Audible's Historical "Gift Terms" Do Not Prevent This Court From Applying the Arbitration Provision in the Conditions of Use. .......... 17

IV.   CONCLUSION .................................................................................. 18

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# TABLE OF AUTHORITIES

**CASES**

*AT&T Mobility LLC v. Concepcion,*
563 U.S. 333 (2011) ............................................................... 15

*AT&T Techs., Inc. v. Commc'ns Workers of Am.,*
475 U.S. 643 (1986) ............................................................... 16

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
207 F.3d 1126 (9th Cir. 2000)............................................. 7, 16

*Crawford v. Beachbody, LLC,*
No. 14cv1583-GPC(KSC), 2014 WL 6606563
(S.D. Cal. Nov. 5, 2014) ........................................................ 14

*Ekin v. Amazon Servs., LLC,*
84 F. Supp. 3d 1172 (W.D. Wash. 2014) ........................... 15, 17

*Fagerstrom v. Amazon.com, Inc.,*
141 F. Supp. 3d 1051 (S.D. Cal. 2015) ........................... 9, 15, 16

*First Options of Chicago, Inc. v. Kaplan,*
514 U.S. 938 (1995) ................................................................ 9

*Fteja v. Facebook, Inc.,*
841 F. Supp. 2d 829 (S.D.N.Y. 2012) ................................... 14

*Graf v. Match.com, LLC,*
No. CV 15-3911 PA (MRWx), 2015 WL 4263957
(C.D. Cal. July 10, 2015).................................................. 13, 14

*Hatfield v. Halifax PLC,*
564 F.3d 1177 (9th Cir. 2009) ................................................. 8

*In re Verisign, Inc., Derivative Litig.,*
531 F. Supp. 2d 1173 (N.D. Cal. 2007) ................................. 16

*Klaxon Co. v. Stentor Elec. Mfg. Co.,*
313 U.S. 487 (1941) ................................................................ 8

*Meyer v. Uber Techs., Inc.,*
No. 16-2750-CV, 2017 WL 3526682 (2d Cir. Aug. 17, 2017)............... 10, 12, 13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
460 U.S. 1 (1983) .................................................................. 16

*Nedlloyd Lines B.V. v. Superior Court,*
3 Cal. 4th 459 (1992) .............................................................. 8

*Nevarez v. Forty Niners Football Co., LLC,*
No. 16-CV-07013, 2017 WL 3492110 (N.D. Cal. Aug. 15, 2017)................. 13

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

*Peters v. Amazon Servs. LLC,*
    2 F. Supp. 3d 1165 (W.D. Wash. 2013), *aff'd*, No. 14-35294, 2016
    WL 5940052 (9th Cir. Oct. 13, 2016) ....................................................15, 16, 17

*Republic of Nicaragua v. Standard Fruit Co.,*
    937 F.2d 469 (9th Cir. 1991) ............................................................................ 16

*Rodriguez v. Experian Servs. Corp.,*
    No. CV 15-3553-R, 2015 WL 12656919 (C.D. Cal. Oct. 5, 2015) ................... 13

*Selden v. Airbnb, Inc.,*
    No. 16-CV-00933 (CRC), 2016 WL 6476934 (D.D.C. Nov. 1,
    2016) ......................................................................................................9, 10, 13

*Starke v. Gilt Groupe, Inc.,*
    No. 13 CIV. 5497 LLS, 2014 WL 1652225 (S.D.N.Y. Apr. 24,
    2014) ................................................................................................................ 14

**STATUTES**

Federal Arbitration Act ..............................................................................2, 3, 8, 16

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

## NOTICE OF MOTION AND MOTION

2    PLEASE TAKE NOTICE that on October 2, 2017 at 8:30 a.m., or as soon

3  thereafter as the matter may be heard in Courtroom 9(D) of the U.S. District Court

4  for the Central District of California, located at 350 West First Street, Los Angeles,

5  CA, 90012, Defendant Audible, Inc. ("Audible") will and hereby does move the

6  Court for an order compelling the individual arbitration of Plaintiff Seth Beals'

7  claims and dismissing this action with respect to Mr. Beals with prejudice.  This

8  Motion is made pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-14, and upon

9  the grounds that Mr. Beals agreed on multiple different occasions to arbitrate his

10  claims by agreeing to the Audible Service Conditions of Use.

11    This Motion is based on this Notice of Motion and Motion, Defendants'

12  Memorandum of Points and Authorities, the Declaration of Jason A. Massello in

13  Support of Audible's Motion to Dismiss and Motion to Compel Arbitration and to

14  Dismiss Claims as to Seth Beals ("Massello Decl.") and all exhibits thereto, all

15  documents in the Court's file, and on such other arguments as may be presented to

16  the Court.

17    This motion is made following the conference of counsel pursuant to Local

18  Rule 7-3, which took place on August 18, 2017.

19

20  Dated:  August 25, 2017          FENWICK & WEST LLP

21

22                      By: /s/ *Jedediah Wakefield*
                            Jedediah Wakefield
23                          Annasara G. Purcell
                            Armen Nercessian
24
                         Attorneys for AUDIBLE, INC.
25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

DEFS.' NTC OF MTN AND
MTN TO COMPEL
ARBITRATION AND DISMISS          1          Case No. 2:17-cv-1941 GW(Ex)

1
## MEMORANDUM OF POINTS AND AUTHORITIES

2
## I.   INTRODUCTION

3      On July 17, 2017, this Court granted Amazon's motion to compel arbitration

4  as to Plaintiff Grant McKee, but denied the motion as to Audible.   Although the

5  Court found that this dispute fell within the scope of that enforceable arbitration

6  provision, the Court concluded that Mr. McKee had not assented to the terms

7  because of the particular way in which McKee had signed up for and used Audible.

8      Audible now seeks to enforce its arbitration agreement against a newly added

9  Plaintiff, Seth Beals, who signed up for and used Audible in 2015 using a

10 significantly different process.   Unlike Mr. McKee, who used a mobile version of

11 Audible.com, Mr. Beals signed up for and made purchases from Audible through

12 the Amazon.com desktop website.  In doing so, Mr. Beals was presented with

13 repeated, clear disclosures that by signing up and purchasing audiobooks with

14 Audible credits, he was agreeing to Audible's Conditions of Use.  The notice

15 provided clearly marked hyperlinks, the Conditions of Use were clearly and

16 accurately labeled, and there was no doubt that by clicking on a virtual "button" to

17 proceed, Mr. Beals was agreeing to Audible's Conditions of Use.   Those

18 Conditions of Use contained an arbitration agreement that is virtually identical to

19 the Amazon provision that this Court has already found valid and enforceable in

20 this case.

21     Audible's arbitration agreement bars Mr. Beals from pursuing this

22 lawsuit.   The Federal Arbitration Act, and the well-established Supreme Court

23 authority applying it, leave no doubt that the arbitration provision here is valid and

24 enforceable.  There is also no question that the claims Mr. Beals seeks to assert fall

25 within the scope of the arbitration provision, as his claims all arise from his use of

26 the Audible service and nothing more.   Accordingly, the Court should grant

27

28
AUDIBLE'S MOT. TO
COMPEL ARBITRATION
AND DISMISS AS TO BEALS          2        Case No. 2:17-cv-1941 GW(Ex)

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Audible's motion, compel arbitration as to Mr. Beals, and dismiss Mr. Beals' claims in their entirety.

## II.   BACKGROUND

### A.   The Audible Service

As the Court will recall, Audible, Inc. is an audiobook and spoken audio information and entertainment service. Massello Decl. ¶ 2. Audible offers more than 250,000 audiobooks that users can purchase and listen to through the Audible app on a variety of mobile devices. *Id.* Audible is an Amazon company, and its customers can purchase Audible audiobooks through the Audible online storefront (at www.audible.com), through the Amazon desktop and mobile websites or using Fire tablets. *Id.* ¶ 5.

In addition to allowing customers to purchase audiobooks for sale at list prices, Audible also offers a membership service. Massello Decl. ¶ 2. Audible members pay a monthly or annual fee, and in turn they receive membership benefits. *Id.* These benefits include access to exclusive original audio series on Audible Channels, discounts on audiobook purchases, complimentary subscriptions to digital audio digest versions of *The Wall Street Journal* or *The New York Times*, and the ability to return audiobooks with the Great Listen Guarantee. *Id.* Customers can sign up for Audible memberships on the Audible website, on the Amazon website, or by using a variety of different Amazon devices. *Id.* ¶ 5.

Among the many benefits of an Audible membership is the ability of members to select one or more books each month or year (depending on the membership plan) at no additional cost while their respective memberships are active. Massello Decl. ¶ 3, Ex. 1. Audible provides a customer that signs up for a membership with one or more "credits" every month or year, which the member can redeem for audiobooks of the member's choice. *Id.* For example, with a Gold monthly membership, in addition to other membership benefits, a member receives

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

one membership credit each month.  One membership credit may be redeemed for one audiobook, regardless of the price of the book.  *Id.*  Once a user redeems a membership credit for an audiobook, the audiobook is for the customer to keep, and it remains in the user's Audible library forever even if the customer subsequently cancels the membership.  *Id.*

Audible also allows customers to purchase and give gift memberships to Audible's service.  Massello Decl. ¶ 8.  Gift memberships are available for purchase in 3-month, 6-month, and 12-month packages, and they have the same benefits of a monthly Gold membership.  *Id.*  Once a recipient of a gift membership redeems it, the recipient will receive a gift membership credit for each month of the gift membership, which the customer may redeem for an audiobook of any price just as the customer would with a monthly membership credit.  *Id.*  Once a customer redeems a gift membership credit for an audiobook, the audiobook remains in the customer's Audible library permanently.  *Id.*

### B.    Mr. Beals' Use of the Audible Service

On April 26, 2015, Seth Beals signed up for an Audible "30-Day Free Gold Monthly Trial + Bonus Credit" membership through the Amazon.com desktop website.  Massello Decl. ¶ 10, Ex. 3.  To sign up for his membership, Mr. Beals first selected an Audible audiobook of his choice on the Amazon.com desktop website, and he was then directed to a webpage where he designated a payment method.  *Id.*  He designated a credit card he already had on file with his existing Amazon account, and proceeded to complete the transaction and start the membership by pressing a yellow "Confirm your free trial" button.  *Id.* ¶¶ 6, 10, Ex. 3.  Underneath this button, in a section titled "Summary," the Amazon.com desktop webpage displayed a summary of the transaction, which identified the audiobook that Mr. Beals had selected and the "bonus" credit that Audible offered as part of the "30-Day Free Gold Monthly Trial + Bonus Credit" membership

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

promotion.  *See id.* ¶ 10, Ex. 3.

Under the "Summary" section, which showed the free trial and first audiobook he had selected, Mr. Beals was shown the following disclosure: "By completing your purchase, you agree to Audible's <u>Conditions of Use</u> and <u>Privacy Notice</u> and authorize us to charge your designated credit card or another credit card on file."  Massello Decl. ¶ 10, Ex. 3.  The "Conditions of Use" language was a blue hyperlink; had Mr. Beals pressed that link, he would have been directed to a document called "The Audible Service Conditions of Use." *Id.* ¶ 11, Ex. 4.  At the time Mr. Beals signed up for his trial membership, that webpage contained a dispute resolution provision, which provided the following:

> **DISPUTES**
>
> **Any dispute or claim relating in any way to your use of the Audible Service will be resolved by binding arbitration, rather than in court,** except that you may assert claims in small claims court if your claims qualify. The Federal Arbitration Act and federal arbitration law apply to this agreement.
>
> **There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award on an individual basis the same damages and relief as a court (including injunctive and declaratory relief or statutory damages), and must follow the terms of these Conditions of Use as a court would.**
>
> To begin an arbitration proceeding, you must send a letter requesting arbitration and describing your claim to our registered agent: Corporation Service Company, 300 Deschutes Way SW, Suite 304, Tumwater, WA 98051. The arbitration will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA's Supplementary Procedures for Consumer-Related Disputes. The AAA's rules are available at www.adr.org or by calling 1-800-778-7879. Payment of all filing, administration and arbitrator fees will be governed by the AAA's rules. We will reimburse those fees for claims totaling less than $10,000 unless the arbitrator determines the claims are frivolous. Likewise, Audible will not seek attorneys' fees and costs in arbitration unless the arbitrator determines the claims are frivolous. You may choose to have the arbitration conducted by telephone, based on written submissions, or

in person in the county where you live or at another mutually agreed location.

**We each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action.** If for any reason a claim proceeds in court rather than in arbitration **we each waive any right to a jury trial**. We also both agree that you or we may bring suit in court to enjoin infringement or other misuse of intellectual property rights.

*Id.* (bold in original).

One month later, on May 26, 2015, Mr. Beals' free trial converted to a paid monthly Gold membership. Massello Decl. ¶ 12. Mr. Beals continued his paid Gold monthly membership until July 27, 2015, receiving a new membership credit on the 26th day of each month. *Id.* ¶ 14. In total, he received five membership credits in 2015, including the two he received when he first signed up for his trial membership. *Id.*

Mr. Beals redeemed each of these credits on the Amazon.com desktop website to purchase audiobooks. Massello Decl. ¶ 14. After signing up on April 26, 2015, Mr. Beals redeemed several membership credits by selecting an audiobook, navigating to the corresponding webpage for that audiobook on the Amazon.com desktop website, and pressing a virtual button on that webpage that read "Buy with 1 Audible Credit." *See id.* ¶¶ 13-15, Ex. 5. Each time, immediately under this button, Mr. Beals saw a disclosure that read: "By completing your purchase, you agree to Audible's Conditions of Use and Privacy Notice." *Id.* As was true when Mr. Beals signed up for his Audible membership, the "Conditions of Use" language in this disclosure contained a hyperlink to the Audible Service Conditions of Use and Audible's arbitration provision. *Id.*

Mr. Beals cancelled his Audible Gold monthly membership on July 27, 2015, with no unused membership credits left on his account. Massello Decl. ¶ 14. Shortly thereafter, it appears that Mr. Beals bought himself a gift membership. In

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

the First Amended Complaint, he says he "received a 12-month gift membership," First Amended Complaint, Dkt. No. 40 ("FAC") ¶ 13, but Audible's records indicate that Mr. Beals' bought that membership with his Audible account, Massello Decl. ¶ 16.  He was charged $150 for a 12-month gift membership.  *Id.*  The next day, Mr. Beals redeemed the gift membership.  *Id.*

With the gift membership, Audible would give Mr. Beals a gift membership credit on the 17th day of each month, which he could redeem for an audiobook. Massello Decl. ¶ 16, Ex. 5.  As with membership credits, Mr. Beals could redeem these credits on the Amazon.com desktop website by navigating to the webpage for the audiobook that he wished to purchase, and pressing the "Buy with 1 Audible Credit" button.  *Id.*  On August 17, 2015, Mr. Beals did exactly that, redeeming his first gift membership credit on the Amazon.com desktop website.  *Id.*  When Mr. Beals redeemed this gift membership credit, he again saw a hyperlinked disclosure immediately underneath the "Buy with 1 Audible Credit" button that read: "By completing your purchase, you agree to Audible's <u>Conditions of Use</u> and <u>Privacy Notice</u>."  *Id.*

## III.   ARGUMENT

A court's role in resolving a motion to compel arbitration is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  As described below, Mr. Beals agreed to the arbitration provision in the Audible Service Conditions of Use multiple times while using the Audible service in 2015, including when he signed up for an Audible trial and subsequently redeemed Audible credits on the Amazon.com desktop website.  Moreover, this case arises from Mr. Beals' use of the Audible service and thus falls squarely within the scope of his arbitration agreement with Audible.  Accordingly, this Court should compel Mr. Beals to

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   arbitrate his claims against Audible in this lawsuit.

2       **A.**    **Washington Law Governs Plaintiff's Agreement With Audible and**

3           **This Lawsuit.**

4         In diversity cases, the law of the forum state provides the choice of law rules

5   that a federal court must apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487,

6   496 (1941). California courts have "a strong policy favoring enforcement" of

7   contractual choice of law provisions. *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.

8   4th 459, 465 (1992). Under California law, where a contract with a choice of law

9   provision exists between the parties, the choice of law provision determines what

10  state's law governs, as long as the chosen jurisdiction bears a "substantial

11  relationship" to the dispute and the application of that state's law is not contrary to

12  California public policy. *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182-83 (9th Cir.

13  2009). In this case, a contract exists between Mr. Beals and Audible naming

14  Washington state law, and there is no basis for departing from the parties' choice of

15  law reflected in this contract provision. Moreover, although the First Amended

16  Complaint relies on California law, there is no basis to apply California law as to

17  Mr. Beals' claims, as he is a Michigan resident. FAC ¶ 13.

18        When Mr. Beals signed up for his Audible trial membership in April 2015,

19  the Audible Service Conditions of Use contained a provision, in a section titled

20  "Applicable Law", naming Washington state law: "By using the Audible Service,

21  you agree that the Federal Arbitration Act, applicable federal law, and the laws of

22  the State of Washington, without regard to principles of conflict of laws, will

23  govern these Conditions of Use and any dispute of any sort that might arise

24  between you and Audible." Massello Decl. ¶ 11, Ex. 4 at 3. Mr. Beals' claims also

25  have a "substantial relationship" to Washington law. As the Court noted in its final

26  ruling on the earlier motion to compel arbitration as to Plaintiff Grant McKee, it is

27  undisputed that Audible's parent company, Amazon, has its principal place of

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

business in Washington.  Final Ruling on Defendant's Motion to Compel Arbitration, Dkt. No. 37 ("Order") at 7.  Indeed, Mr. Beals signed up for his Audible trial membership, and redeemed Audible credits, on the Amazon.com desktop website.  *See* Massello Decl. ¶¶ 9-17, Exs. 3-5.  Mr. Beals also signed up for his Audible membership using his Amazon account.  *Id.* ¶ 6.

Nor does Washington state law conflict with California state law.  If anything, "a plausible case can be made that Washington's unconscionability doctrine is more protective of consumers than California's."  *See Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051, 1063-64 (S.D. Cal. 2015) (applying Washington rather than California state law, in accordance with the Amazon Conditions of Use).

In any case, this motion implicates the same legal issues as Audible's previous motion to compel arbitration as to Plaintiff Grant McKee did.  And, just as Plaintiff McKee did not argue "that Washington law conflicts with California law on the relevant issue of contract formation and the enforceability of arbitration provisions," Mr. Beals cannot do so here.  *See* Order at 7.  There is no conflict between Washington and California law in this case, and there is no reason for this Court to depart from the agreement reflected in the choice of law provision.

### B.     Plaintiff Repeatedly Agreed to Arbitrate Disputes Relating To His Use of Audible.

Courts "apply ordinary state-law principles that govern the formation of contracts" to determine whether parties agreed to arbitrate.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  In the digital context, the question of assent turns on whether a website puts the customer on "reasonable notice" of its terms and conditions.  *E.g.*, *Fagerstrom*, 141 F. Supp. 3d at 1069.  This reasonable or "inquiry" notice standard is not difficult to satisfy, and it is easily met here.  "Any reasonably-active adult consumer will almost certainly

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

appreciate that by signing up for a particular service, he or she is accepting the terms and conditions of the provider." *Selden v. Airbnb, Inc.*, No. 16-CV-00933 (CRC), 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016) (holding that user was bound by an arbitration clause, where Airbnb presented a hyperlinked disclosure stating "By signing up, I agree to Airbnb's Terms of Service" in close proximity to the sign-up buttons); *see also Meyer v. Uber Techs., Inc.*, No. 16-2750-CV, 2017 WL 3526682, at *7 (2d Cir. Aug. 17, 2017) (vacating lower court's denial of motion to compel arbitration, and holding that the Uber mobile app provided reasonably conspicuous notice of, and that customer unambiguously manifested assent to, Uber's terms of service).

Here, Mr. Beals unambiguously assented to the Audible Service Conditions of Use, and its dispute resolution provision, when he signed up for an Audible "30-Day Free Gold Monthly Trial + Bonus Credit" membership while simultaneously redeeming one of his credits for an audiobook through Amazon.com. *See* Massello Decl. ¶ 10, Ex. 3. Mr. Beals signed up for his trial membership through the Amazon.com desktop website. *Id.* Upon selecting an Audible audiobook of his choice, Mr. Beals was directed to a webpage on the Amazon.com desktop website where he designated a payment method to be charged $14.95 per month. Then, to redeem that audiobook and start his membership, Mr. Beals pressed a yellow "Confirm your free trial" button. *Id.* Underneath this button, the webpage displayed a summary of the transaction, which listed three items: (1) the audiobook that Mr. Beals redeemed when signing up for the trial; (2) a "Second audiobook of your choice," which referred to the bonus credit Audible gave to Mr. Beal through his trial offer; and (3) the "Audible 30-Day Free Trial." *See id.* Immediately below this summary box was the following hyperlinked disclosure, which linked to Audible's Conditions of Use: "By completing your purchase, you agree to Audible's Conditions of Use and Privacy Notice and authorize us to charge your

AUDIBLE'S MOT. TO
COMPEL ARBITRATION
AND DISMISS AS TO BEALS          10          Case No. 2:17-cv-1941 GW(Ex)

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

designated credit card or another credit card on file." *Id.*

Mr. Beals also agreed to the Audible Service Conditions of Use when he subsequently redeemed membership credits and gift membership credits on the Amazon.com desktop website in 2015.  To purchase Audible audiobooks on the Amazon.com desktop website at that time, Mr. Beals (upon navigating to the corresponding webpage for an audiobook of his choice) was invited to purchase an audiobook by pressing one of two buttons: "Buy with 1 Audible Credit" or "Buy with 1-Click."  *See* Massello Decl. ¶ 13, Ex. 5.  Immediately under these buttons was the following hyperlinked disclosure: "By completing your purchase, you agree to Audible's Conditions of Use and Privacy Notice."  *Id.*  Mr. Beals had to press the "Buy with 1 Audible Credit" button to redeem Audible credits for Audible audiobooks, and he did so no fewer than five times in 2015.  *See id.* ¶¶ 13-17, Ex. 5. Each time, Mr. Beals was put on reasonable notice of, and consented to, Audible's Conditions of Use and its arbitration agreement.  *See id.*

The disclosures shown to Mr. Beals in this case do not contain the design issues this Court identified when resolving Audible's earlier request to compel arbitration with respect to Plaintiff McKee.  *See generally* Order at 11-17.

*First*, unlike the mobile sign-up flow that Plaintiff McKee encountered, Mr. Beals performed all these transactions on the Amazon.com desktop website, where there was no requirement that he "scroll" to push the button to redeem credits. *Compare* Massello Decl. ¶¶ 10, 13-17, Exs. 3, 5, *with* Order at 11.  Thus, there was no possibility that he could see the button without seeing the disclosure right below it.  There was also no issue of a smart phone's "pop-up keyboard" concealing any part of the notice.

*Second*, unlike the notice in the mobile sign-up flow, the disclosures that Mr. Beals saw—both when he first started his trial and when he subsequently redeemed credits on the Amazon.com desktop website in 2015—all contained blue

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

hyperlinked "Conditions of Use" language.  *Compare* Massello Decl. ¶¶ 10, 13-17, Exs. 3, 5, *with* Order at 11.

 *Third*, at the time, these hyperlinks led to a webpage containing a document titled "The Audible Service Conditions of Use."  *Compare* Massello Decl. ¶¶ 10-17, Ex. 4, *with* Order at 11.  Thus, there was no possible confusion as to whether the "Conditions of Use" in the purchase screen referred to anything other than the hyperlinked document of the same name.  *See Meyer*, 2017 WL 3526682, at *2, n.3 (enforcing agreement where notice referred to "Terms of Service" and hyperlinked document was called "Terms and Conditions").

 *Fourth*, although the notice used the "By completing your purchase" language that the Court found problematic in the context of Mr. McKee's initial sign-up, this language appeared not only when Mr. Beals signed up for the free trial, but when he got his first audiobook, and when he began redeeming membership credits, including after converting to a paid membership.  In the context of that transaction, it was clear that by clicking the button to proceed, Mr. Beals was agreeing to be bound by Audible's Conditions of Use.  Moreover, when he redeemed his credits, the button he pushed made clear that this was a "purchase," saying "Buy with 1 Audible Credit."  As shown below, in this context there was no question that the "By completing your purchase" language referred to clicking one of the immediately adjacent "Buy" buttons. *See* Massello Decl. ¶¶ 10, 13-17, Ex. 5:



FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Even if there were some question as to assent during Mr. Beals' initial sign-up in April 2015 (and Audible contends there is not), there can be no doubt that he assented to the Audible Service Conditions of Use when he subsequently and repeatedly redeemed credits by pressing the "Buy with 1 Audible Credit" button on the Amazon.com desktop website.

These disclosures are similar to those that the court approved in *Selden*. Like this case, *Selden* involved hyperlinked disclosures to an online service provider's terms of use placed in close proximity to a virtual button that allows the user to complete a transaction on the service. *Compare* Massello Decl. ¶¶ 10, 13-17, Exs. 3, 5 (disclosure stating "By completing your purchase, you agree to Audible's Conditions of Use" in close proximity to "Confirm your free trial" and "Buy with 1 Audible Credit" buttons), *with Selden*, 2016 WL 6476934, at *5 (hyperlinked disclosure stating "By signing up, I agree to Airbnb's Terms of Service" in close proximity to three sign-up buttons).

Indeed, little differentiates this case from the ever-growing list of cases where courts have approved other "sign-in-wrap" agreements. *See Meyer,* 2017 WL 3526682, at *7 (plaintiff agreed to Uber's terms by pressing "Register" button above notice stating that, "by creating an Uber account," users agreed to terms of service); *Nevarez v. Forty Niners Football Co., LLC*, No. 16-CV-07013, 2017 WL 3492110, at *8 (N.D. Cal. Aug. 15, 2017) (finding that Ticketmaster website prominently informed plaintiffs that they agreed to terms of use, by clicking either "Accept and Continue" or "Sign In" to register or sign in to their account, and by clicking "Submit Order" to finalize their purchase); *Rodriguez v. Experian Servs. Corp.*, No. CV 15-3553-R, 2015 WL 12656919, at *2 (C.D. Cal. Oct. 5, 2015) (enforcing arbitration clause where website contained hyperlinked disclosure stating that user agreed to terms of use by clicking button); *Graf v. Match.com, LLC*, No. CV 15-3911 PA (MRWx), 2015 WL 4263957, at *4 (C.D. Cal. July 10,

2015) (same); *Crawford v. Beachbody, LLC*, No. 14cv1583-GPC(KSC), 2014 WL 6606563, at *2–3 (S.D. Cal. Nov. 5, 2014) (enforcing forum selection clause where website contained hyperlinked disclosure stating that user agreed to terms of use "by clicking Place Order below"); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012) (enforcing forum selection clause based on disclosure below "Sign Up" button); *Starke v. Gilt Groupe, Inc.*, No. 13 CIV. 5497 LLS, 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (enforcing arbitration clause and holding that plaintiff's decision to click "Shop Now" button represented assent).

In short, there is no reasonable dispute that Mr. Beals assented to Audible's Service Conditions of Use, including the arbitration and class-waiver provision. Accordingly, just as this Court found that Plaintiff McKee assented to *Amazon's* Conditions of Use when making purchases on the Amazon website, *see* Order at 17, it should find that Mr. Beals agreed to Audible's Conditions of Use when he signed up for an Audible membership and redeemed credits on the Amazon.com desktop website.

**C.    Audible's Arbitration Provision Is Virtually Identical to the Amazon Provision That This Court Already Found Enforceable.**

There are no material differences between the arbitration provision that appeared in the Audible Service Conditions of Use in 2015 and the Amazon arbitration provision that the Court examined in resolving the earlier motion to compel arbitration as to Plaintiff McKee. *Compare* Massello Decl. ¶ 11, Ex. 4 at 3, *with* Order at 2-3. Indeed, the only difference between the provisions is that the Audible arbitration provision pertains specifically to Audible. The arbitration provision that Beals agreed to in the Audible Service Conditions of Use covers "**Any dispute or claim relating in any way to your use of the Audible Service . . . .**" (Massello Decl. ¶ 11, Ex. 4 at 3 (bold in original)), while the Amazon arbitration provision covers **"[a]ny dispute or claim relating in any way**

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**to your use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com . . . .**" Order at 2-3 (bold in original).  Accordingly, there is no basis for this Court to disturb, and Plaintiff can offer no reason for this Court to reexamine, its earlier ruling that "the Amazon COU and Audible COU are not unconscionable and are enforceable." *See* Order at 22.

On the contrary, Audible's arbitration agreement and class action waiver— like Amazon's—is modeled on the very provision that the Supreme Court approved in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346-47 (2011).  The Audible arbitration agreement contains a number of provisions designed to make arbitration accessible and fair to consumers.  For instance, it includes a provision stating that Amazon will pay all arbitration fees for claims less than $10,000.  *See* Massello Decl. ¶ 11, Ex. 4 at 3; *cf. Concepcion*, 563 U.S. at 336–37.  It permits consumers to bring claims in small claims court in lieu of arbitration.  *See* Massello Decl. ¶ 11, Ex. 4 at 3; *cf. Concepcion*, 563 U.S. at 336–37.  It allows consumers to decide how they want to participate, whether "by telephone, based on written submissions, or in person in the county where you live or at another mutually agreed location." *See* Massello Decl. ¶ 11, Ex. 4 at 3; *cf. Concepcion*, 563 U.S. at 336–37.  And it authorizes the arbitrator to "award on an individual basis the same damages and relief as a court," including injunctions and declaratory relief.  *See* Massello Decl. ¶ 11, Ex. 4 at 3; *cf. Concepcion*, 563 U.S. at 336–37.

Indeed, courts across the country, including this one, have repeatedly found that the substantially identical provision that appears in the Amazon Conditions of Use, and the class action waiver it contains, are valid and enforceable.  *See* Order at 18-22 (approving the Amazon arbitration agreement); *Fagerstrom,* 141 F. Supp. 3d at 1064-76 (same); *Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1175-78 (W.D. Wash. 2014) (same); *Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165, 1169 (W.D. Wash. 2013), *aff'd*, No. 14-35294, 2016 WL 5940052 (9th Cir. Oct. 13,

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

2016) (same).  Therefore, consistent with its earlier decision in this lawsuit, this Court should reject any argument by Mr. Beals that the Audible arbitration agreement is unconscionable or invalid, and it should enforce the agreement and compel arbitration as to Mr. Beals.

> **D.    The Audible Arbitration Agreement Covers Any Claim Arising From Mr. Beals' Use of the Audible Service.**

A "presumption of arbitrability" attaches whenever a court recognizes a valid contract containing an arbitration clause.  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).  In the Ninth Circuit, even "the most minimal indication of the parties' intent to arbitrate must be given full effect."  *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991); *accord Fagerstrom*, 141 F. Supp. 3d at 1059 (quoting *Republic of Nicaragua* and ordering arbitration based on Amazon's Conditions of Use); *Peters*, 2 F. Supp. 3d at 1169 (same with respect to Amazon business services agreement).  And "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Here, Mr. Beals' arbitration agreement covers "**[a]ny dispute or claim relating in any way to your use of the Audible Service . . . .**"  Massello Decl. ¶ 11, Ex. 4 at 3.  The "broad and far reaching" language of the arbitration clause "leaves little doubt that the dispute [here] is subject to arbitration."  *Chiron*, 207 F.3d at 1131 (9th Cir. 2000) (ordering arbitration as breadth of arbitration agreement and federal policy favoring arbitration embodied in the Federal Arbitration Act "leaves no place for the exercise of discretion by a district court") (internal quotations and citations omitted); *see also In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007) (holding that arbitration agreement that covered "any other services provided by KPMG," and disputes and claims involving "any entity for whose benefit the services in question are or were

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

provided" had broad scope and retroactive effect).  Indeed, courts examining the substantially identical Amazon arbitration agreement have found that its use of "any dispute" language gave the agreement broad scope: "[W]hen arbitration agreements contain broad 'relating to any dispute' language, both future and past disputes are included in the scope of the arbitration agreement." *Ekin*, 84 F. Supp. 3d at 1178 (W.D. Wash. 2014) (arbitration agreement in Amazon Conditions of Use had retroactive effect); *see also Peters*, 2 F. Supp. 3d at 1173 (same with Amazon business services agreement).

Mr. Beals' claims against Audible arise from his use of the Audible service and specifically Audible's policies and practices concerning Audible membership credits.  *See, e.g.,* FAC ¶¶ 13, 75.  None of Plaintiff's claims arise from anything other than his use of the service.  Thus, the claims fall squarely within the scope of Plaintiff's arbitration agreement with Audible, and this Court should compel arbitration as to Mr. Beals.

**E.     Audible's Historical "Gift Terms" Do Not Prevent This Court From Applying the Arbitration Provision in the Conditions of Use.**

When the parties have met and conferred regarding Mr. Beals' agreement to arbitration, Plaintiffs' counsel has argued that Audible's separate "gift terms and conditions" prohibits enforcement of the arbitration agreement in the Audible Conditions of Use.  But nowhere does Plaintiff allege that he agreed to the separate gift terms.  Nor could he, as agreement to those gift terms would eviscerate Mr. Beals' claims on the merits.  Because Mr. Beals does not claim to have agreed or be bound by the gift terms, and because he repeatedly agreed to the Audible Service Conditions of Use, that agreement—including its arbitration provision—is binding and enforceable.

\\

\\

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

**IV.    CONCLUSION**

Plaintiff Seth Beals repeatedly agreed to arbitrate any claim relating to his use of the Audible service on an individual basis.  This lawsuit breaches that agreement, and the Court should compel arbitration.  Accordingly, Audible ask this Court to compel these claims to arbitration and dismiss them with prejudice.

Dated:  August 25, 2017                    FENWICK & WEST LLP


By: /s/ *Jedediah Wakefield*
    Jedediah Wakefield

Attorneys for AUDIBLE, INC.