1  **Jamin S. Soderstrom, Bar No. 261054**
2  **jamin@soderstromlawfirm.com**
   **SODERSTROM LAW PC**
3  **3 Park Plaza, Suite 100**
   **Irvine, California 92614**
4  **Tel:   (949) 667-4700**
5  **Fax:  (949) 424-8091**

6  *Counsel for Plaintiffs and the Proposed Class*

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10             **(WESTERN DIVISION – LOS ANGELES)**

11

12  **GRANT MCKEE, TAYLOR FISSE,**              **Case No. 2:17-cv-01941 GW (Ex)**
    **BRYAN REES, ERIC WEBER, and**
13  **MICHAEL ROGAWSKI, individually**
14  **and on behalf of all others similarly**    **PLAINTIFFS' MEMORANDUM OF**
    **situated,**                                **POINTS AND AUTHORITIES IN**
15                                                **SUPPORT OF THEIR MOTION FOR**
16              **Plaintiffs,**                   **CORRECTIVE ACTION**

17  **v.**

18  **AUDIBLE, INC.,**                           Date:        March 12, 2018
                                                 Time:        8:30 a.m.
19              **Defendant.**                    Courtroom:   9D
                                                 Judge:       Hon. George H. Wu
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page(s)

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 3

  Audible's Mobile Sign-Up Webpage ................................................................ 4

  Audible's Mobile Credit Redemption Webpage ............................................... 4

  Audible's Standard Credit Redemption Webpage ............................................ 5

  Audible's Mobile Credit Redemption Webpage on Amazon.com .................... 5

  Audible's Standard Credit Redemption Webpage on Amazon.com .................. 6

ARGUMENT ....................................................................................................... 7

  I.    Courts have the authority and duty under Rule 23(d) to ensure the fairness of the class action process to all parties, including putative class members. 7

  II.   Audible's revised webpages, disclosures, and terms are designed specifically to undermine the fairness of this action and limit class participation by securing new arbitration agreements from putative class members ............................................................................................... 10

  III.  Courts routinely order corrective action, including invalidating arbitration agreements that are secured during a pending class action. ...................... 12

  IV.  Audible's own webpages provide a clear record of its incomplete and misleading communications directed at putative class members. .............. 14

  V.   The Court should order corrective action that ensures the fairness of the class action process going forward. ........................................................ 15

CONCLUSION ................................................................................................... 17



SODERSTROM
LAW

i

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Court Cases**

4

*Billingsley v. Citi Trends, Inc.,*

5

 560 F. App'x 914 (11th Cir. 2014) .......................................................... 12, 13, 15

6

*Camp v. Alexander,*

 300 F.R.D. 617 (N.D. Cal. 2014)............................................................... 10, 13

7

*County of Santa Clara v. Astra USA,*

8

 2010 WL 2724512 (N.D. Cal. July 8, 2010) .................................................. 13

9

*Doe 1 v. Swift Transportation Co., Inc.,*

 2017 WL 735376 (D. Ariz. Feb. 24, 2017) ................................................... 13

10

*Freidman v. Intervet Inc.,*

11

 730 F. Supp. 2d 758 (N.D. Ohio 2010) ......................................................... 13

12

*Griffin v. Aldi, Inc.,*

13

 2017 WL 1957021 (N.D.N.Y May 11, 2017).............................................. 10

*Gulf Oil Co. v. Bernard,*

14

 452 U.S. 89 (1981).................................................................................. 9, 10, 16

15

*In re Currency Conversion Fee Antitrust Litigation,*

16

 361 F. Supp. 2d 237 (S.D.N.Y. 2005) ........................................................ 13

17

*Jiminez v. Menzies Aviation Inc.,*

 2015 WL 4914727 (N.D. Cal. Aug. 17, 2015) ...................................... 12, 13, 15

18

*Kleiner v. First National Bank of Atlantic,*

19

 751 F.2d 1193 (11th Cir. 1985) ............................................................... 11, 13

20

*O'Connor v. Uber Technologies, Inc.,*

 2013 WL 6407583 (N.D. Cal. Dec. 6, 2013)..................... 2, 11, 12, 13, 15

21

*O'Connor v. Uber Technologies, Inc.,*

22

 No. C-13-3826 EMC, 2014 WL 1760314 (N.D. Cal. May 2, 2014) ......... 9, 12, 13, 18

23

*Putnam v. Eli Lilly & Co.,*

 508 F. Supp. 2d 812 (C.D. Cal. 2007) ........................................................ 16

24

*Retiree Support Grp. of Contra Costa Cnty. v. Contra Costa Cnty.,*

25

 2016 WL 4080294 (N.D. Cal. 2016) ........................................................... 10

26

*Slavokov v. Fast Water Heater Partners I, LP,*

 2015 WL 6674575 (N.D. Cal. Nov. 2, 2015) ....................................... 9, 12, 13

27

28

ii

SODERSTROM
LAW

*Wang v. Chinese Daily News, Inc.*,
  623 F.3d 743 (9th Cir. 2010), *judgment vacated on other grounds*, 132 S. Ct. 74
  (2011) ................................................................................................ 9

**Federal Rules and Regulations**

Fed. R. Civ. P. 23(d) ....................................................................... 2, 8

iii

# INTRODUCTION

This action has already had a nationwide impact on Defendant Audible, Inc.'s business practices. Since this action was filed on March 10, 2017, Audible has: (1) discontinued its credit gifting feature; (2) renamed its "Conditions of Use," revised them to delete an unconscionable limitation of liability provision, and added a hyperlinked reference to Amazon.com, Inc.'s separate conditions of use that contain the relevant arbitration clause; (3) revised its gift membership terms to delete the New York venue clause and incorporate by reference Amazon's separate conditions of use and arbitration clause; (4) revised the disclosures it makes in connection with its free 30-day trial sign-up process (both on computers and smartphones and both on Audible.com and Amazon.com); and (5) revised the disclosures it makes in connection with its credit redemption process (both on computers and smartphones and both on Audible.com and Amazon.com).

Unfortunately for Audible, the law does not allow it to use these litigation-driven revisions to secure new arbitration agreements from existing putative class members and shrink the size of the potential class. When it implemented the revisions, Audible chose not to inform its current members of the allegations being made in this action and the impact the revised disclosures and terms are intended to have on current members' rights and options. Put simply, Audible is using incomplete and misleading information to secure new arbitration agreements from consumers who are all putative class members in this action.

In addition to protecting the fairness of the class action process to Plaintiffs and absent putative class members, this Motion will have a direct and immediate impact on three of the new proposed class representatives. Taylor Fisse, Eric Weber, and Michael Rogawski were each putative class members *before* Audible imposed its revised disclosures and terms. They were each faced with three unfair options when they learned of Audible's new disclosures: (1) cancel their monthly payments and forfeit their existing credits, (2) continue to automatically pay for credits they cannot use without agreeing to

1

arbitration, or (3) redeem their credits and agree to arbitration based on the revised disclosures and terms. Fisse chose the first option and had one credit expire when she cancelled her payments (she could not redeem the credit before cancelling without agreeing to arbitration). Weber and Rogawski chose the second option because they do not want to cancel and let their existing credits expire, but they are not willing to agree to arbitration by redeeming their credits; thus, they are stuck paying for monthly credits they cannot use without agreeing to arbitration based on Audible's revised disclosures and terms.

Other class action defendants have tried similar tactics, and other courts have determined that such tactics are improper. *See, e.g.*, *O'Connor v. Uber Technologies, Inc.*, 2013 WL 6407583, at *4-5 (N.D. Cal. Dec. 6, 2013). Many courts have invalidated arbitration and other agreements that were secured by class action defendants using incomplete, misleading, or coercive communications, and other courts have required that court-approved corrective notices be sent to all affected parties to ensure that they do not take any action without being fully informed. Audible's revised terms and disclosures are no different than the communications other courts have found improper: they are directed at putative class members and they are incomplete and misleading because they do not disclose the existence or substance of this action or the effects the revised disclosures will have on such members' rights and options.

Under Rule 23(d) of the Federal Rules of Civil Procedure, the Court has both the authority and duty to ensure the fairness of the class action process, particularly to absent putative class members. The Court's authority includes invalidating agreements that are improperly obtained, requiring corrective notices, and/or requiring parties to seek court approval before making future communications with putative class members.

Audible's own webpages, disclosures, and terms create a clear record of incomplete communications made by Audible to putative class members. The revisions Audible made in direct response to this action are designed specifically to limit participation in this action by putative class members. Plaintiffs therefore respectfully

SODERSTROM
LAW

request that the Court exercise its authority under Rule 23(d), grant this Motion, and issue an order declaring that Audible's revised disclosures and terms are invalid and unenforceable.

## BACKGROUND

Plaintiff Grant McKee gave Audible written notice of his claims on January 26, 2017. Dkt. 1-1 (McKee notice letter). When Audible refused to make any changes to its business practices, McKee filed this putative nationwide class action on March 10, 2017. Dkt. 1. After several rounds of briefing and argument, on July 17, 2017 the Court denied Audible's motion to compel McKee's claims against Audible to arbitration, finding that Audible's relevant webpages and disclosures did not provide sufficient notice of the arbitration clause Audible incorporated by reference into its proposed online terms. Dkt. 37 at 7-17 (Final Ruling).

While opposing Audible's various motions, Plaintiffs have pointed out numerous standard and mobile webpages on Audible.com and Amazon.com where (i) Audible did not make any disclosure of its terms or (ii) the disclosure Audible did make was inadequate to provide reasonable notice and form a binding agreement. *See, e.g.*, Dkt. 21-14; Dkt. 21-16; Dkt. 21-18, Dkt. 21-19; Dkt. 21-21; Dkt. 44-3; Dkt. 44-4. Essentially, even without the benefit of discovery, Plaintiffs have been able to show that for years Audible did not adequately disclose its arbitration clause to consumers who signed up for a free trial and who thereafter redeemed credits on Audible.com or Amazon.com.

Plaintiffs recently discovered that each time they pointed out Audible's failures, Audible has quickly and quietly tried to fix them without disclosing the revisions to Plaintiffs, other consumers who are putative class members, or the Court. Audible also has not disclosed the existence or substance of this action to putative class members, and it has not explained the effects the revised disclosures and terms are intended to have on such members' rights (e.g., excluding them from participating in this action or filing an action of their own in court).

///

3

Since this action was filed on March 10, 2017, Audible has (i) renamed and revised its core "Conditions of Use," Soderstrom Decl. ¶ 2, Ex. 1 (new COU as of July 19, 2017); (ii) revised its gift membership terms, *id.* ¶ 3, Ex. 2 (new gift membership terms as of May 1, 2017); and (iii) discontinued its credit gifting feature, *id.* ¶ 4, Ex. 3 (Help Center page announcing the discontinued feature) & Ex. 4 (online article noting that Audible discontinued its credit gifting feature in April 2017). In addition to these revisions, Audible has also revised its relevant webpages on both Audible.com and Amazon.com for both standard computers and mobile phones and tablets. *Id.* ¶¶ 5-9, Exs. 5-9.

**Audible's Mobile Sign-Up Webpage.** Audible revised its mobile free 30-day trial sign-up disclosure shortly after the Court ruled that Audible did not provide sufficient notice of Audible's terms and arbitration clause during the sign-up process.



Dkt. 21-14 (old mobile sign-up disclosure); Soderstrom Decl. ¶ 5, Ex. 5 (new mobile sign-up disclosure).

**Audible's Mobile Credit Redemption Webpage.** Audible also revised its mobile credit redemption process shortly after Plaintiffs pointed out that Audible did not provide any disclosure of its terms or arbitration clause when members redeemed their credits using a mobile device.

///

///

///

///

///

4

1

 

2

3

4

5

6

7  Dkt. 21-16 (old Audible mobile credit redemption webpage without disclosure);

8  Soderstrom Decl. ¶ 6, Ex. 6 (new Audible mobile credit redemption webpage with

9  disclosure).

10      **Audible's Standard Credit Redemption Webpage.** Audible also revised its

11  standard website credit redemption webpage shortly after Plaintiffs pointed out that it did

12  not provide any disclosure of its terms or arbitration clause when members redeemed

13  their credits using a standard computer.

14

15   

16

17

18

19

20

21  Dkt. 44-4 (old Audible.com credit redemption page without any disclosure); Soderstrom

22  Decl. ¶ 7, Ex. 7 (new Audible.com credit redemption page with disclosure).

23      **Audible's Mobile Credit Redemption Webpage on Amazon.com.** Audible also

24  revised its mobile credit redemption webpage on Amazon's separate mobile website

25  shortly after Plaintiffs pointed out that Audible did not provide any disclosure of its terms

26  or arbitration clause when members redeemed their credits on Amazon.com using a

27  mobile device.

28  ///



5

 

Dkt. 21-16 (old Amazon mobile credit redemption page without disclosure); Soderstrom Decl. ¶ 8, Ex. 8 (new Amazon mobile credit redemption page with disclosure).

**Audible's Standard Credit Redemption Webpage on Amazon.com.** Audible also revised its standard credit redemption webpage on Amazon's separate website shortly after Plaintiffs pointed out that Audible did not provide any disclosure of its terms or arbitration clause when members redeemed their credits on Amazon.com using a standard computer.

 

Dkt. 44-3 (old Amazon.com credit redemption webpage without disclosure); Soderstrom Decl. ¶ 9, Ex. 9 (new Amazon.com credit redemption webpage with disclosure).

Other than the discontinued credit gifting feature (which Audible discusses briefly on one of its Help Center webpages but did not announce to members directly), Audible has not informed any of its current members of the changes to its webpages, disclosures, and terms. Audible certainly has not (i) disclosed the existence or substance of this action, (ii) informed members that this Court determined that Audible could not compel arbitration based on certain webpages and disclosures and that part of Audible's arbitration clause was unconscionable, (iii) informed members that they are each putative

6

class members in this action, or (iv) informed members that if they redeem credits using the webpages with the new disclosures, Audible will argue that such members cannot participate in this action because they agreed to arbitrate all claims against Audible, including claims made in this action on their behalf.

Fisse, Weber, and Rogawski each found themselves in the same conundrum other Audible members will face if they ever see Audible's revised disclosures and learn Audible's purpose for implementing the revised disclosures. None of them were previously subject to arbitration because each of them saw the same disclosures that have already been heavily litigated in this action and that this Court found were inadequate to form a binding agreement to arbitrate. *See* Fisse Decl. ¶ 2; Weber Decl. ¶ 2; Rogawski Decl. ¶ 2. When they learned of this action and considered bringing their own claims, they were put to a choice: (1) cancel and lose their existing credits but avoid arbitration based on the new disclosures; (2) do not cancel and keep paying automatically for monthly credits,  but do not redeem any more credits to avoid arbitration based on the new disclosures; or (3) redeem credits and agree to arbitration based on the new disclosures (and thereby give up rights such as the ability to participate in this putative class action or file a separate action). Fisse chose Option 1 and let one credit expire when she cancelled her payments. Fisse Decl. ¶ 2. Weber and Rogawski chose Option 2 and have not lost any credits by cancelling but are unable to redeem any of their existing and future credits without agreeing to arbitration. Weber Decl. ¶ 2; Rogawski Decl. ¶ 2. None of them chose Option 3 because none of them was willing to agree to arbitration.

## ARGUMENT

**I.  Courts have the authority and duty under Rule 23(d) to ensure the fairness of the class action process to all parties, including putative class members.**

Plaintiffs concede that Audible's actions are not per se unlawful or improper. Audible is entitled to revise its webpages, terms, and disclosures. But Audible is <u>not</u> entitled to use its exclusive control over the relevant webpages, disclosures, and terms, and its exclusive access to consumers who are or will be putative class members, to try

7

to limit its potential liability by shrinking the size of the putative class using disclosures and terms that were rehabilitated as a direct result of this action.

Audible has already announced its intent to argue that <u>any</u> restriction on its right to revise its webpages, disclosures, and terms "runs afoul of the First Amendment" and that "a public-facing website" is effectively exempt from court oversight and control under Rule 23(d) based on business practicalities. Dkt. 52 at 8-10 (Joint Status Report). Audible's positions have already been rejected by other courts, however. The concept of "freedom of contract" does not give Audible the ability to conceal material information from putative class members in order to secure agreements that affect their fundamental rights and access to the courts.

Furthermore, the Court does not need to issue any order that implicates First Amendment issues in order to ensure the fairness of these proceedings to Plaintiffs and putative class members under Rule 23(d). The Court can simply determine, as many other courts have done when defendants have tried to obtain new arbitration agreements from putative class members, that the revised terms and disclosures are invalid and unenforceable. Such an order would not require court-ordered communications or restrict future communications; it would simply preserve the status quo while precertification discovery moves forward and class certification issues are decided.

During the pendency of a putative or certified class action, courts are empowered and have an obligation to ensure the overall fairness of the process to the parties, and particularly with respect to putative class members whose rights and interests are sought to be represented by the named plaintiffs and their counsel. *See* Fed. R. Civ. P. 23(d) (providing that courts may issue orders that are required, among other things, "to protect class members and fairly conduct the action").

> Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). Rule 23(d) gives district

8

1  courts the power to regulate the notice and opt-out processes and to

2  impose limitations when a party engages in behavior that threatens the

3  fairness of the litigation. *Wang v. Chinese Daily News, Inc.*, 623 F.3d

4  743, 756 (9th Cir. 2010), *judgment vacated on other grounds*, 132 S. Ct.

5  74 (2011). The prophylactic power accorded to the court presiding over

6  a putative class action under Rule 23(d) is broad; the purpose of Rule

7  23(d)'s conferral of authority is not only to protect class members in

8  particular but to safeguard generally the administering of justice and the

9  integrity of the class certification process. *O'Connor v. Uber*

10  *Technologies, Inc.*, No. C-13-3826 EMC, 2014 WL 1760314, at *3

11  (N.D. Cal. May 2, 2014).

12  *Slavokov v. Fast Water Heater Partners I, LP*, 2015 WL 6674575, at *2 (N.D. Cal. Nov.

13  2, 2015) (internal quotation marks omitted).

14  A court's duty is to ensure class action litigation is fair, provided that its orders are

15  "based on a clear record and specific findings that reflect a weighing of the need for a

16  limitation and the potential interference with the rights of the parties," and "carefully

17  drawn [to] limit[] speech as little as possible, consistent with the rights of the parties

18  under the circumstances." *Gulf Oil*, 452 U.S. at 101–02. A court does not need to find

19  that actual misconduct has already occurred; it simply needs a clear record showing

20  "potential interference" with the parties' (including actual or potential putative class

21  members') rights. *O'Connor*, 2014 WL 1760314, at *6–7.

22  Courts in the Ninth Circuit and other circuits have "imposed limitations on

23  communications, and invalidated agreements obtained through those communications,

24  based on findings that the communications were misleading, coercive, or omitted critical

25  information." *Retiree Support Grp. of Contra Costa Cnty. v. Contra Costa Cnty.*, 2016

26  WL 4080294, at * 6 (N.D. Cal. 2016) (citing cases). An order requiring that corrective

27  action be taken should "limit[] speech as little as possible, consistent with the rights of

28

9

1  the parties under the circumstances." *Camp v. Alexander*, 300 F.R.D. 617, 621 (N.D. Cal.

2  2014) (citing *Gulf Oil*, 452 U.S. at 101–02).

**II.   Audible's revised webpages, disclosures, and terms are designed specifically to undermine the fairness of this action and limit class participation by securing new arbitration agreements from putative class members.**

6  A defendant's intentions are largely irrelevant to the question of whether

7  communications made while a class action is pending let putative class members make a

8  fully informed choice concerning their rights and options. *Griffin v. Aldi, Inc.*, 2017 WL

9  1957021, at *5 (N.D.N.Y May 11, 2017). Under Rule 23(d), a court's primary focus is

10 whether the communications at issue could possibly interfere with the parties' rights,

11 including potential class members' rights pre-certification. *See Retiree Support Grp.*,

12 2016 WL 4080294, at *8 ("Class members have a due process right not to be misled

13 while they are deciding whether to participate in a class settlement affecting their

14 rights."). The *potential* to undermine the fairness of class proceedings—not whether the

15 communicator committed actual misconduct—is the determining factor for whether

16 corrective action is appropriate.

17 Here, Audible plainly intended to communicate with putative class members in

18 ways designed to limit potential participation in this action. The statements, disclosures,

19 and underlying terms are each a communication Audible made to consumers online,

20 including Audible members such as Fisse, Weber, and Rogawski who were putative class

21 members *before* Audible revised its webpages, disclosures, and terms. For years, Audible

22 utilized an online sign-up process that this Court held did not provide sufficient notice of

23 Audible's terms and arbitration clause. Dkt. 37 at 7-17. Shortly after this Court issued its

24 ruling on July 17, 2017, Audible revised its sign-up webpage and disclosure to provide a

25 notice that had previously been lacking. Soderstrom Decl. ¶ 5, Ex. 5 (changing the

26 disclosure's wording and adding hyperlinks, but still not placing the disclosure above the

27 "Start Now" button to ensure consumers see it before they take action and accept a free

28 trial). Audible took the same approach to its other relevant webpages and disclosures

10

1   shortly after Plaintiffs pointed out other insufficient or nonexistent disclosures. *Id.* ¶¶ 6-

2   9, Exs. 6-9 (revising the webpage designs and adding new disclosures).

3          The timing of Audible's revisions is not coincidental. Plaintiffs' arguments in this

4   action are driving Audible's website changes. Audible may argue that more clear and

5   conspicuous notices are a net benefit to consumers and are an appropriate business

6   practice, and outside of the class action litigation context Audible may be right. But "the

7   touchstone under Rule 23(d) is not whether the communication is of an ordinary business

8   nature; rather, the inquiry is whether the communication is abusive, misleading, coercive,

9   or otherwise affects the administration of justice in the context of a putative class action

10  lawsuit." *O'Connor*, 2013 WL 6407583, at *4. Audible did not voluntarily review and

11  revise its webpages, disclosures, and terms for the benefit of consumers *before* this action

12  was filed. Instead, Audible waited until it lost its first motion to compel arbitration and

13  was at risk of a nationwide class of consumers complaining about its business practices

14  before it took action. When it finally took action, it tried to fix its disclosures and

15  rehabilitate its arbitration arguments in ways designed specifically to limit the size of the

16  putative class—all without informing its current members of its efforts to secure revised

17  arbitration agreements using revised disclosures. *See Kleiner v. First Nat'l Bank of Atl.*,

18  751 F.2d 1193, 1202 (11th Cir. 1985) ("When confronted with claims pressed by a

19  plaintiff class, it is obviously in the defendants' interest to diminish the size of the class

20  and thus the range of potential liability. Such conduct reduces the effectiveness of the

21  class action for no reason except to undermine the purposes of the rule.").

22         While Rule 23(d) does not forbid Audible from communicating directly with

23  putative class members prior to class certification, courts have a duty to "limit

24  communications that improperly encourage potential class members to not join the suit,

25  especially if they fail to provide adequate information about the pending class action."

26  *Slavokov*, 2015 WL 6674575, at *2 (citing *O'Connor*, 2014 WL 1760314, at *6–7). There

27  simply is no "business communication" or "public-facing website" exception to Rule

28  23(d) on which Audible can rely.

11

SODERSTROM
LAW

Audible's revised disclosures are designed specifically to limit class participation and force putative class members to arbitrate the claims pending in this action on an individual basis. Audible omits from its communications with consumers any mention of the existence, substance, and scope of the claims being made in this action, or the status of this action. This is precisely the type of incomplete and misleading communication that courts routinely correct under Rule 23(d). *See, e.g.*, *O'Connor*, 2013 WL 6407583, at *7 (invalidating arbitration agreements obtained during a pending class action); *Jimenez v. Menzies Aviation Inc.*, 2015 WL 4914727, at *6 (N.D. Cal. Aug. 17, 2015) ("Courts routinely exercise their discretion to invalidate or refuse to enforce arbitration agreements implemented while a putative class action is pending if the agreement might interfere with putative class members' rights) (citing cases); *Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 922 (11th Cir. 2014) (noting the district court that invalidated arbitration agreements secured during the pendency of a collective action "simply did what other district courts routinely do") (citing cases).

The fact that Audible considers its webpage, disclosure, and term revisions as common business communications and publishes them in a public-facing website does not somehow exempt them from oversight under Rule 23(d) and the corresponding fairness and completeness requirements. Other class action defendants have utilized websites and mobile apps to communicate with potential class members, and other courts have ordered appropriate corrective action when the communications could potentially undermine the fairness of the class proceedings. *See O'Connor*, 2013 WL 6407583, at *7. This Court should do the same.

III. **Courts routinely order corrective action, including invalidating arbitration agreements that are secured during a pending class action.**

Courts routinely invalidate agreements that are secured based on communications that are incomplete, misleading, or coercive, and that could *potentially interfere* with the class action process. *See, e.g.*, *id.* (invalidating arbitration agreements); *O'Connor*, 2014 WL 1760314, at *6–7 (refusing to reconsider its order); *Jimenez*, 2015 WL 4914727, at

12

*6 ("Courts routinely exercise their discretion to invalidate or refuse to enforce arbitration agreements implemented while a putative class action is pending if the agreement might interfere with putative class members' rights) (citing cases); *Slavokov*, 2015 WL 6674575, at *3–7 (invalidating settlement releases); *County of Santa Clara v. Astra USA*, 2010 WL 2724512, at *3 (N.D. Cal. July 8, 2010) (invalidating releases); *Camp*, 300 F.R.D. at 624 (invalidating opt-outs); *Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 518 (N.D. Cal. 2010) (invalidating opt-outs); *Kleiner*, 751 F.2d at 1197 (invalidating releases); *Freidman v. Intervet Inc.*, 730 F. Supp. 2d 758, 764 (N.D. Ohio 2010) (invalidating releases); *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 251 (S.D.N.Y. 2005) (invalidating arbitration agreements); *Doe 1 v. Swift Transportation Co., Inc.*, 2017 WL 735376, at *4–6 (D. Ariz. Feb. 24, 2017) (requiring corrective notice where defendant secured new agreements that had a "coercive effect on potential class members"); *Billingsley*, 560 F. App'x at 922 (noting district courts "routinely" invalidate arbitration agreements that were improperly secured).

Audible cannot reasonably dispute that its recent revisions to its webpages, disclosures, and terms are incomplete and misleading insofar as they were driven by arguments and rulings in this action and are designed to limit the putative class members' rights and options concerning this action. Audible <u>did not</u> call consumers' attention to its revised disclosures. Audible <u>did not</u> notify consumers that this action exists and that it includes claims brought on their behalf. Audible <u>did not</u> inform consumers that the revised webpages, disclosures, and terms are specifically intended to affect the members' ability to participate in this action or bring a separate lawsuit. Essentially, Audible is hoping that no putative class members realize that the credit redemption webpages were recently changed and contain a new disclosure, or that no consumers learn that this action exists before they sign up and/or redeem their next credit.

///

///

13

On top of its failure to provide consumers with any relevant information, Audible has not provided any meaningful way for its current members to opt-out of the arbitration requirement sought to be imposed by the revised disclosures. This is important because cancelling automatic monthly payments causes all unredeemed credits to expire immediately without a refund or an audiobook, and Audible requires immediate cancellation if a member objects to any of Audible's existing or revised terms. *See* Dkt. 18-3 (continued use constitutes agreement to all terms if a consumer does not agree he or she "must cancel your membership"). This is a classic Catch-22; putative class members who were Audible members *before* the revisions were implemented must (1) cancel their membership immediately and forfeit all unredeemed credits, (2) keep paying for monthly credits but forego using such credits until this action is decided, or (3) use their credits and agree to arbitration based on the revised disclosures and terms. None of the options are fair to Plaintiffs or Audible members who were already putative class members.

Audible's cancellation policy that requires either arbitration or forfeiture of prepaid credits makes Audible's revised disclosures and terms inherently coercive for consumers such as Fisse, Weber, and Rogawski who were putative class members *before* Audible made its revisions. Fisse, Weber, and Rogawski are representative of thousands (possibly millions) of other consumers who will face the same unfair choices if they ever learn of Audible's revised disclosures and terms.

These are precisely the circumstances in which this Court is authorized and has a duty under Rule 23(d) to take action that ensures the parties' and putative class members' rights and interests are not being undermined or potentially interfered with while this class action is pending. *O'Connor*, 2013 WL 6407583, at *7; *Jiminez*, 2015 WL 4914727, at *6; *Billingsley*, 560 F. App'x at 922.

## IV.   Audible's own webpages provide a clear record of its incomplete and misleading communications directed at putative class members.

Plaintiffs' Motion relies almost exclusively on Audible's own words and webpages. The fact that Plaintiffs only have limited access to or knowledge of Audible's

14

revised disclosures and webpages directed at current members (all of whom are putative class members) means that there may be other revisions or communications with putative class members that Plaintiffs have not yet discovered.

Ultimately, the evidence shows that: (i) Audible has known about Plaintiffs' allegations and claims since January 2017; (ii) Audible started revising its webpages, terms, and disclosures shortly after this action was filed, and it continues to make revisions each time Plaintiffs point out issues with its disclosures or terms; (iii) Audible has not informed its current members of the existence or substance of this action that has been pending on their behalf since March 10, 2017; (iv) Audible has not informed its current members that it intends to argue that taking any action (e.g., redeeming a credit) on a webpage that now includes a revised disclosure constitutes an agreement to arbitrate the claims being made in this action and requires that such member to be excluded from any class or subclass that may be certified.

The record is clear. Audible failed to provide its current members with all relevant information so they could make fully informed choices concerning the revised disclosures and terms. Audible forced an unfair choice for those members who learned of the revisions: cancel and lose credits, or do not cancel and agree to arbitration. Audible's failure to provide complete information to putative class members while trying to secure revised arbitration agreements will unquestionably interfere with such putative class members' legal rights and options, and with the overall fairness of this class action process. Indeed, it has already interfered with Fisse's, Weber's, and Rogawski's rights.

## V.   The Court should order corrective action that ensures the fairness of the class action process going forward.

Plaintiffs have a right under Rule 23 to bring class action claims against Audible and to seek to represent other consumers with similar claims. Plaintiffs also have a right to discover the identities of and obtain testimony from witnesses whose experiences are similar to their own and are therefore relevant to their claims, even if such witnesses do not end up being members of a certified class. *See Putnam v. Eli Lilly & Co.*, 508 F. Supp.

15

2d 812, 813 (C.D. Cal. 2007) (permitting discovery of putative class members' contact information). It is likely that numerous putative class members have already redeemed credits or taken other actions with respect to their Audible memberships and credits without understanding the effect of Audible's revised disclosures and terms. Unless the Court orders corrective action under Rule 23(d), such putative class members will have unknowingly limited their rights and options in connection with this action.

Audible will not suffer any harm if this Court declares that its revised disclosures and terms are invalid *as applied to consumers who were putative class members before Audible made its revisions*. Such an order will not limit Audible's speech, require any new speech by Audible, or implicate Audible's First Amendment rights in any way; rather, such an order will simply preserve the status quo while this action proceeds to the precertification discovery and class certification phases. *See Gulf Oil*, 452 U.S. at 102 (permitting judicially-ordered limitations on communications so long as the limitations are based on a clear record and are carefully drawn to limit as little speech as possible). Moreover, it is not harmful or inequitable for Audible to be unable to enforce arbitration agreements that are based on its revised disclosures and terms because such agreements were secured using incomplete and misleading communications.

To the extent Audible tries to argue that it would be unfair for the Court to invalidate the new disclosures because they are simply common business communications, invalidation is simply the natural consequence of Audible's decision not to disclose the existence and substance of this action and the effect of the revised disclosures to its own members. There is nothing unfair about preserving the status quo when this action was filed and letting Plaintiffs' claims and Audible's defenses be decided on the merits. But it would be highly unfair to let Audible shrink the putative class based on revised disclosures and incomplete communications while it files numerous motions that delay precertification discovery and class certification questions.

///

///



**CONCLUSION**

Audible's revised webpages, disclosures, and terms constitute improper communications designed specifically to limit Audible's potential liability in this action. They are incomplete and misleading because they do not include all of the information that is necessary to let putative class members make fully informed decisions about their rights and options. They were also made quickly and quietly in an effort to secure as many new arbitration agreements as possible before this Court could hear and decide Plaintiffs' anticipated motion for class certification. There is no doubt that the revisions were intended to limit Audible members' potential participation in this action and shrink the size of any class that may be certified.

Audible could have provided its members with full and complete information concerning its revised disclosures and terms and allowed them to make fully informed choices. Audible chose not to provide such information, hoping its efforts would go unnoticed or unchallenged and limit the size of any certified class.

Before Plaintiffs filed this Motion, they inquired whether Audible would agree to limit the effectiveness of its revisions to only new Audible consumers who signed up *after* the revisions were made. Audible refused the proposed stipulation. Soderstrom Decl. ¶ 10. If Audible's revisions were not intended to impact this action and their existing members (including Fisse, Weber, and Rogawski), there would be no good reason for Audible not to agree to limit the effectiveness of its revisions to *future* Audible members only. As it is, this Court has power to invalidate any arbitration agreements or other limitation of rights that Audible secured using the revised disclosures for consumers who were putative class members <u>both</u> before <u>and</u> after the revisions were made. *See O'Connor*, 2014 WL 1760314, at *3-7 (noting courts have authority under Rule 23(d) to order corrective action concerning existing and future putative class members). Audible's rejection of Plaintiffs' offer to stipulate counsels in favor of corrective action that invalidates the revised disclosures for all members *including* those who signed up after the revisions were implemented.

17

1  There is a clear evidentiary record supporting this Motion. The record reveals that
2  Audible's recent revisions to its webpages, disclosures, and terms are being driven by
3  this litigation. The record also shows that Audible's actions are intended to and will
4  interfere with the fairness of these proceedings and with Plaintiffs' and putative class
5  members' rights and options. Indeed, Audible's actions have already interfered with
6  Fisse's, Weber's, and Rogawski's rights and ability to keep and use prepaid credits they
7  purchased *before* the disclosures were revised.

8  Corrective action is necessary and appropriate in these circumstances to protect
9  Plaintiffs' and putative class members' rights and preserve the status quo pending this
10 Court's eventual decision on Plaintiffs' motion for class certification. Plaintiffs
11 respectfully request that the Court grant this Motion and issue an order stating that any
12 arbitration agreements that Audible has secured based on its revised terms and
13 disclosures are invalid and unenforceable because they were secured from consumers
14 who were not provided with all information necessary to make fully informed decisions.

16 Dated: January 22, 2018

SODERSTROM LAW PC

By: */s/ Jamin S. Soderstrom*

Jamin S. Soderstrom

*Counsel for Plaintiffs and the Proposed Class*

18

1

## <u>CERTIFICATE OF SERVICE</u>

2      The undersigned certifies that on January 22, 2018, I caused the foregoing

3   document to be served on all counsel of record by the Court's CM/ECF electronic filing

4   system.

5                             By: */s/ Jamin S. Soderstrom*
                                  Jamin S. Soderstrom
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28