JEDEDIAH WAKEFIELD (CSB No. 178058)
jwakefield@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

ANNASARA G. PURCELL (CSB No. 295512)
apurcell@fenwick.com
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA 98101
Telephone: 206.389.4510
Facsimile: 206.389.451

ARMEN NERCESSIAN (CSB No. 284906)
anercessian@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

Attorneys for AUDIBLE, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### (WESTERN DIVISION – LOS ANGELES)

| | |
|---|---|
| GRANT MCKEE, TAYLOR FISSE, BRYAN REES, ERIC WEBER, and MICHAEL ROGAWSKI, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AUDIBLE, INC.,<br><br>Defendant. | Case No.: 2:17-cv-01941 GW(Ex)<br><br>**AUDIBLE'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS AS TO PLAINTIFFS ERIC WEBER AND MICHAEL ROGAWSKI; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: March 12, 2018<br>Time: 8:30 AM<br>Crtm: 9D<br>Judge: George H. Wu<br>Trial Date: NONE SET |

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................... 2

II.    BACKGROUND ........................................................................................ 3

    A.    The Audible Service ........................................................................ 3

    B.    Mr. Rogawski's Use of the Audible Service ................................. 4

    C.    Mr. Weber's Use of the Audible Service ..................................... 10

III.   ARGUMENT ........................................................................................... 12

    A.    Washington Law Governs Plaintiffs' Agreements with Audible and This Lawsuit. ............................................................................ 13

    B.    Plaintiffs Repeatedly Agreed to Arbitrate Disputes Relating To Their Use of Audible. ................................................................... 13

    C.    The Court Has Already Found That Audible's Arbitration Provision Is Enforceable. ................................................................. 17

    D.    The Audible Arbitration Agreement Covers Any Claim Arising From Plaintiffs' Use of the Audible Service. ............................... 18

    E.    Amazon's Arbitration Provision Also Requires Mr. Weber To Arbitrate His Claim Against Audible. ............................................. 20

IV.    CONCLUSION ...................................................................................... 233

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# TABLE OF AUTHORITIES

**CASES**                                                                  **PAGE(S)**

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ...................................................................... 18

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) ...................................................................... 19

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ................................................... 12, 19

*Ekin v. Amazon Servs., LLC*,
    84 F. Supp. 3d 1172 (W.D. Wash. 2014) ............................ 18, 19, 20

*Fagerstrom v. Amazon.com, Inc.*,
    141 F. Supp. 3d 1051 (S.D. Cal. 2015) ............................... 13, 18, 19

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) ...................................................................... 13

*In re Verisign, Inc., Derivative Litig.*,
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) ........................................ 19

*Levin v. Alms & Assocs., Inc.*,
    634 F.3d 260 (4th Cir. 2011) ........................................................ 20

*Meyer v. Uber Techs., Inc.*,
    No. 16-2750-cv, 2017 WL 3526682 (2d Cir. Aug. 17, 2017)........... 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .......................................................................... 19

*Peters v. Amazon Servs. LLC*,
    2 F. Supp. 3d 1165 (W.D. Wash. 2013) .............................. 18, 19, 20

*Republic of Nicaragua v. Standard Fruit Co.*,
    937 F.2d 469 (9th Cir. 1991) ........................................................ 19

*Selden v. Airbnb, Inc.*,
    No. 16-CV-00933 (CRC), 2016 WL 6476934 (D.D.C. Nov. 1,
    2016) ............................................................................................. 13

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# TABLE OF AUTHORITIES
**(continued)**

**STATUTES**                                                                                      **PAGE(S)**

Federal Arbitration Act, 9 U.S.C. §§ 1-14 .......................................................... 2, 19

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on March 12, 2018 at 8:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 9(D) of the U.S. District Court for the Central District of California, located at 350 West First Street, Los Angeles, CA, 90012, Defendant Audible, Inc. ("Audible") will and hereby does move the Court for an order compelling the individual arbitrations of Plaintiffs Eric Weber and Michael Rogawski's claims and dismissing these actions with respect to Mr. Weber and Mr. Rogawski with prejudice.  Audible makes this Motion pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-14, and upon the grounds that Mr. Weber and Mr. Rogawski agreed on multiple occasions to arbitrate all claims relating to the Audible service.

This Motion is based on this Notice of Motion and Motion, Audible's Memorandum of Points and Authorities, the Declaration of Aniket Gune in Support of Audible's Motion ("Gune Decl.") and all exhibits thereto, the Declaration of Karen Ressmeyer in Support of Audible's Motion ("Ressmeyer Decl.") and all exhibits thereto, all documents in the Court's file, and on such other arguments as may be presented to the Court.[1]  This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on January 10, 2018.

Dated:  January 22, 2018          FENWICK & WEST LLP

By: */s/ Jedediah Wakefield*
    Jedediah Wakefield
    Annasara G. Purcell
    Armen Nercessian

    Attorneys for AUDIBLE, INC.

---

[1] This motion satisfies Audible's obligation to respond to the Second Amended Complaint with respect to Plaintiffs Weber and Rogawski at this stage. *See Lamkin v. Morinda Props. Weight Parcel, LLC*, 440 F. App'x 604, 607 (10th Cir. 2011); *JS Barkats, PLLC v. BE, Inc.*, 12 Civ. 6779 (JFK), 2013 WL 444919, at *2 (S.D.N.Y. Feb. 6, 2013) ("[P]arties are permitted to file motions to stay in lieu of an answer or other dispositive motions.").  Audible reserves the right to file a Rule 12(b) motion at a later time. *See Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1475 (9th Cir. 1988).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On July 17, 2017, the Court granted Amazon's motion to compel arbitration as to Plaintiff Grant McKee, but denied the motion as to Audible.  *See* Dkt. No. 37 ("McKee Order").  Although the Court found that this dispute fell within the scope of that enforceable arbitration provision, it concluded that Mr. McKee had not assented to the terms because of the particular way in which he had signed up for and used the Audible service.  Later, however, the Court granted a motion to compel arbitration as to plaintiff Seth Beals, finding that Mr. Beals had agreed to Audible's arbitration agreement when redeeming membership credits.  *See* Dkt. No. 53 ("Beals Order") at 13-15.

Audible now seeks to enforce its arbitration agreement against two newly added plaintiffs, Eric Weber and Michael Rogawski ("Plaintiffs" for purposes of this motion), who agreed to Audible's arbitration agreement in much the same manner as Mr. Beals.  Like Mr. Beals, Mr. Rogawski in 2015 redeemed a credit from Audible through the Amazon.com website.  Moreover, both Mr. Weber and Mr. Rogawski also redeemed membership credits on the Audible.com website.  In doing so, they were presented with clear disclosures that by purchasing audiobooks with Audible membership credits, they were agreeing to the Audible Service Conditions of Use (the "COUs").  Like the notice to Mr. Beals, these notices provided clearly marked hyperlinks to the COUs, and there was no doubt that by clicking on a virtual "button" to proceed, Plaintiffs were agreeing to Audible's terms of use.  The COUs contained an arbitration agreement that is identical to the provision that the Court has already found valid and enforceable as to Mr. Beals.

Audible's arbitration agreement thus bars Mr. Weber and Mr. Rogawski from pursuing this lawsuit.  The Federal Arbitration Act—and well-established Supreme Court authority applying it—instruct that the arbitration provision here is valid and enforceable.  Plaintiffs' claims fall squarely within the scope of the arbitration

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

provision, as they all arise from Plaintiffs' use of the Audible service. Accordingly, the Court should grant Audible's motion, compel arbitration as to Mr. Weber and Mr. Rogawski, and dismiss their claims in their entirety.

In addition, Mr. Weber is a longtime Amazon customer, and he also agreed to arbitrate all disputes arising out of his use of Amazon's or its affiliates' services or products. Although the Court previously found that Mr. McKee's agreement with Amazon was insufficient to compel arbitration as to his claims against Audible, Mr. Weber's case is different, as his dispute arises from his use of credit cards on his Amazon account, and therefore falls squarely in the scope of his arbitration agreement with Amazon. For this additional reason, the Court should compel arbitration as to Mr. Weber's claims.

## II.    BACKGROUND

### A.    The Audible Service

As the Court will recall, Audible, Inc. is an audiobook and spoken audio information and entertainment service. Gune Decl. ¶ 2. Audible offers more than 250,000 audiobooks that users can purchase and listen to through the Audible app on a variety of mobile devices. *Id.* Audible is an Amazon company, and its customers can purchase Audible audiobooks through the Audible online storefront (at www.audible.com), through the Amazon desktop and mobile websites, or using Fire tablets. *Id.* ¶ 4.

In addition to allowing customers to purchase audiobooks for sale at regular prices, Audible also offers a membership service. Gune Decl. ¶¶ 2-3. Audible members pay a monthly or annual fee, and in turn they receive membership benefits. *Id.* These benefits include access to exclusive original audio series on Audible Channels, discounts on audiobook purchases, complimentary subscriptions to digital audio digest versions of the *Wall Street Journal* or *The New York Times*, and the ability to return audiobooks with the Great Listen Guarantee. *Id.*

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Among the many benefits of an Audible membership is the ability to select one or more books each month or year (depending on the membership plan) at no additional cost while their respective memberships are active.  Gune Decl. ¶¶ 2-3. Audible provides a customer that signs up for a membership with one or more "credits" every month or year, which the member can redeem for audiobooks of the member's choice.  *Id.* ¶ 3.  For example, with a "Gold Monthly" membership, in addition to other membership benefits, a member receives one membership credit each month.  The customer may then redeem that one credit for one audiobook, regardless of the price of the book.  *Id.*  Once a user redeems a membership credit for an audiobook, the audiobook is for the customer to keep, and it remains in the user's Audible library forever, even if the customer subsequently cancels the membership.  *Id.*

Users who do not redeem their membership credit for a book in a given month can roll one or more credits over into the next month, until, on the Gold Membership, they reach the rollover limit of five credits, at which point any additional unused credits from prior months will no longer roll over.  Gune Decl. ¶ 5.  Because credits are a membership benefit, they are lost if a user cancels his or her membership.  The Audible Service Conditions of Use clearly state that membership credits "expire immediately upon the termination of your membership."  *Id.*, Ex. 9.

**B.     Mr. Rogawski's Use of the Audible Service**

On September 21, 2014, Mr. Rogawski signed up for an Audible "Gold Monthly" membership that included a 30-day free trial on Audible.com using his existing Amazon Prime account.  Gune Decl. ¶ 9.  Between September 2014 and November 2017, Mr. Rogawski redeemed membership credits for some seventeen audiobooks, both from the Amazon and Audible desktop interfaces.  *Id.* ¶ 10.

For instance, on September 30, 2015, Mr. Rogawski redeemed a membership credit on the Amazon desktop website. Gune Decl. ¶ 12, Ex. 2.  When using the

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Amazon.com desktop website to redeem audiobook credits, Mr. Rogawski would have selected his audiobook, which would have sent him to the corresponding webpage for the audiobook in the Amazon.com storefront. *Id.* On that page, Mr. Rogawski would then have been invited to complete his purchase by clicking one of the following two buttons:



*Id.* Immediately under these buttons, Mr. Rogawski would have seen a disclosure that read: "By completing your purchase, you agree to Audible's <u>Conditions of Use</u> and <u>Privacy Notice</u>."[2] *Id.* The "Conditions of Use" language contained a hyperlink to the "Audible Service Conditions of Use", which at the time included the following arbitration agreement:

---

[2] Audible subsequently changed the flow for redeeming credits through the Amazon desktop website. Gune Decl. ¶ 14. Audible's records, however, confirm that Mr. Rogawski saw the disclosures above during his credit redemption on September 30, 2015. *Id.*

AUDIBLE'S MOT. TO COMPEL
ARBITRATION AND DISMISS          5          Case No. 2:17-cv-1941 GW(Ex)

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**DISPUTES**

**Any dispute or claim relating in any way to your use of the Audible Service will be resolved by binding arbitration, rather than in court,** except that you may assert claims in small claims court if your claims qualify. The Federal Arbitration Act and federal arbitration law apply to this agreement.

**There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award on an individual basis the same damages and relief as a court (including injunctive and declaratory relief or statutory damages), and must follow the terms of these Conditions of Use as a court would.**

To begin an arbitration proceeding, you must send a letter requesting arbitration and describing your claim to our registered agent: Corporation Service Company, 300 Deschutes Way SW, Suite 304, Tumwater, WA 98051. The arbitration will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA's Supplementary Procedures for Consumer-Related Disputes. The AAA's rules are available at www.adr.org or by calling 1-800-778-7879. Payment of all filing, administration and arbitrator fees will be governed by the AAA's rules. We will reimburse those fees for claims totaling less than $10,000 unless the arbitrator determines the claims are frivolous. Likewise, Audible will not seek attorneys' fees and costs in arbitration unless the arbitrator determines the claims are frivolous. You may choose to have the arbitration conducted by telephone, based on written submissions, or in person in the county where you live or at another mutually agreed location.

**We each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action.** If for any reason a claim proceeds in court rather than in arbitration **we each waive any right to a jury trial**. We also both agree that you or we may bring suit in court to enjoin infringement or other misuse of intellectual property rights.

*Id.* ¶ 13, Ex. 3 at 3 (bold in original).  Notably, this is the same redemption flow

that the Court found created assent to Audible's Conditions of Use as to Mr. Beals.

*Id.* ¶ 15; *see also* Beals Order at 13–15.

Mr. Rogawski also agreed to arbitrate his claims against Audible when he

redeemed a membership credit on the Audible desktop website on October 18,

2017.  Gune Decl. ¶ 16, Exs. 4-5.  To redeem on the Audible desktop website, he

selected an audiobook, navigated to the corresponding webpage for that title on the Audible website, and had to click either the "Buy Now with 1 Credit" or the "Add to Cart" button to redeem. *Id.* ¶ 17, Ex. 6.  Audible's records reflect that Mr. Rogawski clicked the "Buy Now with 1 Credit" button and, as such, he would have seen, in the same location on screen, a button that read "Confirm Purchase" with a hyperlinked disclosure immediately underneath:



Gune Decl. ¶ 17, Ex. 7.  At the time of the October 18, 2017 transaction, the disclosure that Mr. Rogawski saw was similar but contained slightly different language: "By clicking on the Confirm Purchase button, you agree to Audible's Conditions of Use and Amazon's Privacy Notice."  *Id.* ¶ 18, Ex. 8.  Mr. Rogawski could not complete his redemption without clicking "Confirm Purchase" and agreeing to the Audible COUs.

Mr. Rogawski also redeemed credits on the Audible mobile website.  For example, on November 25, 2017, he completed a transaction by selecting his audiobook, clicking first the "Buy Now with 1 Credit" button and then clicking the "Confirm Purchase" button that pops up in the same location on the screen:

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

*Id.* at ¶¶ 16, 21, Exs. 11-12.  As with the desktop website, directly under the "Confirm Purchase" button on the Audible mobile website, Mr. Rogawski saw the disclosure: "By confirming your purchase, you agree to Audible's <u>Conditions of Use</u> and Amazon's <u>Privacy Notice</u>."  *Id.*  And, once again, Mr. Rogawski pressed the "Confirm Purchase" button and agreed to the Audible COUs.  *Id.*

The "Conditions of Use" language in both these disclosures contained a blue hyperlink.  Had Mr. Rogawski clicked on the hyperlink, he would have been directed to a webpage containing the Audible COUs, which contained the following dispute resolution provision:

> **Disputes; Limitation of Liability**
>
> **Any dispute or claim arising from or relating to these Terms or your use of the Service is subject to the binding arbitration, governing law, disclaimer or warranties, limitation of liability and all other terms in the <u>Amazon.com Conditions of Use</u>.**

Gune Decl. ¶ 19, Ex. 9 at 2 (bold in original).  The term "Amazon.com Conditions

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

of Use" was a blue, bolded hyperlink, leading to an Amazon.com page titled "Conditions of Use." *Id.* ¶ 20, Ex. 10. There, Mr. Weber would have seen the following dispute resolution provision:

**DISPUTES**

**Any dispute or claim relating in any way to your use of the Amazon Service, or to any products or services sold or distributed by way of Amazon or through Amazon.com will be resolved by binding arbitration, rather than in court,** except that you may assert claims in small claims court if your claims qualify. The Federal Arbitration Act and federal arbitration law apply to this agreement.

**There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award on an individual basis the same damages and relief as a court (including injunctive and declaratory relief or statutory damages), and must follow the terms of these Conditions of Use as a court would.**

To begin an arbitration proceeding, you must send a letter requesting arbitration and describing your claim to our registered agent: Corporation Service Company, 300 Deschutes Way SW, Suite 304, Tumwater, WA 98051. The arbitration will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA's Supplementary Procedures for Consumer-Related Disputes. The AAA's rules are available at www.adr.org or by calling 1-800-778-7879. Payment of all filing, administration and arbitrator fees will be governed by the AAA's rules. We will reimburse those fees for claims totaling less than $10,000 unless the arbitrator determines the claims are frivolous. Likewise, Audible will not seek attorneys' fees and costs in arbitration unless the arbitrator determines the claims are frivolous. You may choose to have the arbitration conducted by telephone, based on written submissions, or in person in the county where you live or at another mutually agreed location.

**We each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action.** If for any reason a claim proceeds in court rather than in arbitration **we each waive any right to a jury trial**. We also both agree that you or we may bring suit in court to enjoin infringement or other misuse of intellectual property rights.

*Id.* ¶ 20, Ex. 10 at 3-4 (bold in original). This dispute resolution provision is

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

virtually identical to the one that appears in the historical Audible COUs, except that it covers disputes "**relating in any way to your use of the Amazon Service, or to any products or services sold or distributed by way of Amazon or through Amazon.com** . . . ." By contrast, the historical Audible COUs covered "**[a]ny dispute or claim relating in any way to your use of the Audible Service** . . . ." *Id.* ¶ 20, Ex. 3 at 3.

These provisions obligated Mr. Rogawski to arbitrate any disputes with either Audible or Amazon, and Mr. Rogawski agreed to them when he clicked on the "Confirm Purchase" button to redeem credits on the Audible desktop and mobile websites.

**C.    Mr. Weber's Use of the Audible Service**

On March 22, 2013, Mr. Weber signed up for an Audible "Gold Monthly" membership that included a 30-day free trial on Audible.com, using his existing Amazon account. Gune Decl. ¶ 23. Mr. Weber's trial membership renewed into a paid membership on April 21, 2013. *Id.* ¶ 24. Between March 2013 and December 2017, Mr. Weber received and redeemed some sixty-nine audiobook credits. *Id.* Mr. Weber remains a current Gold Monthly member of Audible today. *Id.* During his time as an Audible member, Mr. Weber repeatedly received notice of, and repeatedly agreed to, the Audible COUs.

Mr. Weber redeemed no fewer than three membership credits in 2017 via the Audible mobile web platform: he redeemed two credits this way on October 24, 2017, and one on December 2, 2017. Gune Decl. at ¶ 25, Exs. 13-14. To redeem these credits, Mr. Weber proceeded through the same mobile redemption flow that Mr. Rogawski did for his November 25, 2017 redemption: Mr. Weber selected the title he wanted on Audible's mobile website, and clicked the "Buy Now with 1 Credit" button, followed by the "Confirm Purchase" button. Directly under the "Confirm Purchase" button, the following disclosure appeared: "By confirming your purchase, you agree to Audible's Conditions of Use and Amazon's Privacy

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  Notice." *Id.* at ¶ 26, Exs. 9-11.

2  Mr. Weber bases his claims in the Second Amended Complaint against

3  Audible on allegedly unauthorized charges made to payment methods stored to his

4  Amazon account.  Dkt. No. 65 at ¶ 16–19.  Amazon requires its customers to agree

5  to the Amazon Conditions of Use, including the arbitration clause appearing above,

6  when they sign up for the Amazon Prime.  Ressmeyer Decl. ¶ 5, Exs. 3–4.  Mr.

7  Weber is a longtime customer of Amazon; his account history reflects that he

8  signed up for a free trial membership to Amazon Prime on December 23, 2011,

9  which then converted to an annual paid membership on January 23, 2012.  *Id.* ¶ 6.

10 Whether Mr. Weber signed up for Prime on the Amazon desktop or mobile website,

11 he would have had to press a sign-up button with a disclosure immediately next to

12 it stating that, by signing up, he was agreeing to those terms.  *Id.* ¶¶ 5, 7, Exs. 3–4.

13 Amazon also requires a customer to agree to the Amazon Conditions of Use

14 every time the customer makes purchases on Amazon using the standard checkout

15 page.  Ressmeyer Decl. ¶ 3, Ex. 2.  To place an order from Amazon's standard

16 checkout page on the Amazon website or through its app, customers must press a

17 "Place your order" button:

18

19

20

21



*Amazon Desktop Website*

22

23

24

25



26

27

*Amazon Mobile Website*

28

AUDIBLE'S MOT. TO COMPEL
ARBITRATION AND DISMISS            11        Case No. 2:17-cv-1941 GW(Ex)

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

*Amazon App*

*Id.*  In all cases, Amazon includes a prominent hyperlinked disclosure to the Amazon Conditions of Use, and its arbitration provision, in close proximity to the "Place your order" button.  *Id.*  Amazon's records show that Mr. Weber placed ***223 separate purchase orders for 314 items*** on his Amazon account between October 29, 2011 and December 26, 2017.[3]  *Id.* ¶ 4.  Each time Mr. Weber checked out using the standard Amazon checkout page, he would have seen the disclosures above and had the opportunity to review and accept the Amazon Conditions of Use, including its arbitration provision.  *Id.*

## III.   ARGUMENT

A court's role in resolving a motion to compel arbitration is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  As described below, Mr. Weber and Mr. Rogawski agreed to arbitrate their claims against Audible multiple times over their time as Audible customers.  This includes, but is not limited to, when they redeemed Audible credits on the Amazon.com or Audible websites.  Moreover, their claims arise from their respective use of the Audible service, and thus fall within the scope of their arbitration agreements with Audible.  Mr. Weber's claim also arises from his use of his Amazon account, and therefore

---

[3] Since August 2011, Amazon's Conditions of Use have contained an arbitration agreement with a class action waiver that is substantively identical to the arbitration agreement that appear in Amazon's Conditions of Use today.  Ressmeyer Decl. ¶ 2, Ex. 1.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

falls within the Amazon arbitration agreement.  Accordingly, this Court should compel both Mr. Weber and Mr. Rogawski to arbitrate their claims against Audible.

## A. Washington Law Governs Plaintiffs' Agreements with Audible and This Lawsuit.

The Court has already twice held that Washington law governs this dispute. *See* McKee Order at 6–7; Beals Order at 3–4.  Washington state law does not conflict with any California state law.  *See* McKee Order at 7; Beals Order at 3–4. If anything, "a plausible case can be made that Washington's unconscionability doctrine is more protective of consumers than California's."  *See Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051, 1063–64 (S.D. Cal. 2015) (applying Washington rather than California state law, in accordance with the Amazon Conditions of Use).  This motion also implicates the same legal issues as Audible's previous motions to compel arbitration as to Plaintiffs Grant McKee and Seth Beals did.  Thus, there is no reason for this Court to depart from its previous decisions.

## B. Plaintiffs Repeatedly Agreed to Arbitrate Disputes Relating To Their Use of Audible.

Courts "apply ordinary state-law principles that govern the formation of contracts" to determine whether parties agreed to arbitrate.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  In the digital context, the question of assent turns on whether a website puts the customer on "reasonable notice" of its terms and conditions.  *See, e.g.*, *Fagerstrom*, 141 F. Supp. 3d at 1068–69.  This reasonable or "inquiry" notice standard is not difficult to satisfy, and it is easily met here.  "Any reasonably-active adult consumer will almost certainly appreciate that by signing up for a particular service, he or she is accepting the terms and conditions of the provider."  *Selden v. Airbnb, Inc.*, No. 16-CV-00933 (CRC), 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016) (holding that user was bound by an arbitration clause, where Airbnb presented a hyperlinked disclosure stating that "By signing up, I agree to Airbnb's Terms of Service" in close

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

proximity to the sign-up buttons); *see also Meyer v. Uber Techs., Inc.*, No. 16-2750-cv, 2017 WL 3526682, at *7 (2d Cir. Aug. 17, 2017) (vacating lower court's denial of motion to compel arbitration, and holding that the Uber mobile app provided reasonably conspicuous notice of, and that customer unambiguously manifested assent to, Uber's terms of service).

Here, Plaintiffs Weber and Rogawski assented to the substantively identical Audible Service Conditions of Use and its dispute resolution provision on numerous occasions when they redeemed credits through the Amazon.com and Audible.com desktop or mobile websites. *See* Gune Decl. ¶¶ 8-26, Exs. 1-14. During each of these redemptions, Mr. Weber and Mr. Rogawski (upon navigating to the corresponding webpage for an audiobook of their choice) were invited to purchase an audiobook by clicking a virtual button next to a conspicuous hyperlinked disclosure.

*Redemption on Audible Desktop Site.*  As discussed above, Mr. Rogawski redeemed a membership credit on the Audible desktop website on at least October 18, 2017.  Gune Decl. ¶ 16, Exs. 4-5.  He did so by clicking the "Buy Now with 1 Credit" button, followed by a "Confirm Purchase" button with a hyperlinked disclosure immediately adjacent to it, stating that by doing so they were agreeing to Audible's COUs.  *Id.* ¶ 17, Exs. 6-7.  At the time of Mr. Rogawski's Audible desktop web credit redemption on October 18, 2017, the disclosure read: "By clicking the Confirm Purchase button, you agree to Audible's <u>Conditions of Use</u> and Amazon's <u>Privacy Notice</u>."  *Id.* ¶ 18, Ex. 8.  The disclosure was clear and included a hyperlink to the Audible COUs, which incorporated by reference the arbitration agreement in the Amazon Conditions of Use through 2017.  *Id.*  Mr. Rogawski thus agreed to the Audible COUs, and the arbitration agreement that they incorporated, when he redeemed credits on the Audible desktop website.

*Redemptions on Audible Mobile Site.*  Both Mr. Weber and Mr. Rogawski redeemed membership credits on the Audible mobile website:  Mr. Weber

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

redeemed two on October 24, 2017 and one on December 2, 2017, and Mr. Rogawski redeemed a credit on November 25, 2017.  Gune Decl. at ¶¶ 16, 21, 25, Exs. 4-5, 11-14.  They both did so by selecting an audiobook, pressing one button to "Buy Now with 1 Credit," and then another to "Confirm Purchase."  *Id.*  They both pressed the "Confirm Purchase" button with a hyperlinked disclosure immediately adjacent to it, stating that by doing so they were agreeing to Audible's COUs: "By confirming your purchase, you agree to Audible's <u>Conditions of Use</u> and Amazon's <u>Privacy Notice</u>."  *Id.*

*Redemption on Amazon Desktop Site.*  Mr. Rogawski also agreed to Audible's arbitration provision when he redeemed a membership credit through the Amazon desktop website on September 30, 2015.  Gune Decl. ¶ 12, Ex. 2.  After navigating to the page corresponding to his audiobook selection, Mr. Rogawski was presented with a count of the Audible membership credits he had remaining on his account and an invitation to purchase the audiobook by pressing one of two buttons ("Buy with 1 Audible Credit" or "Buy with 1-Click"), with a hyperlinked disclosure immediately below:



*Id.*  The "Conditions of Use" language in this disclosure contained a hyperlink to

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

the Audible COUs, which at the time included its own complete arbitration agreement. *Id.* ¶ 13, Ex. 3 at 3.

The disclosures Plaintiffs saw in this case do not contain the design issues this Court identified when resolving Audible's earlier request to compel arbitration with respect to Plaintiff McKee. *See generally* McKee Order at 11–17.  Indeed, the disclosures that Mr. Rogawski saw during his September 30, 2015 credit redemption on the Amazon desktop website are identical to the ones that Mr. Beals used, and which the Court found sufficient in its earlier order.  *Compare* Gune Decl. ¶¶ 8-26, Exs. 2, 6-8, 11-12, *with* Beals Order at 13–15.

*First*, unlike the mobile sign-up flow that Plaintiff McKee encountered, these Plaintiffs performed all the relevant transactions on platforms whose flows required no scrolling to see the disclosures or to redeem credits.  *Compare* Gune Decl. ¶¶ 8-26, Exs. 2, 6-8, 11-12, *with* McKee Order at 11.  Plaintiffs redeemed credits through the mobile web interface, whose design (1) does not to require typing that might prompt a pop-up keyboard to obstruct the screen; and (2) displays the disclosures in a way that does not require any scrolling to see them.  *Id.* at ¶¶ 8-26, Exs. 2, 6-8, 11-12.  With both the mobile and desktop redemption flows, the required "Confirm Purchase" button and the Conditions of Use disclosure appeared on the screen in the same location that the "Buy Now with 1 Credit" button did, with no need to scroll further.  *Id.*  Thus, there was no possibility that they could see the button without seeing the disclosure right below.

*Second*, unlike the notice in the mobile sign-up flow, the disclosures that these Plaintiffs saw—both when they first started their trial and when they later redeemed credits on the Amazon.com or Audible desktop websites—all contained blue hyperlinked "Conditions of Use" language.  *Compare* Gune Decl. ¶¶ 8-26, Exs. 2, 6-8, 11-12, *with* McKee Order at 11.

*Third*, unlike the "By completing your purchase" language that the Court found problematic in the context of Mr. McKee's initial sign-up, here it was clear

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

that by clicking the "Confirm Purchase" button to  proceed, Plaintiffs were agreeing

to be bound by Audible's Conditions of Use.  In this context there was no question

that the "By confirming your purchase" language referred to clicking the

immediately adjacent "Confirm Purchase" button.  *See* Gune Decl. ¶¶ 8-26, Exs. 2,

6-8, 11-12; *cf.* Beals Order at 14 ("The Court finds that the Credit Flow placed

Beals on constructive notice and that he would assent to the Audible COU upon

completing his 'purchase' of one audiobook for one credit . . . .").

In short, there is no reasonable dispute that both Mr. Weber and Mr.

Rogawski assented to Audible's Service Conditions of Use, including the

arbitration and class waiver provisions, on multiple occasions when redeeming

membership credits.  Accordingly, just as this Court found that Plaintiff Beals

assented to Audible's Conditions of Use when redeeming credits, *see* Beals Order

at 17, it should find that Mr. Weber and Mr. Rogawski agreed to Audible's

Conditions of Use when redeeming credits on the Amazon or Audible websites.

## C.   The Court Has Already Found That Audible's Arbitration Provision Is Enforceable.

There are no material differences between the arbitration provision that

appeared in the Audible Service Conditions of Use in 2015–2017 and the

arbitration provision that the Court found enforceable as to Mr. Beals (and as to Mr.

McKee).  *Compare* Gune Decl. ¶¶ 13, 19-20, Exs. 3, 9-10, *with* Beals Order at 13–

15, *and* McKee Order at 19–22.  Indeed, the arbitration provision that Mr.

Rogawski agreed to in the Audible Service Conditions of Use for his 2015

redemption covers "**[a]ny dispute or claim relating in any way to your use of the

Audible Service . . . .**"  Gune Decl. ¶ 13, Ex. 3 at 3 (bold in original).  The

arbitration provision that the Court applied to Beals was identical.  *See* Beals Order

at 13.  Accordingly, there is no basis for this Court to disturb, and Plaintiffs can

offer no reason for this Court to reexamine, the earlier ruling that "the arbitration

provision contained in the Audible COU is enforceable."  *See* Beals Order at 15.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

On the contrary, Audible's arbitration agreement and class action waiver is modeled on the very provision that the Supreme Court approved in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346–47 (2011).  The Audible arbitration agreement contains a number of provisions designed to make arbitration accessible and fair to consumers.  For instance, it includes a provision stating that Audible and/or Amazon will pay all arbitration fees for claims less than $10,000.  *See* Gune Decl. ¶¶ 13, 20, Exs. 3 at 3, 10 at 3-4; *cf. Concepcion*, 563 U.S. at 336–37.  It permits consumers to bring claims in small claims court in lieu of arbitration.  *See* Gune Decl. ¶¶ 13, 20, Exs. 3 at 3, 10 at 3-4; *cf. Concepcion*, 563 U.S. at 336–37.  It allows consumers to decide how they want to participate, whether "by telephone, based on written submissions, or in person in the county where you live or at another mutually agreed location."  *See* Gune Decl. ¶¶ 13, 20, Exs. 3 at 3, 10 at 3-4; *cf. Concepcion*, 563 U.S. at 336–37.  And it authorizes the arbitrator to "award on an individual basis the same damages and relief as a court," including injunctions and declaratory relief.  *See* Gune Decl. ¶¶ 13, 20, Exs. 3 at 3, 10 at 3-4; *cf. Concepcion*, 563 U.S. at 336–37.

Indeed, courts across the country, including this one, have repeatedly found that the substantially identical provision that appears in the Amazon Conditions of Use, and the class action waiver it contains, are valid and enforceable.  *See* McKee Order at 18–22 (approving the Amazon arbitration agreement); *Fagerstrom,* 141 F. Supp. 3d at 1064–76 (same); *Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1175–78 (W.D. Wash. 2014) (same); *Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165, 1169 (W.D. Wash. 2013), *aff'd*, No. 14-35294, 2016 WL 5940052 (9th Cir. Oct. 13, 2016) (same).  Therefore, consistent with its earlier decision in this lawsuit, this Court should reject any argument by Mr. Weber and Mr. Rogawski that the Audible arbitration agreement is unconscionable or invalid, and it should enforce the agreement and compel arbitration as to those Plaintiffs.

\\

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

### D.   The Audible Arbitration Agreement Covers Any Claim Arising From Plaintiffs' Use of the Audible Service.

A "presumption of arbitrability" attaches whenever a court recognizes a valid contract containing an arbitration clause.  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).  In the Ninth Circuit, even "the most minimal indication of the parties' intent to arbitrate must be given full effect."  *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991); *accord Fagerstrom*, 141 F. Supp. 3d at 1059 (quoting *Republic of Nicaragua* and ordering arbitration based on Amazon's Conditions of Use); *Peters*, 2 F. Supp. 3d at 1169 (same with respect to Amazon business services agreement).  And "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Here, the arbitration agreements cover "**[a]ny dispute or claim arising from or relating to these Terms or your use of the Service . . . .**"  Gune Decl. ¶ 19, Ex. 9 at 19 (bold in original); *see also id.* at ¶¶ 13, 20, Exs. 3 at 3, 10 at 3-4.  The "broad and far reaching" language of the arbitration clause "leaves little doubt that the dispute [here] is subject to arbitration."  *Chiron*, 207 F.3d at 1131 (ordering arbitration as breadth of arbitration agreement and federal policy favoring arbitration embodied in the Federal Arbitration Act "leaves no place for the exercise of discretion by a district court") (internal quotations and citations omitted); *see also In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007) (holding that arbitration agreement that covered "any other services provided by . . . KPMG," and disputes and claims involving "any entity for whose benefit the services in question are or were provided" had broad scope and *retroactive effect*).  Indeed, courts examining the substantially identical Amazon arbitration agreement have found that its use of "any dispute" language gave the agreement broad scope: "[W]hen arbitration agreements contain broad 'relating to any dispute' language, both future *and past disputes* are included in the scope of the

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

arbitration agreement." *Ekin*, 84 F. Supp. 3d at 1178 (emphasis added) (arbitration agreement in Amazon Conditions of Use had retroactive effect); *see also Peters*, 2 F. Supp. 3d at 1173 (same with Amazon business services agreement).[4]

Plaintiffs' claims against Audible arise from or relate to their use of the Audible service.  Mr. Rogawski's claims relate to Audible's policies and practices concerning Audible membership credits.  *See* SAC ¶¶ 20–23.  Mr. Weber's claims relate to charges for his Audible membership which he incurred through his Amazon account, which is likewise governed by Amazon's Conditions of Use containing the same arbitration provision.  *See id.* at ¶¶ 16-19; Ressmeyer Decl. ¶ 2, Ex. 1; Gune Decl. ¶¶ 13, 20, Exs. 3 at 3, 10 at 3-4.  Thus, the claims fall squarely within the scope of the arbitration provision, and this Court should compel arbitration as to both Mr. Weber and Mr. Rogawski.

## E. Amazon's Arbitration Provision Also Requires Mr. Weber To Arbitrate His Claim Against Audible.

As discussed above and described in detail in the declaration of Karen Ressmeyer, Mr. Weber is a longtime Amazon customer and has been an Amazon Prime member since December of 2011.  *See* Ressmeyer Decl. ¶¶ 4, 6-7.

Before an Amazon customer places an order on Amazon using the standard checkout flow, Amazon requires the customer to agree to the Amazon Conditions of Use.  Ressmeyer Decl. ¶ 3, Ex. 2.  Whether placing an order on Amazon's website or through its app, a customer using the checkout flow must click a "Place your order" button next to a prominent hyperlinked disclosure linking to the Amazon Conditions of Use:

[4] Because courts regularly apply arbitration agreements retroactively, there is no merit to Plaintiffs' suggestion that their agreements to arbitrate when redeeming credits should not govern existing disputes: "courts have generally applied broad 'any dispute' language retroactively, especially when combined with language that refers to all dealings between the parties." *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 267 (4th Cir. 2011) (reversing lower court's finding that arbitration agreement did not have retroactive effect).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

> ### Place your order
>
> By placing your order, you agree to Amazon's
> privacy notice and conditions of use.

*Amazon Desktop Website*

*Id.* Amazon's records show that Mr. Weber placed ***223 purchase orders*** on his Amazon account from October 29, 2011 and December 26, 2017. *Id.* ¶ 4. Every time Mr. Weber did so using the standard Amazon checkout page, he once again agreed to the Amazon Conditions of Use.

Similarly, Amazon requires customers to agree to the Amazon Conditions of Use when they sign up for the Amazon Prime service, whether customers sign up through Amazon's mobile website or its desktop site. Ressmeyer Decl. ¶ 5, Exs. 3-4. When Mr. Weber signed up for Prime, he saw a disclosure that he was agreeing to both the Amazon Conditions of Use and the Prime Terms & Conditions. *Id.* ¶ 7. This disclosure contained links to the Amazon Conditions of Use and the Prime Terms & Conditions in effect at that time. *Id.* In addition to Mr. Weber's agreement to the Amazon Conditions of Use, at the time, the first paragraph of these Prime Terms & Conditions provided as follows: "Please note that your use of the Amazon.com Web site and Prime membership are also governed by our Conditions of Use and Privacy Notice, as well as all other applicable terms, conditions, limitations and requirements on the Amazon.com Web site, all of which (as changed over time) are incorporated into these Terms." *Id.* ¶ 6, Ex. 5. The "Conditions of Use" language was a hyperlink to the Amazon Conditions of Use, including its arbitration agreement. *Id.* ¶ 6, Exs. 1, 5.

Indeed, the user flow and disclosures that Mr. Weber would have seen while signing up for Amazon Prime in December of 2011 are similar to those that Grant McKee was shown when he signed up for Amazon Prime in February of 2012. *See*

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   Ressmeyer Decl. ¶ 7.  This Court has already held that the disclosures seen by

2   consumers while signing up for Prime are adequate to put them on notice of

3   Amazon's Terms, and that the Terms themselves—and the arbitration clause

4   contained therein—are valid and enforceable.  *See* McKee Order at 18 n.7.  Those

5   terms provide that "**[a]ny dispute or claim relating in any way to your use of any**

6   **Amazon Service, or to any products or services sold or distributed by**

7   **Amazon**" must be resolved through binding arbitration.  *See* Ressmeyer Decl. ¶ 2,

8   Ex. 1 at 2-3 (bold in original).

9       This provision requires arbitration of the claim that Mr. Weber seeks to assert

10   here.  Mr. Weber's primary grievance in this dispute does not relate to Audible

11   membership credits, but instead to the claim that he received a charge on a credit

12   card that he provided in the first instance to Amazon, and not to Audible, after

13   using his Amazon account to sign up for Audible.  *See* SAC ¶ 18–19.  In fact,

14   unlike the other named Plaintiffs, Weber does not actually challenge any aspect of

15   Audible's service other than its use of credit cards he had on file with his Amazon

16   account.  Mr. Weber does not allege that he hit any rollover limits or otherwise lost

17   any membership credits.

18       Whether it is proper for Amazon to allow its affiliates in some instances to

19   charge cards first provided to Amazon is undoubtedly a question falling within the

20   scope of Amazon's arbitration agreement, as it is a claim "relating in any way to

21   [the] use of any Amazon service, or to any products or services sold or distributed

22   by Amazon."  This is underscored by the fact that *Weber has in fact sued Amazon*

23   *for the exact same conduct in a related case*, alleging that Amazon should not have

24   provided Audible with his credit card information.  *See* Dkt. No. 1 in Case No. 17-

25   cv-8868.[5]  Weber cannot avoid the arbitration provision to which he agreed by

26   filing separate claims against each Amazon affiliate rather than filing a single

27   _____

28   [5] Amazon is separately moving to compel arbitration against Mr. Weber in that
     case.

complaint against both affiliates involved.  Moreover, in the first paragraph of the Conditions of Use, "Amazon" is defined as "Amazon Services, LLC *and/or its affiliates*."  *See* Ressmeyer Decl., Ex. 1.  Thus the arbitration provision in Amazon's Conditions of Use plainly encompasses Mr. Weber's claims.

Audible is aware that in considering Audible's Motion to Compel as to Mr. McKee, the Court concluded Amazon's arbitration provision did not compel arbitration as to Audible because consumers might not be aware that they were agreeing to arbitrate claims against entities that they didn't know were Amazon affiliates.  McKee Order at 17.  But that concern is not applicable to the claim that Mr. Weber asserts here: when Mr. Weber gave Amazon his credit card, he was on notice that any claims relating to the allegedly unauthorized use of that card, or the allegation that Amazon wrongly provided his credit card information to another, were encompassed by the arbitration provision to which he agreed.  Mr. Weber's claim is essentially one of allegedly improper collaboration between Amazon and one of its affiliates, and this claim is squarely encompassed within Amazon's arbitration provision.

## IV.   CONCLUSION

Plaintiffs Weber and Rogawski repeatedly agreed to arbitrate any claim relating their use of the Audible service.  Mr. Weber also agreed to arbitrate any dispute relating to his use of Amazon.  This lawsuit breaches those agreements, and the Court should compel arbitration.  Accordingly, Audible asks this Court to compel these claims to arbitration and dismiss them with prejudice.


Dated:  January 22, 2018              FENWICK & WEST LLP


                                      By: */s/ Jedediah Wakefield*
                                          Jedediah Wakefield

                                      Attorneys for AUDIBLE, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW