1   JEDEDIAH WAKEFIELD (CSB No. 178058)
    jwakefield@fenwick.com
2   FENWICK & WEST LLP
    555 California Street, 12th Floor
3   San Francisco, CA 94104
    Telephone: 415.875.2300
4   Facsimile: 415.281.1350

5   ANNASARA G. PURCELL (CSB No. 295512)
    apurcell@fenwick.com
6   FENWICK & WEST LLP
    1191 Second Avenue, 10th Floor
7   Seattle, WA 98101
    Telephone: 206.389.4510
8   Facsimile: 206.389.451

9   ARMEN NERCESSIAN (CSB No. 284906)
    anercessian@fenwick.com
10  FENWICK & WEST LLP
    801 California Street
11  Mountain View, CA 94041
    Telephone: 650.988.8500
12  Facsimile: 650.938.5200

13  Attorneys for AUDIBLE, INC.

14              UNITED STATES DISTRICT COURT

15             CENTRAL DISTRICT OF CALIFORNIA

16            (WESTERN DIVISION – LOS ANGELES)

17  GRANT MCKEE, TAYLOR FISSE,          Case No.: 2:17-cv-01941 GW (Ex)
    BRYAN REES, ERIC WEBER, and
18  MICHAEL ROGAWSKI, individually      **DECLARATION OF ANIKET**
    and on behalf of all others similarly   **GUNE IN SUPPORT OF**
19  situated,                            **AUDIBLE'S MOTION TO**
                                         **DISMISS AND MOTION TO**
20          Plaintiffs,                  **COMPEL ARBITRATION AS TO**
                                         **PLAINTIFFS ERIC WEBER AND**
21      v.                               **MICHAEL ROGAWSKI**

22  AUDIBLE, INC.,                       Date:     March 12, 2018
                                         Time:     8:30 AM
23          Defendant.                   Crtm:     9D
                                         Judge:    George H. Wu
24                                       Trial Date: NONE SET

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

I, Aniket Gune, declare as follows:

1.      I am Senior Director of Product Management, at Audible, Inc. I have worked at Audible since December 2013, and I have held my current position since March 2016. My current job responsibilities include developing customer experiences and supporting business operations for Audible's premium services, including Audible memberships, the Audible.com web domain, Audible apps amongst other responsibilities.  Before that, I served as a Director (and later Senior Director) of Product Marketing, Amazon Retail and Devices. That earlier role involved driving new Audible member acquisition, engagement and early retention initiatives via Amazon.com retail web, apps, and devices along with other Amazon subsidiaries such as Goodreads.com.  Based on my job responsibilities and my review of Audible's business records, I am familiar with the agreements, customer sign-up and order process, and customer histories that I discuss in this declaration. I make this declaration based on personal knowledge and records that Audible keeps in the ordinary course of business.  I am competent to and would testify to the matters stated here.

**<u>The Audible Service</u>**

2.      Audible is a digital audiobook and spoken audio information and entertainment service.  Audible offers more than 250,000 audiobooks that users can listen to through the Audible app on a variety of devices.  In addition to allowing users to purchase audiobooks at regular prices, Audible offers membership services, which are available on a monthly or annual subscription basis.  With an Audible membership, a member pays a monthly or annual fee, which depends on the membership plan the customer chooses, and in exchange the customer receives a number of benefits.  Audible membership benefits include a 30% discount off the regular price of audiobook purchases; unlimited listening to Audible Channels (an on-demand audio entertainment service that offers original audio series and curated

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

audio playlists); a complimentary subscription to the digital audio digest of *The Wall Street Journal* or *The New York Times*; and the Great Listen Guarantee, which allows members who are not fully satisfied with an Audible audiobook to rerun or exchange it within 365 days of the original date of purchase.

3.     As a benefit of Audible membership plans, members also have the option to select one or more books each month or year (depending on their plan) at no additional cost while their membership is active.  Audible provides customers with "credits" that they may use to redeem these books, and the number of membership credits a customer receives each month or year varies by plan type. For instance, those who subscribe to Audible's "Gold Monthly" plan receive one membership credit each month while their memberships are active.  One membership credit may be redeemed for one audiobook, regardless of the price of the book.  As with other audiobook purchases through Audible, once a customer redeems a credit for an audiobook, the audiobook is for the customer to keep—even if the customer later cancels his or her membership.  However, membership credits, like other Audible membership benefits, expire when a user cancels his or her membership.

4.     Audible is a wholly-owned subsidiary of Amazon.com, Inc. ("Amazon").  Its customers can purchase Audible audiobooks through the Audible online storefront (at www.audible.com), through the Amazon desktop and mobile websites, or using Fire tablets.  Under every Audible logo, on every page of the process, appeared the words "an amazon company."

5.     Additionally, Audible offers its members the flexibility to "roll" one or more membership credits over into the next month, up to a maximum number that varies by membership plan.  For instance, under a "Gold Monthly" plan, members receive and may redeem one membership credit each month for an audiobook, but they can also "roll over" up to five membership credits a month for use later.  Once

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

a customer reaches the rollover limit, any additional unused credits from prior months will no longer roll over.  Audible's records indicate that Plaintiff Eric Weber never hit any rollover limits.  Plaintiff Michael Rogawski hit the rollover limit on his "Gold Monthly" membership on 12 occasions, meaning he lost 12 credits as a result of not redeeming them during the membership period in which they were issued or the permitted rollover period.  The Audible Service Conditions of Use clearly state that membership credits "expire immediately upon the termination of your membership."

6.      Audible does not allow users to sign up for an Audible membership without either a new or existing Amazon account.  Audible also allows users to designate any of the credit cards on file for their Amazon account to pay for an Audible membership or to add a new credit card to their Amazon account.  Audible discloses to customers that it will charge their designated cards or other cards on file with their accounts.  Audible's business records show that Plaintiffs Weber and Rogawski signed up for Audible using existing Amazon accounts, and they both designated credit cards that they already had on file with Amazon.

7.      When a user signs up for an Audible membership, Audible automatically sends the new member a confirmation email that provides the member with information about the Audible membership, including the membership period and how to cancel.  This process of automatically sending confirmation emails was in place at the time that Messrs. Weber and Rogawski each signed up for their respective Audible memberships.

**Plaintiff Rogawski's Use of the Audible Service**

8.      I understand that Plaintiff Michael Rogawski bases his claims in this lawsuit on transactions he performed on the Audible service since 2014.  The Second Amended Complaint states that Mr. Rogawski signed up for a 30-day trial Gold membership in September 2014.  Dkt. 65 at ¶¶ 20–23.  In preparing this

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

declaration, I have investigated Mr. Rogawski's activity on the Audible service from September 2014 to December 2017, and I have reviewed records that Audible keeps in the ordinary course of business that reflect the disclosures that Mr. Rogawski saw when signing up for and redeeming credits on the Amazon and Audible services. I summarize this account history below.

9.     On September 21, 2014, Mr. Rogawski signed up for an Audible "Gold Monthly" membership that included a 30-day free trial on Audible.com, using his existing Amazon account.

10.     Between September 2014 and November 2017, Mr. Rogawski redeemed membership credits for no fewer than seventeen audiobooks, and he did so from both the Amazon and Audible website interfaces.

11.     Audible keeps certain electronic records of when and on what platform users redeem Audible membership credits. These records are generated automatically as part of the credit redemption process. I attach as **Exhibit 1** to this declaration a table of data pulled from Audible's records for a credit redemption by Mr. Rogawski on September 30, 2015. The columns titled "enc_customer_id" and "customer_key" contain unique identifiers for Mr. Rogawski's account, which have been redacted to protect Mr. Rogawski's privacy; the "purchase_datetime" and "credit_consumed_date" field show when the credit redemption occurred, and the "Channel Desc" field reflects what platform the redemption occurred on. This data shows that, on September 30, 2015, Mr. Rogawski redeemed a credit on the Amazon.com desktop website to pre-order a title that was released on October 5, 2015.

12.     When using the Amazon.com desktop website to redeem audiobook credits, Mr. Rogawski would have selected his audiobook, which would have sent him to the corresponding webpage for the audiobook in the Amazon.com storefront. **Exhibit 2** is a screenshot of a webpage on the Amazon.com desktop website from

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

which a user could redeem a membership credit for an Audible audiobook at the time Mr. Rogawski engaged in the September 30, 2015 transaction.  This screenshot shows the webpage and disclosures that Mr. Rogawski saw when redeeming his membership credit.  The audiobook information would have been different based on Mr. Rogawski's selection and identified the title he selected as a pre-order purchase, but the form and content of the disclosures would have been the same.  This screen informed Mr. Rogawski how many membership credits he had remaining on his accounts, and invited him to purchase an audiobook by pressing one of two buttons: "Buy with 1 Audible Credit" or "Buy with 1-Click." Immediately under these buttons was the following disclosure: "By completing your purchase, you agree to Audible's Conditions of Use and Privacy Notice."

13.    The "Conditions of Use" language contained a hyperlink to the "The Audible Service Conditions of Use" in effect at that time.  **Exhibit 3** is a printout of "The Audible Service Conditions of Use" that were effective at the time of Mr. Rogawski's September 30, 2015 credit redemption. That webpage contained the following dispute resolution provision:

**DISPUTES**

**Any dispute or claim relating in any way to your use of the Audible Service will be resolved by binding arbitration, rather than in court,** except that you may assert claims in small claims court if your claims qualify. The Federal Arbitration Act and federal arbitration law apply to this agreement.

**There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award on an individual basis the same damages and relief as a court (including injunctive and declaratory relief or statutory damages), and must follow the terms of these Conditions of Use as a court would.**

To begin an arbitration proceeding, you must send a letter requesting arbitration and describing your claim to our registered agent: Corporation Service Company, 300 Deschutes Way SW, Suite 304, Tumwater, WA 98051. The arbitration will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA's Supplementary Procedures for Consumer-

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   Related Disputes. The AAA's rules are available at
    www.adr.org or by calling 1-800-778-7879. Payment of
2   all filing, administration and arbitrator fees will be
    governed by the AAA's rules. We will reimburse those
3   fees for claims totaling less than $10,000 unless the
    arbitrator determines the claims are frivolous. Likewise,
4   Audible will not seek attorneys' fees and costs in
    arbitration unless the arbitrator determines the claims are
5   frivolous. You may choose to have the arbitration
    conducted by telephone, based on written submissions, or
6   in person in the county where you live or at another
    mutually agreed location.

7   **We each agree that any dispute resolution
    proceedings will be conducted only on an individual
8   basis and not in a class, consolidated or representative
    action.** If for any reason a claim proceeds in court rather
9   than in arbitration **we each waive any right to a jury
    trial**. We also both agree that you or we may bring suit in
10  court to enjoin infringement or other misuse of
    intellectual property rights.

11

12  Exhibit 3 at 3 (bold in original).

13          14.    Audible subsequently changed the flow for redeeming credits through

14  the Amazon desktop website.  The change in the credit redemption flow on

15  Amazon.com from how it appeared in Exhibit 2 to the subsequent flow required an

16  architectural change in the system used to host the buy box on that page.  Internal

17  system logs show that the earliest that the architectural change could have been put

18  into user testing is August 18, 2015, with a full public roll out occurring in late

19  2015.  Based on Audible's internal recordkeeping, Mr. Rogawski was not part of

20  the user testing group for the credit redemption flow, or any other user testing

21  group, during the time of the September 30, 2015 transaction.  Accordingly, on that

22  occasion he was shown the disclosures in Exhibit 2, *above*.

23          15.    I have reviewed the user flow that former Plaintiff Seth Beals used

24  while redeeming membership credits through the Amazon desktop website between

25  May and August 2015.  *See* Dkt. 41-1 [Massello Declaration] at ¶¶ 13-16, Ex. 5.

26  The user flow that Mr. Rogawski encountered and used to redeem credits in

27  September 2015 is the same user flow that Mr. Beals used, with the same

28  disclosures and same Conditions of Use.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

GUNE DECL. ISO AUDIBLE'S
MTN TO COMPEL
ARBITRATION              7        Case No. 2:17-cv-1941 GW(Ex)

16.     Mr. Rogawski also redeemed credits on the Audible desktop website on October 18, 2017 and on the Audible mobile website on November 25, 2017. **Exhibit 4** is a table of data pulled from Audible's records reflecting the dates and times of Mr. Rogawski's October 18, 2017 and November 25, 2017 credit redemptions.  Again, the columns titled "enc_customer_id" and "customer_key" contain unique identifiers for Mr. Rogawski's account, which have been redacted to protect Mr. Rogawski's privacy; meanwhile, the "purchase_datetime" and "credit_consumed_date" fields show when the credit redemption occurred. **Exhibit 5** is a table of data pulled from Audible's records of clickstream data corresponding to these redemptions.  The "site_variant" field shows what versions of the Audible website Mr. Rogawski's redemptions occurred on.  The data shows that Mr. Rogawski's October 18, 2017 redemption happened on the Audible desktop website, and that his November 25, 2017 redemption happened on the Audible mobile website.

17.     For his October 18, 2017 redemption on the Audible desktop website, Mr. Rogawski selected an audiobook, navigated to the corresponding webpage for that audiobook on the Audible website, and had to click either the "Buy Now with 1 Credit" or "Add to Cart" button to redeem.  **Exhibit 6** is a screenshot of a webpage on the Audible.com desktop website from which a user could redeem a membership credit for an Audible audiobook at the time Mr. Rogawski engaged in the October 18, 2017 transaction.  Our records indicate that Mr. Rogawski clicked the "Buy Now with 1 Credit" button and, as such, he would have seen, in precisely the same location on screen, a button that read "Confirm Purchase."  **Exhibit 7** is a screenshot of the next page in the redemption flow on the Audible desktop website that Mr. Rogawski clicked through.  Immediately under that button, he would have seen a hyperlinked disclosure.  Currently, as reflected in Exhibit 7, *above*, the disclosure reads: "By confirming your purchase, you agree to Audible's <u>Conditions</u>

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

of Use and Amazon's <u>Privacy Notice</u>. Taxes where applicable."  And it includes a blue hyperlink to "The Audible Service Conditions of Use."

18.    The actual language in the disclosure that Mr. Rogawski saw during his October 18, 2017 transaction was only slightly different than the disclosure language in Exhibit 7, *above*.  **Exhibit 8** is a record reflecting recent language that has appeared in the disclosure for the Audible desktop redemption flow shown in Exhibit 7, *above*.  It shows that during Mr. Rogawski's October 18, 2017 transaction, the disclosure in the desktop redemption flow included hyperlinks and read as follows:  "By clicking on the Confirm Purchase button, you agree to Audible's <u>Conditions of Use</u> and Amazon's <u>Privacy Notice</u>."

19.    The "Conditions of Use" language in the Audible desktop disclosures, both those reflected in Exhibit 7 and Exhibit 8, contained a blue hyperlink.  Had Mr. Rogawski pressed the link, he would have navigated to a document called "Audible Service Conditions of Use."  **Exhibit 9** is a printout of the current "Audible Service Conditions of Use," which were last updated on July 19, 2017. The Audible Service Conditions of Use contain the following dispute resolution provision:

**Disputes; Limitation of Liability**

**Any dispute or claim arising from or relating to these Terms or your use of the Service is subject to the binding arbitration, governing law, disclaimer or warranties, limitation of liability and all other terms in the <u>Amazon.com Conditions of Use</u>.**

Exhibit 9 at 2 (bold in original).

20.    The term "Amazon.com Conditions of Use" in the Audible Conditions of Use appeared in bold blue font and included a hyperlink as well.  Had Mr. Rogawski clicked on the link, he would have been directed to an Amazon.com page titled "Conditions of Use."  **Exhibit 10** is a printout of the Amazon.com Conditions of Use, which were last updated on October 3, 2017.  The Amazon.com Conditions of Use contain the following dispute resolution provision:

GUNE DECL. ISO AUDIBLE'S MTN TO COMPEL ARBITRATION          9          Case No. 2:17-cv-1941 GW(Ex)

1

2    **DISPUTES**

3    **Any dispute or claim relating in any way to your use
     of any Amazon Service, or to any products or services
4    sold or distributed by Amazon or through
     Amazon.com will be resolved by binding arbitration,
5    rather than in court,** except that you may assert claims
     in small claims court if your claims qualify. The Federal
6    Arbitration Act and federal arbitration law apply to this
     agreement.

7    **There is no judge or jury in arbitration, and court
     review of an arbitration award is limited. However,
8    an arbitrator can award on an individual basis the
     same damages and relief as a court (including
9    injunctive and declaratory relief or statutory
     damages), and must follow the terms of these
10   Conditions of Use as a court would.**

11   To begin an arbitration proceeding, you must send a
     letter requesting arbitration and describing your claim to
12   our registered agent: Corporation Service Company, 300
     Deschutes Way SW, Suite 304, Tumwater, WA 98051.
13   The arbitration will be conducted by the American
     Arbitration Association (AAA) under its rules, including
14   the AAA's Supplementary Procedures for Consumer-
     Related Disputes. The AAA's rules are available at
15   www.adr.org or by calling 1-800-778-7879. Payment of
     all filing, administration and arbitrator fees will be
16   governed by the AAA's rules. We will reimburse those
     fees for claims totaling less than $10,000 unless the
17   arbitrator determines the claims are frivolous. Likewise,
     Audible will not seek attorneys' fees and costs in
18   arbitration unless the arbitrator determines the claims are
     frivolous. You may choose to have the arbitration
19   conducted by telephone, based on written submissions, or
     in person in the county where you live or at another
20   mutually agreed location.

21   **We each agree that any dispute resolution
     proceedings will be conducted only on an individual
22   basis and not in a class, consolidated or representative
     action.** If for any reason a claim proceeds in court rather
23   than in arbitration **we each waive any right to a jury
     trial**. We also both agree that you or we may bring suit in
24   court to enjoin infringement or other misuse of
     intellectual property rights.

25
     Exhibit 10 at 3-4 (bold in original).  This dispute resolution provision is virtually
26
     identical to the one that appears in the historical Audible Conditions of Use, except
27
     that it covers disputes or claims "**relating in any way to your use of any Amazon**
28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**Service, or to any products or services sold or distributed by Amazon or through Amazon.com** . . . ."  By contrast, the corresponding provision of the historical Audible Conditions of Use covers "**[a]ny dispute or claim relating in any way to your use of the Audible Service** . . . ."  Exhibit 3 at 3.

21.    Mr. Rogawski also redeemed membership credits by way of the Audible mobile website flow.  He redeemed a membership credit this way on at least one occasion, November 25, 2017.  In order to redeem a credit using the mobile website at that time, Mr. Rogawski selected an audiobook, navigated to the corresponding mobile webpage for that audiobook on the Audible website, and had to click the "Buy Now with 1 Credit" button to redeem.  **Exhibit 11** is a compilation of screenshots of a webpage for an audiobook selection on the Audible.com mobile website from which a user could redeem a membership credit for an Audible audiobook at the time Mr. Rogawski engaged in the November 25, 2017 transaction.  Our records indicate that Mr. Rogawski clicked the "Buy Now with 1 Credit" button and, as such, he would have seen, in precisely the same location on screen where the "Buy Now with I Credit" button was (with no need to scroll further), a button that read "Confirm Purchase."  **Exhibit 12** is a screenshot of the next step in the redemption flow on the Audible mobile website that Mr. Rogawski clicked through.  Immediately under "Confirm Purchase" button, Mr. Rogawski would have seen a hyperlinked disclosure.  The disclosure reads: "By confirming your purchase, you agree to Audible's <u>Conditions of Use</u> and Amazon's <u>Privacy Notice</u>. Taxes where applicable."  It also includes a blue hyperlink to "The Audible Service Conditions of Use," which incorporate by reference the arbitration agreement under the Amazon Conditions of Use.  *See* Exhibits 9 and 10, *above.*

## Plaintiff Weber's Use of the Audible Service

22.    The Second Amended Complaint states that Plaintiff Eric Weber signed up for a 30-day trial Audible membership in May 2017.  Dkt. No. 65 ¶ 16.  I

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

have investigated Mr. Weber's activity on the Audible service, noting records that reach back to a free trial membership for Mr. Weber beginning on March 22, 2013, which converted to a paid membership thirty days later on April 21, 2013. I have reviewed records that Audible keeps in the ordinary course of business that reflect the disclosures that Mr. Weber saw when signing up for and redeeming credits on the Amazon and Audible services, including his transactions in 2017. I summarize this account history below.

23.    On March 22, 2013, Mr. Weber signed up for an Audible "Gold Monthly" membership that included a 30-day free trial on Audible.com, using his existing Amazon account. Under this trial membership program, Audible gave Mr. Weber a free membership credit, which Mr. Weber redeemed at the time of his sign-up.

24.    Mr. Weber did not cancel his trial within thirty days, and became a full member with a Gold Monthly membership on April 21, 2013. Under that plan, Audible issued a membership credit to Mr. Weber on the 21st day of each month. Between March 2013 and December 2017, Mr. Weber received and redeemed sixty-nine membership credits, obtaining sixty-nine audiobooks. Mr. Weber remains a current Gold Monthly member of Audible today.

25.    Audible's internal records show that Mr. Weber redeemed at least three membership credits on the Audible mobile website: he redeemed two on October 24, 2017 and one December 2, 2017. **Exhibit 13** is a table of data pulled from Audible's records reflecting the dates and times of Mr. Weber's October 24, 2017 and December 2, 2017 credit redemptions. The columns titled "enc_customer_id" and "customer_key" contain unique identifiers for Mr. Rogawski's account, which have been redacted to protect Mr. Rogawski's privacy; meanwhile, the "purchase_datetime" and "credit_consumed_date" fields show when the credit redemption occurred. **Exhibit 14** is a table of data pulled from

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Audible's records of clickstream data corresponding to these redemptions; the "site_variant" field shows what version of the Audible website Mr. Weber's redemptions occurred on. As Exhibit 14 reflects, all three of these redemptions occurred on the Audible mobile website.

26.     Mr. Weber's credits redemptions on the Audible mobile website on October 24, 2017 and December 2, 2017 used the same mobile redemption flow as Mr. Rogawski did for his November 25, 2017 redemption, which I discuss in Paragraph 21, *above*. To redeem these credits through the Audible mobile website, Mr. Weber selected the title of his choice, and clicked a virtual button that read "Buy Now with 1 Credit." *See* Exhibit 11, *above*. When he clicked the "Buy Now with 1 Credit" button to redeem a credit for his October 24, 2017 and December 2, 2017 transactions, Mr. Weber would have then seen the "Confirm Purchase" button appear in the same location on the screen of his mobile device where the "Buy Now with 1 Credit" button was. Immediately under that button, Mr. Weber would see a disclosure that read: "By confirming your purchase, you agree to Audible's Conditions of Use and Amazon's Privacy Notice. Taxes where applicable." *See* Exhibit 12, *above*. Again, the "Conditions of Use" language was a hyperlink; had Mr. Weber clicked it, he would have been directed to the Audible Conditions of Use, which incorporate by reference the Amazon Conditions of Use and its arbitration agreement. *See* Exhibits 9 and 10, *above*.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 22nd day of January, 2018, in Newark, New Jersey.

_____
Aniket Gune

GUNE DECL. ISO AUDIBLE'S
MTN TO COMPEL
ARBITRATION                    13          Case No. 2:17-cv-1941 GW(Ex)

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW