JEDEDIAH WAKEFIELD (CSB No. 178058)
jwakefield@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  415.875.2300
Facsimile:   415.281.1350

ANNASARA G. PURCELL (CSB No. 295512)
apurcell@fenwick.com
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA  98101
Telephone:  206.389.4510
Facsimile:   206.389.451

ARMEN NERCESSIAN (CSB No. 284906)
anercessian@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
Telephone:  650.988.8500
Facsimile:   650.938.5200

Attorneys for AUDIBLE, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(WESTERN DIVISION – LOS ANGELES)

| | |
|---|---|
| GRANT MCKEE, TAYLOR FISSE, BRYAN REES, ERIC WEBER, and MICHAEL ROGAWSKI, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AUDIBLE, INC.,<br><br>Defendant. | Case No.: 2:17-cv-01941 GW(Ex)<br><br>**REPLY BRIEF IN SUPPORT OF AUDIBLE'S MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS AS TO PLAINTIFFS ERIC WEBER AND MICHAEL ROGAWSKI**<br><br>Date:        March 12, 2018<br>Time:        8:30 AM<br>Crtm:        9D<br>Judge:       Hon. George H. Wu<br>Trial Date:NONE SET |

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................... 1

II.    ARGUMENT ................................................................................................. 3

    A.    Washington Law Governs Plaintiffs' Agreements and This Case. ...... 3

    B.    Mr. Rogawski Agreed to Arbitrate Disputes Relating To His Use of Audible By Redeeming a Credit through Amazon.com on September 30, 2015. ........................................................................................... 4

    C.    Mr. Rogawski Does Not Dispute That His Credit Redemptions on October 18, 2017 and November 25, 2017 Created Assent to the Audible Terms, and the Court Should Deny Plaintiffs' Request to Disregard These Agreements. ................................................................. 9

    D.    Mr. Weber Repeatedly Agreed to Arbitrate All Disputes Relating to His Use of Amazon. ............................................................................. 12

    E.    Plaintiffs Resurrect the Same Unenforceability Arguments That This Court Has Already Considered and Rejected. ..................................... 15

    F.    Plaintiffs' Respective Agreements to Arbitrate Bar This Lawsuit. .... 16

III.    CONCLUSION ............................................................................................. 18

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*Alvarez v. T-Mobile USA, Inc.*,
  No. CIV. 2:10-2373 WBS, 2011 WL 6702424 (E.D. Cal. Dec. 21,
  2011) ...................................................................................................... 5

*AT&T Mobility LLC v. Concepcion*,
  131 S. Ct. 1740 (2011) ...................................................................... 11

*Block v. City of Los Angeles*,
  253 F.3d 410 (9th Cir. 2001) .............................................................. 5

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) .......................................................... 16

*Cordas v. Uber Techs., Inc.*,
  228 F. Supp. 3d 985 (N.D. Cal. 2017) ............................................... 6

*Douglas v. United States Dist. Court*,
  495 F.3d 1062 (9th Cir. 2007) ..................................................... 11, 12

*Ekin v. Amazon Servs., LLC*,
  84 F. Supp. 3d 1172 (W.D. Wash. 2014) ........................................ 17

*Fraser v. Goodale*,
  342 F.3d 1032 (9th Cir. 2003) ............................................................ 5

*In re Verisign, Inc., Derivative Litig.*,
  531 F. Supp. 2d 1173 (N.D. Cal. 2007) ........................................... 17

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017) ................................................................. 9

*Peters v. Amazon Servs. LLC*,
  2 F. Supp. 3d 1165 (W.D. Wash. 2013) ........................................... 17

STATUTES

Federal Arbitration Act, 9 U.S.C. §§ 1-16 ............................................. 16

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**
**(continued)**

OTHER AUTHORITIES                                                     PAGE(S)

Fed. R. Civ. P. 56...................................................................................5, 6

Fed. R. Civ. P. 12(b)(6) ............................................................... 10

FENWICK & WEST LLP
ATTORNEYS AT LAW

## I.      INTRODUCTION

In its motion to compel arbitration, Audible, Inc. established that Plaintiff Michael Rogawski repeatedly agreed to arbitrate any dispute relating to his use of Audible.  Among other transactions, Audible showed that Mr. Rogawski redeemed a credit from Audible through the Amazon.com desktop website in 2015, using the same flow and seeing the same disclosures that the Court previously found created assent to the Audible Service Conditions of Use by Seth Beals.  *See* Dkt. 53 ("Beals Order") at 13-15.  Audible further showed that Mr. Rogawski saw and agreed to the Audible Service Conditions of Use when he redeemed credits through the Audible website on October 18, 2017 and November 25, 2017.

Audible's motion also demonstrated that the claims of Plaintiff Eric Weber, which concern allegedly unauthorized charges to a payment method that Mr. Weber kept on file with his Amazon account, relate to his use of Amazon and thus fall within the scope of the arbitration agreement in the Amazon Conditions of Use (the "COUs").  After Audible filed its motion, it learned that the records that it had relied upon with respect to Mr. Weber's claims, while accurately reflecting the account history for an Audible customer named Eric Weber, concerned the customer account for a *different* Eric Weber.  Audible has since located the customer history for the correct Eric Weber and confirmed the accuracy of the account e-mail address with Plaintiffs's counsel.[1]  This account history shows that Plaintiff Weber (like the other Eric Weber) is a longtime Amazon customer and current Prime subscriber who has repeatedly had notice of and assented to the

---

[1] Given its initial reliance on an account history for another Eric Weber, Audible will not oppose Plaintiffs' submission of a sur-reply to address the issue of Mr. Weber's Amazon account history.  Should the Court permit that sur-reply, Audible would suggest consolidating the hearing on this motion with the April 2, 2018 hearing for Amazon's motion to compel arbitration as to Plaintiff Eric Weber in the related case *Eric Weber et al. v. Amazon.com, Inc. et al.*, Case No.: 2:17-cv-08868 GW(Ex) (C.D. Cal.).  Amazon's motion in that case concerns the same issues, customer history, and agreements as this motion as to Mr. Weber.

REPLY ISO AUDIBLE'S MOT. TO COMPEL ARBITRATION AND DISMISS                                    1          Case No. 2:17-cv-1941 GW(Ex)

FENWICK & WEST LLP
ATTORNEYS AT LAW

Amazon COUs, both by making hundreds of purchases on Amazon, and when signing up for Amazon Prime. Because his only alleged injury is that the credit card he placed on his Amazon account was charged when he used that account to sign up for Audible, his claims unmistakably "relate to" his use of the Amazon service, and therefore fall within his agreement to arbitrate.

Plaintiffs' opposition fails to create any genuine issue of material fact as to either Mr. Rogawski's or Mr. Weber's assent to the arbitration agreement. Instead, Plaintiffs merely raise immaterial criticisms of the evidence: Plaintiffs raise the same baseless objections challenging Audible's ability to offer evidence about its customer records and historical credit redemption flows that this Court already rejected in its previous order concerning Plaintiff Seth Beals. *See* Beals Order at 4-7. Rather than rebut or even address Audible's evidence about the specific transactions and disclosures upon which it bases this motion, Plaintiffs complains that Audible failed to submit additional information about customer transactions and activities that it does *not* rely on and, and which are entirely irrelevant to this motion. In so doing, Plaintiffs advance an evidentiary standard for motions to compel arbitration that has no basis in law and under which no amount of evidence is enough absent extensive discovery. And they resurrect the same failing arguments about enforceability that this Court has considered and rejected multiple times already. Beals Order at 4-7; *see also* Dkt. 37 ("McKee Order") at 19–22.

Plaintiffs also use their opposition to re-argue their motion for "corrective action." They wrongly assert that the mere filing of a putative class action complaint against Audible on March 10, 2017—even by a named plaintiff that *lacked standing* to assert the harms claimed by Mr. Weber (unauthorized credit card charges) or Mr. Rogawski (lost credits due to rollover limits)—should preclude Audible from modifying any of the disclosures or terms that appear on its customer-facing websites and platforms. There is no legal or logical support for

FENWICK & WEST LLP
ATTORNEYS AT LAW

such an approach.  Indeed, the completely different claims and case histories of Mr. Weber and Rogawski, both of whom agreed to arbitrate well before this lawsuit was filed, underscore the misguided, overreaching, and premature nature of Plaintiffs' "corrective action" motion.

These efforts to distract from the core issues of assent must fail.  Mr. Rogawski cannot ignore that he agreed to the Audible Service Conditions of Use on at least three occasions, including before this lawsuit was filed, and before he (or any plaintiff with a claim relating to rollover limits) had joined this case.  Nor can Mr. Weber sidestep his repeated agreement to the Amazon COUs given his extensive Amazon purchase history and his sign-up for Amazon Prime.  Those agreements bar both Mr. Rogawski and Mr. Weber from bringing their claims in this lawsuit.  Accordingly, Audible respectfully asks this Court to compel arbitration as to Mr. Rogawski and Mr. Weber, and to dismiss this lawsuit as to their respective claims in their entirety.

## II.   ARGUMENT

### A.   Washington Law Governs Plaintiffs' Agreements and This Case.

Plaintiffs maintain that California state law governs this lawsuit.  *See* Dkt. 77 ("Opp.") at 10.  But this Court has already twice held that Washington law governs.  *See* McKee Order at 6-7; Beals Order at 3-4.  Plaintiffs have offered no reason for the Court to depart from these prior decisions.  To the contrary, they admit that California law and Washington law "appear to be largely the same" or "functionally identical" for the purposes of resolving this motion.  Opp. at 10 & n.3.  Accordingly, consistent with its prior rulings on motions to compel arbitration in this case, the Court should apply Washington law.

\\

\\

\\

REPLY ISO AUDIBLE'S MOT. TO
COMPEL ARBITRATION AND
DISMISS                                  3        Case No. 2:17-cv-1941 GW(Ex)

FENWICK & WEST LLP
ATTORNEYS AT LAW

**B.      Mr. Rogawski Agreed to Arbitrate Disputes Relating To His Use of Audible By Redeeming a Credit through Amazon.com on September 30, 2015.**

In ruling on Audible's earlier motion to compel arbitration as to Seth Beals, the Court considered a flow that Mr. Beals used in 2015 to redeem credits on the Amazon.com desktop website.  The credit redemption flow displayed the number of membership credits Mr. Beals had remaining on his account and an invitation to purchase the audiobook by pressing one of two buttons ("Buy with 1 Audible Credit" or "Buy with 1-Click"), with a hyperlinked disclosure immediately below:



Dkt. 41-1 ¶¶ 13-14, 16, Ex. 5.  Immediately under these buttons was the following disclosure: "By completing your purchase, you agree to Audible's <u>Conditions of Use</u> and <u>Privacy Notice</u>."  *Id.*  The "Conditions of Use" language in this disclosure contained a hyperlink to the Audible Service Conditions of Use, which at the time included its own complete arbitration agreement.  *Id.* ¶ 11, Ex. 4 at 3.  In its order, the Court found that this disclosure created assent to the Audible Service Conditions of Use.  Beals Order at 13-15.

As Audible demonstrated in its opening brief, Audible's records show that

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

Mr. Rogawski used the exact same flow when he redeemed a membership credit through the Amazon desktop website on September 30, 2015.  *See* Dkt. 73-1 ("Gune Decl.") ¶ 12, Ex. 2.  Like Mr. Beals, Mr. Rogawski—after navigating to the page on the Amazon.com desktop website that corresponded to his audiobook selection—was invited to purchase an audiobook by pressing one of two buttons: "Buy with 1 Audible Credit" or "Buy with 1-Click."  *Id.*  Like Mr. Beals, Mr. Rogawski was presented with a hyperlinked disclosure that read "By completing your purchase, you agree to Audible's <u>Conditions of Use</u> and <u>Privacy Notice</u>."  *Id.* And, again like Mr. Beals, had Mr. Rogawski simply clicked the hyperlinked "Conditions of Use" language, he would have seen the Audible Service Conditions of Use in full and the arbitration provision that they contained.  *Id.* ¶ 13, Ex. 3 at 3.

Plaintiffs' opposition ignores all this.  Instead, as Mr. Beals unsuccessfully attempted to do in opposition to Audible's earlier motion to compel arbitration with respect to his claims, Plaintiffs devote substantial portions of their opposition to a series of factually unsupportable and legally baseless arguments—with no actual authority—for why this Court should disregard all of the evidence that Audible offers in support of this motion.  *See, e.g.*, Opp. at 10-13, 17-20.  The Court rejected these arguments when Mr. Beals raised them, *see* Beals Order at 4-7, and it should reject them again here.  Plaintiffs' approach distorts the standard that applies for motions to compel arbitration:  "a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56."  *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (quoting *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001)) (internal quotation marks omitted); *see also Alvarez v. T-Mobile USA, Inc.*, No. CIV. 2:10-2373 WBS, 2011 WL 6702424, at *4 (E.D. Cal. Dec. 21, 2011) (granting motion to compel arbitration and stay claims, where plaintiff did not show offer any reason "why the contents of the documents at issue

1  could not be properly presented at trial") ("Objections on the basis of a failure to

2  comply with the technicalities of authentication requirements or the best evidence

3  rule are . . . inappropriate."). Rule 56 requires only that "[a]n affidavit or

4  declaration used to support or oppose a motion must be made on personal

5  knowledge, set out facts that would be admissible in evidence, and show that the

6  affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P.

7  56(c)(4).

8        Audible's evidence concerning Mr. Rogawski's September 30, 2015 credit

9  redemption easily meets this standard. It offered a declaration from Aniket Gune,

10  Senior Director of Product Management at Audible. Gune Decl. ¶ 1. Mr. Gune's

11  sworn declaration detailed the basis for his testimony and attested that his

12  declaration was based on personal knowledge: "Based on my job responsibilities

13  and my review of Audible's business records, I am familiar with the agreements,

14  customer sign-up and order process, and customer histories that I discuss in this

15  declaration. I make this declaration based on personal knowledge and records that

16  Audible keeps in the ordinary course of business." *Id.* That is precisely the kind of

17  evidence that courts, including this one, routinely accept when evaluating motions

18  to compel arbitration. Beals Order at 6 (finding that similar statement in earlier

19  Massello declaration "is sufficient under the applicable Rule 56 standard"); *accord*

20  *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 989–90 (N.D. Cal. 2017).

21       Like Mr. Beals, Mr. Rogawski also fails to offer any testimony rebutting

22  Audible's evidence other than his "own conclusory allegations that he never

23  received notice of the terms and conditions and that [the] declaration is false and

24  inadequate." *See Cordas*, 228 F. Supp. 3d 985, 989–90 (overruling plaintiff's

25  "litany of conclusory evidentiary objections," and granting motion to compel

26  arbitration); *cf.* Dkt. 77-4 ("Rogawski Decl."). To the contrary, Mr. Rogawski's

27  declaration is entirely consistent with the facts set forth in Mr. Gune's declaration.

28

REPLY ISO AUDIBLE'S MOT. TO
COMPEL ARBITRATION AND
DISMISS                         6        Case No. 2:17-cv-1941 GW(Ex)

FENWICK & WEST LLP
ATTORNEYS AT LAW

Mr. Rogawski agrees that he has purchased a total of seventeen audiobooks through Audible.  *Compare* Rogawski Decl. ¶ 3, *with* Gune Decl. ¶ 10. And he does not dispute Audible's evidence about his October 18, 2017 and November 25, 2017 credit redemptions through the Audible desktop and mobile websites, respectively. *Compare generally* Rogawski Decl., *with* Gune Decl. ¶ 16, Exs. 4-5.

Instead, Mr. Rogawski attempts to sow metaphysical doubt about the sufficiency of Audible's evidence concerning his September 30, 2015 transaction through the Amazon.com desktop website.  These arguments lack merit and fail to create any genuine dispute over the adequacy of the disclosures that Mr. Rogawski saw.

*First*, Mr. Rogawski tries to manufacture a factual conflict over the date of the transaction.  Audible's internal records show a transaction on the Amazon.com desktop website with a "9/30/2015 21:45" timestamp, Gune Decl., Ex. 1, while the so-called "Purchase History"[2] that Mr. Rogawski attaches to his declaration reflects a transaction on October 1, 2015, Rogawski Decl. ¶ 3, Ex. 1.  But there is no inconsistency here.  The apparent 1-day difference results from the fact that Audible's internal records and the customer-facing "Purchase History" express the date-time information in different time zones.  Gune Reply Decl. ¶ 3.  Both records refer to the same transaction for the purchase of the same audiobook title.  *Id.* ¶¶ 3-4, Ex. 1.

*Second*, Mr. Rogawski disingenuously tries to cast doubt on what disclosures Audible presented to him on September 30, 2015 by criticizing Audible for "refus[ing] to produce the records on which its personnel are relying to say the webpage had not changed *for Rogawski* (even though it changed for other

---

[2] The webpage that Mr. Rogawski submits is not actually a "Purchase History," but rather a "My Library" page.  Gune Reply Decl. ¶ 3.  That said, it does accurately reflect purchase date information.  *Id.*  To avoid confusion, this brief refers to the exhibit that Mr. Rogawski attaches to his declaration as a "Purchase History."

REPLY ISO AUDIBLE'S MOT. TO
COMPEL ARBITRATION AND
DISMISS                                          7          Case No. 2:17-cv-1941 GW(Ex)

FENWICK & WEST LLP
ATTORNEYS AT LAW

consumers) by September 30, 2015."[3]  Opp. at 19.  But Audible has not refused to produce any such records, *as no such records exists*.  Gune Reply Decl. ¶ 5.  As Mr. Gune stated in his opening declaration, Audible changed the flow for redeeming credits through the Amazon desktop website in late 2015 and, at the time of Mr. Rogawski's September 30, 2015 transaction, Audible was testing the new credit redemption flow.  Gune Decl. ¶ 14.  Audible recorded testing information only for users *within* the testing group; thus, if a user is *not* in a testing group, there will be no corresponding record for that user within the testing data.  Gune Reply Decl. ¶ 5.  No records exist showing that Mr. Rogawski was a part of a user testing group on September 30, 2015 (or for that matter on October 1, 2015), and thus the *absence* of such records conclusively establishes that Mr. Rogawski was not part of the user testing group for the credit redemption flow, or any other user testing group, during the time of the September 30, 2015 transaction.  *Id.*  He saw the same disclosures as Mr. Beals, and he is bound the COUs just as Beals was.  *Id.* ¶ 6.

*Third*, Mr. Rogawski raises the extraordinary argument that—*even if he saw the same screenshots that this Court found created assent as to Mr. Beals*—Audible's disclosure would still be ineffective because Mr. Rogawski "did not see the disclosure because it was not directly adjacent to the [Buy Now with 1 Credit] button he clicked, and he had no reason to inspect disclosures that were next to

---

[3] In an attempt to undermine the completeness of Audible's records, Plaintiffs' opposition suggests that Audible modified the disclosures on the Amazon.com desktop website between October 1, 2015 and October 18, 2015, as "Audible has not argued (and has therefore waived the argument) that Rogawski would have seen the same unmodified webpage when he redeemed a credit on October 19, 2015, less than three weeks later."  Opp. at 19.  This is incorrect: Mr. Rogawski has presented no evidence that he redeemed his credit on October 19, 2015 *through the Amazon.com desktop website*, and Audible's internal records confirm that he did not.  Gune Reply Decl. ¶ 7, Ex. 2.  In any case, the date that Audible completed the full public roll-out of the modified disclosures on Amazon.com's desktop site has no bearing on the resolution of this motion, and Audible has no duty to provide counsel for Plaintiffs with information irrelevant to the actual transactions upon which Audible bases its motion.

REPLY ISO AUDIBLE'S MOT. TO COMPEL ARBITRATION AND DISMISS                8        Case No. 2:17-cv-1941 GW(Ex)

FENWICK & WEST LLP
ATTORNEYS AT LAW

other buttons." Opp. at 19.  Indeed, Mr. Rogawski simultaneously argues that Audible could and should "have placed a disclosure next to both buttons, but it chose not to do so." Opp. at 20.  The issue of assent is an objective one, and it does not depend on Mr. Rogawski's self-serving claim that he does not read even the clearest of disclosures.  *See, e.g.*, *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) ("California contract law measures assent by an objective standard") (citations and quotations omitted).  The Court has already ruled in this lawsuit that *this precise disclosure created assent,* and Mr. Rogawski's attempt to re-litigate the issue fails.

　　None of Plaintiffs' arguments creates any genuine factual dispute over what Mr. Rogawski saw during his September 30, 2015 credit redemption.  He saw the same disclosures that Mr. Beals did.  As the Court has already held with respect to Mr. Beals, those disclosures created assent to the Audible Service Conditions of Use.  Even standing alone, this constitutes a sufficient basis to compel arbitration as to Mr. Rogawski's claims.

## C. Mr. Rogawski Does Not Dispute That His Credit Redemptions on October 18, 2017 and November 25, 2017 Created Assent to the Audible Terms, and the Court Should Deny Plaintiffs' Request to Disregard These Agreements.

　　In its opening brief, Audible presented evidence that Mr. Rogawski also redeemed a credit through the Audible desktop website on October 18, 2017, and that he redeemed another credit through the Audible mobile website on November 25, 2017.  Dkt. 73 at 4-10, 14-17.  The disclosure was clear and included a hyperlink to the Audible Service Conditions of Use, which incorporated by reference the arbitration agreement in the Amazon COUs.  *Id.*  Plaintiffs' opposition fails to dispute these transactions or raise any argument that Mr. Rogawski's redemptions on these dates created assent to the arbitration agreement.

FENWICK & WEST LLP
ATTORNEYS AT LAW

Instead, Plaintiffs argue that Audible should not be allowed to rely upon any disclosures, terms or webpages reflecting any changes following March 10, 2017, the date counsel for Plaintiffs filed the original complaint in this action on behalf of Plaintiff Grant McKee. *See* Opp. at 6-7, 20-22. This request echoes the relief that Plaintiffs seek in their separate motion for "corrective action." *See* Dkt. 72. Under Plaintiffs' theory, the mere filing of a putative class action lawsuit against a company such as Audible precludes that company, as well as its affiliates (here, Amazon) from making any updates to any of their respective customer-facing websites. *See* Opp. at 6-7, 20-22.

Audible details all the reasons that this Court should deny such a request in its opposition to Plaintiffs' motion for "corrective action." *See generally* Dkt. 78. But a few items bear specific mention here.

*First*, as described above, Mr. Rogawski's September 30, 2015 credit redemption, which occurred *over one year before any complaint was filed*, already furnishes a sufficient basis for assent to the Audible Conditions of Use and its arbitration provision.

*Second*, while Mr. McKee filed a complaint as to Audible in March of 2017, there was no named plaintiff in this lawsuit with standing to assert the harms that either Mr. Rogawski or Mr. Weber now claim until the filing of the Second Amended Complaint on December 15, 2017. Mr. Rogawski's claims challenge Audible's "rollover limits" for membership credits, Dkt. 65 ("SAC") at ¶¶ 20-23, and Mr. Weber's concern allegedly unauthorized charges to a credit card on file with his Amazon account, *id.* at ¶¶ 16-19. In its order on Audible's Rule 12(b)(6) motion to dismiss the First Amended Complaint, the Court held that *Mr. McKee lacked standing to assert claims based on either of these theories.* Dkt. 53 ("McKee MTD Order") at 7-8, 10. There is no support for the contention that a claim by a putative class representative, without standing to assert harms allegedly

FENWICK & WEST LLP
ATTORNEYS AT LAW

suffered by other persons not named in a lawsuit, and before any class is even certified, stops a company from being able to make changes to its customer-facing websites, or from entering into binding arbitration agreements, particularly in view of the "liberal federal policy favoring arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011)

*Third*, Audible's revision of its terms in July 2017 to drop the limitation of liability clause that this Court previously found problematic has no bearing on the issues in this motion. And Plaintiffs' apparent claim that they somehow suffered prejudice because of this change is nonsense. *See* Opp. at 21. The relevant arbitration agreements appearing in Audible and Amazon's respective terms have remained substantively the same for years. *See* Gune Decl. ¶¶ 13, 19-20, Exs. 3, 9, 10; Ressmeyer Reply Decl. ¶ 5, Exs. 3-4, 8. Both the Audible Service Conditions of Use and the Amazon COUs reserve the right to change over time and direct users to carefully review those terms. *See, e.g.*, Gune Decl., Ex. 3 at 3 ("We reserve the right to make changes to the Audible Service, these Conditions of Use and any Terms at any time."), Ex. 9 at 2 ("We may, in our discretion, change the Terms and all elements of them and any aspect of the Service without notice to you."), Ex. 10 at 4 ("We reserve the right to make changes to our site, policies, Service Terms, and these Conditions of Use at any time."); Ressmeyer Reply Decl., Ex. 3 at 3 ("We reserve the right to make changes to our site, policies, and these Conditions of Use at any time."), Ex. 4 at 4 (same), Ex. 10 at 2 ("We may in our discretion change these Terms, Amazon.com's Conditions of Use and Privacy Notice, or any aspect of Prime membership, without notice to you.")

Relatedly, Plaintiffs ignore that this Court has already considered and rejected their reading of *Douglas v. United States Dist. Court*, 495 F.3d 1062 (9th Cir. 2007). *See* McKee Order at 17-18 n.7 (distinguishing *Douglas* and further "not[ing] that no district court has applied *Douglas* to hold that repeated purchases

FENWICK & WEST LLP
ATTORNEYS AT LAW

that require agreeing to hyperlinked Conditions of Use do not constitute assent to those terms as written at the time of purchase"). In sum, Plaintiffs have identified no valid basis for the Court to refuse to enforce the binding agreements that Mr. Rogawski accepted.

### D.   Mr. Weber Repeatedly Agreed to Arbitrate All Disputes Relating to His Use of Amazon.

As previously mentioned, Audible's opening brief mistakenly relied on an account history for a different Eric Weber. The account history this reply discusses is based on an account email address that Plaintiffs' counsel has confirmed belongs to Plaintiff Eric Weber. Audible previously requested Mr. Weber's email address during the informal meet and confer process in with Plaintiffs' counsel back in December 2017, before filing this motion, but Plaintiffs' counsel failed to provide it at that time (which would have avoided the subsequent confusion).

In their opposition, Plaintiffs try to exploit Audible's inadvertent reliance on customer records for "the other Eric Weber" to frustrate Audible's ability to submit correct evidence regarding Plaintiff Weber's account history. And Plaintiffs go further to speculate wildly about the sufficiency of "most, if not all, of Audible's and Amazon's relevant webpages and disclosures." *See, e.g.*, Opp. at 6 n.1.

The facts surrounding Mr. Weber's agreement to arbitrate his claims in this lawsuit are simple. Since 2011, Amazon's COUs have contained an arbitration agreement with a class action waiver provision. Ressmeyer Reply Decl. ¶ 5, Exs. 3-4. Amazon's arbitration provision provides that all claims relating to the use of any Amazon service must be resolved either in arbitration or in small claims court:

> **Any dispute or claim relating in any way to your use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com will be resolved by binding arbitration, rather than in court,** except that you may assert claims in small claims court if your claims qualify.

REPLY ISO AUDIBLE'S MOT. TO COMPEL ARBITRATION AND DISMISS                   12          Case No. 2:17-cv-1941 GW(Ex)

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Id.* ¶ 5, Ex. 4 at 4 (bold in original).[4]  Mr. Weber is a longtime Amazon customer. Amazon's records reflect two customer accounts associated with Mr. Weber's Yahoo e-mail address:  a merchant account with activity dating back to December 27, 2004, and a non-merchant account started in March 15, 2010.  *Id.* ¶ 4, Exs. 1-2.

Between the two accounts, Mr. Weber has placed hundreds of purchase orders through Amazon since Amazon first adopted an arbitration provision in August 2011.  Ressmeyer Reply Decl. ¶ 9, Exs. 9-10.  Each time he placed an order from Amazon's standard checkout page, Mr. Weber received notice of, and agreed to, the Amazon COUs.  *Id.*; *see also* Dkt. 73-16 ("Ressmeyer Decl.") ¶ 3, Ex. 2. Whether on the Amazon.com desktop or mobile websites, or through the Amazon app, customers using the standard checkout flow must click on a "Place your order" button immediately next to a hyperlinked disclosure:



*Amazon Desktop Website*



*Amazon Mobile Website*

---

[4] The 2011 COUs were substantively identical, covering "**[a]ny dispute or claim relating in any way to your visit to Amazon.com or to products or services sold or distributed by Amazon or through Amazon.com . . . .**"  Ressmeyer Reply Decl. ¶ 5, Ex. 3 at 2-3 (bold in original).

REPLY ISO AUDIBLE'S MOT. TO COMPEL ARBITRATION AND DISMISS                           13       Case No. 2:17-cv-1941 GW(Ex)

Fenwick & West LLP
Attorneys at Law

*Amazon App*

Ressmeyer Decl. ¶ 3, Ex. 2. The disclosure states: "By placing your order, you agree to Amazon's [or Amazon.com's] <u>privacy notice</u> and <u>conditions of use</u>." *Id.* The words "conditions of use" in that disclosure include a blue hyperlink directly to the COUs and its arbitration provision. *Id.*

The checkout system has presented this notice to Mr. Weber every time he placed an order from Amazon's standard checkout screen. Ressmeyer Reply Decl. ¶ 9. In all cases, Amazon includes a prominent hyperlinked disclosure to the Amazon COUs (and thus its arbitration provision) near the "Place your order" button. *Id.* Amazon's records show that Mr. Weber placed no fewer than ***270 purchase orders for 417 items*** through his Amazon merchant account from February 21, 2012 through December 14, 2017 (the day before Plaintiffs filed the Second Amended Complaint, which first named Mr. Weber in this lawsuit) and that he placed ***an additional 35 purchase orders for 51 items*** through his non-merchant account from February 10, 2012 through July 14, 2013 (the last transaction on that account). *Id.* Each time Mr. Weber checked out using the standard Amazon checkout page, he would have seen the disclosures above and had the opportunity to review the Amazon COUs, including its arbitration provision.[5] *Id.*

Mr. Weber is also a current member of Amazon Prime, and he agreed to the Amazon COUs when he signed up for the Prime service. *See* Ressmeyer Reply

[5] Because Audible bases its motion to compel arbitration as to Plaintiff Weber on his agreement to the Amazon COUs through making purchases through the Amazon standard checkout flow and signing up for Prime, Audible's motion as to Plaintiff Weber does not implicate any so-called "revised disclosures" by Audible.

REPLY ISO AUDIBLE'S MOT. TO COMPEL ARBITRATION AND DISMISS          14          Case No. 2:17-cv-1941 GW(Ex)

Decl. ¶ 6, Exs. 1, 5.  Amazon's records show that Mr. Weber signed up for an annual Amazon Prime membership on Thursday, October 26, 2017 using his Amazon merchant account.  *Id.*  Customers must agree to the Amazon COUs when they sign up for the Prime service.  *Id.* ¶ 7, Exs. 6-7.  To enroll in Prime, Mr. Weber had to click on a virtual button immediately above the following disclosure:  "By signing up, you agree to the <u>Amazon Prime Terms</u> . . . ."  *Id.*  This language contains a hyperlink to the Amazon Prime Terms, which at the time of Mr. Weber's sign-up incorporated by reference the Amazon COUs and its arbitration agreement.  *Id.*  Thus, Mr. Weber agreed to arbitrate claims "relating in any way to [his] use of any Amazon service" when he joined Amazon Prime in October 2017.

Notably, as discussed above, this all occurred well before Mr. Weber joined this lawsuit, and at a time that the only Plaintiffs in this case—Beals and McKee—had asserted no valid claims relating to the "wrong credit card" claim that Weber seeks to pursue here.  Thus, at the time Mr. Weber joined Amazon Prime and once again accepted Amazon's arbitration provision, there was no "class representative" for even a putative class action that would encompass his claim.

### E.    Plaintiffs Resurrect the Same Unenforceability Arguments That This Court Has Already Considered and Rejected.

There are no material differences between the Audible and Amazon arbitration provisions that Audible relies upon in this motion and the provisions that the Court found enforceable as to Mr. Beals and as to Mr. McKee.  *Compare* Gune Decl. ¶¶ 13, 19-20, Exs. 3, 9, 10, *and* Ressmeyer Reply Decl. ¶ 5, Exs. 3-4, 8, *with* Beals Order at 13–15, *and* McKee Order at 19–22.  Yet, once again, Plaintiffs raise a frivolous, point-by-point rehash of the very same arguments that the Court has previously considered and rejected.  The Court has already found that, apart from a severable limitation of liability provision not relevant to either Mr. Rogawski's or Mr. Weber's agreements, "the Amazon COU and Audible COU are not

1    unconscionable and are enforceable."  McKee Order at 22.  Consistent with its

2    earlier decisions in this lawsuit, the Court should hold that the arbitration

3    agreements that Mr. Rogawski and Mr. Weber formed with Audible and Amazon,

4    respectively, are valid and enforceable.

5        **F.       Plaintiffs' Respective Agreements to Arbitrate Bar This Lawsuit.**

6        Plaintiffs' opposition fails to raise any argument that the Audible arbitration

7    agreements that Mr. Rogawski entered cover this lawsuit.  At the time of his

8    September 30, 2015 credit redemption, the Audible Service Conditions of Use

9    included a complete stand-alone arbitration agreement covering "**[a]ny dispute or**

10   **claim relating in any way to your use of the Audible Service . . . .**"  Gune Decl. ¶

11   13, Ex. 3 at 3 (bold in original).  Meanwhile, during Mr. Rogawski 2017

12   redemptions, the Audible Service Conditions of Use covered "**[a]ny dispute or**

13   **claim arising from or relating to these Terms or your use of the Service**" and

14   incorporated by reference the arbitration provision in the Amazon COUs.  *Id.* ¶ 19,

15   Ex. 9 at 2 (bold in original).  Because Mr. Rogawski's claims regard lost credits due

16   to Audible "rollover limit" policy, they relate to his use of the Audible Service and

17   fall within the scope of the arbitration agreements to which Mr. Rogawski agreed.

18       As for Mr. Weber, his claim relates to the credit card he placed on his

19   Amazon account, and therefore falls within the scope of his arbitration agreement

20   with *Amazon*, as reflected in the Amazon COUs.  That arbitration agreement covers

21   "**[a]ny dispute or claim relating in any way to your use of any Amazon Service,**

22   **or to any products or services sold or distributed by Amazon or through**

23   **Amazon.com . . . .**"  Ressmeyer Reply Decl. ¶ 5, Ex. 4 at 4 (bold in original).  This

24   "broad and far reaching" language of the arbitration clause "leaves little doubt that

25   the dispute [here] is subject to arbitration."  *Chiron Corp. v. Ortho Diagnostic Sys.,*

26   *Inc.,* 207 F.3d 1126, 1131 (9th Cir. 2000) (ordering arbitration as breadth of

27   arbitration agreement and federal policy favoring arbitration embodied in the

28   REPLY ISO AUDIBLE'S MOT. TO
     COMPEL ARBITRATION AND
     DISMISS                                    16        Case No. 2:17-cv-1941 GW(Ex)

FENWICK & WEST LLP
ATTORNEYS AT LAW

Federal Arbitration Act "leaves no place for the exercise of discretion by a district court") (internal quotations and citations omitted); *see also In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007) (holding that arbitration agreement that covered "any other services provided by . . . KPMG," and disputes and claims involving "any entity for whose benefit the services in question are or were provided" had broad scope and *retroactive effect*).  Indeed, courts examining the substantially identical Amazon arbitration agreement have found that its use of "any dispute" language gave the agreement broad scope: "[W]hen arbitration agreements contain broad 'relating to any dispute' language, both future *and past disputes* are included in the scope of the arbitration agreement." *Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1178 (W.D. Wash. 2014) (emphasis added) (arbitration agreement in Amazon COUs had retroactive effect); *see also Peters v. Amazon Servs. LLC,* 2 F. Supp. 3d 1165, 1173 (W.D. Wash. 2013) (same with business services agreement).

Mr. Weber's claims in this lawsuit arise from his use of the Amazon service and specifically relate to allegedly unauthorized charges made to a credit card he placed on file for his Amazon account. *See* SAC at ¶¶ 16-19.  Plaintiffs' opposition does not seriously dispute this point.  Rather, in a footnote, Plaintiffs merely notes that the Court had denied an earlier request to apply Plaintiff Grant McKee's agreement to the Amazon arbitration provision to his claims against Audible. *See* Opp. at 16 n.4 (citing McKee Order at 17, 22-23).  But Mr. Weber's claims against Audible are fundamentally different than Mr. McKee's (or Mr. Rogawski's) claims: Mr. Weber's primary grievance relates to the claim that he received a charge on a credit card that he provided in the first instance to Amazon, after using his Amazon account to sign up for Audible. *See* SAC at ¶¶ 16-19.  In contrast, Mr. McKee and Mr. Beals had no charges to a different credit card on their respective accounts.

Mr. Weber's claims relate to his use of the Amazon Service, and to services

Fenwick & West LLP
Attorneys at Law

1    sold or distributed by Amazon or through Amazon.com.  Thus, Mr. Weber's claims

2    fall squarely within the scope of his arbitration agreement with Amazon, and this

3    Court should compel arbitration as to Mr. Weber.

4    **III.    CONCLUSION**

5         Plaintiffs' opposition fails to raise any material dispute about either Mr.

6    Rogawski's or Mr. Weber's repeated assent to arbitrate their respective claims in

7    this lawsuit.  Mr. Rogawski, on at least three occasions, agreed to arbitrate claims

8    relating to his use of the Audible service by redeeming credits on multiple Audible

9    platforms.  Meanwhile Mr. Weber repeatedly agreed to arbitrate any dispute

10   relating to his use of Amazon by placing hundreds of purchase orders through

11   Amazon and by signing up to Amazon Prime.  This lawsuit is precluded by those

12   agreements, and the Court should compel arbitration.  Accordingly, Audible asks

13   this Court to compel these claims to arbitration and dismiss them with prejudice.

14   Dated:  February 26, 2018            FENWICK & WEST LLP

15                                       By: */s/ Jedediah Wakefield*

16                                           Jedediah Wakefield

17                                       Attorneys for AUDIBLE, INC.

REPLY ISO AUDIBLE'S MOT. TO
COMPILE ARBITRATION AND
DISMISS                    18    Case No. 2:17-cv-1941 GW(Ex)