1 | **Jamin S. Soderstrom, Bar No. 261054**
2 | **jamin@soderstromlawfirm.com**
   | **SODERSTROM LAW PC**
3 | **3 Park Plaza, Suite 100**
   | **Irvine, California 92614**
4 | **Tel:   (949) 667-4700**
5 | **Fax:  (949) 424-8091**

6 | *Counsel for Plaintiffs and the Proposed Class*
7

8 | **UNITED STATES DISTRICT COURT**
9 | **CENTRAL DISTRICT OF CALIFORNIA**
10 | **(WESTERN DIVISION – LOS ANGELES)**
11

| | |
|---|---|
| **GRANT MCKEE, ERIC WEBER, and MICHAEL ROGAWSKI, individually and on behalf of all others similarly situated,** | **Case No. 2:17-cv-01941 GW (Ex)** |
| **Plaintiffs,** | **PLAINTIFF ERIC WEBER'S OPPOSITION TO AUDIBLE'S MOTION TO STAY AS TO ERIC WEBER** |
| **v.** | |
| **AUDIBLE, INC.,** | |
| **Defendant.** | Date:          July 23, 2018 |
| | Time:         8:30 A.M. |
| | Courtroom:  9D |
| | Judge:        George H. Wu |
| | Trial Date:   None Set |

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 2

ARGUMENT ...................................................................................................... 6

    I.   Audible has the burden of proving a discretionary stay is warranted. ........... 6

    II.  Audible cannot meet its burden because none of the relevant factors weighs in favor of issuing a discretionary stay. ......................................................... 7

         a.  Factor 1 (standard threshold): Audible does not even try to show that its appeal has a "strong likelihood of success." ......................................... 7

         b.  Factor 1 (lesser threshold): Audible cannot show its appeal is a substantial case that raises serious legal questions with a fair prospect of success. .................................................................................................. 8

         c.  Factor 2: Audible cannot show a probability that it will be "irreparably injured" if Weber's claims are not stayed. ......................................... 15

         d.  Factor 3: Weber and putative class members would be prejudiced if his claims were stayed pending appeal. ...................................................... 18

         e.  Factor 4: Staying Weber's claims pending appeal would be contrary to the public interest. ................................................................................. 19

CONCLUSION ................................................................................................ 20



i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbassi v. INS,*
143 F.3d 513 (9th Cir. 1998) ............................................................. 7

*Ambrosio v. Cogent Communications, Inc.,*
2016 WL 7888024 (N.D. Cal. Sept. 21, 2016) ................................. 17

*Amisil Holdings Ltd. v. Clarium Capital Mgmt.,*
622 F. Supp. 2d 825 (N.D. Cal. 2007) ............................................. 12

*Aronson v. Resolution Trust Corp.,*
38 F.3d 1110 (9th Cir. 1994) ........................................................... 15

*AT&T Techs., Inc. v. Commc'ns Workers of Am.,*
475 U.S. 643 (1986) ........................................................................... 9

*Bradberry v. T-Mobile USA, Inc.,*
2007 WL 2221076 (N.D. Cal. Aug. 2, 2007) ................................... 20

*Britton v. Co-op Banking Group,*
916 F.2d 1405 (9th Cir. 1990) ...................................................... 9, 12

*Cesca Therapeutics Inc. v. SynGen Inc.,*
2017 WL 1174062 (E.D. Cal. Mar. 30, 2017)......................6, 7, 15, 16

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
207 F.3d 1126 (9th Cir. 2000) ......................................................... 10

*Ekin v. Amazon Servs., LLC,*
84 F. Supp. 3d 1172 (W.D. Wash. 2014) ......................................... 10

*Ford v. Yasuda,*
2015 WL 13424607 (C.D. Cal. July 1, 2015) ................................... 19

*Gillette v. Uber Techs.,*
2015 WL 4481706 (N.D. Cal. July 22, 2015) ..................................... 9

*Guifu Li v. A Perfect Franchise, Inc.,*
2011 WL 2293221 (N.D. Cal. June 8, 2011)................................. 9, 18

ii

*Jimenez v. Menzies Aviation Inc.*,
  2015 WL 5591722 (N.D. Cal. Sept. 23, 2015)..........................................16, 19, 20

*Jones v. Deutsche Bank AG*,
  2007 WL 1456041 (N.D. Cal. May 17, 2007)...................................................... 12, 13

*Laster v. T-Mobile USA, Inc.*,
  2008 WL 5377635 (S.D. Cal. Nov. 4, 2008)........................................................... 12

*Leiva-Perez v. Holder*,
  640 F.3d 962 (9th Cir. 2011) ............................................................................6, 7, 15

*Leyva v. Certified Growers of Cal., Ltd.*,
  593 F.2d 857 (9th Cir. 1979) ................................................................................ 12

*McGill v. Citibank, N.A.*,
  2 Cal. 5th 945 (2017)............................................................................................ 18

*Mohamed v. Uber Techs.*,
  115 F. Supp. 3d 1024 (N.D. Cal. July 22, 2015) ............................................ 14, 16

*Morse v. Servicemaster Glob. Holdings, Inc.*,
  2013 WL 123610 (N.D. Cal. Jan. 8, 2013) ........................................7, 9, 16, 18

*Mundi v. Union Security Life Ins. Co.*,
  555 F.3d 1042 (9th Cir. 2009) .............................................................................. 13

*Munro v. Univ. of Southern California*,
  2017 WL 5592904 (C.D. Cal. July 7, 2017) ........................................................ 18

*Murphy v. DirecTV, Inc.*,
  2008 WL 8608808 (C.D. Cal. July 1, 2008) ........................................................ 13

*Nken v. Holder*,
  556 U.S. 418 (2009) .............................................................................................. 6

*Ontiveros v. Zamora*,
  2013 WL 1785891 (E.D. Cal. Apr. 25, 2013) ...................................................... 14

*Peters v. Amazon Servs. LLC*,
  2 F. Supp. 3d 1165 (W.D. Wash. 2013) ............................................................... 10

*Pokorny v. Quixtar, Inc.*,
  2008 WL 1787111 (N.D. Cal. Apr. 17, 2008) ...................................................... 9

iii

*Sampson v. Murray,*
   415 U.S. 61 (1974) ...................................................................................... 16

*Singleton v. Wulff,*
   428 U.S. 106 (1976) ..................................................................................... 13

*Smith v. Massachusetts Mutual Life Ins. Co.,*
   2010 WL 11545610 (C.D. Cal. May 25, 2010) .......................................... 13

*Steiner v. Apple Computer, Inc.,*
   2008 WL 1925197 (N.D. Cal. Apr. 29, 2008) ............................................ 14

*United States v. Washington,*
   969 F.2d 752 (9th Cir. 1992) ...................................................................... 15

*In re Verisign, Inc., Derivative Litig.,*
   531 F. Supp. 2d 1173 (N.D. Cal. 2007) ...........................................10, 13, 14

*Volkswagen Grp. of Am., Inc. v. Saul Chevrolet, Inc.,*
   2015 WL 5680317 (C.D. Cal. Sept. 25, 2015) ............................................. 7

**Statutes**

9 U.S.C. § 3 ...................................................................................................... 13

**Other Authorities**

Federal Rule of Civil Procedure 12(b) ............................................................ 4, 5

Federal Rule of Civil Procedure 23(d) .............................................................. 19

PLAINTIFF ERIC WEBER'S OPPOSITION TO AUDIBLE'S MOTION TO STAY AS TO ERIC
WEBER

**INTRODUCTION**

Audible's motion to stay is yet another attempt to delay the Court's consideration of Plaintiffs' claims for class certification and on the merits. Audible concedes it is not likely to prevail on appeal. Thus, the most likely result of staying Weber's claims is that the Ninth Circuit would eventually affirm the Court's ruling and the parties would then complete a second round of nationwide class discovery and argue a second motion for class certification in mid to late-2019 or even 2020. Audible is not entitled to a stay pending appeal, and no discretionary stay is warranted in these circumstances.

The first factor in assessing whether a discretionary stay should issue asks whether Audible's appeal has a "strong likelihood of success." Audible concedes that it is not likely to win its appeal. This is unsurprising because Audible cited no relevant case law in its motion to compel arbitration and dismiss claims as to Weber; it simply argued, without any legal support, that the broad scope of Amazon's arbitration clause should make up for the fact that no arbitration agreement exists between Weber and Audible.

Audible tries to satisfy the first factor by meeting a "lesser threshold" (which, in turn, requires it to make a greater showing on the second and third factors). It argues that, even if it is not likely to prevail on appeal, its appeal still presents a "substantial case" that raises "serious legal issues" and has a "fair prospect" of success. But Audible cannot satisfy even this lesser threshold because: (i) the appeal does not raise any issues of first impression, implicate any constitutional concerns, seek to resolve a split of authority, or otherwise involve any pressing issues of widespread importance; (ii) Audible simply recycles the same arguments the Court already rejected (twice), and subtly suggests that the Court should reconsider its ruling based equitable estoppel and agency theories; and (iii) Audible never submitted evidence in support of its motion to compel arbitration that was sufficient to show that an arbitration agreement actually exists between Weber *and Amazon* (a necessary prerequisite to its other arguments). Audible's description of its own arguments as "colorable" shows its own view on its chances on appeal and with respect to this motion to stay.

As to the remaining three discretionary stay factors which assess the balance of hardships and the public interest, none of the factors <u>tilt sharply</u> (or even modestly) in favor of staying Weber's claims. Audible cannot show a "probability" that it will suffer "irreparable injury" if Weber's claims move forward with the rest of the case. It simply makes the same "cost of litigation" arguments that apply to every class action defendant that loses a motion to compel arbitration. Audible also cannot show that Weber or putative class members will not suffer any prejudice if his claims are stayed for what is likely to be between six and 18 months.

Finally, Audible cannot show that the public interest favors a stay because the opposite is true. Staying Weber's claims would most likely <u>increase</u> the expenditure of judicial time and resources in this case by causing two rounds of class discovery and class certification arguments. Moreover, Weber seeks to enjoin Audible's ongoing violations of federal and state law, and delaying the Court's consideration of these issues risks unnecessary and avoidable harm to other consumers and the public.

Audible cannot meet its burden on any of the relevant factors. Its chances on appeal are limited at best, and the most likely result of a stay would be that Audible incurs <u>more</u> litigation costs and the Court expends <u>more</u> time and resources in 2019 addressing issues it could have addressed collectively in 2018. Because none of the relevant factors favor a stay, and several weigh decidedly against a stay, the Court should deny Audible's motion and let Weber's claims move forward with the rest of the case.

## BACKGROUND

Weber has been a putative class member in this case since May 2017 and he has been a named plaintiff and proposed class representative since December 2017. *See* Dkt. 65 (SAC); Dkt. 115 (TAC). His claims against Audible are substantially similar to the original named plaintiff and proposed class representative Grant McKee's claims. Dkt. 115. The circumstances surrounding Weber's relationship with Audible are similar to McKee's circumstances in that they both viewed similar webpages, they both lost credits, they are both long-time Amazon customers, and they both stored payment methods on

1   their Amazon accounts. *Id.* It is thus unsurprising that Audible's arguments directed at

2   Weber and McKee have been identical in all material respects.

3        On July 17, 2017, Audible lost its original motion to compel arbitration and

4   dismiss claims as to McKee. *See* Dkt. 37 at 7-17. Amazon won its part of the motion

5   based primarily on a webpage that disclosed the Amazon Prime Terms which, in turn,

6   incorporated Amazon's separate COU and arbitration clause. *See* Dkt. 37 at 17 n.7 & 23;

7   Dkt. 25 at 6-10; *see also Weber Case*[1] Dkt. 35 at 1-3 & n.1-2 (clarifying the Court's

8   ruling in this case as to McKee).

9        In connection with Audible's motion to compel McKee's claims to arbitration, the

10  Court found that no version of Amazon's COU and arbitration clause mentioned Audible

11  or incorporated any of Audible's terms, policies, or disclosures, and that, under

12  Washington law, Audible could not rely on a contract to which it was not a party in order

13  to compel McKee's claims against Audible to arbitration even if Amazon could compel

14  similar claims brought against Amazon to arbitration. *See* Dkt. 37 at 17. Specifically, the

15  Court ruled:

16         Defendants argue that because Amazon's COU define
17         "Amazon" to include its affiliates, Plaintiff, in making purchases
18         on Amazon.com enters into arbitration agreements with every
           single Amazon affiliate. This line of argument is unpersuasive.
19         First, it is a relatively basic proposition that a party can only
           assent to a contract with notice of its essential terms, including,
20         the actual parties to the contract. *See Lee v. Intelius Inc.*, 737 F.3d
           1254, 1260 (9th Cir. 2013) ("Washington law requires that the
21         'essential elements' of the contract be set forth in writing. An
           essential element is identification of the parties to the contract.")
22         Audible is not listed as a party to the Amazon COU.

23         Further, Defendants' contention that the Amazon sign in page
24         provided Plaintiff with notice that he was making an agreement

25   _____

26   [1] Weber filed a related case against Amazon based on Amazon's own violations of his
27   privacy rights and its failure to disclose material terms, among other things. The related
     case is *Weber v. Amazon.com, Inc.*, Case No. 2:17-cv-08868-GW(Ex) and is referred to
28   herein as the "*Weber Case*."



1
2
3
4
5

> with Audible has other problems. For one, unless the Amazon agreement directs Plaintiff to Audible's COU in some way, or notifies Plaintiff of the existence of Audible as an Amazon affiliate it does not afford notice. The Court is unwilling to hold that a reasonable consumer signing into Amazon would believe he or she is also waiving the right to sue several additional corporations. While Amazon may be able to compel Plaintiff to arbitrate his claims based on purchases he made on Amazon, Audible may not.

6
Dkt. 37 at 17.

7
8
9
10
11
12
13
14
15

The Court also rejected Audible's "equitable estoppel" argument, noting that the argument was "based on a misunderstanding, or perhaps a willful misstatement of Ninth Circuit law on equitable estoppel in this context." Dkt. 37 at 22. The Court found that "the Ninth Circuit has directly opposed extending equitable estoppel in the manner [Audible] ask[ed] the Court to," i.e., to let Audible "invoke the arbitration clause contained in an agreement between [McKee] and co-Defendant Amazon even though Audible is non-signatory to that agreement." *Id.* at 22-23. Put simply, because Audible did not have an agreement to arbitrate with Weber, it could not compel arbitration even if its affiliate Amazon could compel arbitration of claims made against Amazon.

16
17
18
19
20
21

After losing the motion to compel arbitration as to McKee, Audible expressly waived any right to appeal the Court's denial of the motion and, accordingly, also waived any right to seek a discretionary stay pending appeal. *See* Dkt. 38. Thereafter, most of McKee's claims survived two motions to dismiss Audible brought under Federal Rule of Civil Procedure 12(b), *see* Dkt. 53; Dkt. 87, and Audible chose not to file a third motion to dismiss directed at Weber's same claims.

22
23
24
25
26
27
28

On January 22, 2018, Audible filed another motion to compel arbitration and dismiss claims, this time directed at Weber. Dkt. 73. Audible identified the wrong "Eric Weber" in its moving papers, however, and then asked the Court to consider new evidence it submitted with its reply brief concerning the real Weber. Dkt. 82. In reply, Audible submitted <u>zero evidence</u> that Weber agreed to Audible's own COU and arbitration clause. *Id.*; *see* Dkt. 97 at 20. Instead of arguing that Weber knowingly and unambiguously agreed to arbitrate claims *against Audible* based on *Audible's* COU and

SODERSTROM
LAW

arbitration clause, Audible once again argued that Weber was required to arbitrate his claims *against Audible* based on *Amazon's* separate COU and arbitration clause. Dkt. 82 at 12-16. Audible emphasized the broad scope of Amazon's arbitration clause but ignored the fact that no agreement to arbitrate existed between Weber and Audible. *Id.* Audible did not make any equitable estoppel, agency, or third-party beneficiary arguments. *Id.* Audible also failed to submit sufficient evidence to prove that an agreement to arbitrate actually existed between Weber and Amazon. *Id.*; *see also Weber Case* Dkt. 35 at 12-16 (finding that Amazon did not meet its evidentiary burden of proof—using the exact same evidence Audible submitted in this case—but giving Amazon a chance to submit additional evidence and briefing before issuing a final ruling).

When Audible brought its motion to compel arbitration and dismiss claims as to Weber, the Court had rejected Audible's exact same arguments just six months earlier. Dkt. 37. The Court's denial of Audible's motion as to Weber thus came as no surprise. Dkt. 97 at 20 & n.15 ("The Court already rejected this argument and does so again."). The Court noted:

> Audible again misses the point. Weber's present claim is against Audible. Audible has not produced evidence that Weber ever agreed *with Audible* to arbitrate disputes between Weber *and Audible*. It may be the case that Weber has agreed to arbitrate claims like the ones asserted here were he to assert them against Amazon. However, that determination would only allow Amazon to force Weber into arbitration; it would not allow Audible to do the same.

Dkt. 97 at 21 (emphasis in original).

Where Audible expressly waived its right to appeal the Court's same rulings as to McKee, this time Audible decided to appeal the Court's rulings as to Weber. Dkt. 114. Audible is now trying to invoke the Court's discretion to stay the case as to Weber while nationwide class discovery is ongoing and a class certification hearing is scheduled for December 3, 2018. *See* Dkt. 100.



**ARGUMENT**

Audible admits it has no right to stay Weber's claims pending its appeal of the Court's rulings and it must invoke the Court's discretion to issue a stay while the rest of the case moves forward. To obtain a discretionary stay pending appeal, Audible has the burden to show that the relevant factors weigh in favor of a stay. Even if the factors do favor a stay, the Court still is not required to stay Weber's claims pending appeal.

In these circumstances, Audible cannot meet its burden to show that a discretionary stay is warranted because <u>none</u> of the four factors favor staying Weber's claims. The Court should deny Audible's motion.

## I.   Audible has the burden of proving a discretionary stay is warranted.

When a party appeals the denial of a motion to compel arbitration, a stay is "not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009). The decision to grant a stay "is instead 'an exercise of judicial discretion,' and 'the propriety of its issue is dependent upon the circumstances of the particular case.'" *Id.* (internal marks omitted). "The moving party has the burden of persuading the court that the circumstances of the case justify a stay." *Cesca Therapeutics Inc. v. SynGen Inc.*, 2017 WL 1174062, at *2 (E.D. Cal. Mar. 30, 2017).

When deciding whether to stay a case pending appeal, courts consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (citation omitted). The first two factors are the "most critical." *Nken*, 566 U.S. at 434.

In weighing these factors, courts in the Ninth Circuit apply a "sliding scale" where a stronger showing on one element may offset a weaker showing on another. *Leiva-Perez*, 640 F.3d at 964-66. In particular, a moving party who under the first factor cannot prove a "strong likelihood of success" on the merits of the appeal must, at a minimum, show the appeal presents a "substantial case" raising "serious legal issues" and that the appeal

has a fair prospect of success. *See id.*; *see Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998). A moving party that can only meet the lesser threshold on the first factor must then show that the balance of hardships under the second and third factors "tilts sharply" in favor of a stay. *Leiva-Perez*, 640 F.3d at 966; *Cesca Therapeutics*, 2017 WL 1174062, at *2; *Morse v. Servicemaster Glob. Holdings, Inc.*, 2013 WL 123610, at *2 (N.D. Cal. Jan. 8, 2013).

In every case, if the moving party cannot make the threshold showing that irreparable harm is probable, not merely possible, then a stay cannot issue regardless of the proof regarding the other stay factors. *See Leiva-Perez*, 640 F.3d at 965 (characterizing irreparable harm as "the bedrock requirement" of obtaining a stay).

## II. Audible cannot meet its burden because <u>none</u> of the relevant factors weighs in favor of issuing a discretionary stay.

In these circumstances, the four-factor test does not weigh in favor of a discretionary stay. Indeed, Audible cannot meet its burden to show that *any* of the relevant factors favor staying Weber's claims while the rest of the case moves forward with nationwide class discovery toward a class certification hearing on December 3, 2018. Because Audible cannot meet its burden, the Court should deny the motion.

### a. <u>Factor 1 (standard threshold): Audible does not even try to show that its appeal has a "strong likelihood of success."</u>

The first factor considers whether Audible can show it has "a strong likelihood of success" on the merits of its appeal. *Leiva-Perez*, 640 F.3d at 968; *Cesca Therapeutics*, 2017 WL 1174062, at *2. Even presenting an issue of first impression is not enough to show that an appeal meets this high standard. *See, e.g.*, *Volkswagen Grp. of Am., Inc. v. Saul Chevrolet, Inc.*, 2015 WL 5680317, at *4 (C.D. Cal. Sept. 25, 2015). Furthermore, failing to present arguments different from those advanced in its motion to compel arbitration weighs *against* a likelihood of success on appeal. *See Cesca Therapeutics*, 2017 WL 1174062, at *3 ("Courts have found that the lack of new substantive arguments weighs against likelihood of success on the merits.").

Audible does not even try to show that it has a strong likelihood of success on the merits of its appeal. With good reason. The Court soundly rejected Audible's arguments once with respect to McKee and Audible chose not to appeal that ruling. *See* Dkt. 37; Dkt. 38. When Audible filed essentially the same motion to compel arbitration and dismiss claims against Weber, Audible did not present any new substantive arguments as a reason to compel arbitration and again sought to rely on Amazon's separate COU and arbitration clause instead of its own. *See* Dkt. 73; Dkt. 82. It noted one factual dissimilarity between McKee and Weber (where McKee complained of the *risk* that a non-designated payment method stored on his separate Amazon account would be charged by Audible without notice, Weber complained that Audible *actually charged* without notice a non-designated payment method stored on his separate Amazon account) and again emphasized the broad scope of Amazon's arbitration clause to make up for the non-existence of any agreement to arbitrate between Weber and Audible. Dkt. 82.

Audible's motion to stay carefully avoids referencing the "strong likelihood of success" standard, suggesting that the lesser threshold of presenting a substantial case with serious legal questions and a fair prospect of success is the benchmark for securing a stay. Audible also carefully avoids mentioning that meeting the lesser threshold on the first factor requires it to make an even higher showing on the second and third factors. Regardless, Audible cannot even satisfy the lesser threshold of the first factor.

       **b.**      <u>**Factor 1 (lesser threshold):**</u> **Audible cannot show its appeal is a substantial case that raises serious legal questions with a fair prospect of success.**

Rather than try to satisfy the first factor by arguing it has a strong likelihood of success on the merits of its appeal, Audible instead argues that it meets the lesser threshold of showing that its appeal presents a "substantial case" that raises "serious legal questions" with a fair prospect of success. Even aiming at this lesser threshold, Audible misses the mark.

A "substantial case" is one that raises genuine matters of first impression within the Ninth Circuit or that implicates a constitutional question or otherwise concerns a pressing legal issue where there is an unsettled split of authority on an important legal issue. *See Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990); *Pokorny v. Quixtar, Inc.*, 2008 WL 1787111, at *2 (N.D. Cal. Apr. 17, 2008); *Morse*, 2013 WL 123610, at *3 (a substantial case "raises genuine matters of first impression within the Ninth Circuit" or which may "otherwise address a pressing legal issue which urges that the Ninth Circuit hear the case"); *Guifu Li v. A Perfect Franchise, Inc.*, 2011 WL 2293221, at *3 (N.D. Cal. June 8, 2011) ("For a legal question to be 'serious,' it must be a 'question going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation.").

Audible cannot meet this lesser threshold for several reasons, let alone show that the second and third factors tilt sharply in favor of a stay. *See Gillette v. Uber Techs.*, 2015 WL 4481706, at *2 (N.D. Cal. July 22, 2015) (finding the class action defendant failed to satisfy its burden on the first factor and declining to address the other factors).

**First**, Audible's appeal is not a substantial case on the merits. The law is well settled that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). Audible does not dispute that Weber and Audible never entered into a contract with an arbitration clause. In fact, Audible submitted <u>zero evidence</u> that a contract between Weber and Audible exists and it did not argue in its motion to compel arbitration that Weber knowingly consented to the arbitration clause that *Audible* included in its own COU. Dkt. 72; Dkt. 83; Dkt. 97 at 20. Audible therefore cannot *contractually* require Weber to arbitrate his claims against it, and arbitration is a matter of contract and consent.

Instead, as it did with McKee, Audible argues that the broad scope of Amazon's arbitration clause somehow makes up for the fact that no agreement to arbitrate between Audible and Weber exists. After misstating Ninth Circuit law concerning the narrow

circumstances where non-signatories to an arbitration agreement may be able to compel arbitration based on principles of equitable estoppel with respect to McKee, Dkt. 37 at 22-23, Audible wisely chose not to make any equitable estoppel, agency, or similar arguments in its motion against Weber. Dkt. 73 at 20-23 (citing no case law in support of its argument that Audible could compel arbitration based on Amazon's separate arbitration clause); Dkt. 82 at 16-18 (citing several cases,[2] none of which address equitable estoppel, agency, or other theories where a non-signatory to an agreement can compel arbitration). Yet, as shown below, many of the authorities it now relies on in support of a stay address equitable estoppel and agency issues that have been resolved by the Ninth Circuit in ways that do not help Audible and/or that the Court expressly rejected in its prior order related to McKee. Because Audible did not argue equitable estoppel or agency theories in its motion to compel arbitration, such issues will not be addressed by the Ninth Circuit on appeal and do not improve its prospects for success.

Audible's appeal also does not raise any "serious" legal questions because none of the issues on appeal are issues of first impression, implicate important constitutional questions, would resolve a split of authority among the district courts, or are so difficult

───────────────────

[2] The decision in *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000), addressed whether a broad arbitration clause contained in the parties' contract required the parties to submit a res judicata issue to the arbitrator (it did). The decision in *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173 (N.D. Cal. 2007), addressed whether a broad arbitration clause had retroactive effect (it did). *See also* Footnote 8, *infra*. The decisions in *Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172 (W.D. Wash. 2014), and *Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165 (W.D. Wash. 2013), addressed whether Amazon's arbitration clause was unconscionable and/or retroactive. None of the cases cited by Audible in its motion and reply stand support the proposition that a broadly worded arbitration clause lets *non-signatories* compel arbitration based on theories of equitable estoppel, agency, parent/subsidiary, or any other legal principle simply because one claim against the non-signatory has some connection to the signatory party. Simply put, no case says that one company's broad arbitration clause can make up for another company's failure to secure an agreement to arbitrate except in very narrow circumstances not at issue here (and which Audible never argued against Weber).

SODERSTROM
LAW

1    or pressing that this Court should stop all proceedings related to Weber until the Ninth

2    Circuit formally weighs in. As it already acknowledged, its appeal is "colorable" at best.

3        **Second**, Audible's motion to stay largely rehashes the same arguments it made in

4    its two motions to compel arbitration. This weighs *against* Audible's argument that it has

5    a fair prospect of success on the merits. *See* Motion at 6 (noting that its arguments seeking

6    a stay were "central" to its motion to compel arbitration and to the Court's ruling).

7    Audible's motion to stay again emphasizes the idea that Amazon has a connection to

8    Weber's claims against Audible because (i) Audible required Weber to log into his

9    Audible account using his Amazon password, (ii) Audible required Weber to designate a

10   payment method stored on his separate Amazon account, and (iii) Audible charged a non-

11   designated corporate credit card stored on Weber's separate Amazon account. *Id.* Yet

12   McKee and all Audible consumers faced the same circumstances as Weber (except for

13   item (iii), which only affects a subset of Audible members whose designated card is

14   declined). Moreover, Audible suggests (but again provides no supporting authority) that

15   Amazon's connection to Audible and the fact that Audible charged a non-designated

16   payment method stored on Weber's separate Amazon account is alone sufficient to let

17   Audible rely on Amazon's separate COU and arbitration clause. None of these points

18   make up for the fact that no agreement to arbitrate *between Weber and Audible* exists.[3]

19

20   _____

21

22   [3] The Court previously recognized that Audible is not even mentioned in Amazon's COU
     and that Amazon's COU does not incorporate by reference Audible's separate COU and
23   arbitration clause. Dkt. 37 at 17; Dkt. 97 at 20-21. This means that Amazon customers
     are not on notice that any past, present, or future claims against Audible—or against
24   Zappos, Whole Foods, CreateSpace, IMDb, or any of other Amazon's other affiliates, all
     of which have their own websites and terms—could be covered by Amazon's COU and
25   arbitration clause. Only *Audible's* COU provides any notice that Audible's services fall
     within the definition of an "Amazon Service," and Audible has conceded that Weber
26   never had proper notice of Audible's COU. Simply put, Audible is not a third-party
     beneficiary of Amazon's COU and arbitration clause, which appears to be what its
27   argument here is suggesting without actually providing any legal authority or saying the
     words "third-party beneficiary."
28

SODERSTROM LAW

Audible describes its own reasoning as "colorable" and suggests that "reasonable minds may differ" without explaining why. Of course, reasonable minds cannot differ as to whether a contract containing an arbitration clause exists *between Weber and Audible*—Audible has already conceded that point. Audible is clearly trying to push the lesser threshold of the first factor as low as possible.

**Third**, none of the authorities Audible cites are analogous to these circumstances or show that it has even a fair prospect of success on the merits of its appeal. *See Britton*, 916 F.2d at 1412 (finding a judgment does not moot an appeal of the denial of a motion to compel arbitration, but saying nothing about whether the court erred in denying a stay pending appeal); *Leyva v. Certified Growers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) (noting that a court may stay an action pending the resolution of *independent proceedings*, such as separate judicial, administrative, or arbitral matters, as a matter of controlling its own docket and calendar); *Laster v. T-Mobile USA, Inc.*, 2008 WL 5377635, at *1-2 (S.D. Cal. Nov. 4, 2008) (granting a stay where the defendant had "substantially revised" a class waiver provision that had previously been found unenforceable and where another court had recently stayed an order addressing the same revised provision pending appeal); *Jones v. Deutsche Bank AG*, 2007 WL 1456041, at *2 (N.D. Cal. May 17, 2007) (granting stay based on split of authority as to non-signatories compelling arbitration based on equitable estoppel,[4] where Ninth Circuit had not yet addressed the issue); *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 831-41 (N.D. Cal. 2007) (ordering arbitration based on an operating agreement and

---

[4] The Court rejected Audible's arguments related to equitable estoppel in its original order related to McKee, and Audible did not make any equitable estoppel arguments in its motion directed to Weber. Dkt. 37 at 22-23; Dkt. 73; Dkt. 82. In any event, the Ninth Circuit has since ruled that non-signatories cannot compel arbitration except in very narrow circumstances not at issue here. *See* Dkt. 37 at 22-23 (citing cases).

PLAINTIFF ERIC WEBER'S OPPOSITION TO AUDIBLE'S MOTION TO STAY AS TO ERIC WEBER

SODERSTROM
— LAW

the principles of equitable estoppel and agency,[5] and granting an automatic stay based on 9 U.S.C. § 3); *Smith v. Massachusetts Mutual Life Ins. Co.*, 2010 WL 11545610, at *7-9 (C.D. Cal. May 25, 2010) (ordering arbitration based on agency and equitable estoppel principles[6]); *In re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007) (holding that a broadly worded arbitration clause was retroactive and required shareholders suing derivatively on behalf of the company to submit claims that predated the arbitration clause to arbitration[7]); *Murphy v. DirecTV, Inc.*, 2008 WL 8608808, at *2

---

[5] Audible did not make any equitable estoppel arguments or argue that Amazon and Audible were acting as each other's agents in its motion to compel Weber's claims to arbitration, and the Court's ruling did not address such arguments. *See* Dkt. 73; Dkt. 82; Dkt. 97. Typically, "a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). Audible thus could not have a "fair prospect of success" on issues that were not addressed by the Court and which the Ninth Circuit will not address on appeal, and its appeal does not raise any "serious legal issues" related to equitable estoppel or agency theories. These are not even "colorable" arguments that the Ninth Circuit is likely to consider. In any event, as with the *Deutsche Bank* case from 2007, the Ninth Circuit has since narrowed the potential circumstances where a non-signatory to a contract can compel arbitration.

[6] Again, Audible did not argue any agency or equitable estoppel theories in its motion to compel directed at Weber. The Court also distinguished Audible's circumstances from the same circumstances at issue in *Smith* when it denied Audible's motion directed at McKee. Dkt. 37 at 22-23 (acknowledging *Mundi v. Union Security Life Ins. Co.*, 555 F.3d 1042 (9th Cir. 2009), and noting that equitable estoppel only applies in very limited circumstances where the plaintiff are suing the non-signatory under, and are directly seeking the benefit of, the contract that contained the arbitration clause). With respect to agency, the issue in *Smith* was that the non-signatory subsidiary was acting as the parent company's agent with respect to the specific transactions at issue, an allegation Audible has not and cannot make with respect to Amazon (i.e., Audible cannot reasonably suggest that it was acting as Amazon's agent when it issued its own advertisements, signed consumers up for Audible memberships, and charged payment methods that happened to be stored with Amazon). Even if Audible had made an agency argument in its motion, the fact that Audible is an affiliate and subsidiary of Amazon does not make it Amazon's agent. *Smith* is in no way analogous to Audible's circumstances and arguments.

[7] In *Verisign*, the plaintiffs were suing the defendant derivatively on behalf of the company that had entered into engagement letters with the defendant. 531 F. Supp. 2d at 1223. The plaintiffs were thus bound by the agreements the company had entered into with the defendant, which undisputedly had contained an arbitration clause since 2005. *Id.* Plaintiffs argued that because the basis of their claims pre-dated the 2005 arbitration



(C.D. Cal. July 1, 2008) (finding a substantial question was raised on appeal where there was "a paucity of authority on the issue of whether California has a 'materially greater interest' in deciding the question of unconscionability"); *Steiner v. Apple Computer, Inc.*, 2008 WL 1925197, at *3 (N.D. Cal. Apr. 29, 2008)[8] (finding that an appeal concerning the conscionability of a newly revised arbitration clause raised an important issue, while noting that the other three factors must strongly favor a stay); *Ontiveros v. Zamora*, 2013 WL 1785891, at *3-4 (E.D. Cal. Apr. 25, 2013) (finding a fair prospect of success on appeal where plaintiff had a heavy burden to prove defendants waived of the right to arbitrate and where three Ninth Circuit decisions had held that a district court erred in finding waiver after applying too lenient of a standard).

Literally none of Audible's cited authorities concern the same issues that the Ninth Circuit will address in Audible's appeal. Audible's motion shows that it wishes the Court would have reconsidered its equitable estoppel analysis from its prior McKee ruling, Dkt. 37 at 22-23, but Audible chose not to raise equitable estoppel with respect to Weber. Several of Audible's citations address "agency" theories that Audible did not argue in either of its motions and that do not apply in these circumstances in any event (i.e., neither Audible nor Amazon acted as the other's agent in connection with Weber's Audible membership). Citing inapplicable case law and new legal theories which the Ninth Circuit

---

clause, the arbitration clause did not apply to their claims. *Id.* The court rejected plaintiffs' citation of cases where the arbitration clauses were limited in scope, and held that the broad scope of the arbitration clause had retroactive effect and covered claims that pre-dated the 2005 engagement letter. *Id.* at 1224. This case does not stand for the proposition that a non-signatory company can rely on its parent company's arbitration clause simply because the parent company's arbitration clause is drafted broadly.

[8] Since *Steiner*, the number of courts that have <u>denied</u> stays pending appeal has notably surpassed the number of courts that have granted stays pending appeal. *See, e.g.*, *Mohamed v. Uber Techs.*, 115 F. Supp. 3d 1024, 1028 n.4 (N.D. Cal. July 22, 2015). Audible is simply incorrect when it suggests that district courts "routinely" grant stays after denying a motion to compel arbitration. A large majority of district courts in recent years have refused to stay cases after denying motions to compel arbitration.

1    will not address on appeal does not show that Audible has a substantial case that raises

2    serious legal issues, or that Audible has even a fair prospect of success on appeal.

3         **Finally**, Audible does not have a fair prospect of success because it never proved

4    an agreement to arbitrate exists *between Weber and Amazon*. The existence of such an

5    agreement is, of course, a prerequisite for Audible's argument that it can compel

6    arbitration based on Amazon's arbitration clause. Audible's failure to prove an agreement

7    to arbitrate exists between Weber and Amazon is itself a sufficient basis for the Ninth

8    Circuit to affirm the Court's ruling. *See United States v. Washington*, 969 F.2d 752, 755

9    (9th Cir. 1992) (noting the Ninth Circuit may affirm a district court's order "on any basis

10   supported by the record even if the district court did not rely on that basis," including

11   where the appellate review is de novo); *Aronson v. Resolution Trust Corp.*, 38 F.3d 1110,

12   1114 (9th Cir. 1994) (Ninth Circuit can affirm on any ground supported by the record,

13   even if the district court relied on incorrect grounds of faulty reasoning).

14        Of course, Plaintiffs believe the Court's reasoning in denying Audible's motion is

15   sound and that the Court correctly applied the applicable laws. Even if the Court erred,

16   however, Audible still does not have a fair prospect of success on appeal.[9]

17        c.    **Factor 2:** **Audible cannot show a probability that it will be "irreparably**

18              **injured" if Weber's claims are not stayed.**

19        If Audible manages to satisfy the lesser threshold on the first factor, it still cannot

20   show a probability of individualized irreparable injury that tilts sharply in its favor. *Leiva-*

21   *Perez*, 640 F.3d at 966; *Cesca Therapeutics*, 2017 WL 1174062, at *4 (noting harm must

22

23   _____

24   [9] Whether Weber agreed to Amazon's COU and arbitration clause is hotly disputed issue
     in the related *Weber Case*. In that case, the Court found that the same evidence that
25   Audible relied on in this case did not meet its burden of proof. *Weber Case* Dkt. 35 at 12-
     16. Amazon has since submitted multiple additional briefs, several new arguments, and
26   substantial new evidence in an effort to meet its burden to show that Weber knowingly
     agreed to arbitrate claims *against Amazon*. *See Weber Case* Dkts. 39, 41, 47, 53. Even if
27   Amazon ultimately obtains a favorable ruling in the related *Weber Case* (it should not),
     Audible cannot rely on such a ruling for purposes of this case and/or its appeal.
28

1   be "individualized and irreparable"). The "key word in this consideration is irreparable"

2   because "injuries, however substantial, in terms of money, time and energy necessarily

3   expended in the absence of a stay, are not enough." *Sampson v. Murray*, 415 U.S. 61, 90

4   (1974); *Mohamed v. Uber Techs.*, 115 F. Supp. 3d 1024, 1032-33 (N.D. Cal. 2015)

5   ("[N]early all courts 'have concluded that incurring litigation expenses does not amount

6   to an irreparable harm.'") (citations omitted). This factor alone should also cause the

7   Court to deny Audible's motion.

8          Audible argues, without pointing to any evidence or verifiable estimates, that it

9   will be irreparably injured because it will lose the arbitration advantages of "speed and

10  economy." Motion at 8. Audible also insists that it will incur significant litigation costs

11  that it would not incur if the Court's decision is reversed on appeal because this case is a

12  proposed class action and any arbitration would be on an individual basis. Motion at 9.

13  Audible's arguments do not satisfy its burden, are in no way individualized (they are the

14  same that any other class action defendant that lost a motion to compel arbitration would

15  make), and are wrong in any event.

16         The argument that additional litigation time and expense constitute irreparable

17  harm has been rejected by numerous courts in similar circumstances. *See, e.g.*, *Cesca*

18  *Therapeutics*, 2017 WL 1174062, at *4 (citing multiple California district courts that

19  recently rejected the loss of financial resources and time spent on discovery as

20  constituting an irreparable injury and noting that "if financial burden was an irreparable

21  harm, then every interlocutory appeal of a denial to compel arbitration would

22  automatically be stayed, a finding which is contrary to Ninth Circuit precedent"); *Morse*,

23  2013 WL 123610, at *4 (resolving the same disputes in arbitration "is no more than a

24  possibility" which falls short of the requirement that irreparable harm be "probable").

25         McKee's claims will move forward in nationwide class discovery and be the basis

26  of a class certification hearing on December 3, 2018 regardless of whether Weber's

27  claims are stayed. *See Jimenez v. Menzies Aviation Inc.*, 2015 WL 5591722, at *3-4 (N.D.

28  Cal. Sept. 23, 2015) (noting that "[r]egardless of the outcome of its appeal, [defendant]

must continue to litigate the remaining claims" and that the "purported interests in speed and economy are likely further endangered by a stay in this litigation, which would cause a bifurcation in discovery and create the potential need to retake discovery following the Ninth Circuit's decision"); *Ambrosio v. Cogent Communications, Inc.*, 2016 WL 7888024, at *3 (N.D. Cal. Sept. 21, 2016) ("[T]his litigation will move forward regardless of the outcome of [the] appeal, at least with respect to half of the class. As such, the cost of litigating this case is not likely to be less if the class size is later reduced."). Thus, Audible will likely incur *greater* litigation time and expense if Weber's claims are stayed and the Ninth Circuit affirms the Court's ruling (the most likely result), because any discovery and motions practice Audible may avoid during a stay (an argument Audible has not substantiated with any proof) will simply be repeated in 2019 or 2020 and will result in substantial duplication of effort for both sides and the Court.

Moreover, the idea that Weber's involvement in this case will significantly increase Audible's discovery burdens and related costs is vastly overblown and is not supported by any evidence. All Audible can point to is a single cause of action where Weber, at the moment, is the sole proposed class representative. The discovery and motions practice related to that one cause of action will have substantial overlap with the discovery and motions practice for the other causes of action. Moreover, there is no support for Audible's argument that litigating the class certification aspects of Weber's non-gift certificate EFTA claim would increase the scope and complexity of this action "far beyond" what would otherwise be at issue in this case. A stay of Weber's claims would simply result in two rounds of nationwide class discovery and two sets of motions for class certification.

Even if Audible did prevail on appeal and it was allowed to try for a second time to prove to this Court that Weber agreed to Amazon's modified COU and arbitration clause, Weber would oppose Audible's renewed efforts to compel arbitration on remand. If arbitration was ultimately ordered, Weber (i) is entitled to challenge the enforceability of the arbitration clause in arbitration, and particularly whether the waiver of his right to

seek public injunctive relief renders the entire clause unenforceable, and (ii) is entitled to seek in arbitration public injunctive relief which would likely require broad discovery and motions practice. *See, e.g.*, *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017). Thus, Audible's <u>hope</u> that any arbitration would be an inexpensive process limited solely to Weber's individual circumstances is misguided. *See also Guifu Li*, 2011 WL 2293221, at *4 (noting discovery costs are not irreparable if the discovery can still be used in arbitration).

Finally, the idea that Audible would lose out on the benefit of a speedy arbitration is wrong.[10] *See* Soderstrom Decl. ¶ 2 (noting that the AAA recently took multiple months simply to confirm a January 2018 filing of a consumer arbitration demand and no arbitrator was appointed for nearly five months based on the AAA's processing delays); *see also Munro v. Univ. of Southern California*, 2017 WL 5592904, at *3-4 (C.D. Cal. July 7, 2017) (noting denial of a stay cannot plausibly deprive the defendant of the "speed" of arbitration because continued proceedings in court will have furthered the resolution of the case no matter the outcome on appeal).

Audible cannot show that the second factor tilts sharply in favor of a stay. The Court should therefore deny Audible's motion based on this factor alone and it need not consider the remaining two factors. *See Morse*, 2013 WL 123610, at *4.

> **d.**   <u>Factor 3:</u> **Weber and putative class members would be prejudiced if his claims were stayed pending appeal.**

Even if Audible can meet its burden on the first two factors (it cannot), Audible still must show that the third factor also tilts sharply in its favor. Audible cannot meet this burden, however, because Weber and putative class members will suffer some prejudice if his claims are stayed, even if the prejudice is not overwhelming.

---

[10] Somewhat ironically, individual arbitrations filed en masse following several recent pro-arbitration, pro-class action waiver decisions appear to have overwhelmed the AAA's ability to process and manage arbitration filings in a "speedy" manner.

If Weber's claims are stayed pending appeal, there is a reasonable risk that relevant information and records will be lost or destroyed and memories will fade in the intervening 6-18 months. *See Jimenez*, 2015 WL 5591722, at *4. Audible has already showed in connection with multiple motions that it does not preserve all relevant documents or take screenshots of all relevant webpages, which it likes to revise without notice. Weber would also be forced to wait an extended period to make any progress in this action, and his day in court would be delayed until 2019 or even 2020 based simply on the unlikely chance that the Ninth Circuit reverses this Court's order. *See Ford v. Yasuda*, 2015 WL 13424607, at *2 (C.D. Cal. July 1, 2015) (noting that delaying a plaintiff's day in court constitutes a substantial, if not overwhelming, injury to the plaintiff) (citation omitted). Moreover, Audible's propensity for engaging in self-help tactics risks additional harm to Weber and absent putative class members and has already been the basis for two motions for corrective action brought under Federal Rule of Civil Procedure 23(d). Dkt. 72; Dkt. 116.

Audible cannot show that Weber and other interested parties (i.e., other Plaintiffs and putative class members) will not suffer any prejudice if a stay is issued. Audible therefore cannot meet its burden of showing that this factor tilts sharply in its favor. The Court should deny Audible's motion for this reason as well.

> **e.**   **Factor 4:** **Staying Weber's claims pending appeal would be contrary to the public interest.**

Audible also has the burden to show that the public interest would be served by staying Weber's claims pending appeal. Audible cannot meet its burden. In fact, in these circumstances, a stay would harm the public interest in multiple ways. This factor weighs against a stay.

First, many of Weber's claims sound in fraud and seek representative and public injunctive relief based on ongoing violations, including violations of the EFTA where Weber is, at the moment, the only proposed class representative seeking to stop Audible from making automatic electronic fund transfers without explicit written disclosures and

informed consent. *See Bradberry v. T-Mobile USA, Inc.*, 2007 WL 2221076, at *4 (N.D. Cal. Aug. 2, 2007) (noting that the public interest does not favor a stay where ongoing violations are at issue).

Second, a stay would not conserve judicial resources because the most likely result would be that the Ninth Circuit affirms the Court's ruling and additional nationwide class discovery would take place in 2019 followed by a second motion for class certification in 2019 or 2020. Denying a stay would conserve more judicial resources than would granting a stay because discovery and motions practice would be consolidated and streamlined if Weber's claims move forward with the rest of the case. *See Jimenez*, 2015 WL 5591722, at *4 (noting that there is no blanket federal policy requiring a stay in order to potentially conserve judicial resources, and other interests such as enforcement of laws and preventing ongoing violations weighed in favor of denying a stay).

Audible's generic references to the law favoring arbitration (where an arbitration agreement *actually exists*) and conservation of judicial resources do not apply here. The public interest does not favor staying Weber's claims pending appeal.

## CONCLUSION

Audible cannot meet its burden to show that a stay is warranted in these circumstances. Accordingly, based on Audible's minimal chance of prevailing on appeal and its weak showing on each of the other factors, the Court should deny Audible's motion to stay Weber's claims pending appeal.

Dated: June 25, 2018                  SODERSTROM LAW PC

By: */s/ Jamin S. Soderstrom*

Jamin S. Soderstrom

*Counsel for Plaintiffs and the Proposed Class*

1

## CERTIFICATE OF SERVICE

2      The undersigned certifies that on June 25, 2018 I caused the foregoing document

3 to be served on all counsel of record by the Court's CM/ECF electronic filing system.

4

5                              By: */s/ Jamin S. Soderstrom*

6                                  Jamin S. Soderstrom

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



PLAINTIFF ERIC WEBER'S OPPOSITION TO AUDIBLE'S MOTION TO STAY AS TO ERIC WEBER