# EXHIBIT 1

**Jamin S. Soderstrom, Bar No. 261054**
**jamin@soderstromlawfirm.com**
**SODERSTROM LAW PC**
**3 Park Plaza, Suite 100**
**Irvine, California 92614**
**Tel: (949) 667-4700**
**Fax: (949) 424-8091**

***Counsel for Plaintiffs and the Proposed Class***

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**(WESTERN DIVISION – LOS ANGELES)**

**GRANT MCKEE, ERIC WEBER, and MICHAEL ROGAWSKI, individually and on behalf of all others similarly situated,**

**Plaintiffs,**

**v.**

**AUDIBLE, INC.,**

**Defendant.**

**Case No. 2:17-cv-01941 GW (Ex)**

**PLAINTIFF MICHAEL ROGAWSKI'S SURREPLY IN OPPOSITION TO AUDIBLE'S MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS**

| | |
|---|---|
| Date: | July 23, 2018 |
| Time: | 8:30 A.M. |
| Courtroom: | 9D |
| Judge: | George H. Wu |
| Trial Date: | None Set |

SODERSTROM LAW

# TABLE OF CONTENTS

**Page(s)**


INTRODUCTION .......... 1

ARGUMENT .......... 5

I. Audible cannot meet its burden to show that it gave Rogawski reasonable notice of its arbitration clause on September 30, 2015. .......... 5

II. Even if Rogawski agreed to arbitration, the agreement is unconscionable because it forced Rogawski to accept arbitration or forfeit credits. .......... 7




SODERSTROM LAW

# TABLE OF AUTHORITIES


Page(s)

**Cases**

*Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051 (S.D. Cal. 2015) .......... 9

*Kleiner v. First Nat'l Bank of Atl.*, 751 F.2d 1193 (11th Cir. 1985) .......... 6

*Zuver v. Airtouch Communications*, 153 Wash. 2d 293 (2004) .......... 9, 10

**Other Authorities**

Federal Rule of Civil Procedure 23(d) .......... 4, 9

## INTRODUCTION

On January 22, 2018, Audible moved to compel arbitration and dismiss claims as to Michael Rogawski. Dkt. 73. Audible's supporting declaration identified September 21, 2014 as the date Rogawski first signed up for a free Audible trial and admitted that the free trial automatically turned into a paid monthly membership after 30 days. Dkt. 73-1 ¶¶ 8-10. Rogawski's paid membership entitled him to one prepaid credit each month in exchange for a payment of $14.95, which amount Audible automatically transferred from his designated payment method each month thereafter without notice. Dkt. 65 ¶¶ 20-21; Dkt. 115 ¶¶ 14-16. Rogawski was a paying Audible member until March 28, 2018, when Audible retaliated against him for participating in this action by terminating his membership.[1] *See* Dkt. 116 (Plaintiffs' second motion for corrective action).

In support of its motion to compel arbitration, Audible did not submit <u>any</u> evidence that Rogawski agreed to Audible's Conditions of Use ("COU") and arbitration clause when he signed up on September 21, 2014. Dkt. 73; Dkt. 82. Nor did Audible submit <u>any</u> evidence that Rogawski agreed to Audible's COU and arbitration clause when he redeemed credits on any days other than September 30, 2015, October 18, 2017, or November 25, 2017. Dkt. 73; Dkt. 82. Audible thus conceded that it never gave Rogawski notice of Audible's arbitration clause at <u>any</u> time during his three-and-a-half-year membership other than on those three specific dates.

Because Rogawski redeemed credits on October 18, 2017 and November 25, 2017 using Audible's revised credit redemption flows, no enforceable agreement to arbitrate could have been formed between Rogawski and Audible on those two dates. *See* Dkt. 97 (corrective action decision); Dkt. 114 (corrective action order). In its decision on Plaintiffs' first motion for corrective action, the Court specifically found:

---

[1] Audible also tried to get Rogawski to *unintentionally* settle and compromise his pending claims and destroy his standing by sending a "refund check" directly to him (instead of his counsel) without any explanation of the reasons or intended effect. Dkt. 116.

SODERSTROM LAW

> Audible's communications [i.e., its revised sign up and credit redemption flows] were coercive in a different way: because Audible requires members to agree to its then current COU in order to redeem a credit, then current members who did not want to agree to waive class action rights would be forced to forfeit whatever credits they had. This choice was inherently coercive because it forced Audible members to give up a paid-for benefit and end an ongoing business relationship in order to refuse to waive their class action rights. [Citing *Kleiner v. First Nat'l Bank of Atl.*, 751 F.2d 1193, 1202 (11th Cir. 1985); *Doe v. Swift Transp. Co.*, 2017 WL 73536 (D. Ariz. Feb. 24, 2017); *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 251 (S.D.N.Y. 2005).]

Dkt. 97 at 9 (finding Audible "forced putative class members to waive their rights or give up benefits") *see also* Dkt. 97 at 10-11 (finding Audible forced current members who had not previously agreed to arbitration to "agree or forfeit something of value" and describing as coercive Audible's ability to "freeze a customer out of using its product – *an already paid for product* – unless the consumer accepts new terms and conditions"). Current Audible members like Rogawski and his co-plaintiff Eric Weber "were given no realistic way to refuse the terms offered by the new disclosures without ending their business relationship with Audible and/or losing paid for benefits." Dkt. 97 at 11.

The Court has already acknowledged that Audible's only chance to prove Rogawski knowingly agreed to arbitrate his claims against Audible turns on the "pre-order" Rogawski completed on September 30, 2015. In its tentative ruling as to Rogawski, the Court stated:

> Defendant argues that the process by which Rogawski redeemed [the September 30, 2015] credit required [sic] was identical to the one Plaintiff Beals completed and that the Court already held provides sufficient notice.
>
> Plaintiffs initially argued that Audible's evidence was insufficient to establish that Rogawski viewed the same flow as Beals when he redeemed a credit on September 30, 2015. However, following a subsequent meet and confer, Plaintiffs appear to be willing to concede as much, provided Audible makes a further evidentiary showing. Specifically, Audible's motion to compel relies on testimony that, in turn, relies on yet to be produced business records. At the last hearing, the Court told Defense counsel that it was to provide copies of those records to Plaintiffs. At the time Plaintiffs filed their Sur-Reply, Audible had yet to provide that documentation.

SODERSTROM LAW

> The Court would find that Rogawski agreed to Audible's COU on September 30, 2015, subject to the parties' ability to resolve the aforementioned issue. Should the issue remain unresolved due to Audible's failure to provide documentation, the Court would consider whether an evidentiary hearing, or limited arbitration related discovery would be required.
>
> On September 30, 2015, Rogawski (at least according to Audible's declaration testimony) redeemed a membership credit on the Amazon desktop website. In order to do so, Rogawski selected an audiobook, and then encountered the then in use flow ("Amazon Redemption Flow"). This was the same flow that Plaintiff Beals encountered, and that this Court has already found provided sufficient notice under the relevant case law.
>
> Thus, the Court would find that the Amazon Credit Flow, as it is reflected in exhibit 2 [of Gune Decl., Dkt. 73-3], afforded constructive notice that redeeming a credit for an audiobook constituted assent to the Audible COU and the arbitration provision contained therein. However, as stated above, if Audible fails to provide the documentation relied on by Gune, this ruling might be deferred pending discovery.
>
> The Court would also find, as it has previously, that the arbitration provision was not unconscionable or otherwise unenforceable.
>
> [Footnote 16] As discussed above, the parties are continuing to meet and confer on certain evidentiary issues. Plaintiff's counsel has indicated that he will stipulate to the fact that Rogawski viewed the same credit redemption flow as Beals, provided Audible produces the documents that Gune relies on. However, Plaintiffs have also reserved the right to argue otherwise if Defendant fails to produce said evidence, or produces evidence that casts doubt on the accuracy of the declaration testimony. The Court may defer finalizing its decision to grant Audible's motion with respect to Rogawski until this issue is resolved.

Dkt. 97 at 19-21 [internal citations omitted].

After the Court issued its tentative ruling as to Rogawski, the parties met and conferred concerning what business records Audible relied on to argue that Rogawski saw "the same" webpage and disclosure as Beals on September 30, 2015 when he used a credit to place a "pre-order" for an audiobook. Soderstrom Decl. ¶ 2. Plaintiffs' counsel does not disparage in any way Audible's and its counsel's efforts in trying to create a new "mock-up" that purportedly recreates the webpage Rogawski would have viewed on September 30, 2015. *Id.* However, Plaintiffs' counsel is unable to concede that there is

SODERSTROM LAW

no genuine issue of material fact as to this issue. *Id.* Audible's efforts show that its original declarant Aniket Gune did not in fact review existing business records that supported his testimony that the Beals webpage was identical to the Rogawski webpage. *Id.* Because a conclusive record of the webpage Rogawski visited does not exist, Audible had to ask a *new declarant* to create an *entirely new* mock-up webpage, which was done by referencing computer code and several other screenshots with different designs taken from archive.org. *Id.* All Audible can do now is make an educated guess based on the new declarant's recent efforts (not based on business records that the original declarant Gune viewed and relied on) as to what disclosure, if any, existed on September 30, 2015 on the Amazon.com "pre-order" webpage when an existing Audible member like Rogawski was redeeming a credit. *Id.*

Furthermore, Rogawski respectfully asks that Court address the unconscionability of Audible's arbitration clause *as applied to Rogawski's actual circumstances* rather than simply referencing a prior ruling that was based on different factual circumstances. The Court has already acknowledged that there is an important difference between (i) Audible asking a *new* member at the outset of the consumer relationship (i.e., during the sign-up phase) to agree to arbitrate any future claims that may arise, and (ii) Audible asking an *existing* member with prepaid credits to either agree to a retroactive arbitration clause or immediately cancel the membership and forfeit the entire value of all remaining credits. Dkt. 97 at 9-11. While the corrective action decision was under Federal Rule of Civil Procedure 23(d), the unconscionability analysis is very similar and shows procedural and substantive unconscionability in these circumstances.

Rogawski therefore asks the Court to either:

1. after reviewing Audible's new declaration and newly created mock-up screenshot (which Plaintiffs' counsel anticipates will be attached to Audible's supplemental brief), deny Audible's motion to compel arbitration and dismiss claims as to Rogawski because a genuine issue of material fact

SODERSTROM LAW

remains as to whether Audible gave Rogawski reasonable notice of its arbitration clause on September 30, 2015; or

2. assume, without deciding, that Audible gave Rogawski notice of its arbitration clause on September 30, 2015, and then hold that the arbitration clause is procedurally and substantively unconscionable and therefore unenforceable as applied to Rogawski because, as an existing member, he would have had to forfeit the entire value of his prepaid credits in order to reject Audible's *retroactive* arbitration clause.

On June 13 and June 21, 2018, after meeting and conferring as to Audible's new declaration and supporting screenshots, Plaintiffs' counsel proposed that the parties each request leave to file a supplemental brief arguing their respective positions as to Rogawski. Soderstrom Decl. ¶ 3. Audible initially objected to any further briefing (asking Rogawski simply to concede that the new declaration and mock-up resolved all remaining legal issues as well as evidentiary issues). Plaintiffs' counsel explained his position that, while he would stipulate to Audible's process in creating the new mock-up screenshot to avoid formal discovery and/or an evidentiary hearing, he could not concede the underlying legal issues. *Id.* Plaintiffs' counsel had not heard back from Audible's counsel as of the filing of this surreply. *Id.*

Rogawski will not to oppose Audible filing its own supplemental brief describing its new evidence and explaining its positions. Rogawski respectfully requests that the Court address its tentative ruling as to Rogawski during the already-scheduled July 23, 2018 hearing in this case or set a subsequent hearing to address these issues.

## ARGUMENT

### I. Audible cannot meet its burden to show that it gave Rogawski reasonable notice of its arbitration clause on September 30, 2015.

As quoted above, the Court ordered the parties to meet and confer as to Audible's business records and testimony showing what webpage and disclosure Rogawski allegedly viewed on September 30, 2015 when he used a credit to "pre-order" an

audiobook on Amazon.com. Dkt. 97 at 9-11. The Court noted Plaintiffs' counsel's willingness to concede the evidentiary issues, provided that Audible produced the "documentation relied on by Gune," its declarant who testified that the 2015 screenshot submitted in support of Audible's was "the same" as the webpage viewed by Beals. *Id.*

Rogawski had three issues. First, Rogawski's account showed a purchase on October 1, 2015, not September 30, 2015. Plaintiff's counsel accepts Audible's explanation that the differences in dates are simply a matter of time zone and concedes this issue. Dkt. 82-1. Second, Rogawski was redeeming a credit to "pre-order" an audiobook that was not yet available, while Beals was redeeming a credit for an already available audiobook. Rogawski asked for *proof*, not an educated guess, that the same hyperlinked disclosure of Audible's COU was present on both the purchase *and* pre-order versions of the credit redemption webpage. Gune did not attach any documentary proof on this issue but had simply testified based on a review of unproduced business records that the Beals and Rogawski webpages were "the same." *See* Dkt. 73-1. Third, Audible admitted that it was in the process of revising its credit redemption webpages in the second half of 2015, and Plaintiffs' counsel found evidence that the same webpages, when revised, deleted the hyperlinked disclosure of Audible's COU when members redeemed credits (but not when consumers paid cash). *Compare* Dkt. 44-2 (Amazon.com screenshot showing no disclosure when redeeming a credit) *with* Dkt. 44-3 (Amazon.com screenshot showing a hyperlinked disclosure when paying cash). Indeed, several of the "pre-order" screenshots Audible subsequently found from 2015 while meeting and conferring showed disclosures when consumers paid cash, but they conveniently did not indicate whether any disclosures existed when consumers redeemed credits.

Instead of producing the business records Gune relied on to testify that Rogawski's pre-order webpage was "the same" as Beals' standard order webpage, Audible had another person in another position create a new mock-up screenshot based on a review of several other screenshots pulled from www.archive.org (which show a *revised* version

SODERSTROM LAW

of the 2015 Amazon.com pre-order webpage and do *not* show the view an existing member like Rogawski would have seen when redeeming a credit).[2]

While Plaintiffs' counsel appreciates Audible's and its counsel's efforts to create a mock-up of an Amazon.com webpage from 2015 to make up for its lack of an actual copy of such webpage, the fact remains that (unlike many other webpages relevant to this case): (i) Audible has no actual example of the specific webpage it claims Rogawski visited on September 30, 2015; (ii) Audible did not simply produce the records that its declarant Gune relied on in support of its motion but instead used an entirely new declarant and created entirely new records for purposes of this litigation (i.e., not actual business records); and (iii) a genuine issue of material fact remains as to whether Audible's new mock-up screenshot accurately depicts the webpage from September 30, 2015 that Rogawski visited when he pre-ordered an audiobook using a credit.

Because Rogawski is entitled to have all reasonable doubts and inferences drawn in his favor, there remains a genuine issue of material fact as to whether he ever had notice of and knowingly agreed to Audible's arbitration clause. On this record, the Court should not grant Audible's motion as to Rogawski.

## II. Even if Rogawski agreed to arbitration, the agreement is unconscionable because it forced Rogawski to accept arbitration or forfeit credits.

The Court's tentative ruling currently states, without any further analysis, that it would find "as it has previously" that the arbitration clause is not unconscionable or otherwise unenforceable. Dkt. 97 at 19. If the Court finds that Audible has met its burden of proof to show that an agreement to arbitrate was formed on September 30, 2015 (Rogawski believes Audible cannot meet its burden), Rogawski respectfully asks the

---

[2] Because the screenshots were obtained by Audible, apparently from www.archive.org, and because neither Rogawski nor Plaintiffs' counsel has personal knowledge of how or when they were obtained (e.g., by Gune, by Audible's new declarant, by counsel, before or after Audible filed its motion), Rogawski refers to the screenshots he anticipates Audible will attach to its supplemental briefing and supporting declaration.

Court to analyze the unconscionability of Audible's arbitration clause based on Rogawski's specific circumstances.

Rogawski is handicapped in his ability to provide documentation showing exactly how many credits he had on September 30, 2015 when he redeemed one credit to pre-order an audiobook. This is because only Audible maintains records tracking the number of credits in a member's account at any given moment in time and, until recently, Audible never informed its members when credits were set to expire under its undisclosed "rollover" policy. Members could not know simply by looking at their Audible account whether and when they had lost credits.

However, based on the evidence in the record and reasonable inferences drawn therefrom, Rogawski likely had at least seven prepaid credits in his account on September 30, 2015 when Audible forced him to choose either to agree to a retroactive arbitration clause or cancel his membership and lose all his prepaid credits immediately without a guaranteed refund or a way of opting out of the arbitration requirement. Rogawski's analysis is based on the fact that:

1. he received his first credit on September 21, 2014 (it was free but still had value), Dkt. 73-1 ¶¶ 8-13;
2. he automatically purchased one credit each month from October 21, 2014 through September 21, 2015 (12 more credits valued at $179.40), *id.*; *see also* Dkt. 72-14 (Jan. 22, 2018 Rogawski Decl.); Dkt. 77-4 (Feb. 12, 2018 Rogawski Decl.);
3. he redeemed only three credits between September 21, 2014 and September 29, 2015, meaning he should have had 10 prepaid credits remaining in his Audible account on September 30, 2015;
4. Audible's undisclosed "rollover" limit in 2015 was six credits plus the current month's credit, e.g., a maximum of seven credits in a Gold Monthly member's Audible account at any given time), Dkt. 21-5 at 2; and

5. Audible's COU as of September 30, 2015 required a member to immediately stop using Audible if the member did not agree to all of Audible's terms, and the COU did not guarantee a full refund or provide a way to opt out of the arbitration clause or any other provision, Dkt. 73-4.

Based on these facts and circumstances, and based on the reasonable conclusion that by September 30, 2015 Audible had already caused three of Rogawski's credits to expire without notice (only Audible has records that can verify exactly how many credits had already expired and how many remained in his account), Audible put Rogawski to an unfair choice: either (i) agree to a retroactive arbitration clause and related waivers, or (ii) forfeit all seven remaining prepaid credits (a $104.65 value).

The Court has already held that forcing existing Audible members to make such a choice is unfair and coercive under Federal Rule of Civil Procedure 23(d). *See* Dkt. 97 at 9-12. The Court also held that any *new* arbitration agreement secured by Audible from a *current* member under those circumstances is "null and void." *Id.*

The same analysis holds true in the unconscionability context. Plaintiffs previously argued the arbitration clause was unconscionable as a matter of California law (which requires both procedural and substantive unconscionability on a sliding scale), but Washington law is equally if not more protective of consumer rights and requires only procedural <u>or</u> substantive unconscionability. *See Zuver v. Airtouch Communications*, 153 Wash. 2d 293, 302-03 (2004); *Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051, 1063-65 (S.D. Cal. 2015) (noting Washington's unconscionability doctrine may be more protective of consumers than California's doctrine). In Rogawski's circumstances, Audible's arbitration clause is both procedurally and substantively unconscionable.

Procedural unconscionability is where there is a "lack of meaningful choice" considering all the circumstances surrounding the transaction. *Zuver*, 153 Wash. 2d at 303. Audible's arbitration clause was a standard form contract of adhesion, it was only constructively disclosed via a hyperlink to a separate webpage, it was offered on a "take it or leave it" basis, Rogawski had no opportunity to negotiate any terms, and there was



SODERSTROM LAW

no equality in bargaining power between Audible and Rogawski. Most importantly in these circumstances, Rogawski had already been a paying customer for over a year and he had more than $100 worth of prepaid credits in his account. The arbitration clause, in combination with other COU terms that required him to stop using Audible immediately if he did not agree with any Audible term, forced him to choose between agreeing to a *new, retroactive* arbitration obligation more than a year into his relationship with Audible or cancel his membership immediately and forfeit seven prepaid credits with no guaranteed refund and no way to opt out. Dkt. 73-4. Using threatened forfeiture of more than $100 in prepaid credits as a way to obtain a retroactive arbitration agreement takes away any "meaningful choice" Rogawski would have had if Audible had presented and secured an arbitration agreement from him when he first signed up. Audible's arbitration agreement is procedurally unconscionable in these circumstances and, under Washington law, that is enough by itself to make it unenforceable.

Substantive unconscionability is where the contract terms themselves are one-sided or overly harsh. *Zuver*, 153 Wash.2d at 303. In these circumstances, the fact that the broad arbitration clause forces a choice between losing prepaid credits or agreeing to *retroactively* give up the constitutional right to a jury trial and procedural right to bring an action in court and/or participate in a class action, makes it substantively unconscionable. This is especially true in Rogawski's circumstances where, as of September 30, 2015, he had already relied on false and misleading advertisements, had already been subject to automatic charges without full disclosures, and had already lost at least three prepaid credits based on an undisclosed rollover policy. Here, the retroactivity of the arbitration clause and forced forfeiture of prepaid credits is substantively unconscionable and unenforceable under Washington law.

Dated: June 25, 2018

SODERSTROM LAW PC
By: */s/ Jamin S. Soderstrom*
Jamin S. Soderstrom
*Counsel for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on ____________ I caused the foregoing document to be served on all counsel of record by the Court's CM/ECF electronic filing system.

By: */s/ Jamin S. Soderstrom*
Jamin S. Soderstrom