1  **Jamin S. Soderstrom, Bar No. 261054**
2  jamin@soderstromlawfirm.com
   **SODERSTROM LAW PC**
3  **3 Park Plaza, Suite 100**
   **Irvine, California 92614**
4  **Tel:   (949) 667-4700**
5  **Fax:  (949) 424-8091**
6  *Counsel for Plaintiffs and the Proposed Class*

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                   **(WESTERN DIVISION – LOS ANGELES)**

11

| | |
|---|---|
| **GRANT MCKEE, ERIC WEBER, and MICHAEL ROGAWSKI,** individually and on behalf of all other similarly situated, | Case Nos.: 2:17-cv-01941 GW (Ex) & 2:17-cv-08868 GW (Ex) |
| **Plaintiffs,** | **PLAINTIFFS' RENEWED, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| **AUDIBLE, INC.,** | Date:          March 14, 2019 |
| **Defendant.** | Time:          8:30 a.m. |
| | Courtroom:  9D |
| **ERIC WEBER and BRYAN REES,** individually and on behalf of all other similarly situated, | Judge:         Hon. George H. Wu |
| | Trial date:    None set |
| **Plaintiffs,** | |
| v. | |
| **AMAZON.COM, INC. and AMAZON SERVICES LLC,** | |
| **Defendants.** | |

1

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 14, 2019 at 8:30 a.m., in the Courtroom of the Honorable George H. Wu, United States District Judge for the Central District of California, located at the First Street Courthouse, 350 West First Street, Courtroom 9D, Los Angeles, California 90012, Plaintiffs Grant McKee, Eric Weber, Michael Rogawski, and Bryan Rees, on behalf of themselves and all others similarly situated, will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for an Order preliminarily approving a proposed Stipulation of Class Action Settlement and Release ("Stipulation" or "Settlement"), and for other related relief. The Settlement was originally executed in November 2018 and was revised in several respects and re-executed in February 2019 following the hearing held on December 10, 2018.

By this renewed and unopposed motion, Plaintiffs seek an Order:

1.  Preliminarily approving the Settlement in this action pursuant to Federal Rule of Civil Procedure 23(e);

2.  Preliminarily certifying a Settlement Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3);

3.  Appointing Soderstrom Law PC as Class Counsel;

4.  Appointing Grant McKee, Eric Weber, Michael Rogawski, Seth Beals, Bryan Rees, and Taylor Fisse as Class Representatives;

5.  Approving the Parties' proposed form of notice and notice plan, and directing that notice be disseminated pursuant to this plan; and

6.  Setting a Final Approval Hearing and certain other dates in connection with the final approval of the Settlement.

This Motion is based on the accompanying Memorandum of Points and Authorities, the Declaration of Jamin S. Soderstrom and all exhibits thereto, the arguments of counsel, and all papers and records on file in this matter.

At the request of the Parties and with the Court's permission, the terms of the revised Settlement have been filed under seal unless and until the Settlement is preliminarily approved by the Court.

The Parties respectfully propose that the Court set the following dates and deadlines:

| | |
|---|---|
| Last Date to Send Class Notice and Make Settlement Website Available | April 8, 2019 (25 days after preliminary approval hearing) |
| Deadline to File Motion for Attorneys' Fees, Costs, and Service Awards | April 29, 2019 (24 days before the end of the Notice Period) |
| Last Day of the Notice Period | May 23, 2019 (45 days after Class Notice sent) |
| Deadline to File Motion for Final Approval | June 24, 2019 (77 days after Class Notice sent) |
| Fairness Hearing | July 8, 2019 (91 days after Class Notice sent) |

Dated: March 7, 2019                    SODERSTROM LAW PC

                                        By: */s/ Jamin S. Soderstrom*
                                            Jamin S. Soderstrom

                                        *Counsel for Plaintiffs and the Proposed Class*

# TABLE OF CONTENTS

**Page(s)**

I.    Introduction. ...................................................................................................1

II.   Background.....................................................................................................2

   A. The *McKee* Action ........................................................................................2

   B. The *Weber* Action.........................................................................................3

III.  The Revised Settlement. ...............................................................................3

   A. Hard-fought litigation led to a successful mediation........................................3

   B. The terms of the revised Settlement. ...............................................................4

       1.    The Settlement Class. .........................................................................4

       2.    In-kind relief in the form of millions of free audiobooks. ...................4

       3.    Reimbursement of overdraft or similar fees. .......................................6

       4.    Injunctive relief that improves Audible's disclosures and policies. ....6

       5.    Administration of the Settlement will be efficient and effective. ........7

       6.    The Class Notice will be by email and a Settlement website. ..............7

       7.    The scope of Releases and persons not giving a release........................8

IV.   The Court should Grant Preliminary Approval of the Settlement...............9

   A.    Legal standards for preliminary approval of class action settlements. .............9

   B.    Certification of a Settlement Class is proper under Rule 23(a). ......................9

   C.    Certification of a Settlement Class is Proper under Rule 23(b)(3). .................12

   D.    The Settlement is fair, reasonable, and adequate...........................................14

       1.    Plaintiffs and their counsel have adequately represented the class..........15

       2.    Serious, informed, arm's-length, non-collusive negotiations. ................15

       4.    The Settlement does not grant preferential treatment. ............................21

       5.    The Settlement falls within the range of possible approval. ...................22

V.    The Court Should Approve the Class Notice, Appoint Class Counsel and Class
      Representatives, and Set a Fairness Hearing. ...................................................24

VI.   Conclusion. ...................................................................................................25

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Allen v. Bedolla,*

5
    787 F.3d 1218 (9th Cir. 2015) .......................................................................9

6

*Amchem Prods. v. Windsor,*

7
    521 U.S. 591 (1997)............................................................................11, 12

8

*In re Anthem, Inc. Data Breach Litigation,*

9
    327 F.R.D. 229 (N.D. Cal. 2018).............................................................13

10

*Beals v. Audible, Inc.,*
    Case No. 1:17-cv-09838-AJN (S.D.N.Y. Judge Nathan) .......................2, 4

11

12

*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) ...................................................14, 16, 18

13

*Cavka v. SoulCycle Inc.,*

14
    2018 WL 1426343 (C.D. Cal. Jan. 25, 2018) .........................................18

15

*Churchill Vill., LLC v. Gen. Elec.,*

16
    361 F.3d 566 (9th Cir. 2004) ...................................................................25

17

*Cody v. SoulCycle Inc.,*

18
    2017 WL 6550682 (C.D. Cal. Oct. 3, 2017)......................................*passim*

19

*Comcast Corp. v. Behrend,*

20
    133 S. Ct. 1426 (2013)..............................................................................12

21

*Edwards v. First American Corp.,*
    2016 WL 8943464 (C.D. Cal. 2016) .......................................................13

22

*Farley v. Baird, Patrick & Co., Inc.,*

23
    1992 WL 321632 (S.D.N.Y. Oct. 28, 1992)............................................24

24

*Fisse v. Audible, Inc.,*

25
    Case No. 5:18-CV-00211-D (E.D.N.C. Judge Dever) .......................2, 3, 4

26

*Hanlon v. Chrysler Corp.,*

27
    150 F.3d 1011 (9th Cir. 1998) ...........................................................*passim*

28

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) ...................................................................11

ii

*Herrera v. LCS Fin. Servs. Corp.*,
　274 F.R.D. 666 (N.D. Cal. 2011)...........................................................................11

*In re Online DVD-Rental Antitrust Litig.*,
　779 F.3d 934 (9th Cir. 2015) ...............................................................................16

*In re Zynga Inc. Secs. Litig.*,
　2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) .....................................................16

*Johnson v. Ashley Furniture Industries, Inc.*,
　2016 WL 866957 (S.D. Cal. Mar. 7, 2016) .........................................................16

*Parsons v. Ryan*,
　754 F.3d 657 (9th Cir. 2014) ...............................................................................10

*Rodriguez v. West Publishing Corp.*,
　563 F.3d 948 (9th Cir. 2009) .........................................................................16, 22

*Ruch v. AM Retail Grp., Inc.*,
　2016 WL 1161453 (N.D. Cal. Mar. 24, 2016) .....................................................15

*Salazar v. Midwest Servicing Group, Inc.*,
　2018 WL 3031503 (C.D. Cal. June 4, 2018) .......................................................12

*Shuchardt v. Law Office of Rory W. Clark*,
　2016 WL 232435 (N.D. Cal. Jan. 20, 2016) ........................................................22

*Smith v. Am. Greetings Corp.*,
　2016 WL 362395 (N.D. Cal. Jan. 29, 2016) ........................................................22

*In re Southwest Airlines Voucher Litig.*,
　799 F.3d 701 (7th Cir. 2015) .........................................................................16, 18

*Staton v. Boeing Co.*,
　327 F.3d 938 (9th Cir. 2003) ...................................................................9, 18, 19

*Tyson Foods, Inc. v. Bouaphakeo*,
　136 S. Ct. 1036 (2016).........................................................................................12

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab.
Litig.*,
　2017 WL 672820 (N.D. Cal. Feb. 16, 2017) ..................................................9, 11

*Wal-Mart Stores, Inc. v. Dukes*,
　564 U.S. 338 (2011).............................................................................................10

**PLAINTIFFS' RENEWED, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ........................................................................ 10, 13

**Federal Statutes**

Electronic Funds Transfer Act,
   15 U.S.C. § 1693 et seq. ("EFTA") ...........................................................*passim*

Electronic Funds Transfer Act,
   15 U.S.C. § 1693m ........................................................................................... 23

Electronic Communications Privacy Act,
   18 U.S.C. § 2510 et seq. ("ECPA") ................................................................ 3

North Carolina's Unfair Competition Law ............................................................ 3

**State Statutes**

California Automatic Purchase Renewals Law,
   Cal. Bus. & Prof. Code § 17600 *et seq.* .......................................................... 2

California Consumers Legal Remedies Act,
   Cal. Civ. Code § 1750 *et seq.* ......................................................................... 2

California False Advertising Law,
   Cal. Bus. & Prof. Code § 17500 *et seq.* .......................................................... 2

California Gift Certificate Law,
   Cal. Civ. Code § 1749.45 *et seq.* (5) ............................................................. 2

California Unfair Competition Law,
   Cal. Bus. & Prof. Code § 17200 *et seq.* .......................................................... 2

**Rules**

Fed. R. Civ. P. 23(a) ...............................................................................9, 10, 11, 12

Fed. R. Civ. P. 23(b) ........................................................................................... 12, 13

Fed. R. Civ. P. 23(c)(1)(B)(g)(1) ............................................................................ 24

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................... 25

Fed. R. Civ. P. 23(g)(1) ........................................................................................... 24

Fed. R. Civ. P. 23(e)(1)......................................................................................15, 25

iv

1

Fed. R. Civ. P. 23(e)(2)...............................................................................*passim*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.    Introduction.

The Lawsuits against Defendants complain that Audible members unfairly lose what they paid for when an audiobook credit expires, Audible does not adequately inform members of the rollover and cancellation policies that can cause credits to expire, and Audible does not adequately inform members of the auto-pay and back-up card features of an Audible membership. The revised Stipulation of Class Action Settlement and Release ("Settlement" or "Stipulation," Soderstrom Decl. ¶ 2, Ex. 1[1]) addresses these complaints and provides valuable relief to all Class Members.

The Settlement gives Class Members three forms of relief:

1.    **In-Kind Relief:** 7,171,139 Regular Class Members and 30,367 Gift Class Members will collectively receive the right to select 11,984,814 free audiobooks from a selection of over 200,000 titles.

2.    **Reimbursement of Fees:** 3,211,477 Payment Card Class Members will get to submit a claim for reimbursement of any overdraft or similar fees incurred because Audible charged a back-up card, with no cap on reimbursements.

3.    **Injunctive Relief.** Audible revised its advertisements, disclosures, and terms to ensure current and future Audible members make informed decisions related to credit expiration, auto-pay, and back-up card policies.

This combination of in-kind relief, a reimbursement right, and injunctive relief provides an excellent result for Class Members. And the caps on Plaintiffs' right to seek attorneys' fees (inclusive of costs) up to $1.5 million and service awards up to $5,000 each are on the lower end of the range of awards granted in similar cases and in no way collusive.

The Lawsuits were hard fought at every stage. The Settlement was too. The Settlement was reached in August 2018, finalized in November 2018, and improved in February 2019. It is fair, reasonable, and adequate, and it falls well within the range of possible approval. The Court should grant this motion, certify a class for settlement purposes, preliminarily approve the Settlement, order notice to be given to all Class Members, and set motion deadlines and a date for the final Fairness Hearing.

---

[1] Cited as "Stipulation § _". Capitalized terms have the same meaning as the Stipulation.

1

## II.    Background.

Plaintiffs Grant McKee, Eric Weber, Michael Rogawski, Bryan Rees, Seth Beals, and Taylor Fisse ("Plaintiffs") each sued Audible, Inc., Amazon.com, Inc., and/or Amazon Services LLC ("Defendants") concerning credit expiration, auto-pay, and back-up card disclosures, policies, and advertisements. Soderstrom Decl. ¶ 5.

### A.    The *McKee* Action

The *McKee* action was filed on March 10, 2017. *McKee* Dtk. 1. The three named plaintiffs in *McKee* are McKee, Weber, and Rogawski. *McKee* Dkt. 115 (TAC). Beals, Fisse, and Rees were formerly named plaintiffs in *McKee* but their claims were compelled to arbitration and/or transferred to other district courts. *See McKee* Dkts. 40 (FAC), 53, 62, 65 (SAC), and 111; *see generally Beals* action[2]; *Fisse* action.[3]

*McKee* includes eight causes of action against Audible: (1) violation of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* ("FAL"); (2) common law fraud and misrepresentation; (3) violation of the Credit Card Accountability Responsibility and Disclosure Act of 2009 ("CARD Act"), which amended the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693; (4) violation of the California Gift Certificate Law, Cal. Civ. Code § 1749.45 *et seq.* ("GCL"), (5) violation of the EFTA; (6) common law conversion; (7) violation of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"); and (8) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), including violation of the California Automatic Purchase Renewals Law, Cal. Bus. & Prof. Code § 17600 *et seq.* ("CAPRL"). *See McKee* Dkt. 115 (TAC).

These claims generally fit into four categories: unlawful expiration of audiobook "credits" included as part of Audible's membership offerings based on federal and California gift card laws; false advertising based on the sufficiency of disclosures on the

---

[2] Beals is the plaintiff in *Beals v. Audible, Inc.*, Case No. 1:17-cv-09838-AJN (S.D.N.Y. Judge Nathan) ("*Beals* action").

[3] Fisse and Rees are plaintiffs in *Fisse v. Audible, Inc.*, Case No. 5:18-CV-00211-D (E.D.N.C. Judge Dever) ("*Fisse* action").

2

fact that these audiobooks are capable of expiring; inadequate disclosures related to auto-pay policies; and inadequate disclosures and unlawful policies related to charging cards on file with Amazon that were not initially designated for making payments to Audible. Soderstrom Decl. ¶ 8.

### B.   The *Weber* Action.

The *Weber* action was filed on December 8, 2017 and has been consolidated with the *McKee* action for settlement purposes. *Weber* Dkt. 1. The named plaintiffs are Weber, who is also a plaintiff in *McKee*, and Rees, who is also a named plaintiff in *Fisse*. *Id.* *Weber* includes ten causes of action against Amazon.com, Inc. and Amazon Services, LLC ("Amazon"): (1) violation of the EFTA; (2) violation of the Electronic Communications Privacy Act, 18 U.SC. § 2510 et seq. ("ECPA"); (3) fraud in the inducement; (4) conversion; (5) interference with contracts; (6) violation of the FAL; (7) violation of the CLRA; (8) violation of the UCL; (9) violation of North Carolina's Unfair Competition Law; and (10) restitution/unjust enrichment. *See Weber* Dkt. 25 (FAC).

These claims complain about Amazon's role in letting its subsidiary Audible charge back-up cards that are stored with Amazon. Soderstrom Decl. ¶ 10. Plaintiffs allege neither Audible nor Amazon properly disclosed to Audible members the back-up card charging policies and that this failure can sometimes result in Audible members incurring overdraft and similar fees. *Id.* The Court tentatively compelled Weber's claims to arbitration and transferred Rees's claims based on personal jurisdiction, but those tentative rulings have not been adopted. *Weber* Dkt. 65; Soderstrom Decl. ¶ 10.

### III.   The Revised Settlement.

### A.   Hard-fought litigation led to a successful mediation.

The Settlement is the product of hard-fought litigation that lasted 18 months before mediation (with months of pre-litigation activities), spanned three venues, involved numerous motions and briefs, and prompted two appeals. Soderstrom Decl. ¶ 11. Both sides had procedural and substantive wins and losses and gained a keen understanding of the strengths and weaknesses of their arguments. *Id.* The Parties engaged in informal and

3

formal discovery and exchanged detailed mediation statements explaining their positions on class certification, liability, and remedies. *Id.* On August 17, 2018, they attended a full-day mediation in San Francisco with mediator Robert Meyer which led to the original stipulation submitted to the Court in November 2018. *Id.* After the December 10, 2018 hearing, the Parties negotiated several new terms that are now reflected in the revised Settlement. *Id.* The Settlement will resolve the *McKee* and *Weber* actions and will result in the dismissal of the *Beals* and *Fisse* actions. *Id.*

### B.   The terms of the revised Settlement.

#### 1.   The Settlement Class.

The Settlement Class consists of a nationwide class of all Class Members who do not validly and timely opt out of the Settlement. Stipulation § 2.h. Class Members are all persons who fit within one or more of the following subclasses:

> **Regular Member Class:**   "all individual consumers of Audible in the United States who, between March 10, 2013 and August 17, 2018, lost any unredeemed Paid Membership Credits." *Id.* § 2.jj.

> **Gift Member Class:**   "all individual consumers of Audible in the United States who, between August 11, 2011 and August 17, 2018, purchased or redeemed an Audible Gift Membership that resulted in one or more unredeemed Audible gift membership credits being lost." *Id.* § 2.t.

> **Payment Card Class:**   "all individual consumers of Audible in the United States who, between March 10, 2013 and August 17, 2018, incurred charges from Audible to a credit or debit card other than the card originally designated as the primary payment card for the customer's Audible membership." *Id.* § 2.bb.

Every Class Member will benefit from the Settlement unless they opt out (and even then they will benefit from the injunctive relief). Soderstrom Decl. ¶ 12.

#### 2.   In-kind relief in the form of millions of free audiobooks.

The Settlement gives millions of Regular Class Members and Gift Class Members in-kind relief in the form of millions of free audiobook selections from a Settlement Catalog with over 200,000 audiobook titles. Stipulation § 21.a-f. Depending on how a credit was lost and how many credits were lost, qualifying Class Members can select up

4

to four free audiobooks. *Id.* § 21.d. The Settlement Catalog will be open for at least a year (longer than the standard rollover period) and will include titles that have the same general listing price as Audible's overall library, celebrity narrations, exclusive content, award winners, and best sellers. *Id.* § 21.e.; Soderstrom Decl. ¶ 13.

Soon after the Settlement is approved, Audible will send an email to each Regular Class Member and Gift Class Member telling them how many free audiobook selections they can make and giving them instructions on how to make their selections. Stipulation § 21.d; Soderstrom Decl. ¶ 14. This chart shows how the number of free audiobook selections will be determined for each Class Member:

| How Credits Were Lost | What the Class Member Gets |
|---|---|
| Lost 1 credit from rollover | 1 free audiobook selection |
| Lost 3 credits from rollover and 1 credit from cancellation | 2 free audiobook selections (one for each Class Membership category) |
| Lost 1 credit from rollover, 1 credit from cancellation, and 1 credit as a Gift Member | 3 free audiobook selections (one for each Class Membership category) |
| Lost 5 credits from cancellation | 2 free audiobook selections (1 for the Class Membership category and 1 extra based on total lost credits) |
| Lost 3 credits from rollover and 2 credits from cancellation | 3 free audiobook selections (1 for each Class Membership category and 1 extra based on total lost credits) |
| Lost 1 credit from rollover, 3 credits from cancellation, and 1 credit as Gift Member | 4 free audiobook selections (1 for each Class Membership category and 1 extra based on total lost credits) |

Stipulation § 21.d. To encourage class member participation, Audible will send an email 15-30 days before the end of the selection period reminding members who have not made all of their selections to do so. *Id.*; Soderstrom Decl. ¶ 14.

Class Members do not need a paid Audible membership and they do not need to submit a claim, make a purchase from Defendants, or provide any payment information to Defendants in order to participate in the Settlement; all they need is their *free* Amazon account (even if they cancelled their Audible membership). Soderstrom Decl. ¶ 15. For any eligible Class Members who became Audible members prior to its acquisition by

5

Amazon in 2008 and have not integrated their Amazon account or do not have an Amazon account, Audible will provide an alternative means to select their free audiobooks. *Id.*

### 3.    Reimbursement of overdraft or similar fees.

The Settlement gives Payment Card Class Members the right to get reimbursed if Audible charged a back-up card and caused them to incur any overdraft or similar fees. Stipulation §§ 2.h., 21.f. There is no cap on the total possible reimbursements. Soderstrom Decl. ¶ 16. When the Settlement is approved, Audible will include in a final approval email sent to Settlement Class Members instructions on how Payment Card Class Members can submit a claim for reimbursement and they will have at least 60 days to submit a claim. Stipulation § 22.a. Audible will train its customer service personnel to handle reimbursement claims. *Id.*; Soderstrom Decl. ¶ 16.

### 4.    Injunctive relief that improves Audible's disclosures and policies.

Audible has made and will maintain the following changes to its disclosures, which changes will stay in effect for at least one year from the date of final approval:

**Rollover Disclosures:** in marketing copy where Audible mentions the ability to roll over credits, Audible will mention rollover limits. In the welcome email that Audible sends to new members, Audible will disclose rollover limits.

**Cancellation Disclosures:** in the welcome email that Audible sends to new members, Audible will state that unused credits will be lost upon cancellation.

**Card Charging / Manage Payment Options:** Audible will continue to inform users upon sign up that Audible may charge other cards on file. In the welcome email that Audible sends to new members, Audible will provide a link to manage payment options and a link to the Audible COU.

**Conditions of Use Disclosures:** Audible has improved the locations and clarity of the language requiring members to accept the Audible COUs during sign ups and will ensure that such improvements will also exist on any future sign-up webpages or flows for at least the one-year period from the date of final approval.

Stipulation § 21. During the litigation, Audible also started giving its members email and online "reminders" when they are nearing the rollover limit to help members avoid losing credits because they forgot about the rollover limits. Soderstrom Decl. ¶ 17.

6

The injunctive relief will help improve Audible members' use of credits and other membership benefits and help avoid the same complaints Plaintiffs had about not knowing about the rollover and cancellation terms when they signed up and not realizing they were authorizing Audible to charge a back-up card in certain circumstances. *Id.* ¶ 18. It also gives Audible members instructions on how to manage their back-up payment options right when the members first sign up and ensures all Audible members have reasonable notice of and knowingly consent to Audible's terms and policies. *Id.*

### 5. Administration of the Settlement will be efficient and effective.

Defendants will cover all administrative costs, including costs related to: sending the Class Notice; engaging a third party administrator to process any opt outs; maintaining a Settlement website; training customer service personnel to respond to Settlement-related inquiries; creating processes, communications, and websites so Regular Class Members and Gift Class Members can easily select and download free audiobooks; maintaining a reimbursement procedure for Payment Card Class Members; and ensuring their advertisements, websites, and apps comply with the injunctive relief requirements. Stipulation §§ 20-22, 27-33. Defendants will devote significant time and resources to complete these tasks which in the end will have taken well over a year to complete. Soderstrom Decl. ¶ 19. Defendants will use their infrastructure and technological capabilities to ensure the effective administration of the Settlement. *Id.* Class Members will not need to be a paid Audible member, make any purchases, or provide any payment information to participate in and benefit from the Settlement. *Id.*

### 6. The Class Notice will be by email and a Settlement website.

Audible will send a Court-approved Class Notice to the email address Defendants have on file for every Class Member and will create and manage a Settlement website that will be available on the date the Class Notice is sent, will include important Court documents, and will contain more detailed information than the Class Notice. Stipulation §§ 31-34. The Class Notice will link to the Settlement website, explain the basic terms of the Settlement, explain Class Members have 45-days to submit written opt outs or

7

objections, explain what happens if Class Members do nothing, provide the date and time of the Fairness Hearing, and tell Class Members that Plaintiffs have a right to seek and award of attorneys' fees and costs up to $1.5 million and service awards up to $5,000 each. *See* Class Notice; Soderstrom Decl. ¶ 20.

Within 30 days of final approval of the Settlement, Audible will send another email to all Settlement Class Members telling them the Settlement was approved and providing instructions for Payment Card Class Members on how to submit a claim form to Audible's customer service department for reimbursement. Stipulation § 22.a. When the Settlement Catalog is ready, Audible will send one more email telling eligible Settlement Class Members how many free audiobooks they can select and providing a link and instructions on how to make their selections. *Id.* § 22.b.; Soderstrom Decl. ¶ 21.

**7.     The scope of Releases and persons not giving a release.**

All Settlement Class Members will give Defendants a general release of "any and all claims, known or unknown, alleged or asserted in the Lawsuits or that could have been alleged or asserted related to the advertisement, purchase, receipt, charges for, or loss of an Audible membership, Audible gift membership, Audible credits or other Audible membership benefits, or the use of an alternative payment method in connection with Audible services through August 17, 2018." Stipulation §§ 41-43. Class Members are not releasing any claims that arose after August 17, 2018 even if they involve the same conduct or causes of action, and they are not releasing claims that do not relate to the allegations in the Lawsuits. *Id.* Plaintiffs separately agreed to give Defendants general releases of all possible claims through November 28, 2018, including any claims that do not relate to the Lawsuits or relate to Audible. *Id.* § 42; Soderstrom Decl. ¶ 22.

Persons not granting releases include: (1) Audible customers who only purchased Audible products or services on an a la carte basis; (2) Audible customers who signed up for a free trial membership but cancelled before they were charged; (3) Audible members who never lost a paid credit and never had a back-up card charged; (4) persons who were never Audible customers; and (5) Class Members who opt out. Soderstrom Decl. ¶ 23.

8

**IV.    The Court should Grant Preliminary Approval of the Settlement.**

The Court's approval is required to consummate the Settlement. *See* Fed. R. Civ. P. 23(e) ("a class proposed to be certified for purposes of settlement . . . may be settled, voluntarily dismissed, or compromised only with the court's approval"). Because the Settlement is fair, reasonable, adequate, and in the best interest of Class Members, the Court should certify a class for settlement purposes and grant preliminarily approval.

**A.    Legal standards for preliminary approval of class action settlements.**

"There is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (quotation omitted). Federal Rule of Civil Procedure 23(e) requires courts to approve any class action settlement, however, because "settlement class actions present unique due process concerns for absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The Court has a "fiduciary duty to look after the interests of those absent class members." *Allen*, 787 F.3d at 1223. If settlement is reached before certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The Court first evaluates whether certification of a settlement class is appropriate under Federal Rule of Civil Procedure 23(a) and (b); it then determines whether the settlement is fair, adequate, and reasonable. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 672820, at *5 (N.D. Cal. Feb. 16, 2017) (citations omitted); Fed. R. Civ. P. 23(e)(2) (a court can only approve a class settlement after finding it is fair, reasonable, and adequate).

**B.    Certification of a Settlement Class is proper under Rule 23(a).**

Rule 23(a) provides that a class action is proper if four requirements are met: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)-(4). All four requirements are met here.

**Numerosity.** Rule 23(a)(1) requires the class to be "so numerous that joinder of all parties is impracticable." There are 8,421,237 total Class Members, including

9

1   7,171,139 Regular Class Members, 30,367 Gift Class Members, and 3,211,477 Payment

2   Card Class Members. Soderstrom Decl. ¶ 26. Around 62% of Payment Card Class

3   Members are also Regular Class Members and/or Gift Class Members, and around 38%

4   of all Class Members are current Audible members. *Id.* Numerosity is met.

5       **Commonality.** Rule 23(a)(2) requires that there be "questions of law or fact

6   common to the class." The common question "must be of such a nature that it is capable

7   of classwide resolution – which means that determination of its truth of falsity will

8   resolve an issue that is central to the validity of each one of the claims in one stroke."

9   *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). All that is needed is a single

10  common question of law or fact. *Id.* at 369. "The existence of shared legal issues with

11  divergent factual predicates is sufficient, as is a common core of salient facts coupled

12  with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019.

13      Plaintiffs' and Class Members' claims against Defendants involve the same core

14  factual and legal issues. Soderstrom Decl. ¶ 27. The common facts include the pre-sign-

15  up advertisements and representations on Defendants' websites; the sign-up webpage and

16  disclosures;   the   payment   card   designation   webpage   and   disclosures;   the   credit

17  redemption webpage and disclosures; and the underlying Conditions of Use and related

18  terms, policies, and disclosures. *Id.* The common legal issues include whether audiobook

19  credits are subject to gift card laws; whether Audible's disclosures were sufficient to put

20  members on notice of and to secure their consent to the membership, auto-pay, and back-

21  up card charging terms, and to the Conditions of Use. *Id.* Commonality is met.

22      **Typicality.** Rule 23(a)(3) requires that Plaintiffs' claims be "typical of the claims

23  or defenses of the class." Typicality "assures that the interest of the named representative

24  aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d

25  1168, 1175 (9th Cir. 2010). This "permissive" rule requires only that the claims and

26  defenses be "reasonably coextensive with those of absent class members; they need not

27  be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014) (citation

28  and quotations omitted).

10

Plaintiffs' claims implicate the same course of conduct that Defendants direct at class members nationwide via their advertisements, websites, and apps. Soderstrom Decl. ¶ 28. Plaintiffs and Class Members are all subject to the same or substantially similar credit expiration, auto-pay, and card-charging terms, disclosures, and policies, and they have all suffered from the same injuries—i.e., they lost credits and their auto-pay and back-up card decisions were not fully informed. *Id.* McKee, Weber, Rogawski, Beals, and Fisse each lost credits based on the same policies that apply to all Class Members and they all designated payment cards using the same online processes. *Id.* Defendants' defenses also rely on the same or substantially similar disclosures and terms which include the same arbitration clauses, waivers, and disclaimers, and how they issue credits. *Id.*; *see Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'") (citation omitted); *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 681 (N.D. Cal. 2011) ("The fact that some members of a putative class may have signed arbitration agreements or released claims against a defendant does not bar class certification."). Typicality is met.

**Adequacy.** Rule 23(a)(4) requires that class representatives "fairly and adequately protect the interests of the class." Adequacy asks whether Plaintiffs and their counsel have conflicts of interest with Class Members and whether Plaintiffs and their counsel will prosecute the action vigorously. *Volkswagen*, 2017 WL 672820, at *7-8. Plaintiffs and their counsel do not have any conflicts with absent class members that have caused or would cause them not to prosecute the class claims vigorously. Soderstrom Decl. ¶¶ 29, 60-63. The litigation has been hard fought for nearly two years, Plaintiffs' claims have been subjected to intense adversarial testing, Plaintiffs have each been involved in the litigation, and Plaintiffs' counsel has demonstrated competence and diligence in pursuing the interests of the class against well-funded opponents with experienced counsel. *Id.*; *Amchem Prods. v. Windsor*, 521 U.S. 591, 621 (1997). Adequacy is met.

11

**C.    Certification of a Settlement Class is Proper under Rule 23(b)(3).**

Plaintiffs ask the Court to certify a settlement class under Rule 23(b)(3). The rule requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action [be] superior to any other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are satisfied here.[4]

**Predominance.** Rule 23(b)(3)'s predominance criterion is "more demanding" than Rule 23(a)(2)'s commonality requirement. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Predominance asks "whether proposed classes are sufficiently cohesive to warrant adjudication by representation," with courts giving "careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). It exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022 (internal quotations omitted); *Salazar v. Midwest Servicing Group, Inc.*, 2018 WL 3031503, at *3 (C.D. Cal. June 4, 2018) (predominance is found when "defendants have engaged in standardized conduct toward members of the proposed class"). The question is whether "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. *Tyson Foods*, 136 S. Ct. at 1045.

There are several significant aspects of the Lawsuits that are prevalent and important for all Class Members and that can and should be resolved in a single adjudication. Soderstrom Decl. ¶ 30. They include whether federal gift card requirements apply to Audible credits and whether Defendants' auto-pay and back-up card disclosures and terms satisfied the EFTA's notice requirements. *Id.* Federal law applies to every Class Member's claims and the same or substantially similar facts and circumstances are needed to resolve the claims (e.g., the same advertisements and disclosures, the same "flows," the same Conditions of Use). *Id.*; *see Amchem*, 521 U.S. at 625 (predominance

---

[4] Manageability is not an issue. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

is "readily met" in many consumer cases). The federal statutes and common facts at issue in each of the Lawsuits show that predominance exists. Soderstrom Decl. ¶ 30.

This is not a case where Plaintiffs are asking the Court to certify a nationwide settlement class based on 50 different states' laws, but even their state-law claims involve "aggregation-enabling" factual and legal issues that predominate over individual issues. *Id.*; *see In re Anthem, Inc. Data Breach Litigation*, 327 F.R.D. 229, 311-15 (N.D. Cal. 2018) (finding predominance and approving nationwide class settlement based on state laws and noting the core question is whether "variations in state law may swamp any common issues and defeat predominance"); *Cody v. SoulCycle Inc.*, 2017 WL 6550682, at *2-3 (C.D. Cal. Oct. 3, 2017) (finding predominance and approving nationwide class settlement based on the application of federal gift card laws to spin class passes where there were also related state law claims); *Edwards v. First American Corp.*, 2016 WL 8943464, at *6 (C.D. Cal. 2016) (finding predominance in nationwide class of consumers with claims against a title insurance company). The state law claims rely on the same common proof (flows, disclosures, and terms), common injuries (lost credits and unexpected fees on back-up cards), and common remedies (restoration of credits, damages based on overdraft or similar fees, injunctive relief). Soderstrom Decl. ¶ 30. A "common nucleus of facts and potential legal remedies" exists, so any differences in state laws "are not sufficiently anomalous to deny class certification" even though "some class members may possess slightly differing remedies based on state statute or common laws." *Hanlon*, 150 F.3d at 1022. Predominance exists.

**Superiority.** Superiority focuses on "whether maintenance of the litigation as a class action is efficient and whether it is fair." *Wolin*, 617 F.3d at 1175-76; Fed. R. Civ. P. 23(b)(3) (considering class members' interests in controlling separate actions, other litigation, desirability of concentrating litigation in a forum, and management difficulties). The class action device is particularly important in cases like this one where there is a large disparity between high litigation costs and small individual recoveries. *Wolin*, 617 F.3d at 1175; *see also In re Anthem*, 327 F.R.D. at 315-16. There are over 7.2

13

million Regular Class Members and Gift Class Members and over 3.2 million Payment Card Class Members (with several million in both groups). Soderstrom Decl. ¶ 31. The alternative to a class action is thousands or millions of individual claims that seek small individual recoveries. *Id.* The most likely alternative, however, is very few or no individual claims because court and arbitration filing fees alone dwarf the possible recovery in most cases. *Id.* A class action is the superior alternative. *Id.*

### D.    The Settlement is fair, reasonable, and adequate.

The recently revised Rule 23(e) provides:

> If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Court should also consider several factors in evaluating whether the Settlement is fair, reasonable, and adequate:

> (1) The strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Where a settlement is reached before a class is certified, the settlement "must withstand an even higher level of scrutiny" to ensure "no collusion or other conflicts of interest." *Id.* "Preliminary approval of a settlement is appropriate if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or

14

segments of the class, and falls within the range of possible approval." *Ruch v. AM Retail Grp., Inc.*, 2016 WL 1161453, at *7 (N.D. Cal. Mar. 24, 2016) (citation omitted).

The Parties have provided the Court with "information sufficient to enable it to determine" that the Settlement is fair, reasonable, and adequate, and that giving Class Members notice of the Settlement is proper. *See* Fed. R. Civ. P. 23(e)(1)(A) and (e)(2). The Settlement satisfies each requirement and should be preliminarily approved.

### 1. Plaintiffs and their counsel have adequately represented the class.

Plaintiffs are current or former customers of Defendants who used Defendants' websites, relied on Defendants' disclosures (or lack thereof), and suffered harm in the form of lost credits and unexpected charges to back-up cards. Soderstrom Decl. ¶ 33. Collectively, they represent a wide swath of Audible members and fit within the Regular Member Class, Gift Member Class, and/or Payment Card Class. *Id.* They reviewed records, shared information with their counsel, and personally participated in pursuing claims on a class basis while eschewing the possibility of individual settlements. *Id.*

Plaintiffs' counsel spent considerable time and resources pursuing the interests of the class without singling out individuals or subclasses for favorable treatment. *Id.* ¶¶ 34, 60-63. Counsel achieved multiple successes in motions practice and was prepared to seek certification promptly and establish liability if Settlement was not reached. *Id.* Plaintiffs and their counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A).

### 2. Serious, informed, arm's-length, non-collusive negotiations.

The Settlement was reached only after each side understood the strengths and weaknesses of their positions. Soderstrom Decl. ¶ 35. Plaintiffs' counsel started investigating claims against Defendants in 2016 and researched all colorable claims related to Audible memberships, credit expirations, auto-pay policies, and back-up card charging practices. *Id.* By the time the Settlement was reached in August 2018, Plaintiffs' counsel had reviewed thousands of records, numerous webpage versions, and documents and data provided by Defendants in formal discovery and for purposes of mediation. *Id.* The Parties exchanged mediation briefs and used an experience mediator. *Id.*

15

Counsel on both sides are experienced in complex civil litigation and class actions and have been involved from the beginning of the litigation. *Id.* ¶ 36. Their negotiations were serious, informed, at arm's length, and conducted at an appropriate stage of the proceedings. *Id.* Counsel for both sides recommend that the Court approve the Settlement. *Id.*; *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested.") (citations omitted); *In re Zynga Inc. Secs. Litig.*, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) (the use of a mediator and the fact that discovery had occurred "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement"); *see also* Fed. R. Civ. P. 23(e)(2)(A) & (B).

The facts and circumstances of the Settlement, fully explained, show no trace of collusion, nor do they show that Plaintiffs "bargained away the benefit to the class in exchange for their own interests." *Bluetooth*, 654 F.3d at 938.

Class action settlements are not required to provide "cash" or "monetary" compensation to class members. *Cody*, 2017 WL 6550682, at *7 (approving a settlement class based on "economic consideration" of 229,646 reinstated spin classes with an undiscounted face value of over $7 million); *Johnson v. Ashley Furniture Industries, Inc.*, 2016 WL 866957, at *4 (S.D. Cal. Mar. 7, 2016) (approving settlement of vouchers that could be applied to future purchases at defendant's stores); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 951-52 (9th Cir. 2015) (same); *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 828 (N.D. Cal. 2017) (same); *In re Southwest Airlines Voucher Litig.*, 799 F.3d 701, 704 (7th Cir. 2015) (approving a claims-made coupon settlement plus injunctive relief). Even if the Settlement involved "coupons" (it does not), it still is fair, reasonable, and adequate and does not overcompensate counsel. Soderstrom Decl. ¶ 37.

The Court still must scrutinize the Settlement and seek "adequate assurance" that there was no collusion, however. *Bluetooth*, 654 F.3d at 947-48. Here, Plaintiffs and their counsel put Class Members' interests first at every step. Soderstrom Decl. ¶ 38. The cap

16

on attorneys' fees and costs was not negotiated until after the other Settlement terms were agreed, and Plaintiffs did not negotiate terms that give a disproportionate distribution of the Settlement for attorneys' fees and costs. Soderstrom Decl. ¶ 38.

The Settlement requires Audible to give Class Members who are current or former Audible members that lost membership credits the right to select between one and four free audiobooks, which right would exist for a full year. Stipulation § 21. The Settlement Catalog lets each Regular Class Member and Gift Class Member choose from over 200,000 titles based on his or her personal preferences. *Id.*; Soderstrom Decl. ¶ 38. The "face value" of the in-kind relief (nearly 12 million free selections multiplied by the list price of each audiobook selected) is substantial by itself. Soderstrom Decl. ¶ 38.

Plaintiffs did not try to capitalize on the "face value" of the Settlement and potentially put their own and their counsel's interests first. *Id.* Instead, Plaintiffs agreed not to request more than $1.5 million in attorneys' fees (inclusive of costs) and not more than $5,000 each in service awards. Stipulation §§ 24-25; Soderstrom Decl. ¶ 39. Defendants compare the value of the in-kind portion of the Settlement to closed catalog sales they routinely run that let customers purchase any included title for $5.00 each, but they acknowledge the $5.00 figure may undervalue the breadth of options provided in such a large settlement catalog. Soderstrom Decl. ¶ 39. Even based on Defendants' conservative $5.00 valuation per audiobook and conservative 10% estimated redemption rate, the value of the in-kind portion of the Settlement alone is around $6.0 million.[5] *Id.* Even accepting this conservative valuation, the maximum possible fee award of $1.5 million would still be less than the 25% benchmark and would require less than a 1.75

---

[5] Plaintiffs expect a higher participation rate than the conservative estimates used for attorneys' fees because (i) around 38% of Class Members are current Audible members, (ii) Audible will send multiple emails, including a reminder email, which will prompt qualifying Class Members to make free selections, (iii) there is no "claims made" process so every qualifying Class Member will automatically receive the right to make their selections, (iv) former Audible members sometimes purchase audiobooks a la carte even though they cancelled their subscription, (v) the Settlement Catalog will include content that is more desirable to a wider population than a small closed catalog offering, and (vi) the selection process will be quick, convenient, and free. Soderstrom Decl. ¶ 40.

17

lodestar multiplier without accounting for the value of the other relief secured by the Settlement. *Id.* ¶¶ 39, 60-63. Plaintiffs agreed to a maximum fee award request not tied to the face value of the Settlement and lower than amounts approved in other cases. *Id.*; *see Cody*, 2017 WL 6550682, at *4 ($1,790,000 approved based on the face value of reinstated classes); *In re Southwest Airlines*, 799 F.3d at 704 ($1,649,118 approved based on lodestar multiplier without considering coupon redemption rates).

The agreement with respect to fees is not a "clear sailing" arrangement that lets Defendants pay off Plaintiffs' counsel in exchange for paltry relief for Class Members. *See Bluetooth*, 654 F.3d at 939-40 (requiring the district court to better explain the reasons it was assured of the fairness of a settlement providing for up to $800,000 in attorneys' fees but no economic relief for class members); *Cavka v. SoulCycle Inc.*, 2018 WL 1426343, at *4 (C.D. Cal. Jan. 25, 2018) (denying approval where the settlement exchanged a broad release for improved contract disclosures but no economic relief, with counsel seeking $350,000). Far from giving Plaintiffs and their counsel a potential windfall at Class Members' expense, $1.5 million is a cap on potential attorneys' fees that does not reduce the value of the Settlement to Class Members and that gives Defendants assurance that Plaintiffs will not seek multiples of that amount based on the total value of the Settlement and a higher redemption rate. Soderstrom Decl. ¶ 41.

The injunctive relief is also valuable, important, and includes most of what Plaintiffs were seeking all along. *Id.* ¶ 42. It makes sure notices and disclosures are clear, conspicuous, and made at the start of the relationship with Audible, and it helps members avoid letting credits expire, avoid incurring unexpected fees, and manage their back-up payment methods. *Id.* The Settlement essentially ensures that Audible customers' purchasing decisions will always be *informed* decisions. *Id.* Plaintiffs' arguments in this litigation started causing Defendants to make improvements only a few months after *McKee* was filed, and the Settlement will provide substantial value to millions of Class Members and all of Audible's future consumers. *Id.*; *Staton*, 327 F.3d at 974 (the value of injunctive relief is also considered for attorneys' fees awards).

18

Finally, the reason no "residue" will be distributed to Class Members was a function of the Settlement's size and structure: in-kind, reimbursement, and injunctive relief. Soderstrom Decl. ¶ 43; *see Cody*, 2017 WL 6550682, at *6. Paying any residue to many millions of Class Members would create new administrative costs and complexities without providing any meaningful value to Class Members. Soderstrom Decl. ¶ 43.

### 3.    The Settlement does not have any obvious deficiencies.

The Settlement gives meaningful relief to all Class Members and does not suffer from any obvious deficiencies. It represents an excellent result given the complexities of this case and the risks of litigation. Soderstrom Decl. ¶ 44.

**Litigation risks.** The risks facing Plaintiffs if the Settlement was not reached are substantial. Fed. R. Civ. P. 23(e)(2); *Staton*, 327 F.3d at 959. There is little authority related to federal and state gift card laws, especially authority examining arguments like Plaintiffs' that a credit is functionally equivalent to a gift card. *See Cody*, 2017 WL 6550682, at *3. Plaintiffs' gift card claims survived dismissal, but the Court observed that they "barely" survived and suggested the claims were a proper subject for an early summary judgment motion. *McKee* Dkt. 53; Soderstrom Decl. ¶ 45. The issues of whether a "credit" that is part of a larger package of membership benefits (including a 30% discount, a free return policy, free streaming services and other free content, members-only specials, and discounted "extra credits") is issued in a "specified amount" if it can be redeemed for over 99% of Audible's audiobooks regardless of list price is hotly disputed. Soderstrom Decl. ¶ 45. The "cash value" of a credit itself is also uncertain because Audible's terms provided that credits have no "cash value," members use credits for a wide range of products with different list prices, and individual members value and use credits and other membership benefits differently based on personal preferences. *Id.*

Several of Plaintiffs' other claims also only narrowly avoided dismissal and raised questions of whether causation and damages could be proved if Audible members had reasonable notice of credit expiration terms, auto-pay terms, and back-up card charging terms even though the technical requirements of the EFTA and/or the CAPRL were not

met at sign up. *McKee* Dkts. 53 and 94; Soderstrom Decl. ¶ 46; *Cody*, 2017 WL 6550682, at *3 (observing causation of damages from expired classes would be difficult to prove).

**Litigation complexities.** The litigation is complex, involves laws with little published precedent and/or that are being applied in novel ways, and is based largely on webpages and disclosures made on multiple platforms (e.g., standard website, mobile website, apps) that have been periodically updated. Soderstrom Decl. ¶ 47; *McKee* Dkts. 37, 53, 87, 94; *Weber* Dkt. 53. It has also already spread to three district courts, involved numerous motions with more expected, prompted two appeals with more expected, and caused both sides to incur significant fees and expenses. Soderstrom Decl. ¶ 47. Avoiding individual arbitration and maintaining class certification through trial and appeal would also be difficult and involve substantial time, expense, and risk. *Id.*

Ultimately, the strengths of Plaintiffs' claims are reflected in the size and value of the Settlement and in the injunctive relief that gave Plaintiffs most of what they were asking for. *Id.* ¶ 48. The strengths of Defendants' defenses are also reflected in the Settlement. *Id.* The question of whether the outcome of litigation would be superior to the Settlement is highly uncertain, a fact that strongly favor preliminary approval. *Id.*

**Effectiveness of distributing relief.** Class Members signed up for a free Amazon account and an Audible membership online using a computer, smartphone, tablet, or similar device. *Id.* ¶ 49. They will all be receiving a Class Notice at their designated email address associated with that Amazon account and, if the Settlement is approved, they will be receiving another email with instructions on how to select their free audiobook(s) and how to submit a reimbursement claim for overdraft and similar fees. *Id.*; Stipulation § 22. Defendants have the largest selection of audiobooks in the world and they specialize in creating websites that make the process of selecting and downloading things like free audiobooks quick, easy, and convenient. Soderstrom Decl. ¶ 49. They are also known for good customer service and have committed to training personnel to field Settlement-related questions and reimbursement claims. *Id.* The Settlement will distribute relief to Class Members in the most effective way possible. Fed. R. Civ. P. 23(e)(2).

20

### 4.   The Settlement does not grant preferential treatment.

Each of the Regular Class Members and Gift Class Members who lost a paid credit will get to pick at least one free audiobook. Stipulation § 21.a-e.; Soderstrom Decl. ¶ 50. Some will get to pick two or more free audiobooks. Soderstrom Decl. ¶ 50. Similar to the reinstated classes in *Cody*, the in-kind relief is proportional and equitable for Regular Class Members and Gift Class Members. 2017 WL 6550682, at *4.

For Class Members who cancelled their memberships, they still have *free* Amazon accounts to access past audiobook purchases and other Amazon products and services, many may still purchase audiobooks a la carte, and many may have cancelled for reasons unrelated to the claims in this litigation (i.e., their listening habits did not support a monthly or annual membership and they chose to cancel instead of suspend their membership). Soderstrom Decl. ¶ 51 (noting Rogawski suspended his paid membership when he could not keep up with his credits and Fisse signed up and cancelled several memberships). They are still among the group of consumers who would value a free audiobook because they had a paid Audible membership relatively recently, they already have a free Amazon account, they are not required to spend any money or become an Audible customer again, and the selection process will be free and convenient. *Id.*

Around 62% of Payment Card Class Members are also Regular Class Members and/or Gift Class Members and will get to select at least one free audiobook in addition to getting a right to seek reimbursement. Stipulation § 21.a-f.; Soderstrom Decl. ¶ 52. The Payment Card Class Members who are not also getting the right to pick a free audiobook *never lost a paid credit*—this means they either used every credit they ever paid for or they are current Audible members with all of their credits still in their accounts.[6] Soderstrom Decl. ¶ 52. The right to get reimbursed for any overdraft or similar

---

[6] A consumer who never intended to pay for a monthly or annual membership (e.g., he did not realize that he signed up or that he had to cancel the "free trial membership," or that he thought he cancelled but it was unsuccessful for some reason) would be a Class Member only if he (1) lost a credit (i.e., the unintended payments lasted long enough for him to reach the rollover limit) or (2) had a back-up card charged by Audible (i.e., he

fees is the same for all Payment Card Class Members and is not subject to a total reimbursement maximum. *Id.* The reimbursement right is limited to fees that would be incurred if a back-up card was charged unexpectedly because there would be no damages if the member knew the back-up card was being charged (i.e., they authorized the charge). *Id.* The reimbursement relief is fair and equitable and does not give preferential treatment.

The $5,000 maximum service award is a reflection of Plaintiffs' service to the Class, the reputational and other risks they bore in bringing nationwide litigation, and the broader releases Plaintiffs are giving to Defendants. Stipulation § 24; Soderstrom Decl. ¶ 54. These amounts are fair and presumptively reasonable in the Ninth Circuit. *See Smith v. Am. Greetings Corp.*, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016).

### 5.    The Settlement falls within the range of possible approval.

The Settlement falls well within the range of possible approval. "To determine whether a settlement 'falls within the range of possible approval' courts focus on 'substantive fairness and adequacy' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Shuchardt v. Law Office of Rory W. Clark*, 2016 WL 232435, at *10 (N.D. Cal. Jan. 20, 2016) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)).

Plaintiffs had three "damages" theories: (1) the loss of a credit, (2) fees incurred due to unexpected charges to a back-up card, and (3) the difference between the price of a membership and the price Audible members would have paid if Audible's terms and policies were better disclosed. Soderstrom Decl. ¶ 55; *see Rodriguez*, 563 F.3d at 964-65 ("courts do not traditionally factor treble damages into the calculus for determining a reasonable settlement"). The in-kind relief addressed the loss of a credit by restoring a

---

cancelled his primary payment method instead of cancelling the membership itself and Audible charged his back-up card under its policy). In either case, he would receive a Class Notice advising him of his rights and, if he chose not to opt out, he would receive compensation for and release claims through August 17, 2018. If any of the unintended payments occurred after August 17, 2018, he still would not be releasing those claims. Based on Audible's customer service policies, disclosures, email reminders, and high redemption rates, such a customer would be an outlier. Soderstrom Decl. ¶ 53.

lost right; the reimbursement addressed unexpected fees; and the injunctive relief limits future credit losses and unexpected fees *and* makes sure all current and future Audible members' purchasing decisions are fully informed decisions. Soderstrom Decl. ¶ 55.

**Lost Credits.** If a Class Member lost a credit that could be used to select an audiobook regardless of its list price, the in-kind relief largely restores the right that was lost. *Id.* ¶ 56. With the right restored, there are no remaining actual or consequential damages. *Id.* And because some Class Members may choose $5.00 books, others $15.00 books, and others $25.00 books, the in-kind relief maximizes Class Members' flexibility. *Id.* The total value of the free audiobooks qualifying Class Members will select will be substantial even if the Settlement has a redemption rate lower than Plaintiffs expect. *Id.*

**Extended Class Periods.** Defendants agreed to extended class periods for Class Members nationwide even though the EFTA limitations period is only one year. 15 U.S.C. § 1693m; Soderstrom Decl. ¶ 57. The Class Period for all Regular Class Members and Payment Card Class Members nationwide reaches back four years from the date *McKee* was filed and the Class Period for Gift Class Members reaches back six-years from the date Beals added his claims. Stipulation §§ 2.t., 2.jj., 2.bb. Any Class Members who cancelled their memberships several years ago will get some compensatory relief even though they may not have been able to recover separately from the Settlement under the EFTA or other laws with shorter limitations periods. Soderstrom Decl. ¶ 57. The extended class periods also let more Audible members receive compensatory relief and give members a greater chance of getting more than one free audiobook selection if they had multiple credits expire. *Id.*

**EFTA Damages Caps.** The EFTA caps Plaintiffs' maximum possible classwide damages at $500,000 for each "failure to comply by the same person," gives courts discretion to lower (but not raise) that amount, and does not authorize restitution or injunctive relief. 15 U.S.C. § 1693m. At best, Plaintiffs could have recovered $2.5 million total in cash damages under the EFTA ($500,000 based on gift card and $1 million each from Audible and Amazon based on preauthorized and unauthorized electronic fund

23

transfer theories of liability). *Id.*; Soderstrom Decl. ¶ 58. Plaintiffs strongly believed that in-kind relief and an uncapped reimbursement right for overdraft and similar fees was superior to a cash or cash-option settlement where the per-Class Member compensation would be small and the administrative costs would increase significantly. *Id.*; *see Cody*, 2017 WL 6550682, at *4 (only 0.1% of class members chose a cash option which required a "claims made" procedure; the Court based its approval on the face value of all reinstated classes even though they could still expire and may never be used).

**Difference in Price Damages.** Plaintiffs chose to exclude from the Settlement Audible members whose only complaint is that they would have paid less for their membership if Audible's disclosures were better. Soderstrom Decl. ¶ 59. The measure of these damages would have been very difficult to quantify—e.g., would a member have paid $13.95 instead of $14.95 each month if Audible's disclosures were clearer—and would have required a battle of experts at great cost to both sides. *Id.* Moreover, those Audible members never lost a credit or had a back-up card charged, so it would be difficult to prove they did not know Audible's policies and they suffered harm. *Id.*

**V.     The Court Should Approve the Class Notice, Appoint Class Counsel and Class Representatives, and Set a Fairness Hearing.**

**Appointment of Counsel.** In appointing class counsel the Court should consider counsel's work, experience, knowledge of the law, and resources. Fed. R. Civ. P. 23(c)(1)(B) and (g)(1); *Farley v. Baird, Patrick & Co., Inc.*, 1992 WL 321632, at *5 (S.D.N.Y. Oct. 28, 1992) ("Class counsel's competency is presumed absent specific proof to the contrary by defendants."). Class Counsel has experience in complex civil litigation and in class action cases on both the defense and the plaintiff side and has managed this complex series of related cases for over two years facing formidable and well-funded opponents. Soderstrom Decl. ¶¶ 60-63. The work done to date shows that appointment of Soderstrom Law PC as Class Counsel is appropriate. *Id.*

///

///

24

**Appointment of Class Representatives.** Each of the Plaintiffs has reviewed and prepared documents and supported the litigation whenever needed and has placed the interests of Class Members ahead of his or her own. *Id.* ¶ 64. The Court should appoint each of them as a Class Representative for purposes of the Settlement. *Id.*

**Approval of the Class Notice.** A class notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); see Fed. R. Civ. P. 23(c)(2)(B) (requiring the "best notice that is practicable under the circumstances," including electronic and other appropriate means); Fed. R. Civ. P. 23(e)(1) (requiring notice be given in a "reasonable manner"). These requirements are satisfied here.

Email notice with a supporting Settlement website is the best practicable notice because all Class Members designated an email address to create their free Audible and Amazon accounts and Defendants' have the email addresses for every Class Member. Soderstrom Decl. ¶ 65. The free Audible and Amazon accounts still exist and Class Members still receive emails from Defendants even if some of them have cancelled their paid memberships. *Id.* The notice will remain in each Class Member's email account and it and the Settlement website will be easily accessible and reviewable at the Class Member's convenience. Stipulation §§ 26-34. Defendants will also train Audible personnel to field Settlement-related questions. *Id.* § 28. The proposed Class Notice is individualized and the best form of notice under the circumstances.

## VI.    Conclusion.

Preliminary approval does not turn on whether the Settlement "could be prettier, smarter, or snazzier, but whether it is fair, adequate, and free from collusion." *Hanlon*, 150 F.3d at 1027. Plaintiffs have secured in-kind, reimbursement, and injunctive relief for millions of Class Members. Even if the Settlement is not perfect, it is excellent under the circumstances. Plaintiffs respectfully ask the Court to grant this motion, certify a settlement class, and preliminarily approve the Settlement.

1

Dated: March 7, 2019                          SODERSTROM LAW PC

2
                                              By: /s/ Jamin S. Soderstrom
3
                                                  Jamin S. Soderstrom
                                                  *Counsel for Plaintiffs and the Proposed Class*
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' RENEWED, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on, March 25 2019, I caused the foregoing document to be served on all counsel of record by the Court's CM/ECF electronic filing system.

By: */s/ Jamin S. Soderstrom*

Jamin S. Soderstrom

27