1    **Jamin S. Soderstrom, Bar No. 261054**
2    **jamin@soderstromlawfirm.com**
     **SODERSTROM LAW PC**
3    **3 Park Plaza, Suite 100**
     **Irvine, California 92614**
4    **Tel:   (949) 667-4700**
5    **Fax:  (949) 424-8091**

6    *Counsel for Plaintiffs and the Proposed Class*

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                   **(WESTERN DIVISION – LOS ANGELES)**

11

12   **GRANT MCKEE, ERIC WEBER, and**      Case Nos.: 2:17-cv-01941 GW (Ex) &
     **MICHAEL ROGAWSKI, individually**               2:17-cv-08868 GW (Ex)
13   **and on behalf of all other similarly**
     **situated,**                         **PLAINTIFFS' MOTION FOR**
14                                         **ATTORNEYS' FEES AND SERVICE**
                       **Plaintiffs,**     **AWARDS**
15
16          **v.**

17   **AUDIBLE, INC.,**

18                     **Defendant.**

19   ────────────────────────────

20   **ERIC WEBER and BRYAN REES,**        Hearing Date:   July 8, 2019
     **individually and on behalf of all other**   Time:           8:30 a.m.
21   **similarly situated,**              Courtroom:       9D
                                          Judge:           Hon. George H. Wu
22                     **Plaintiffs,**     Trial date:      None set

23          **v.**

24   **AMAZON.COM, INC. and AMAZON**
25   **SERVICES LLC,**

26                     **Defendants.**

27

28

─────────────────────────────────────────────

# **TABLE OF CONTENTS**

**Page(s)**

NOTICE OF MOTION AND MOTION ........................................................................ 1

INTRODUCTION .......................................................................................................... 2

BACKGROUND ............................................................................................................ 2

I.   Litigation Efforts by Class Counsel and the Class Representatives ...................... 2

    A.   Prelitigation investigation of claims in 2016 and 2017. ........................... 3

    B.   The original *McKee* action filed in March 2017. ..................................... 3

    C.   The related *Weber* action, *Beals* action, and *Fisse* action. ....................... 5

    D.   A successful mediation in August 2018 led to the Settlement. ................. 6

    E.   The Court granted preliminary approval of the Settlement. ...................... 7

ARGUMENT .................................................................................................................. 8

I.   The Court Should Grant the Full Fee Award Request. ........................................... 8

    A.   Class Counsel is entitled to an award of attorneys' fees and costs ........... 8

    B.   CAFA's attorneys' fee provision does not govern the Settlement. ........... 9

    C.   Class Counsel's current lodestar and a modest multiplier support
        approval of the full fee award request. ................................................... 11

        1.   Class Counsel's lodestar is reasonable and appropriate. ......................... 11

        2.   A modest multiplier is reasonable and appropriate. ................................ 14

    D.   What to do if CAFA Applies and the In-Kind Relief is Coupons .............. 22

II.   The Court Should Grant $5,000 Service Awards to the Class Representatives .... 23

CONCLUSION ............................................................................................................. 25

i

# <u>TABLE OF AUTHORITES</u>

**Page(s)**

**Federal Cases**

*3M Company v. Phoenix Automotive Refinishing Co., Ltd.*,
  2018 1989536 (C.D. Cal. Apr. 25, 2018) ................................................. 13

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015).............................................................. 24

*In re Bluetooth Headset Products Liability Litig.*,
  654 F.3d 935 (9th Cir. 2011) .................................................................... 11

*Camacho v. Bridgeport Fin., Inc.*,
  523 F.3d 973 (9th Cir. 2008) .................................................................... 11

*Chambers v. Whirlpool Corp.*,
  214 F. Supp. 3d 877 (C.D. Cal. 2016) ....................................... 9, 13, 14, 22

*Cody v. SoulCycle Inc.*,
  2017 WL 6550682 (C.D. Cal. Oct. 3, 2017)....................................... 19, 22

*Cook v. Niedert*,
  142 F. 3d 1004 (7th Cir. 1998) ................................................................. 24

*In re Easysaver Rewards Litig.*,
  906 F.3d 747 (9th Cir. 2018) ....................................................... 9, 19, 22

*Ekin v. Amazon Services, LLC*,
  84 F. Supp. 3d 1172 (2014) ........................................................................ 3

*Elhilu v. Quizno's Franchising Company, LLC*,
  2009 WL 10671939 (C.D. Cal. Dec. 8, 2009)........................................... 10

*Fagerstrom v. Amazon.com, Inc.*,
  141 F. Supp. 3d 1051 (2015), aff'd sub nom, *Wiseley v. Amazon.com.,
  Inc.*, 709 F. App'x 862 (9th Cir. 2017).................................................... 3

*Florin v. Nations Bank of Georgia*,
  34 F.3d 560 (9th Cir. 1994) ...................................................................... 16

*Gottlieb v. Conseco Sr. Health Ins. Co.*,
  612 F. App'x 468 (9th Cir. 2015) ............................................................... 8

ii

*Grays Harbor Adventist Christian School v. Carrier Corp.*,
  2008 WL 1901988 (W.D. Wash. Apr. 24, 2008) ........................................ 19

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .............................................................. 9, 11

*In re HP Inkjet Printer*,
  716 F.3d 1173 (9th Cir. 2013) ............................................................ 10, 19

*Kerr v. Screen Guild Extras, Inc.*,
  526 F.2d 67 (9th Cir. 1975) ................................................................ 14, 22

*Mergens v. Sloan Valve Co.*,
  2017 WL 9486153 (C.D. Cal. Sept. 18, 2017) ............................... 14, 19, 22

*Missouri v. Jenkins*,
  491 U.S. 274 (1989).............................................................................. 12

*Netbula, LLC v. Chordiant Software, Inc.*,
  2010 WL 11575580 (N.D. Cal. Dec. 17, 2010)......................................... 13

*Nicosia v. Amazon.com, Inc.*,
  2017 WL 10111078 (E.D.N.Y. Aug. 18, 2017) .......................................... 3

*Parkinson v. Hyundai Motor America*,
  796 F. Supp. 2d 1160 (C.D. Cal. 2010) ..................................................... 8

*Perfect 10, Inc. v. Giganews, Inc.*,
  2015 WL 1746484 (C.D. Cal. Mar. 24, 2015)....................................... 13, 21

*Roberts v. Electrolux Home Prods., Inc.*,
  2014 WL 4568632 (C.D. Cal. Sept. 11, 2014) ...................................... 9, 10

*Rodriguez v. West Publ. Corp.*,
  2007 WL 2827379 (C.D. Cal. Sept. 10, 2007), aff'd in part, rev'd
  *Rodriguez v. West Publ. Corp.* 563 F.3d 948 (9th Cir. 2009) .................. 24

*Seebrook v. Children's Place Retail Stores, Inc.*,
  2013 WL 6326487 (N.D. Cal. Dec. 4, 2013)............................................... 9

*Singer v. Becton Dickinson & Co.*,
  2010 WL 2196104 (S.D. Cal. June 1, 2010) ............................................. 16

*Smith v. Am. Greetings Corp.*,
  2016 WL 362395 (N.D. Cal. Jan. 29, 2016)............................................... 24

*In re Southwest Airlines,*
  799 F.3d 701, 703 (7 th Cir. 2015) ...................................................................... 10, 19

*Staton v. Boeing Co.,*
  327 F.3d 938 (9th Cir. 2003) ................................................................................ 24

*Stranger v. China Elec. Motor, Inc.,*
  812 F.3d 734 (9th Cir. 2016) ................................................................................ 16

*Tierno v. Rite Aid Corp.,*
  2009 WL 10699905 (N.D. Cal. Nov. 9, 2009) ...................................................... 14

*Van Gerwen v. Guarantee Mut. Life Co.,*
  214 F.3d 1041 (9th Cir. 2000) .............................................................................. 14

*Vizcaino v. Microsoft Corp.,*
  290 F.3d 1043 (9th Cir. 2002) ................................................................... 9, 14, 16, 22

*Welch v. Metro. Life Ins. Co.,*
  480 F.3d 942 (9th Cir. 2007) ................................................................................ 11

*Xu v. Yamanaka,*
  2014 WL 3840105 (N.D. Cal. Aug. 1, 2014) ........................................................ 21

*Yue v. Storage Technology Corp.,*
  2008 WL 4185835 (N.D. Cal. Sept. 5, 2008) ........................................................ 13


**State Cases**

*Bernardi v. County of Monterey,*
  167 Cal. App. 4th 1379 (2008) .............................................................................. 16

*In re Cellphone Fee Termination Cases,*
  86 Cal. App. 4th 1380 (2010) ................................................................................ 24

*Chavez v. Netflix, Inc.,*
  162 Cal. App. 4th 43 (2008) .................................................................................. 16

*Laffitte v. Robert Half Int'l Inc.,*
  1 Cal. 5th 480, 504 (2016) .................................................................................... 9

*Setzer v. Robinson,*
  57 Cal. 2d 213 (1962) ............................................................................................ 16

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND SERVICE AWARDS

**Federal Statutes**

28 U.S.C. § 1331 ............................................................................................... 10

28 U.S.C. § 1332 ............................................................................................... 10

28 U.S.C. § 1332(d) ........................................................................................... 10

28 U.S.C. § 1367 ............................................................................................... 10

28 U.S.C. § 1712 ................................................................................................. 9

28 U.S.C. § 1712(a)-(c) ...................................................................................... 9

28 U.S.C. § 1712(c) .......................................................................................... 22

**State Statutes**

Cal. Code Civ. Proc. § 1021.5 ......................................................................... 8, 9

Cal. Civ. Code § 1750 *et seq.* ............................................................................ 3

Cal. Civ. Code § 1780(e) .................................................................................... 8

CLRA ..................................................................................................... 3, 15, 18

**Rules**

Federal Rule of Civil Procedure 12(b) ................................................................ 4

Federal Rule of Civil Procedure 23(d) ................................................................ 4

Federal Rule of Civil Procedure 23(h) ............................................................ 1, 8

## <u>NOTICE OF MOTION AND MOTION</u>

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 8, 2019 at 8:30 a.m., in the Courtroom of the Honorable George H. Wu, United States District Judge for the Central District of California, located at the First Street Courthouse, 350 West First Street, Courtroom 9D, Los Angeles, California 90012, Plaintiffs and Class Representatives Grant McKee, Eric Weber, Michael Rogawski, Seth Beals, Taylor Fisse, and Bryan Rees, on behalf of themselves and all others similarly situated, will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23(h), for an Order approving Class Counsel's request for a $1.5 million fee award, inclusive of costs, and approving payment of $5,000 in service awards to each of the six Class Representatives.

This Motion is based on the accompanying Memorandum of Points and Authorities and all exhibits thereto, any papers filed in reply, the argument of counsel, and all papers and records on file in this matter. Pursuant to the terms of the Settlement, Defendants do not oppose this motion or the Court's approval of the requested amounts.

Dated: April 27, 2019

Respectfully submitted,

SODERSTROM LAW PC

By: */s/ Jamin S. Soderstrom*
*Counsel for Plaintiffs*

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND SERVICE AWARDS**

**INTRODUCTION**

Plaintiffs Grant McKee, Eric Weber, Michael Rogawski, Seth Beals, Taylor Fisse, and Bryan Rees ("Plaintiffs" or "Class Representatives") and Soderstrom Law PC ("Class Counsel") respectfully seek an order awarding $1.5 million in attorneys' fees (inclusive of costs[1]) and $5,000 to each Class Representative. These amounts are authorized by the terms of the Settlement and by multiple laws,[2] are reasonable under the circumstances, and should be awarded in connection with the final approval order.

Plaintiffs and Class Counsel have vigorously pursued claims against Defendants Audible, Inc., Amazon.com, Inc., and Amazon Services LLC ("Defendants") for over two years in four actions pending in three forums and have overcome high procedural and substantive hurdles to reach a Settlement that benefits over 8.4 million Class Members. Class Counsel has invested 1,445.8 hours of work to date, all on pure contingency, with more work needed to secure final approval.

Each of the three forms of relief secured by the Settlement—injunctive relief, reimbursement relief, and in-kind relief—would be sufficient on its own to justify the full fee request. Together they would support a fee award far higher than the maximum amount Class Counsel agreed to request. The Class Representatives' work on and support of the Lawsuits also justify the full requested service awards. The Court should grant this motion and award each of the requested amounts.

**BACKGROUND**

**I.    Litigation Efforts by Class Counsel and the Class Representatives.**

Class Counsel has invested significant time, money, and resources for more than two years pursuing claims against Defendants on a nationwide class basis. Soderstrom Decl. ¶ 4. Plaintiffs faced steep odds and intense opposition from large and well-funded

---

[1] Class Counsel has incurred $18,139.48 in costs to date. Soderstrom Decl. ¶¶ 26 Ex. 2.

[2] All capitalized terms in this motion have the same definitions as used in the Settlement. Soderstrom Decl. ¶ 2, Ex. 1 ("Settlement" or "Stipulation").

opponents and experienced defense counsel. *Id.* After 17 months of intense litigation in spread across three forums (and many more months of pre-litigation investigation and post-mediation negotiations), Plaintiffs and Class Counsel secured a favorable Settlement on behalf of over 8.4 million Class Members nationwide. *Id.*

### A.   Prelitigation investigation of claims in 2016 and 2017.

Class Counsel started investigating Defendants' business practices in late 2016. Soderstrom Decl. ¶ 5. This prelitigation investigation lasted several months and involved substantial factual and legal research into potential claims and issues concerning Defendants' business practices and into Defendants' likely procedural and substantive defenses. *Id.* Because Defendants had successfully compelled arbitration in other cases based on the same or substantially similar online terms, *see, e.g.*, *Nicosia v. Amazon.com, Inc.*, 2017 WL 10111078 (E.D.N.Y. Aug. 18, 2017); *Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051 (2015), aff'd sub nom, *Wiseley v. Amazon.com., Inc.*, 709 F. App'x 862 (9th Cir. 2017); *Ekin v. Amazon Services, LLC*, 84 F. Supp. 3d 1172 (2014), Class Counsel researched every factual and legal argument that could be raised in opposition to Defendants' anticipated motions to compel arbitration before agreeing to assert formal allegations against Defendants in court. Soderstrom Decl. ¶ 5.

On January 26, 2017, Class Counsel sent a letter pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), setting forth many of the allegations and claims challenging Defendants' business practices and asking Defendants to change their advertising, notice, and credit expiration practices. *McKee* Dkt. 1-1 (CLRA Letter). Defendants declined to make any changes to their business practices in response to the letter, prompting a formal lawsuit. Soderstrom Decl. ¶ 6.

### B.   The original *McKee* action filed in March 2017.

The original *McKee* action was filed on March 10, 2017. *McKee* Dkt. 1. It raised a host of allegations and claims under state and federal laws against Defendants which focused on four general categories of claims: unlawful expiration of audiobook "credits" included as part of Audible's membership offerings based on federal and California gift

3

card laws; false advertising based on the sufficiency of disclosures on the fact that these audiobooks are capable of expiring; inadequate disclosures related to auto-pay policies; and inadequate disclosures and unlawful policies related to charging cards on file with Amazon that were not initially designated for making payments to Audible. *Id.*; Soderstrom Decl. ¶ 7. These allegations and claims were revised and honed over time in three iterations of pleadings. *See McKee* Dkt. 40, Dkt. 65, and Dkt. 115.

Defendants mounted an intense defense, raising every available procedural and substantive challenge to Plaintiffs' claims. Soderstrom Decl. ¶ 8. Plaintiffs—all of whom were named in the original *McKee* action at one point in time—also raised every available procedural and substantive argument as a means of protecting and pursuing their own rights and the rights of millions of absent Class Members across the country. *Id.* Between April 2017 and August 2018, a period of only 17 months, the Parties filed and aggressively litigated the following motions in the *McKee* action alone:

> (i)     first motion to compel arbitration and dismiss claims, *McKee* Dkt. 18;
>
> (ii)    second motion to compel arbitration and dismiss claims, *McKee* Dkt. 41;
>
> (iii)   first motion to dismiss under Rule 12(b), *McKee* Dkt. 42,
>
> (iv)    motion to transfer venue, *McKee* Dkt. 55;
>
> (v)     first motion to dismiss based on personal jurisdiction, *McKee* Dkt. 70;
>
> (vi)    second motion to dismiss under Rule 12(b), *McKee* Dkt. 71;
>
> (vii)   first motion for corrective action under Rule 23(d), *McKee* Dkt. 72;
>
> (viii)  third motion to compel arbitration and dismiss claims, *McKee* Dkt. 73;
>
> (ix)    second motion for corrective action under Rule 23(d), *McKee* Dkt. 116; and
>
> (x)     motion to stay case pending appeal, *McKee* Dkt. 118.

Each motion required substantial factual and legal research and extensive briefing on a compressed timeframe. Soderstrom Decl. ¶ 9. The Parties filed over 35 briefs in support of their motions—not counting related declarations, objections and responses to objections, notices of supplemental authority, updates and reports, and stipulations—and participated in numerous in-person hearings. *Id.* Class Counsel's briefing efforts alone

4

exceeded 250 pages before the Settlement was reached. *Id.* The Court issued at least ten substantive tentative and final orders in connection with the Parties' extensive motions practice. *Id.*; *see McKee* Dkt. 25, Dkt. 37, Dkt. 50, Dkt. 53, Dkt. 60, Dkt. 87, Dkt. 94, Dkt. 97, Dkt. 114, and Dkt. 155. Defendants also filed two appeals related to rulings that went in Plaintiffs' favor. *Id.*; *McKee* Dkt. 107 and Dkt. 120.

Despite the fact that many of Plaintiffs' arguments were novel, or at least were not supported by substantial authority and were contested on multiple bases, Class Counsel successfully opposed several motions to compel arbitration and motions to dismiss and also secured corrective action that preserved millions of Class Members' rights to participate in a classwide judgment or settlement. Soderstrom Decl. ¶ 10. Many of the factual and legal issues and arguments on both sides were very close calls and class certification and proof of liability was far from certain. *Id.*

Class Counsel also engaged in extensive informal and formal discovery and collected and reviewed thousands of pages of Defendants' current and historical records and webpages. Soderstrom Decl. ¶ 11. Much of the discovery that helped Plaintiffs successfully oppose several of Defendants' motions involved independent investigation into Defendants' current and historic online terms, disclosures, and policies without the aid of formal discovery methods. *Id.* Without this legwork and without careful examination of all potential arguments and defenses before motions were filed, there was a good probability that more or all of Plaintiffs' claims would have been compelled to arbitration or dismissed long before classwide settlement negotiations occurred. *Id.*

**C.    The related *Weber* action, *Beals* action, and *Fisse* action.**

Each of the six Class Representatives was at one time a named plaintiff and proposed class representative in the original *McKee* action. *See McKee* Dkt. 1 (original complaint naming McKee), Dkt. 40 (FAC also naming Beals); *McKee* Dkt. 65 (SAC also naming Weber, Rogawski, Fisse, and Rees); *McKee* Dkt. 115 (TAC, the operative complaint). By May 2018, however, there were three other lawsuits related to the original *McKee* action pending in three district courts. Soderstrom Decl. ¶ 12. Class Counsel was

5

required to appear pro hac vice in two of the actions and was required to engage, at Class Counsel's own expense, local counsel in one of the actions. *Id.* Having to litigate related cases in three forums increased the risk and expense of the litigation overall. *Id.*

*Weber* **action.** In addition to participating in the *McKee* action, Weber and Rees also brought claims against Amazon.com, Inc. and Amazon Services, LLC ("Amazon") based on those companies' roles in letting their affiliate Audible charge back-up cards stored with Amazon. Soderstrom Decl. ¶ 13. The *Weber* action, *Weber v. Amazon.com, Inc.*, Case No. 2:17-cv-08868-GW-E (C.D. Cal. Judge Wu), was related to the *McKee* action and was transferred to the Court. *See Weber* Dkt. 15. In the *Weber* action, the Parties filed two more motions and more than 15 briefs, stipulations, and objections and responses and they Parties participated in several lengthy hearings concerning arbitration obligations and online disclosures and terms. Soderstrom Decl. ¶ 13. The Court issued, but did not adopt, a tentative order shortly before mediation in August 2017. *Id.*

*Beals* **and** *Fisse* **actions.** Beals' "regular" membership claims were compelled to arbitration and his "gift" membership claims were transferred to the Southern District of New York. *See McKee* Dkt. 61 and Dkt. 64. Fisse's and Rees's claims were transferred to the Eastern District of North Carolina on personal jurisdiction grounds. *See McKee* Dkt. 111. In the *Beals* action, *Beals v. Audible, Inc.*, Case No. 1:17-cv-09838-AJN (S.D.N.Y. Judge Nathan), the Parties filed two more motions, and in the *Fisse* action, *Fisse v. Audible, Inc.*, Case No. 5:18-CV-00211-D (E.D.N.C. Judge Dever), the Parties filed another motion. Soderstrom Decl. ¶ 14. Each motion involved multiple additional briefs, but none of the motions was decided before the Settlement was reached. *Id.*

Each of the Class Representatives supported the Lawsuits and performed all of the work needed and asked of them and eschewed the chance for individual settlements. *Id.*

### D.    A successful mediation in August 2018 led to the Settlement.

Class Counsel reviewed thousands of pages of records and fought off a barrage of procedural and substantive motions prior to engaging in class settlement talks. *Id.* ¶ 15. It was more than 17 months into formal, adversarial litigation before the Parties agreed

6

to engage in a full-day mediation in San Francisco. *Id.* The mediation itself required substantial preparation and briefing. *Id.* The Parties eventually mediated Plaintiffs' claims on a nationwide class basis on August 17, 2018 with the assistance of experienced mediator Robert Meyer of JAMS. *Id.* The version of the agreement submitted to the Court in late November 2018 was revised in February 2019 and became the Settlement. *Id.*

The Settlement provides three forms of relief:

(i)    broad injunctive relief that requires Audible to revise its advertisements, disclosures, and terms to ensure that millions of current and future Audible members make informed decisions related to credit expiration, auto-pay, and back-up card charging policies;

(ii)    full reimbursement of any overdraft or similar fees incurred by any of the 3.2 million Payment Card Class Members who submit documentation showing such fees, with no caps on what Audible will pay; and

(iii)    in-kind relief that offers a minimum of one and up to four free audiobooks to over 7.2 million Regular Class Members and Gift Class Members, totaling nearly 12 million free audiobook selections.

Stipulation §§ 20-21; Soderstrom Decl. ¶ 16.

There are 8,421,237 Class Members who will benefit from the terms of the Settlement, including 7,171,139 Regular Class Members, 30,367 Gift Class Members, and 3,211,477 Payment Card Class Members. Soderstrom Decl. ¶ 17. Some Class Members overlap among the specific classes. *Id.*

**E.      The Court granted preliminary approval of the Settlement.**

The Court preliminarily approved the Settlement on March 19, 2019 following a March 14, 2019 hearing. *See McKee* Dkt. 191 and Dkt. 196. The Court appointed each of the six Plaintiffs as Class Representatives, appointed Soderstrom Law PC as Class Counsel, and approved the form of Class Notice. *McKee* Dkt. 191. Defendants sent the Class Notice to over 8.4 million Class Members on April 5, 2019, established the Settlement Website, and posted relevant documents and information on the website for

7

1  Class Members to review. Soderstrom Decl. ¶ 18. Class Counsel has responded to over
2  1,300 emails and 350 calls from Class Members as of the date of this motion and
3  continues to respond to Class Members in connection with the Settlement. *Id.*

<u>**ARGUMENT**</u>

4

5  **I.     The Court Should Grant the Full Fee Award Request.**

6        The Settlement represents an excellent result for over 8.4 million Class Members
7  as well as all current and future Audible customers who are not Class Members. *Id.* ¶ 19.
8  Class Counsel's work on behalf of the Class and the results obtained in the Settlement
9  merit the Court's approval of the full fee request of $1.5 million. *Id.*

10       **A.     <u>Class Counsel is entitled to an award of attorneys' fees and costs.</u>**

11       The Settlement authorizes Class Counsel to seek up to $1.5 million in attorneys'
12  fees (inclusive of costs), subject to Court approval. Stipulation § 25; Fed. R. Civ. P. 23(h)
13  (authorizing an award of "reasonable attorney's fees and nontaxable costs that are
14  authorized by law or by the parties' agreement"). The Settlement is a contract "governed
15  by the laws of the State of California." Stipulation § 52; Soderstrom Decl. ¶ 20.

16       The fee-shifting statutes underlying several of Plaintiffs' claims also provide a
17  basis for a fee award. *See* Electronic Funds Transfer Act, 15 U.S.C. § 1693m(a)(3);
18  California's Consumers Legal Remedies Act, Cal. Civ. Code § 1780(e);[3] *Parkinson v.*
19  *Hyundai Motor America*, 796 F. Supp. 2d 1160, 1169 (C.D. Cal. 2010) (fee award where
20  party obtains a "net monetary recovery" or "realized its litigation objectives". Attorneys'
21  fees are also recoverable because the litigation has conferred a significant benefit on the
22  Class and the public at large. *See* Cal. Code Civ. Proc. § 1021.5; *Gottlieb v. Conseco Sr.*
23  *Health Ins. Co.*, 612 F. App'x 468 (9th Cir. 2015) (attorneys' fees are recoverable where
24  a lawsuit is a catalyst that motivates defendants to voluntarily change their conduct in
25  ways that benefit class members and/or the public); *Parkinson*, 796 F. Supp. 2d at 1170

26  --------------------------------

27  [3] One-way fee shifting statutes encourage parties to seek equitable relief or modest
   amounts of money and incentivize counsel to take cases for parties who otherwise could
28  not afford the litigation. *Parkinson*, 796 F. Supp. 2d at 1171.

8

1   (noting a Section 1021.5 award is appropriate "where the burden of pursuing litigation is

2   out of proportion to the individual plaintiff's stake in the matter").

3        As shown, there are several independent bases for the Court to award attorneys'

4   fees here. Soderstrom Decl. ¶ 20. Courts commonly use several methods to determine the

5   proper amount of attorneys' fees in class actions. *Hanlon v. Chrysler Corp.*, 150 F.3d

6   1011, 1029 (9th Cir. 1998). The benchmark percentage is 25% of the total value of a

7   common fund, and, for injunctive and equitable relief, courts use a lodestar and

8   multiplier. *Id.* Both methods are commonly used as "cross-checks" to ensure a fee award

9   is reasonable. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002); *Laffitte*

10  *v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 504 (2016) ("The choice of a fee calculation

11  method is generally one within the discretion of the trial court"); *see also Roberts v.*

12  *Electrolux Home Prods., Inc.*, 2014 WL 4568632, at *8 (C.D. Cal. Sept. 11, 2014)

13  (observing both federal and state statutes provided a basis for an attorneys' fees award).

14        **B.   <u>CAFA's attorneys' fee provision does not govern the Settlement.</u>**

15        The Class Action Fairness Act ("CAFA") has an attorneys' fees provision that

16  sometimes applies to class action settlements. 28 U.S.C. § 1712. If a class action

17  settlement (1) is governed by CAFA and (2) includes "coupon" relief, attorneys' fees

18  "attributable to" the coupons must be based on the redemption value of the coupons while

19  attorneys' fees not "attributable to" the coupons must be based on the lodestar and

20  multiplier method or on another statutory, equitable, or contractual basis for awarding

21  attorneys' fees. *See* 28 U.S.C. § 1712(a)-(c); *In re Easysaver Rewards Litig.*, 906 F.3d

22  747, 755 (9th Cir. 2018). That provision does not apply here. Soderstrom Decl. ¶ 21.

23        Simply because a court's jurisdiction could arguably be based on CAFA, and

24  simply because a class settlement could arguably provide "coupon" relief, does not mean

25  Section 1712 governs a class action settlement and preempts other state or federal laws

26  that authorize an award of attorneys' fees. *See Chambers v. Whirlpool Corp.*, 214 F.

27  Supp. 3d 877, 894-95 (C.D. Cal. 2016) (CAFA may not govern a class settlement and

28  did not preempt the parties' agreement); *Seebrook v. Children's Place Retail Stores, Inc.*,

1  2013 WL 6326487, at *1-2 (N.D. Cal. Dec. 4, 2013) (observing an independent basis to

2  award attorneys' fees even if CAFA arguably applied); *Roberts*, 2014 WL 4568632, at

3  *8 (not mentioning CAFA in nationwide settlement); *Elhilu v. Quizno's Franchising*

4  *Company, LLC*, 2009 WL 10671939, at *2-6 (C.D. Cal. Dec. 8, 2009) (applying

5  California law and lodestar approach and finding CAFA did not preempt state law).

6  The Court has federal question jurisdiction under 28 U.S.C. § 1331, diversity

7  jurisdiction under 28 U.S.C. § 1332, and supplemental jurisdiction under 28 U.S.C. §

8  1367. *McKee* Dkt. 1, Dkt. 40, Dkt. 65, and Dkt. 115; *Weber* Dkt. 1 and Dkt. 25. Plaintiffs

9  alleged possible CAFA jurisdiction under 28 U.S.C. § 1332(d), but the Parties never

10 argued and the Court never analyzed the possibility of CAFA jurisdiction because other

11 bases for jurisdiction always existed. Soderstrom Decl. ¶ 21. The Parties adhered to

12 CAFA's notice requirements out of an abundance of caution, but they have never argued

13 or conceded, and the Court has never decided, that CAFA governs this case generally or

14 the question of attorneys' fees specifically. *Id.*

15 This action is very different than class actions that are removed from state court or

16 filed directly in federal court based solely on CAFA jurisdiction. *Id.*; *see In re Southwest*

17 *Airlines Voucher Litig.*, Case No. 1:11-cv-08176 (Dkt. 1 showing CAFA jurisdiction

18 only); *In re Easysaver Rewards Litig.*, Case No. 3:09-cv-02094-BAS-WVG (Dkt. 1

19 showing CAFA jurisdiction only); *In re HP Inkjet Printer Litig.*, Case No. 5:05-cv-

20 03580-JF (Dkt. 1 showing CAFA jurisdiction only); *but see Elhilu*, 2009 WL 10671939,

21 at *2-6 (case removed under CAFA but attorneys' fees awarded based on state law).

22 The Court does not need to engage in a CAFA analysis here because the injunctive

23 and equitable relief secured by the Settlement and Class Counsel's lodestar and an

24 appropriate multiplier support the full attorneys' fee request without relying on the face

25 and/or redemption value of the in-kind relief. Soderstrom Decl. ¶ 22. The only reason the

26 Court would need to engage in a CAFA analysis is if it decides (1) there is *no basis* to

27 award fees independent of CAFA, (2) Class Counsel *must rely* on the value of the in-kind

28 relief to support the full award, and (3) the in-kind relief constitutes a *coupon* settlement

1  and is governed by the CAFA statute. If the Court decides to apply a CAFA analysis,

2  Plaintiffs and Class Counsel address the proper approach near the end of this brief. *Id.*

3      **C.**     <u>**Class Counsel's current lodestar and a modest multiplier support**</u>

4          <u>**approval of the full fee award request.**</u>

5      The Court should grant the full $1.5 million fee award request (inclusive of a

6  $18,139.48 in costs) using the lodestar and multiplier approach based on the valuable

7  injunctive and reimbursement relief secured by the Settlement and based on the quality

8  of work performed by Class Counsel, the complexity of the issues involved, the high risk

9  of non-payment, and the future work still needed. This approach is appropriate and is

10  what Class Counsel looked to as a basis for negotiating a reasonable maximum fee award

11  request. Soderstrom Decl. ¶ 23; *see Hanlon*, 150 F.3d at 1129 (approving fee award that

12  used lodestar method when the total value of equitable relief was difficult to pinpoint).

13      **1.**     **Class Counsel's lodestar is reasonable and appropriate.**

14      "The lodestar figure is calculated by multiplying the number of hours the

15  prevailing party reasonably expended on the litigation (as supported by adequate

16  documentation) by a reasonable hourly rate for the region and for the experience of the

17  lawyer." *In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935, 941 (9th Cir.

18  2011). "The determination of a reasonable hourly rate is not made by reference to the

19  rates actually charged the prevailing party" but rather "by reference to the fees that private

20  attorneys of an ability and reputation comparable to that of prevailing counsel charge

21  their paying clients for legal work of similar complexity." *Welch v. Metro. Life Ins. Co.*,

22  480 F.3d 942, 946 (9th Cir. 2007) (internal quotation marks omitted). A reasonable

23  hourly rate is viewed in the context of rates charged in "the relevant community" which

24  is typically "the forum where the district court sits." *Camacho v. Bridgeport Fin., Inc.*,

25  523 F.3d 973, 979 (9th Cir. 2008).

26      Class Counsel's current lodestar is $940,000 based on 1,333.2 attorney hours

27  worked by Mr. Soderstrom at his 2019 regular hourly rate of $700, and 112.5 hours

28  worked by Mr. Soderstrom's experienced paralegal at her 2019 regular hourly rate of

$250. Soderstrom Decl. ¶¶ 24-27 & Ex. 2; *see Missouri v. Jenkins*, 491 U.S. 274, 283-284 (1989) (approving the use of current billing rates to determine attorneys' fees due to the delay in payment). Class Counsel has voluntarily applied a 2.2% "haircut" to account for any inadvertent administrative or duplicative tasks included in the supporting time records to reach the $940,000 lodestar amount. Soderstrom Decl. ¶¶ 24-27 & Ex. 2.

Since its formation in 2016, Class Counsel has litigated complex civil cases and class actions on the plaintiff side against many of the premier law firms in the country. Soderstrom Decl. ¶ 25. Prior to founding Soderstrom Law PC, Mr. Soderstrom clerked two years in the United States Court of Appeals for the Fifth Circuit and practiced primarily on the defense side of complex civil cases and class actions at three prominent firms in California and Texas. *Id.* In the two-and-a-half years since its founding, Soderstrom Law PC has already achieved successes on the plaintiff side. *Id.* In 2018 and 2019, Soderstrom Law PC secured or helped to secure several class action settlements ranging from $950,000 to $1.78 million and those courts have approved attorneys' fee awards where Mr. Soderstrom's lodestar was based on a 2017 hourly rate of $650 or a 2018 hourly rate of $675. *Id.* He has other large pending class actions where the defendants' counsel are among the nation's preeminent law firms. *Id.* The following chart provides a breakdown of the work Class Counsel has performed to date:

| Description of Task (*McKee* and *Weber* actions) | Hours Worked |
|---|---|
| Investigation and drafting pleadings | 176.8 *McKee*; 17.3 *Weber* |
| Drafting motions and briefs | 517.9 *McKee*; 134.7 *Weber* |
| Informal and formal discovery | 81.0 *McKee*; 4.9 *Weber* |
| Participation in hearings | 101.9 *McKee*; 8.9 *Weber* |
| Preparation for and participation at mediation | 61.5 (combined) |
| Post-mediation work in furtherance of Settlement | 216.2 (combined) |
| Total hours worked in *Beals* action | 53.7 hours |
| Total hours worked in *Fisse* action | 70.9 hours |
| **Total hours worked** | **1,445.7 hours** |

Soderstrom Decl. ¶ 26 & Ex. 2.

The best way to judge the reasonableness of Class Counsel's rates is to look to Defendants' counsel's rates that have been approved in the Central District because such rates show what "legal work of similar complexity tends" to cost. In litigation that lasted from 2011 to 2014, the Central District approved Defendants' counsel's rates ranging from $825 to $930 for senior partners, $610 to $750 for junior partners, $350 to $690 for associates, and $240 to $345 for paralegals. *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484, at *15-21 (C.D. Cal. Mar. 24, 2015). At least three of the attorneys whose rates were approved in *Perfect 10* were also involved in these Lawsuits. 2015 WL 1746484 (noting Ms. Purcell, Mr. Nercessian, and Mr. Gregorian were involved in that case[4]); *see also Netbula, LLC v. Chordiant Software, Inc.*, 2010 WL 11575580, at *5 (N.D. Cal. Dec. 17, 2010) (Mr. Wakefield attesting that partner rates ranged up to $690 in 2010); *Yue v. Storage Technology Corp.*, 2008 WL 4185835, at *5 (N.D. Cal. Sept. 5, 2008) (same in 2008). Even accounting for any premium that could arguably be charged in an intellectual property case (but without accounting for the fact that Defendants' counsel's approved rates in this district are now five years old), Class Counsel's current rate is reasonable considering the complexity of the Lawsuits and the experience and skill required to succeed against such formidable opponents. Soderstrom Decl. ¶ 26.

Class Counsel's rates are in line with and, in some cases, lower than the rates of his colleagues who have similar experience and qualifications and who also practice complex civil litigation and class actions. *Id.*; *see Chambers*, 214 F. Supp. 3d at 899 (observing that hourly rates between $485 and $750 are common in Los Angeles and that rates from $500 to $975 were approved in complex cases as far back as 2014) (citing *Counts v. Meriwether*, 2016 WL 1165888, at *3-4 (C.D. Cal. 2016) and *Rodriguez v. Cty. of L.A.*, 96 F. Supp. 3d 1012, 1023 (C.D. Cal. 2014)); *3M Company v. Phoenix Automotive Refinishing Co., Ltd.*, 2018 1989536, at *7 (C.D. Cal. Apr. 25, 2018)

---

[4] In 2017 and 2018, Soderstrom Law PC also was counsel in IP litigation in the Northern District of California where Fenwick & West and Mr. Bridges were opposing counsel.

(approving rates of $790 for partner, $580 for counsel, and $260 for paralegal in IP case and observing that reasonable hourly fees for similar complex cases ranged from $610 to $930 for partners, $360 to $690 associates, and $240 to $345 for paralegals in 2015); *Mergens v. Sloan Valve Co.*, 2017 WL 9486153, at *12 (C.D. Cal. Sept. 18, 2017) (approving rates up to $890 for partners in consumer class action settlement).

Class Counsel's current lodestar does not include an estimated 50 to 100 hours of work needed to continue responding to Class Member communications, to seek final approval of the Settlement, and to ensure Defendants' compliance with the Settlement's terms. Soderstrom Decl. ¶ 27; *Tierno v. Rite Aid Corp.*, 2009 WL 10699905, at *1 (N.D. Cal. Nov. 9, 2009) (noting expected future work related to the settlement should also be taken into account). Class Counsel's "adjusted lodestar" when the Settlement is completed will be around $1,000,000, thereby lowering the applicable multiplier. *Id.*

## 2. A modest multiplier is reasonable and appropriate.

After the unadjusted lodestar amount is determined, a court "may adjust the lodestar upward or downward using a 'multiplier' based on factors not subsumed in the initial calculation of the lodestar." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). Lodestar multipliers ranging from one to four are frequently awarded in complex class actions such as this one. *See Vizcaino*, 290 F.3d at 1051 n.6 (showing most multipliers are in the 1.5 to 3.0 range); *Mergens*, 2017 WL 9486153, at *12 (approving 1.71 multiplier in claims-made toilet repair reimbursement settlement); *Chambers*, 214 F. Supp. 3d at 901-02 (approving 1.68 multiplier in claims-made overheating dishwasher reimbursement settlement).

Here, Class Counsel's unadjusted lodestar requires only a modest 1.58 multiplier to equal the full award requested. The 12 factors in *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) each support application of a 1.58 multiplier and, had the Settlement not capped the maximum fee request at $1.5 million (inclusive of costs), would have supported a higher multiplier. Soderstrom Decl. ¶ 28; Stipulation § 25.

14

**Time and Labor Required.** The Lawsuits involved intense motions practice that resulted in over 50 briefs (an average of three briefs filed a month for 17 months of active litigation). The investigation, informal and formal discovery, hearings, negotiations, and multi-forum nature of the litigation required substantial focus and in-depth analysis that went far beyond a garden variety consumer case. Class Counsel performed the work necessary to protect the Plaintiffs' and Class Members' rights and interests and to match the quality of Defendants' counsel's work without duplicating work or performing unnecessary work. Soderstrom Decl. ¶ 29. This factor supports a multiplier.

**Novelty and Difficulty of Questions.** The Lawsuits involved novel and difficult questions at every step. The arbitration-related issues went beyond run-of-the-mill factual and legal arguments and required supplemental briefs, nuanced factual investigations, multiple hearings on the same motions, and resulted in wins and losses for both sides. There was also new and conflicting authority on personal jurisdiction issues and Plaintiffs had to secure corrective action to protect putative class members' rights based on the ever-changing nature of websites and online terms. There is also little on-point precedent concerning gift card laws, and the Electronic Funds Transfer Act and California Automatic Payment Renewal Law authorities are also complicated and are not robust. Whether and how state statutory and common laws applied to each Plaintiff was also complicated. Soderstrom Decl. ¶ 30. This factor supports a multiplier.

**Skill Required.** The Lawsuits required considerable skill by Class Counsel to match Defendants' aggressive and high-quality representation. The litigation involved more legal strategy and anticipation of potential procedural and substantive defenses than typical consumer and employment class actions and, without experienced and skilled counsel, Plaintiffs' claims easily could have ended up in arbitration or being dismissed on the merits. Soderstrom Decl. ¶ 31. This factor supports a multiplier.

**Preclusion of other Employment.** The Lawsuits precluded Class Counsel from other employment that may have been more profitable. Between January 2017 (the month the CLRA letter was sent) and August 2018 (the month the settlement was reached),

15

Class Counsel devoted around 35% of its total work hours to these Lawsuits. Soderstrom Decl. ¶ 32. This factor supports a multiplier.

**Customary Fee.** The goal in a class action fee award is to reflect the marketplace for services provided on a contingent basis. *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 65-66 (2008). The Ninth Circuit has a 25% benchmark for common fund settlements and courts in California and in this circuit have approved fees as high as 40% in class action settlements. *Singer v. Becton Dickinson & Co.*, 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010). Contingency fees of one-third are also common in in non-class action cases. *Setzer v. Robinson*, 57 Cal. 2d 213, 218 (1962). Regardless of the method used, the marketplace shows that favorable settlements customarily involve a multiplier between 1.5 to 3.0. *See Vizcaino*, 290 F.3d at 1050-51. This factor supports a multiplier.

**Type of Fee.** Class Counsel has worked on pure contingency and paid all costs and expenses. Soderstrom Decl. ¶ 33. "An enhancement of the lodestar amount to reflect the contingency risk is one of the most common fee enhancers." *Bernardi v. County of Monterey*, 167 Cal. App. 4th 1379, 1399 (2008) (internal marks and citation omitted); *Florin v. Nations Bank of Georgia*, 34 F.3d 560, 564 (9th Cir. 1994) (observing that a multiplier is particularly appropriate in class action lawsuits); *Stranger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016) (courts "must" apply a risk enhancement when the attorneys expect to receive a risk enhancement if they prevail, the rate does not reflect that risk, and the case was risky). This factor supports a multiplier.

**Time Limitations.** Over a dozen substantive motions packed into 17 months of active litigation in four related cases created a very compressed schedule with very little "inactive" time. Soderstrom Decl. ¶ 34. This factor supports a multiplier.

**Results Obtained.** The results obtained in the Settlement are exemplary, particularly considering the procedural and substantive risks faced at every stage of the proceedings and the very reasonable possibility that Plaintiffs may not have obtained class certification, may not have proven liability, or both. *Id.* ¶ 35. The value of the injunctive and reimbursement relief alone are sufficient to justify the full lodestar and a

1   1.58 multiplier. *Id.* If the value of the in-kind relief was also included, the Settlement

2   would justify a multiplier far higher than the one Class Counsel is requesting. *Id.*

3       <u>Injunctive Relief</u>. The injunctive relief is broad, meaningful, and resolves most of

4   the complaints Plaintiffs raised concerning Defendants' advertising and notice practices.

5   *Id.* ¶ 36; Stipulation § 20. The Lawsuits focused largely on the clarity, content, and timing

6   of Defendants' disclosures and statements concerning their membership terms, credit

7   expiration policies, advertisements that mentioned credits, and payment terms. *Id.* This

8   was true both for the procedural aspects of the case—including most prominently

9   whether Plaintiffs saw or should have seen Defendants' notices concerning arbitration

10   requirements and class action waivers—and for the substantive aspects of the case—

11   including whether Plaintiffs could seek relief even when they saw partial disclosures or

12   learned about Defendants' terms and policies after sign up. Soderstrom Decl. ¶ 36.

13       The formal injunctive relief ensures that every Audible member will receive, at the

14   time of sign-up, clear and conspicuous written notice of all of Audible's membership

15   terms, rollover and cancellation policies and credit expiration policies, and back-up

16   payment card charging policies (with a link to manage the available payment methods).

17   Soderstrom Decl. ¶ 37. It also makes sure that advertisements that mention credits also

18   mention rollover policies so customers do not sign-up for a membership based on a

19   mistaken understanding of their ability to accrue and use credits. *Id.*

20       Plaintiffs' and Class Counsel's claims and arguments also caused Defendants to

21   change their conduct in multiple ways that benefit all current and future Audible members

22   including millions of Class Members. *Id.* ¶ 38. Since the Lawsuits were filed:

23        •   Defendants started using revised customer communications and notices that

24           "effectively fixed the issues that plagued" the sign-up and credit redemption

25           flows on Audible's and Amazon's websites, McKee Dkt. 97 at 4; *see also*

26           Soderstrom Decl. ¶ 38; *McKee* Dkt. 72.

27

28

- Audible started posting "reminders" on members' accounts and sending "urgent" reminder emails when a member neared the applicable rollover limit to help avoid letting credits expire. Soderstrom Decl. ¶ 38, Ex. 3.

- Audible recently extended the rollover period to one-year (the same selection period negotiated for the in-kind relief), and its new policies were sent to all current members (including millions of Class Members) and included links and explanations on how to manage back-up payment options and better understand Audible's policies and terms. *Id.* ¶ 38, Exs. 4 & 5.

The January 26, 2017 CLRA letter tried to prompt Defendants to change their notices, terms, and policies, but it ended up taking aggressive and successful prosecution of Plaintiffs' claims for nearly two years to get Defendants to improve their notices, disclosures, and terms.[5] *Id.* ¶ 39. The injunctive relief is not token relief; it constitutes important changes that improve every customer's understanding of Defendants' business practices and allow fully informed purchasing decisions. *Id.*

Equitable Reimbursement. The reimbursement relief requires Audible to reimburse every Payment Card Class Member any overdraft or similar fees incurred as a result of Audible charging a card other than the card that was originally designated. *Id.* ¶ 40; Stipulation §§ 2.hh, 21. There is no cap on the amount of cash reimbursement an individual Payment Card Class Member can receive and there is no cap on the total cash reimbursements Audible could pay. Soderstrom Decl. ¶ 40; Stipulation § 21.

The reimbursement Class Period is 65 months (March 10, 2013 to August 17, 2018) and there are 3,211,477 Payment Card Class Members. Soderstrom Decl. ¶ 40;

---

[5] These changes also made sure that any class or non-class members who truly did not know they had signed up for a paid membership or incorrectly believed they had cancelled a paid membership received at least one monthly "urgent reminder" email telling them they were purchasing credits and that the credits would expire if not used soon. These emails would have prompted customers who truly did not know they were paying for a monthly Audible membership to inquire with Audible about their membership status. Soderstrom Decl. ¶ 38.

Stipulation § 21. All a Payment Card Class Member needs to do to receive full reimbursement is submit documentation showing that an Audible charge to a back-up card caused him or her to incur one or more overdraft or similar fees during the Class Period. Soderstrom Decl. ¶ 40; Stipulation §§ 21-22. Based on the number of Payment Card Class Members, the length of the applicable Class Period, and the amounts institutions commonly charge as overdraft fees, the total reimbursement Audible will pay is substantial even if only a small percentage of Payment Card Class Members seek reimbursement. Soderstrom Decl. ¶ 41; *see Mergens*, 2017 WL 9486153, at *12 (approving multiplier approach for a claims-made settlement where individual class member reimbursements were capped but total reimbursements were uncapped); *Grays Harbor Adventist Christian School v. Carrier Corp.*, 2008 WL 1901988, at *1 (W.D. Wash. Apr. 24, 2008) ("Where, as here, Settlement relief will be paid on a claims made basis with no cap to the relief available, consideration of attorneys' fees lends itself more readily to the lodestar method.").

Cash reimbursement over overdraft and similar fees is an equitable remedy, like restitution, that restores Payment Card Class Members to the same position they would have been in had they not incurred overdraft or similar fees. Soderstrom Decl. ¶ 41.

In-Kind Relief. The in-kind relief is equitable restitution that restores to Regular Class Members and Gift Class Members what they lost: the right to select an audiobook regardless of its list price. Soderstrom Decl. ¶ 42. They purchased a credit that gave them a right to select an audiobook regardless of its list price; they are getting back that right. *Id.* They are not receiving a coupon in exchange for an expired coupon they received from a separate purchase, *In re Southwest Airlines*, 799 F.3d 701, 703 (7th Cir. 2015); they are not receiving a coupon in exchange for a coupon they signed up to receive but never got, *In re Easysaver Rewards*, 906 F.3d at 752-53; they did not buy a deficient product and are receiving a coupon that can go toward purchasing the same or another product, *In re HP Inkjet Printer*, 716 F.3d 1173, 1186 (9th Cir. 2013); *see also Cody v. SoulCycle Inc.*, 2017 WL 6550682, at *2 (C.D. Cal. Oct. 3, 2017) (settlement involving

reinstated spin classes).[6] If the Court decides it needs to consider the in-kind relief to justify the full fee request, it should find that Audible's agreement to restore Regular Class Members' and Gift Class Members' audiobook selection rights (11,984,814 free selections in total) regardless of list price is equitable restitution and not a "coupon settlement." Soderstrom Decl. ¶ 42.

There are 7,171,139 Regular Class Members and 30,367 Gift Class members, and each will have at least one year to make free audiobook selections from a Settlement Catalog of over 200,000 titles. Soderstrom Decl. ¶ 43; Stipulation § 21.d-e. Audible was promoting in 2017 that it had over 180,000 audiobook titles, meaning the Settlement Catalog is guaranteed to have more audiobook titles than Audible had in its entire library for most of the applicable Class Period. Soderstrom Decl. ¶ 43. The Settlement Catalog is guaranteed to include audiobook titles that have the same general listing price as Audible's overall library (ranging from around $5.00 to over $25.00), celebrity narrations, exclusive content, award winners, and best sellers, meaning it is not limited to bargain-basement choices with little value. Soderstrom Decl. ¶ 43; Stipulation § 21.e.

Class Members do not need to spend any money with Defendants, open a new account, make new commitments or purchases, or start a new membership in order to make their free audiobook selections. The online selection process will be simple, easy, and free and the audiobooks that are downloaded will be theirs to keep. To maximize the overall redemption rate, Audible will also send a reminder email 15-30 days before the end of the selection period to all qualifying Class Members who have not made all of their selections. *Id.* § 21.d; Soderstrom Decl. ¶ 44.

---

[6] Equitable restitution was the natural remedy for Plaintiffs to seek in the Lawsuits and in the Settlement. It restores Class Members to the place they should have been in, maximizes the value of their recovery, and avoids the difficulty of proving a specific cash value for each expired credit. The fact that some qualifying Class Members may not exercise all of their free audiobook selection rights does not turn equitable restitution into coupon relief. Soderstrom Decl. ¶ 42.

Even a very conservative valuation of each free audiobook selection right (e.g., $5.00) and even a very low redemption rate (e.g., 8%) would place the total fee request below the 25% benchmark without attributing <u>any value</u> to the injunctive and reimbursement relief. Soderstrom Decl. ¶ 45. The in-kind relief is substantial and, if considered, would support a higher fee award and multiplier than is being requested. *Id.*

**Experience, Reputation, and Ability.** Class Counsel's experience is discussed above. *Id.* ¶ 46. Had Mr. Soderstrom decided to remain on the defense side, the reputations of his prior firms likely would have placed his regular rate higher than his current rate. *See, e.g., Xu v. Yamanaka*, 2014 WL 3840105, at *4 (N.D. Cal. Aug. 1, 2014) (observing prominent national firms had average partner rates over $900 and average associate rates over $550 in 2014); *Perfect 10*, 2015 WL 1746484, at *15-21. This data shows that this factor is not subsumed within Class Counsel's current hourly rate and that a multiplier would account for the fact that Mr. Soderstrom's current rate is lower than the rates charged by his colleagues with similar experience, reputation, and ability for similar work. Soderstrom Decl. ¶ 46. This factor supports a multiplier.

**Undesirability of the Case.** Multiple aspects of the Lawsuits made them "undesirable:" the potential individual recoveries are small; the existence of arbitration clauses and class action waivers; the unsettled nature of several areas of law; the statutory caps on damages; the difficulty of pinpointing the cash value of a lost credit; the fact that Defendants are large companies with well-funded and highly experienced outside and house counsel; the fact that Defendants have successfully compelled individual arbitration in other cases; the ever-changing nature of websites and online terms and disclosures; and personal jurisdiction laws and forum selection clauses that required litigation in multiple forums. Soderstrom Decl. ¶ 47. This factor supports a multiplier.

**Nature of Professional Relationship with Client.** Class Counsel has no separate professional relationship with any of the Plaintiffs. Soderstrom Decl. ¶ 48. This factor supports a multiplier.

**Awards in Similar Cases.** Courts commonly approve a multiplier between 1.5 and 3.0. *Vizcaino*, 290 F.3d at 1051 n.6. Several recent consumer class action settlements have resulted in comparable multipliers. *See Mergens*, 2017 WL 9486153, at *12 (1.71 multiplier); *Chambers*, 214 F. Supp. 3d at 901-02 (1.68 multiplier). A 1.58 multiplier is on the low end of similar awards. Soderstrom Decl. ¶ 49. This factor supports a multiplier.

In sum, each of the *Kerr* factors supports application of a 1.58 multiplier and, collectively, they support a far higher multiplier than the one being requested. *Id.*; *see Cody*, 2017 WL 6550682, at *6 (approving $1.79 million in attorneys' fees, inclusive of costs, based on in-kind relief and "in light of the substantial additional value of the injunctive relief" provided and "especially considering that it is inclusive of costs").

### D.   What to do if CAFA Applies and the In-Kind Relief is Coupons.

Plaintiffs and Class Counsel do not believe that CAFA governs the Settlement or that the in-kind relief is a coupon settlement. Moreover, there are independent contractual and statutory bases for awarding attorneys' fees even if the in-kind relief (12 million free audiobook selections) is arguably a coupon settlement that is governed by CAFA.

If the Court decides (1) it must look to the in-kind relief to justify the full award, (2) the in-kind relief is not equitable restitution but is instead a "coupon settlement," and (3) CAFA governs the Settlement and preempts both the Settlement's choice of law and each of the other applicable fee-shifting statutes, then the Court must (4) award the amount of attorneys' fees warranted based on the injunctive and reimbursement relief, Class Counsel's lodestar, and an appropriate multiplier, and (5) wait until the Settlement Catalog is closed over a year from now to determine the actual redemption value of each free audiobook selection ranging in list price from around $5.00 to over $25.00. 28 U.S.C. § 1712(c); *In re Easysaver*, 906 F.3d at 755.

When the Settlement Catalog is closed and Audible has compiled all of the relevant data and is prepared to report the results of the free audiobook selections data (probably in late 2020 or early 2021), the Court should request additional briefing and then award an appropriate amount of additional attorneys' fees based on the actual redemption value

of the free audiobook selections, up to the balance of the maximum award of $1.5 million. Soderstrom Decl. ¶ 50. The Court should not delay the entire award until after Audible reports all of the redemption data well over a year from now.

## II. The Court Should Grant $5,000 Service Awards to the Class Representatives.

Prior to and during the Lawsuits, Class Counsel was aided at every step by the Class Representatives who reviewed records, helped prepare and submit declarations, and discussed Defendants' relevant business practices. *Id.* ¶¶ 51-54; McKee Decl. ¶¶ 2-7; Weber Decl. ¶¶ 2-7; Rogawski Decl. ¶¶ 2-7; Beals Decl. ¶¶ 2-7; Fisse Decl. ¶¶ 2-7; Rees Decl. ¶¶ 2-7. Each Class Representative was determined to pursue relief on behalf of all similarly situated consumers and eschewed seeking individual settlements that would not have required Defendants to make meaningful changes to their disclosures and policies and that would not have resulted in the meaningful relief that was secured by the Settlement. Soderstrom Decl. ¶¶ 51-54; McKee Decl. ¶¶ 2-7; Weber Decl. ¶¶ 2-7; Rogawski Decl. ¶¶ 2-7; Beals Decl. ¶¶ 2-7; Fisse Decl. ¶¶ 2-7; Rees Decl. ¶¶ 2-7.

They each faced financial and reputational risks serving as Class Representatives in Lawsuits that attracted public attention. Soderstrom Decl. ¶¶ 51-54; McKee Decl. ¶¶ 2-7; Weber Decl. ¶¶ 2-7; Rogawski Decl. ¶¶ 2-7; Beals Decl. ¶¶ 2-7; Fisse Decl. ¶¶ 2-7; Rees Decl. ¶¶ 2-7. Due to their regular use and enjoyment of Defendants' services—and particularly Amazon's retail services—serving as a proposed Class Representative posed a risk that Defendants may choose not to do business with them in the future. Soderstrom Decl. ¶¶ 51-54; *McKee* Dkt. 116 (second motion for corrective action re the termination of Weber's and Rogawski's Audible memberships based on Audible's choice not to continue doing business with them). It was nevertheless important to each of them that they try to get Defendants to fix what they considered unfair business practices so all Audible customers could benefit from their willingness to bring claims in court. Soderstrom Decl. ¶¶ 51-54; McKee Decl. ¶¶ 2-7; Weber Decl. ¶¶ 2-7; Rogawski Decl. ¶¶ 2-7; Beals Decl. ¶¶ 2-7; Fisse Decl. ¶¶ 2-7; Rees Decl. ¶¶ 2-7. Their efforts and

fortitude proved essential to securing a nationwide Settlement that benefits many millions of consumers like themselves. Soderstrom Decl. ¶¶ 51-54.

Each of the six Class Representatives is entitled to request a service award of $5,000 as compensation for the services they have provided to the Class and for the risks they endured in pursuing claims against Defendants in court. Stipulation § 24. Service awards are appropriate and are regularly approved in class action litigation. *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) ("These awards . . . are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."). "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F. 3d 1004, 1016 (7th Cir. 1998); *see also Rodriguez v. West Publ. Corp.*, 2007 WL 2827379 (C.D. Cal. Sept. 10, 2007), aff'd in part, rev'd in part sub nom. *Rodriguez v. West Publ. Corp.* 563 F.3d 948 (9th Cir. 2009) (incentive awards should compensate for risks taken); *In re Cellphone Fee Termination Cases*, 86 Cal. App. 4th 1380, 1393-94 (2010) (incentive awards are compensation for work done on behalf of the class, financial and reputational risks, and willingness to serve the interests of others).

A service award of $5,000 is modest and on the lower end of the range of commonly approved service awards. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (noting a $5,000 service award is presumptively reasonable). Each of the Class Representatives has taken every necessary action required or asked of him or her to protect the interests of the Class Members and has been essential in securing substantial, tangible benefits for millions of Class Members nationwide. Soderstrom Decl. ¶¶ 51-54; McKee Decl. ¶¶ 2-7; Weber Decl. ¶¶ 2-7; Rogawski Decl. ¶¶ 2-7; Beals Decl. ¶¶ 2-7; Fisse Decl. ¶¶ 2-7; Rees Decl. ¶¶ 2-7; *Smith v. Am. Greetings Corp.*, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016) ("Several courts in [the Nothern District of California] have indicated that incentive payments of $10,000 to

$25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount.") (quoting *Harris v. Vector Marketing Corp.*, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)). No Class Members were required to take any action on their own, and each of them will benefit from the Settlement. In fact, without Class Counsel and each of the Class Representatives protecting their interests and arguing vigorously against steep odds, most Class Members would likely face a $200 barrier to pursuing their own individual claims based on the filing costs of arbitration they would likely be required to pay. Soderstrom Decl. ¶ 52.

Each of the Class Representatives fully supported pushing for injunctive relief that would benefit millions of Class Members and current and future Audible customers even though such relief would not benefit them personally because they learned of Defendants' terms and practices before they brought suit. *Id.* ¶¶ 51-54; McKee Decl. ¶¶ 2-7; Weber Decl. ¶¶ 2-7; Rogawski Decl. ¶¶ 2-7; Beals Decl. ¶¶ 2-7; Fisse Decl. ¶¶ 2-7; Rees Decl. ¶¶ 2-7.

In light of each Class Representative's personal involvement in the Lawsuits, the financial and reputational risks they each faced, and the benefits they helped secure for millions of Class Members and all current and future Audible members, the Court should approve of and grant each Class Representative's request for a $5,000 service award.

## CONCLUSION

Plaintiffs and Class Counsel respectfully request that the Court grant an award of attorneys' fees (inclusive of costs) equal to $1.5 million and a service award of $5,000 to each Class Representative, each to be paid by Defendants in accordance with the terms of the Settlement.

Dated: April 27, 2019

Respectfully submitted,

SODERSTROM LAW PC

By: */s/ Jamin S. Soderstrom*

*Counsel for Plaintiffs*

25

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on, April 27, 2019, I caused the foregoing document to be served on all counsel of record by the Court's CM/ECF electronic filing system.

By: */s/ Jamin S. Soderstrom*

Jamin S. Soderstrom