Jamin S. Soderstrom, Bar No. 261054
jamin@soderstromlawfirm.com
**SODERSTROM LAW PC**
**3 Park Plaza, Suite 100**
**Irvine, California 92614**
**Tel: (949) 667-4700**
**Fax: (949) 424-8091**

*Counsel for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## (WESTERN DIVISION – LOS ANGELES)

| | |
|---|---|
| **GRANT MCKEE, ERIC WEBER, and MICHAEL ROGAWSKI,** individually and on behalf of all other similarly situated,<br><br>    **Plaintiffs,**<br><br>    v.<br><br>**AUDIBLE, INC.,**<br><br>    **Defendant.** | Case Nos.: 2:17-cv-01941 GW (Ex) & 2:17-cv-08868 GW (Ex)<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTRY OF JUDGMENT**<br><br>Date:        July 8, 2019<br>Time:       8:30 a.m.<br>Courtroom:   9D<br>Judge:       Hon. George H. Wu<br>Trial date:    None set |
| **ERIC WEBER and BRYAN REES,** individually and on behalf of all other similarly situated,<br><br>    **Plaintiffs,**<br><br>    v.<br><br>**AMAZON.COM, INC. and AMAZON SERVICES LLC,**<br><br>    **Defendants.** | |

## <u>NOTICE OF MOTION AND MOTION</u>

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 8, 2019 at 8:30 a.m., in the Courtroom of the Honorable George H. Wu, United States District Judge for the Central District of California, located at the First Street Courthouse, 350 West First Street, Courtroom 9D, Los Angeles, California 90012, Plaintiffs Grant McKee, Eric Weber, Michael Rogawski, and Bryan Rees, on behalf of themselves and all others similarly situated, will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for an Order fully and finally approving a proposed Stipulation of Class Action Settlement and Release ("Stipulation" or "Settlement") and for entry of judgment thereon. The Settlement was preliminarily approved by the Court. *McKee* Dkt. 191; *McKee* Dkt. 196. The Class Notice was sent starting on April 5, 2019 and was completed prior to April 8, 2019. The Settlement Website went live on April 4, 2019. Plaintiffs filed a separate motion for attorneys' fees and service awards on April 27, 2019 and posted that motion on the Settlement Website for Class Member review. The Notice Period ended on May 23, 2019.

By this unopposed motion, Plaintiffs seek an Order:

1. Confirming the Court's prior certification of the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3);

2. Confirming the appointment of Soderstrom Law PC as Class Counsel;

3. Confirming the appointment of Grant McKee, Eric Weber, Michael Rogawski, Seth Beals, Bryan Rees, and Taylor Fisse as the Class Representatives;

4. Confirming the Notice Plan satisfied the requirements of Rule 23;

5. Confirming and holding that the terms of the Settlement are fair, reasonable, and adequate and satisfy the requirements of Federal Rule of Civil Procedure 23(e) and applicable case law;

6. Approving Plaintiffs' requests for an award of attorneys' fees (inclusive of expenses) in the amount of $1.5 million and service awards in the amount

of $5,000 each;

7.      Overruling each objection submitted by a Settlement Class Member; and

8.      Entering final judgment in these consolidated actions.

This Motion is based on the accompanying Memorandum of Points and Authorities, the Declarations of Jamin S. Soderstrom, Jedediah Wakefield, and Jason Massello and all exhibits thereto, the arguments of counsel, and all papers and records on file in this matter. Defendants do not oppose this motion. Plaintiffs will file a separate Response to Objections in connection with this motion to address the objections submitted by Settlement Class Members.

Dated: June 24, 2019                 SODERSTROM LAW PC

                                     By: */s/ Jamin S. Soderstrom*
                                         Jamin S. Soderstrom

                                     *Counsel for Plaintiffs and the Proposed Class*

# TABLE OF CONTENTS

**Page(s)**

I.   Introduction. ...................................................................................................... 1

II.  Procedural history and settlement terms. .......................................................... 2

III. The court should certify a Settlement Class for settlement purposes and grant final approval of the Settlement because it is fair, reasonable, and adequate. .................. 7

   A.   The Court should confirm its preliminary class certification order. ............. 8

   B.   The Court should approve the Settlement because it is fair, reasonable, and adequate and provides substantial relief to a nationwide class. .................. 10

      1.   Plaintiffs have adequately represented the class. ............................... 10

      2.   Class Counsel has adequately represented the class. ......................... 10

      3.   The Settlement was negotiated at arm's length. ................................ 11

      4.   Plaintiffs and the class face significant costs, risks, and delay. ......... 13

      5.   The proposed method of distributing relief is appropriate. ................ 13

      6.   The terms of the proposed attorneys' fee award are appropriate. ....... 14

      7.   There are no side agreements. ........................................................... 15

      8.   Class members are treated equitably relative to each other. .............. 15

      9.   Strength of Plaintiffs' case. .............................................................. 16

      10.  Risk, expense, complexity, and duration of the litigation. ................ 19

      11.  Risk of maintaining class action status. ........................................... 19

      12.  Amount offered in settlement. .......................................................... 19

      13.  Extent of discovery and stage of proceedings. .................................. 22

      14.  Experience and view of counsel. ....................................................... 22

      15.  Presence of a governmental participant. ........................................... 23

16.    Positive reaction of class members. ...................................................... 23

IV.    The Notice Plan satisfied Rule 23's requirements. ................................................ 24

V.     Conclusion. ................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Adoma v. Univ. of Phoenix, Inc.*,
    913 F. Supp. 2d (E.D. Cal. 2012) ................................................................. 16

*Allen v. Bedolla*,
    787 F.3d 1218 (9th Cir. 2015) ..................................................................... 7

*Asghari v. Volkswagen Group of America, Inc.*,
    2015 WL 12732462 (C.D. Cal. May 29, 2015) ........................................... 24

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ................................................................. 7, 10

*Ching v. Siemens Indus., Inc.*,
    2014 WL 2926210 (N.D. Cal. June 27, 2014) ............................................ 17

*Chun-Hoon v. McKee Foods Corp.*,
    716 F. Supp. 2d 848 (N.D. Cal. 2010) ....................................................... 17

*Cody v. SoulCycle Inc.*,
    2017 Wl 6550682 (C.D. Cal. Oct. 3, 2017) ................................................ 16

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    343 F. Supp. 3d 394 (S.D.N.Y. 2018) .................................................. 24, 25

*Fowler v. Wells Fargo Bank, N.A.*,
    2019 WL 330910 (N.D. Cal. Jan. 25, 2019) ............................................... 23

*Garner v. State Farm Mut. Auto. Ins. Co.*,
    2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ............................................ 17

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................... 21

*Harris v. Vector Mktg. Corp.*,
    2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ............................................ 22

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. Mar. 9, 1989) ............................................. 22

*In re Hyundai & Kia Fuel Economy Litig.*,
   2019 WL 2376831 (9th Cir. June 6, 2019)........................................9, 15, 24

*In re Lenovo Adware Litig.*,
   2019 WL 1791420 (N.D. Cal. Apr. 24, 2019)..................................24

*Lane v. Facebook, Inc.*,
   696 F.3d 811, 826 (9th Cir. 2012) ...............................................25

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998)........................................................21

*In re MyFord Touch Consumer Litig.*,
   2019 WL 1411510 (N.D. Cal. Mar. 28, 2019)..............................22

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004)...................................................18

*Nicosia v. Amazon.com, Inc.*,
   2019 WL 2482674 (E.D.N.Y. June 14, 2019).................................18

*Officers for Justice v. Civ. Serv. Comm'n of City & Cty. of S.F.*,
   688 F.2d 615 (9th Cir. 1982)..........................................................18

*In re Online DVD-Rental Antitrust Litig.*,
   79 F.3d 934 (9th Cir. 2015)............................................................25

*Ontiveros v. Zamora*,
   303 F.R.D. 356 (E.D. Cal. 2014).....................................................7

*Rodriguez v. West Publishing Corp.*,
   563 F.3d 948 (9th Cir. 2009)................................................11, 17, 18, 24

*True v. Am Honda Motor Co.*,
   749 F. Supp. 2d 1052 (C.D. Cal. 2010).............................................7

*Valdez v. Neil Jones Food Co.*,
   2015 WL 6697926 (E.D. Cal. Nov. 2, 2015) ....................................8

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996)............................................................8

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods.
   Liab. Litig.*,
   895 F.3d 597 (9th Cir. 2018)...........................................................15

*In re Zynga Inc. Secs. Litig.*,
  2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ...........................................................11

**Rules**

Fed. R. Civ. P. 23(a) ...............................................................................................2, 8

Fed. R. Civ. P. 23(b)(3) ......................................................................................2, 8, 9

Fed. R. Civ. P. 23(c)(3) .............................................................................................24

Fed. R. Civ. P. 23(e) ..............................................................................................2, 7

Fed. R. Civ. P. 23(e)(1) .............................................................................................24

Fed. R. Civ. P. 23(e)(1)(A) ..................................................................................10, 11

Fed. R. Civ. P. 23(e)(2)(A) ........................................................................................11

Fed. R. Civ. P. 23(e)(2)(B) ........................................................................................11

Fed. R. Civ. P. 23(e)(2)(C)(i) .....................................................................................13

Fed. R. Civ. P. 23(e)(2)(C)(ii) ....................................................................................13

Fed. R. Civ. P. 23(e)(2)(C)(iii) ...................................................................................14

Fed. R. Civ. P. 23(e)(2)(C)(iv) ...................................................................................15

Fed. R. Civ. P. 23(e)(2)(D) ........................................................................................15

Fed. R. Civ. P. 23(e)(3) .............................................................................................15

## I. Introduction.

The nationwide class Settlement[1] of the consolidated *McKee* and *Weber* actions represents an excellent result for over 8.6 million[2] consumers nationwide and should be granted full and final approval.

For the better part of two-and-a-half years, Plaintiffs Grant McKee, Eric Weber, Michael Rogawski, Bryan Rees, Seth Beals, and Taylor Fisse (collectively, "Plaintiffs" or "Class Representatives") pursued claims in these actions and two related actions (the *Beals* action and *Fisse* action). They faced opponents—Audible Inc., Amazon.com, Inc., and Amazon Services LLC (collectively, "Defendants")—with substantial resources, experienced counsel, and a track record of compelling class claims into individual arbitrations. Several of their key claims—including their claims that "credits" are the equivalent of gift cards—relied on novel applications of laws with little developed or binding precedent. Despite many procedural hurdles and steep odds, they pressed on.

Plaintiffs defeated several motions to compel arbitration and motions to dismiss and secured an important corrective action order that stopped Defendants from using self-help to secure new arbitration agreements and waivers from unsuspecting Class Members. They engaged in intense motions practice, participated in formal and informal nationwide class discovery, and only agreed to mediation shortly before their motion for class certification was set to be filed. With the help of a respected mediator, on August 17, 2018 the Parties negotiated at arm's length a nationwide class Settlement that was

---

[1] The "Settlement" means and refers to the revised version of the Stipulation of Class Action Settlement and Release that was executed in February 2019. *See McKee* Dkt. 194-2. It is referred to as the "Settlement" and provisions are cited as "Stipulation § _." *Id.* All capitalized terms in this motion use the same definitions as set forth in the Settlement.

[2] Defendants' continued review of their records during the settlement and notice process determined that the total number of Class Members exceeded 8.6 million. Soderstrom Decl. ¶ 2. The parties will supplement the Court's record prior to the Fairness Hearing with the final numbers of Regular Class Members, Gift Class Members, Payment Card Class Members, and total free audiobook selections. *Id.*

submitted in November 2018 and re-submitted in February 2019 with additional terms to ensure Class Members were treated equitably relative to each other.

After performing a rigorous analysis of the propriety of class certification for settlement purposes, the fairness, reasonableness, and adequacy of the Settlement as a whole, and any potential for collusion, the Court granted preliminary approval of the Settlement, appointed Plaintiffs as Class Representatives, appointed Soderstrom Law PC as Class Counsel, and ordered the Parties to implement the Notice Plan. *McKee* Dkt. 191 (preliminary approval order); *McKee* Dkt. 196 (preliminary approval decision).

The reaction of the Class Members has been overwhelmingly positive. The individualized notice reached over 99% of Class Members, only 46 Class Members submitted opt outs (0.0005%), only 18 Settlement Class Members submitted objections (0.0002%), and a majority of the Class Members who reached out directly to Class Counsel (over 1,500 individuals) indicated a desire to participate in the Settlement and simply sought confirmation that they did not need to take any immediate action or appear at the Fairness Hearing. The Settlement represents an excellent result for over 8.6 million consumers secured in the face of serious risks that no recovery could ever be obtained on a classwide or individual basis.

Following the Fairness Hearing, the Court should confirm its prior findings and holdings, certify a Settlement Class for settlement purposes, grant final approval of the Settlement as a whole—including Plaintiffs' requests for an attorneys' fee award and individual service awards—and enter final judgment in these actions.

## II. Procedural history and settlement terms.

The *McKee* action was filed on March 10, 2017, *McKee* Dkt. 1, and the *Weber* action was filed on December 8, 2017. *Weber* Dkt. 1. The claims in both of these actions and the related *Beals* and *Fisse* actions generally fit into four categories of allegations:

> (1) Unlawful expiration of audiobook "credits" included as part of Audible's membership offerings based on federal and California gift card laws; (2) false advertising based on the fact that these audiobook credits are capable of expiring; (3) inadequate disclosures related to auto-pay policies; and (4)

inadequate disclosures and unlawful policies related to charging cards on file with Amazon that were not initially designed for making payments to Audible.

Soderstrom Decl. ¶ 3; *McKee* Dkt. 194-1 ¶¶ 6-10; *McKee* Dkt. 196 at 1-2.

After many months of intense motions practice, the prosecution of four related actions in three district courts, and substantial informal and formal discovery, the Parties reached a Settlement which the Court preliminarily approved in March 2019. *McKee* Dkt. 191; *McKee* Dkt. 196; *McKee* Dkt. 197-1 ¶¶ 7-15; Soderstrom Decl. ¶ 3. The Settlement Class consists of all Class Members who did not validly opt out of the Settlement. Stipulation § 2.h. Settlement Class Members are persons who fit within one or more of the following subclasses:

**Regular Member Class:** "all individual consumers of Audible in the United States who, between March 10, 2013 and August 17, 2018, lost any unredeemed Paid Membership Credits." *Id.* § 2.jj.

**Gift Member Class:** "all individual consumers of Audible in the United States who, between August 11, 2011 and August 17, 2018, purchased or redeemed an Audible Gift Membership that resulted in one or more unredeemed Audible gift membership credits being lost." *Id.* § 2.t.

**Payment Card Class:** "all individual consumers of Audible in the United States who, between March 10, 2013 and August 17, 2018, incurred charges from Audible to a credit or debit card other than the card originally designated as the primary payment card for the customer's Audible membership." *Id.* § 2.bb.

The Settlement gives over 7 million participating Regular Class Members and Gift Class Members in-kind relief in the form of 12 million free audiobook selections from a Settlement Catalog containing over 200,000 audiobook titles (more titles than Audible had in its entire library when this case was filed) with list prices from around $5.00 to over $25.00. Stipulation § 21.a-f; Soderstrom Decl. ¶ 4. Depending on how a credit was lost and how many credits were lost, each qualifying Settlement Class Member will have the right to select a minimum of one and up to four free audiobooks. *Id.* § 21.d. The Settlement Catalog will be open for at least a year and will include titles that have the same general listing price as Audible's overall library, celebrity narrations, exclusive

3

content, award winners, and best sellers. *Id.* § 21.e; Soderstrom Decl. ¶ 4.

Soon after the Settlement is approved, Audible will send an email to each qualifying Settlement Class Member telling them how many free audiobook selections they can make and giving them instructions on how to make their selections. Stipulation § 21.d. Audible will send an email 15-30 days before the end of the selection period reminding members who have not made all of their selections to do so to maximize the number of selections made. *Id.* Settlement Class Members do not need a paid Audible membership and they do not need to submit a claim, make a purchase, or provide any payment information to Defendants to participate in the Settlement; all they need is their *free* Amazon account (which still exists even if they cancelled their Audible membership). Soderstrom Decl. ¶ 5.[3]

The Settlement also gives over 3 million Payment Card Class Members the right to get reimbursed if Audible charged a back-up card and caused them to incur any overdraft or similar fees. Stipulation §§ 2.h., 21.f. There is no cap on the individual or collective reimbursements Audible has agreed to pay. Soderstrom Decl. ¶ 5. When the Settlement is approved, Audible will send an email with instructions on how to submit a claim for reimbursement to Audible's trained customer service personnel and will provide at least 60 days to submit a claim. Stipulation § 22.a; Soderstrom Decl. ¶ 6.

Audible also has made and will maintain the changes across all of the relevant platforms which will stay in effect for at least one year from the date of final approval:

**Rollover Disclosures:** in marketing copy where Audible mentions the ability to roll over credits, Audible will mention rollover limits. In the welcome email that Audible sends to new members, Audible will disclose rollover limits.

**Cancellation Disclosures:** in the welcome email that Audible sends to new

---

[3] For any eligible Settlement Class Members who became Audible members prior to its acquisition by Amazon in 2008 and who have not integrated their Amazon account or do not have an Amazon account, Audible will provide an alternative means to help them select their free audiobooks. Soderstrom Decl. ¶ 5.

members, Audible will state that unused credits will be lost upon cancellation.

**Card Charging / Manage Payment Options:** Audible will continue to inform users upon sign up that Audible may charge other cards on file. In the welcome email that Audible sends to new members, Audible will provide a link to manage payment options and a link to the Audible COU.

**Conditions of Use Disclosures:** Audible has improved the locations and clarity of the language requiring members to accept the Audible COUs during sign ups and will ensure that such improvements will also exist on any future sign-up webpages or flows for at least the one-year period from the date of final approval.

Stipulation § 21. During the litigation, Audible also gave its members email and online "reminders" when they neared rollover limits to help members avoid losing credits due to rollover limits. Soderstrom Decl. ¶ 7. Also during the litigation and during the settlement process, Defendants fixed certain flaws in their disclosures and Audible implemented new policies that resulted in additional disclosures, more complete information regarding credit expiration policies, and more favorable terms related to the use and expiration of Audible credits. *Id.*; *McKee* Dkt. 197 at 17-18; *McKee* Dkt. 197-1 ¶¶ 36-39 & Exs. 3-5. These additional fixes and improvements were another result of Plaintiffs' efforts and arguments in this litigation. Soderstrom Decl. ¶ 7.

Upon final approval, all Settlement Class Members will give Defendants a general release of "any and all claims, known or unknown, alleged or asserted in the Lawsuits or that could have been alleged or asserted related to the advertisement, purchase, receipt, charges for, or loss of an Audible membership, Audible gift membership, Audible credits or other Audible membership benefits, or the use of an alternative payment method in connection with Audible services through August 17, 2018." Stipulation §§ 41-43. Settlement Class Members <u>are not</u> releasing any claims that arose after August 17, 2018 even if such claims involve the same conduct or claims, and they <u>are not</u> releasing any claims that do not relate to the allegations in the Lawsuits. *Id.* Plaintiffs separately agreed to give Defendants general releases of all possible claims through November 28, 2018, including any claims that do not relate to the Lawsuits or relate to Audible (one additional

5

basis for their request for service awards). *Id.* § 42; Soderstrom Decl. ¶ 8.

Persons <u>not granting releases</u> include: (1) Audible customers who only purchased Audible products or services on an a la carte basis (i.e., were never Audible "members"); (2) Audible customers who signed up for a free trial membership but cancelled before they were charged; (3) Audible members who never lost a paid credit and never had a back-up card charged; (4) persons who were never Audible customers; and (5) 46 Class Members who submitted opt outs. Soderstrom Decl. ¶ 9; Wakefield Decl. ¶ 5, Ex. B.

The Class Notice was sent to over 8.6 million Class Members. Massello Decl. ¶¶ 4-7. It included a link to the Settlement Website with relevant case documents and a "Frequently Asked Questions" webpage, explained the Settlement's terms, explained that Class Members had until May 23, 2019 to submit opt outs or objections, explained what would happen if Class Members did nothing, provided the date and time of the Fairness Hearing, and told Class Members that Plaintiffs had a right to seek an award of attorneys' fees and costs up to $1.5 million and service awards up to $5,000 each. *Id.* ¶ 4, Ex. B; Wakefield Decl. ¶ 3, Ex. A. Plaintiffs' fee motion was filed on April 27, 2019 and was posted on the website for Class Member review. *McKee* Dkt. 197; Wakefield Decl. ¶ 3.

Over 99% of the 8.6 million Class Members received the notice and only 46 opt outs and 18 valid objections were received. Massello Decl. ¶ 4; Wakefield Decl. ¶ 5, Ex. B; Soderstrom Decl. ¶ 10. Around 0.02% of Class Members did not receive the notice due to bouncebacks, around 0.07% of Class Members did not receive the notice because they used "mobile phone number" accounts instead of email accounts, and around 52,700 Class members did not receive the notice because their accounts were not in "normal status" (e.g., they had been suspended or closed for reasons such as fraudulent or abusive conduct). Massello Decl. ¶¶ 4-7; Soderstrom Decl. ¶¶ 46-48.

Class Counsel received and responded to around 1,500 emails and 400 phone calls from Class Members, a majority of whom indicated they wanted to participate in the Settlement and simply sought confirmation that they did not need to take any action at this time to do so. Soderstrom Decl. ¶ 11. Others posed questions that were already

6

1  answered by the notice and/or by the FAQs on the website (e.g., "do I need to attend the
2  fairness hearing," "can I be a class representative too," "how will Audible determine how
3  many free audiobooks I can select," "am I being sued") or simply made comments related
4  to the allegations in the case or to the Settlement generally. *Id.* No Class Members were
5  discouraged from opting out of or objecting to the Settlement. *Id.*

6  **III.   The court should certify a Settlement Class for settlement purposes and grant**
7          **final approval of the Settlement because it is fair, reasonable, and adequate.**

8          "A difficult balancing act almost always confronts a district court tasked with
9  approving a class action settlement." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir.
10  2015). "On the one hand, . . . 'there is a strong judicial policy that favors settlements,
11  particularly where complex class action litigation is concerned.'" *Id.* (citations omitted).
12  "But on the other hand, settlement class actions present unique due process concerns for
13  absent class members, and the district court has a fiduciary duty to look after the interests
14  of those absent class members." *Id.* (citations and internal quotation marks omitted).

15          "To guard against this potential for class action abuse, Rule 23(e) of the Federal
16  Rules of Civil Procedure requires court approval of all class action settlements, which
17  may be granted only after a fairness hearing and a determination that the settlement taken
18  as a whole is fair, reasonable, and adequate." *In re Bluetooth Headset Prod. Liab. Litig.*,
19  654 F.3d 935, 946 (9th Cir. 2011).

20          The approval process proceeds in two phases. First, the court conditionally
21  certifies the class, conducts a preliminary determination of the fairness of the settlement,
22  and approves the notice to be provided to the class. *Ontiveros v. Zamora*, 303 F.R.D. 356,
23  363 (E.D. Cal. 2014). The purpose of the initial review is to ensure than an appropriate
24  class exists and that the agreement is non-collusive, without obvious deficiencies, and
25  within the range of possible approval as to that class. *True v. Am Honda Motor Co.*, 749
26  F. Supp. 2d 1052, 1062 (C.D. Cal. 2010); *Newberg on Class Actions* § 1313: (5th ed.
27  2014). Second, the court holds a fairness hearing where class members may present
28  objections to the class certification or the fairness of the settlement. *Ontiveros*, 303

F.R.D. at 363 (citing *Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989)). Following the fairness hearing, the court is to take into account all of the information before it and confirm that class certification is appropriate and the settlement is fair, reasonable, and adequate. *See Valdez v. Neil Jones Food Co.*, 2015 WL 6697926, at *8 (E.D. Cal. Nov. 2, 2015).

All of the relevant factors show that certification of a Settlement Class is proper and that the terms of the Settlement are fair, reasonable, adequate and free from collusion. The Settlement provides meaningful and valuable relief to a nationwide class of over 8.6 million consumers in the face of serious risks. The Court should grant final approval.

## A.    The Court should confirm its preliminary class certification order.

The Court's preliminary approval decision, *McKee* Dkt. 196, and preliminary approval order, *McKee* Dkt. 191, were the product of a "rigorous analysis" that carefully assessed each of the factors and requirements related to class certification and they conditionally certified the class as defined in the Settlement under Rule 23(a) and Rule 23(b)(3) for purposes of settlement. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996). There is no indication that the Court's preliminary certification order was error or that the same "rigorous analysis" the Court already performed should not result in certification of a Settlement Class for settlement purposes. Soderstrom Decl. ¶ 12. No objections were received concerning class certification. *Id.*

**Numerosity.** Only 46 valid opt outs were received (0.0005% of Class Members), meaning over 8.6 million Settlement Class Members will participate in and benefit from the Settlement. Soderstrom Decl. ¶ 13; Wakefield Decl. ¶ 5, Ex. B. The Court should confirm that numerosity is still met. *McKee* Dkt. 196 at 6.

**Commonality.** There are no new facts and there has been no change in applicable law that suggests Plaintiffs' claims do not present common factual or legal issues concerning Defendants' challenged conduct. Soderstrom Decl. ¶ 14. The Court should confirm that commonality is still met. *McKee* Dkt. 196 at 6-7.

**Typicality.** There are no new facts and there has been no change in applicable law

8

that suggests Plaintiffs' claims and Defendants' defenses are not typical of Class Members. Soderstrom Decl. ¶ 15. The Court should confirm that typicality is still met. *McKee* Dkt. 196 at 7-8.

**Adequacy.** There are no new facts that suggest any Plaintiffs have interests antagonistic to the Settlement Class or have failed to adequately serve Class Members' interests. Soderstrom Decl. ¶ 16. And there is no indication that Class Counsel has done anything but vigorously prosecute claims on behalf of a nationwide class in what has been a "nearly two-year battle in litigating every step of the way" with litigation "fraught with motions practice, supplemental briefing, and vigorous representation" on both sides. *Id.* ¶ 17; *McKee* Dkt. 196 at 8-9; *McKee* Dkt. 197-1 ¶¶ 7-15, 24-49. The Could should confirm that adequacy is still met and confirm its appointment of Class Representatives and Class Counsel. *McKee* Dkt. 196 at 8-9.

**Predominance and Superiority.** There are no new facts that suggest common questions of law or fact would not predominate over questions affecting only individual Class Members or that a class action would not be superior to individual actions. Soderstrom Decl. ¶ 18. Without the Settlement, many individual actions may have to be filed in arbitration and be subject to a $200 filing fee (an amount that would far exceed the potential recovery for most individuals). *Id.* Moreover, several of Plaintiffs' claims involve federal laws that apply to Class Members nationwide, and the factual bases for all of Plaintiffs' claims involve substantially the same advertisements, disclosures, flows, and online terms posted on Defendants' nationwide public websites and mobile applications. *Id.*; *McKee* Dkt. 196 at 9-12.

The Ninth Circuit recently issued a decision that strengthens the arguments for granting certification for settlement purposes as well as granting final approval. *In re Hyundai & Kia Fuel Economy Litig.*, --- F.3d ---, 2019 WL 2376831 (9th Cir. June 6, 2019) (en banc). It reiterated the standards for certification of a settlement class and emphasized that the "pertinent" factors under Rule 23(b)(3) "must be considered in light of the reason for which certification is sought—litigation or settlement—which 'is

9

relevant to a class certification.'" *Id.* at *6 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997)). The fact that some members of a settlement class could arguably require a different damages analysis or be covered by different states' laws does not defeat predominance. *Id.* at *8-9. And, of course, a class member's rights "include an opportunity to be excluded from the action," and class members who believed their circumstances are sufficiently different or their potential recovery is significantly greater than the relief secured by settlement are "free to opt out of the class" and pursue individual claims and greater relief. *Id.* at *12. The Court should confirm that predominance and superiority are still met. *McKee* Dkt. 196 at 9-12.

**B.     The Court should approve the Settlement because it is fair, reasonable, and adequate and provides substantial relief to a nationwide class.**

Rule 23(e) and *In re Bluetooth*, 654 F.3d at 946-47, set forth criteria that the Court must consider when deciding whether to grant final approval of the Settlement. Each relevant factor weighs in favor of the Court granting final approval.

**1.     Plaintiffs have adequately represented the class.**

Plaintiffs are current or former customers of Defendants who used Defendants' websites, relied on Defendants' disclosures (or lack thereof), and suffered harm in the form of lost credits and/or unexpected charges to back-up cards. Soderstrom Decl. ¶ 19. Collectively, they represent a wide swath of Audible members and fit within the Regular Member Class, Gift Member Class, and/or Payment Card Class. *Id.* They reviewed records, shared information with their counsel, and pursued claims on a class basis while eschewing the possibility of individual settlements, all without a promise or guarantee of a service award. *Id.* No facts suggests that any Plaintiff has not adequately represented the class. *Id.*; Fed. R. Civ. P. 23(e)(1)(A). The Court should confirm that "it is clear from the course of proceedings and the Revised Settlement that the class representatives . . . have adequately represented the class." *McKee* Dkt. 196 at 20.

**2.     Class Counsel has adequately represented the class.**

Class Counsel has invested considerable time and resources pursuing the interests

of the class without any guarantee of payment, without singling out any individuals or subclasses for favorable treatment, and without compromising Class Members' interests in exchange for favorable fee terms. *McKee* Dkt. 197; *McKee* Dkt. 197-1 ¶¶ 24-49; Soderstrom Decl. ¶ 20. Without Class Counsel's effectiveness in defeating multiple motions to compel arbitration and motions to dismiss, tenacity in pursuing related actions in other district courts, and success in identifying and stopping Defendants' subtle self-help tactics, millions of Settlement Class Members who will participate in and benefit from the Settlement easily could have been forced to engage their own counsel and litigate or arbitrate their claims individually. Soderstrom Decl. ¶ 20. No facts suggest that Class Counsel failed to adequately represent the class or placed any interests above Class Members' interests. *Id.*; Fed. R. Civ. P. 23(e)(1)(A). The Court should confirm that "it is clear from the course of proceedings and the Revised Settlement that . . . class counsel [has] adequately represented the class." *McKee* Dkt. 196 at 20.

### 3. The Settlement was negotiated at arm's length.

The Settlement was reached only after the Court had made many procedural and substantive rulings over 18 months and each side understood the strengths and weaknesses of their positions. Soderstrom Decl. ¶ 21. Prior to mediation, Class Counsel reviewed thousands of records, numerous webpage versions, and other documents and data produced by Defendants, and the Parties had exchanged detailed mediation briefs and engaged an experienced mediator. *Id.*; *In re Zynga Inc. Secs. Litig.*, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) (the use of a mediator and the fact that discovery had occurred "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement"); Fed. R. Civ. P. 23(e)(2)(A) & (B). Counsel on both sides are experienced in complex civil litigation and class actions and have been involved in the four related lawsuits from the start. Soderstrom Decl. ¶ 21. Their negotiations during and after mediation were serious, informed, arm's length, and conducted at an appropriate stage of the proceedings. *Id.*; *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive,

11

1  negotiated resolution, and have never prescribed a particular formula by which that
2  outcome must be tested.").

3      The Parties revised several terms of the Settlement in February 2019 and more
4  fully explained the basis for and purpose of the attorneys' fees provision to address
5  concerns the Court raised with respect to concerns regarding possible collusion. *McKee*
6  Dkt. 196 at 15-20; Soderstrom Decl. ¶ 22. The same rigorous analysis the Court
7  performed in its preliminary approval decision should also be befored in connection with
8  its final evaluation of the fairness, reasonableness, and adequacy of the Settlement and
9  potential for collusion, and the same conclusion is warranted. Soderstrom Decl. ¶ 22.

10      The uncapped reimbursement of overdraft and similar fees to participating
11  Payment Card Class Members provides monetary relief in a simple claims process. *Id.* ¶
12  23. The in-kind relief of 12 million free audiobook selections provides equitable
13  restitution with significant value to over 7 million participating Regular Class Members
14  and Gift Class Members: free audiobooks ranging in list price from around $5.00 to over
15  $25.00. Even if the Settlement resulted in an unexpectedly low redemption rate and only
16  $5.00 books were selected, the value of the in-kind relief would still be significant. *Id.*;
17  *McKee* Dkt. 192-1 at 4-6; *McKee* Dkt. 196 at 16-17. And Defendants have already
18  implemented and will maintain important revisions to their advertisements, disclosures,
19  and related terms and policies across their platforms—this is important and continuing
20  relief that addresses most of Plaintiffs' and Class Members' complaints. Soderstrom
21  Decl. ¶ 23; *McKee* Dkt. 196 at 16-17.

22      Separately, the three forms of relief provide valuable benefits for millions of
23  consumers; together, they represent an excellent result for over 8.6 Class Members
24  secured in the face of serious risks that no recovery could be ever obtained in a classwide
25  or individual basis. Soderstrom Decl. ¶ 23. The litigation also caused Defendants during
26  the litigation and during the settlement process to make other fixes and improvements to
27  their disclosures, terms, policies, and services that will benefit millions of Class Members
28  and millions more future Audible members. Soderstrom Decl. ¶ 24; *McKee* Dkt. 197;

*McKee* Dkt. 197-1 (providing examples of other fixes and changes Defendants made).

Throughout the extensive arm's-length and non-collusive negotiations, Class Counsel has never placed any interests above the interests of the class as a whole. Soderstrom Decl. ¶ 25. After the other Settlement terms were agreed to at mediation, Class Counsel negotiated a cap on the maximum possible fee request, which was predicated on Class Counsel's anticipated lodestar and a modest maximum multiplier so as to avoid any appearance of trying to unfairly benefit from the significant "face value" of 12 million free audiobook selections. *Id.* The Court's prior assessment of the Settlement and the attorney's fees provision was rigorous and the Court should confirm that the Settlement was the product of serious, informed, and arm's length negotiations with no collusion. *Id.*; *McKee* Dkt. 196 at 15-20; *McKee* Dkt. 197-1 ¶¶ 24-49.

### 4. Plaintiffs and the class face significant costs, risks, and delay.

Rule 23(e)(2)(C)(i) requires the Court to consider the anticipated costs, risks, and delay of trial and appeal. The *McKee* action was filed on March 10, 2017 and has resulted in three related cases being pursued in this Court and two other district courts. *McKee* Dkt. 1; Soderstrom Decl. ¶ 26. Defendants have appealed the Court's denial of one of their motions to compel arbitration and also the Court's order granting corrective action. *McKee* Dkt. 107; *McKee* Dkt. 120. And Plaintiffs intend to appeal the Court's tentative order dismissing Weber's claims in favor of arbitration if the Settlement is not approved and the tentative order becomes final. *Weber* Dkt. 65; Soderstrom Decl. ¶ 26. Plaintiffs have already incurred nearly $1 million in fees and costs and will incur significantly greater fees and costs during fact and expert discovery and further motions practice if the Settlement is not approved. *McKee* Dkt. 197-1 ¶¶ 24-27; Soderstrom Decl. ¶ 26. Plaintiffs also face significant risks in securing class certification and defeating anticipated motions for summary judgment. Soderstrom Decl. ¶ 26. With two appeals and more expected, litigation will last several more years in multiple venues. *Id.* This factor favors approval.

### 5. The proposed method of distributing relief is appropriate.

Rule 23(e)(2)(C)(ii) requires the Court to consider the effectiveness of any

13

proposed method of distributing relief to the class, including the method of processing class member claims. Following final approval, Audible will send specific instructions on how participating Payment Card Class Members can submit proof that an Audible charge to a back-up card caused them to incur an overdraft or similar fee and Audible will keep the claims period open for at least 60 days and train its customer service personnel to manage the reimbursement process. Soderstrom Decl. ¶ 27. Audible will also send a link and instructions on how eligible Regular Class Members and Gift Class Members can make their free audiobook selections, and it will send a reminder email 15-30 days before the one-year selection period ends to help maximize the number of free selections that are made. *Id.*

The methods of distributing relief to class members are simple, easy, and appropriate, particularly in light of the fact that Defendants are online companies, Class Members signed up for Audible memberships online using their personal email addresses with the anticipation of selecting and downloading audiobooks online, and Audible has customer service personnel capable of managing the claims process and technicians capable of building and maintaining an easy-to-use free audiobook selection website. *Id.* This factor favors approval.

> **6.     The terms of the proposed attorneys' fee award are appropriate.**

Rule 23(e)(2)(C)(iii) requires the Court to consider the terms of any proposed award of attorney's fees, including timing of payment. Plaintiffs discussed at length the terms of the requested $1.5 million fee award in the Fee Motion, *McKee* Dkt. 197, and addressed every relevant factor, including: (1) the statutory, contractual, and equitable bases for a fee award; (2) the potential applicability of the Class Action Fairness Act's fee provisions (it does not apply); (3) the calculation of and support for Class Counsel's unadjusted lodestar; (4) the appropriateness of a modest multiplier; and (5) similar cases that support approval of Class Counsel's request. Soderstrom Decl. ¶ 28. Additionally, Class Counsel has continued and will continue to perform additional work related to the Settlement, meaning the adjusted lodestar has increased and will continue to increase and

1  the applicable multiplier will continue to come down. *Id.*

2  The requested fee award is not "disproportionate" compared to the value of the

3  uncapped reimbursement, in-kind restitution, and injunctive relief benefits secured by the

4  Settlement (not to mention the other fixes and improvements resulting from this

5  litigation). *Id.* ¶ 29. Class Counsel negotiated a cap on the maximum fee request to avoid

6  any appearance of trying to capitalize on the "face value" of 12 million free audiobook

7  selections and, instead, tied the anticipated fee request to a reasonable anticipated lodestar

8  and modest maximum possible multiplier. *Id.* The fee terms were intended to avoid a

9  dispute over a potentially much higher fee request, not to unfairly reward Class Counsel

10  at the expense of the class. *Id.* And the fact that any amount of the fee request that is not

11  awarded will be kept by Defendants is because this is not a common fund case and

12  because, even if no fees and costs were awarded, the maximum potential distribution to

13  each Class Member would be less than the cost of mailing a check. *Id.*; *In re Volkswagen*

14  *"Clean Diesel" Marketing, Sales Practices, and Prods. Liab. Litig.*, 895 F.3d 597, 612-

15  13 (9th Cir. 2018) (observing reversion clauses can often times be reasonable).

16  Here, the fee provisions were not intended to and do not provide for the potential

17  of an unfair fee award at the expense of the class. *See In re Hyundai*, 2019 WL 2376831,

18  at *17-18 (observing that it was appropriate for the district court to use the lodestar and

19  multiplier method where class counsel's fees would be paid separately from the amounts

20  allocated to the class and because it was "difficult to estimate the settlement value's upper

21  bound"). The terms of the proposed fee award are appropriate, are in line with awards in

22  similar cases, and are not collusive. Soderstrom Decl. ¶ 29; *McKee* Dkt. 197; *McKee* Dkt.

23  197-1 ¶¶ 24-49. This factor favors approval.

24  **7.     There are no side agreements.**

25  Rule 23(e)(2)(C)(iv) requires the Court to consider any agreement required to be

26  identified under Rule 23(e)(3). No such agreements exist. *McKee* Dkt. 190.

27  **8.     Class members are treated equitably relative to each other.**

28  Rule 23(e)(2)(D) requires the Court to consider whether the Settlement treats class

members equitably relative to each other. Here, over 7 million participating Regular Class Members and Gift Class Members who lost a paid credit will get to select at least one free audiobook and those who lost more credits have a right to select more free audiobooks. Soderstrom Decl. ¶ 31; Stipulation § 21.a-e. The in-kind relief is proportional and equitable. *See Cody v. SoulCycle Inc.*, 2017 Wl 6550682, at *4 (C.D. Cal. Oct. 3, 2017) (approving settlement where customers who lost more passes received more free passes). No participating Settlement Class Member will have to create a new account or make a purchase to select a free audiobook, and each can chose from a Settlement Catalog with over 200,000 titles valued from around $5.00 to over $25.00, with at least a year to make selection. Soderstrom Decl. ¶ 31.

Nearly two-thirds of Payment Card Class Members are also Regular Class Members and/or Gift Class Members and will get at least one free audiobook selection *in addition to* the right to seek reimbursement of any overdraft or similar fees they incurred because Audible charged a back-up card. *Id.*; Stipulation § 21.a-f. Payment Card Class Members who will not also receive at least one free audiobook selection *never lost a paid credit* and will get an uncapped reimbursement right that is commensurate with whatever harm they suffered. Soderstrom Decl. ¶ 31; *McKee* Dkt. 196 at 23.

Plaintiffs are only requesting presumptively reasonable $5,000 service awards in exchange for their service to the class and for the broader releases they are giving to Defendants; they will not get a windfall if the Court approves the requests. *McKee* Dkt. 197 at 23-25. The Court should confirm that the Settlement does not give preferential treatment to any segment of the class or to any Plaintiff. *McKee* Dkt. 196 at 22.

### 9. Strength of Plaintiffs' case.

The Court should "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these [settlement] agreements." *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d, 964, 975 (E.D. Cal. 2012) (citation omitted). This evaluation can include the difficulty of certifying the class, prevailing at summary judgment, and prevailing on appeal.

*Rodriguez*, 563 F.3d at 966. Each of these issues exists here and supports final approval.

Final approval of a class settlement is particularly appropriate when plaintiffs must overcome significant barriers to make their case, *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010), and courts "may presume that through negotiation, the Parties . . . arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). Difficulties and risks in litigating also weigh in favor of approving a class settlement. *Rodriguez*, 563 F. 3d at 966. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotation omitted).

The Parties and the Court have had the benefit of intense procedural and merits motions practice and have a keen awareness of the strengths and weaknesses of Plaintiffs' case and the serious risks that Plaintiffs could ultimately obtain little or no recovery on a classwide or individual basis. Soderstrom Decl. ¶ 32. The strengths of Plaintiffs' case are based largely on proof of Defendants' use of uniform or substantially similar advertisements, flows, disclosures, terms, and policies directed at consumers nationwide and uniform statements, omissions, and practices that Plaintiffs believe will be found to be misleading and/or unlawful. *Id.*; *see McKee* Dkt. 53 (order denying most of Audible's first motion to dismiss); *McKee* Dkt. 94 (order denying most of Audible's second motion to dismiss). But the Court has also observed that (1) several issues (including platform-specific disclosures and associated arbitration agreements and waivers) present Plaintiffs with an uphill battle on class certification; (2) several claims "barely" survived dismissal at the pleading stage; and (3) there was "serious potential for little to no recovery" in light of Defendants' arguments "why the federal and state gift card claims could fail on summary judgment, why Plaintiffs' claims based on losing credits upon cancellation could fail, why Plaintiffs' claims based on rollover limits could fail, and why Plaintiffs' claims for charges to back-up payment cards could fail." Soderstrom Decl. ¶ 32; *McKee*

17

Dkt. 196 at 15, 21; *McKee* Dkt. 192-1 (Defendants' settlement brief).

Plaintiffs believe they have a good chance of prevailing on a motion for class certification, certifying a nationwide class and appropriate subclasses, proving liability, and securing injunctive and monetary relief. Soderstrom Decl. ¶ 33. But they cannot disregard the fact that they face well-funded opponents and experienced counsel who have made and will continue to make strong arguments against class certification and liability or that there is "a significant chance the Court would have agreed with [Defendants' numerous and well-articulated] arguments during the course of litigation." *McKee* Dkt. 196 at 21; *Officers for Justice v. Civ. Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (observing that the court is not required to reach an ultimate conclusion on the merits, "for it is the very uncertainty of outcome in litigation and avoidance of wastefulness and expensive litigation that induce consensual settlements"). In fact, Defendants recently prevailed in another case brought by individual consumers on a motion to compel class claims to individual arbitration, *see Nicosia v. Amazon.com, Inc.*, 2019 WL 2482674 (E.D.N.Y. June 14, 2019), and similar notice and waiver issues are involved in this litigation. Soderstrom Decl. ¶ 33.

Considering the serious procedural risks (e.g., the existence of arbitration agreements and waivers and litigating in multiple venues with multiple appeals) and substantive risks (reasonable arguments against liability and difficultly proving proximately caused harm), the Settlement reflects all of the strengths of Plaintiffs' case while also taking into account its weaknesses. Soderstrom Decl. ¶ 34. This factor favors approval. *Rodriguez*, 563 F.3d at 965 ("In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to a present value."); *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

### 10. Risk, expense, complexity, and duration of the litigation.

The same analysis of the risks and delays of further litigation and the strengths and weaknesses of Plaintiffs' case also apply to this factor. Soderstrom Decl. ¶ 35. The expense of further litigation—fees, costs, and experts—will be substantial. *Id.* Considering the multiple appeals, four related lawsuits, and extensive additional motions practice, litigation will continue several more years if the Settlement is not approved. *Id.* Plaintiffs' claims and arguments are also complex and some of them are based on novel or creative legal theories and rely on relatively undeveloped case law. *Id.* The procedural aspects of the case are also complex: numerous motions to compel arbitration, motions for corrective action, motions to dismiss on the merits and for lack of personal jurisdiction, and multiple district courts across the country hearing similar claims and arguments with the potential for conflicting rulings. *Id.* With class certification, expert discovery, and more motions practice and appeals, the case will only increase in complexity, expense, and duration. *Id.* This factor favors approval.

### 11. Risk of maintaining class action status.

Class certification for litigation purposes, while possible, is by no means certain, especially considering Defendants' arguments based on the existence of arbitration agreements and waivers and Defendants' use of different platforms and disclosures. *Id.* ¶ 36. If Defendants are successful on their appeals, the likelihood of class certification for litigation purposes will be further reduced. *Id.* This factor favors approval.

### 12. Amount offered in settlement.

The Settlement represents an excellent result for a nationwide class of over 8.6 million members. Soderstrom Decl. ¶ 37. It provides millions of Class Members who are current Audible members meaningful injunctive relief as well as the benefit of other fixes and improvements that resulted from this litigation. *Id.* It provides over 3 million participating Payment Card Class Members the chance to submit a claim and obtain full reimbursement of any overdraft or similar fees they incurred between March 10, 2013 and August 17, 2018, with no individual or collective caps on the amount Defendants

could pay. *Id.* And it provides over 7 million participating Regular Class Members and Gift Class Members 12 million free audiobook selections from a Settlement Catalog guaranteed to include at least 200,000 titles (more than Audible's entire library prior to 2018, *see McKee* Dkt. 21-21; *McKee* Dkt. 30-3) with prices from around $5.00 to over $25.00. Soderstrom Decl. ¶ 37; *McKee* Dkt. 194 at 16-19; *McKee* Dkt. 194-1 ¶¶ 35-59.

The injunctive relief and other fixes and improvements provide most of what Plaintiffs were seeking in the litigation. Soderstrom Decl. ¶ 38. The only meaningful change Plaintiffs did not secure was to cause Audible to discontinue all of the credit expiration policies which are at the core of its (and many other companies') business model. *Id.* That additional relief—predicated on Plaintiffs' argument that all paid credits are subject to gift card laws—would have required Plaintiffs to win at trial and on appeal. *Id.* Plaintiffs' litigation efforts resulted in significant and meaningful changes to Audible's advertising and disclosure policies and terms and in various other fixes and improvements. *Id.* These changes are valuable and represents most of what Plaintiffs were asking for and conceivably could have secured following a successful trial. *Id.*

The offer of full reimbursement of any overdraft and similar fees incurred between March 10, 2013 and August 17, 2018 will effectively make whole any Payment Card Class Member who incurred costs that were not tied directly to a paid Audible membership benefit. *Id.* ¶ 39. If a participating Payment Card Class Member did not incur any overdraft or similar fees due to a charge Audible made to a back-up card, he or she got from Audible what was paid for (membership benefits and credits) and was not charged an overdraft or similar fee by a third party. *Id.*

The in-kind relief is equitable restitution that effectively gives back to over 7 million Regular Class Members and Gift Class Members what they lost: the right to select an audiobook regardless of list price. *Id.* ¶ 40. If a Settlement Class Member lost one paid credit, he will receive one free selection (100% restitution) and will have a year to make his selection. *Id.* If a Settlement Class Member lost two paid credits due to rollover limits, he will receive one free selection (50% restitution), but if he lost one credit due to rollover

20

limits and one due to cancellation, he will receive two free selections (100% restitution). *Id.* If a Settlement Class Member lost four credits all due to rollover limits, he will receive one free selection (25% restitution), but if he lost five credits all due to rollover limits, he will receive two free selections (40% restitution). *Id.* And if that same Settlement Class Member lost four credits due to rollover limits and the fifth credit due to cancellation, he will receive three free selections (60% restitution). *Id.* Considering the risk of recovering nothing, this restitutionary relief is significant and valuable because each selection will reflect an audiobook with a list price ranging from around $5.00 to over $25.00 and each selection will conform to each consumer's personal preferences (e.g., some may enjoy $10-15 audiobooks while others may enjoy more expensive or less expensive ones). *Id.*

For Settlement Class Members who may have had many credits expire during the relevant Class Periods, they had the greatest incentive to opt out and pursue greater relief on an individual basis. *Id.*; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021, 1027 (9th Cir. 1998) (emphasizing opt out rights for class members who want greater relief and noting objectors who want more often forget that settlements are compromises designed to be fair to the class as a whole). Nevertheless, any Settlement Class Members (a) who lost 12 paid credits would receive a *minimum* of two free selections (16.6% restitution); (b) who lost 24 paid credits would receive a *minimum* of two free selections (8.3% restitution); and (c) who lost 65 paid credits—i.e., every single monthly credit purchased during the 65-month Class Period—would receive a *minimum* of two free selections (3.1% restitution). Soderstrom Decl. ¶ 40.

Even accounting for Class Members with the lowest possible recovery levels for the in-kind relief component alone, the amount offered by the Settlement is fair, reasonable, and adequate and consistent with other class settlements that have been approved. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455

& n.2 (2d Cir. 1974)); *In re MyFord Touch Consumer Litig.*, 2019 WL 1411510, at *10 (N.D. Cal. Mar. 28, 2019) (observing that "the very essence of settlement is compromise" and citing cases where settlements ranged from 5% to 10% of the potential recovery). Taking into account all three forms of relief offered by the Settlement and the fact that the fees, costs, and administration expenses will not reduce Class Member benefits in any way, the total amount offered in the Settlement favors approval. Soderstrom Decl. ¶ 41.

### 13. Extent of discovery and stage of proceedings.

The Parties engaged in intense procedural and merits motions practice, were engaged in formal and informal nationwide class discovery, and were approaching the filing deadline of Plaintiffs' motion for class certification when they agreed to mediation on August 17, 2018. Soderstrom Decl. ¶ 42. Class Counsel had discovered independently or received from Defendants and reviewed thousands of pages of records, current and historic webpage printouts or screenshots, and relevant data in advance of mediation. *Id.* The Parties were fully aware of the strengths and weaknesses of their positions when they attended a full-day mediation with a respected mediator. *Id.*; *McKee* Dkt. 196 at 16. This factor favors approval. *In re Zynga*, 2015 WL 6461161, at *9; *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).

### 14. Experience and view of counsel.

Class Counsel and Defendants' counsel are experienced in complex civil litigation and class actions. Soderstrom Decl. ¶ 43. They litigated each of the four related cases in three separate district courts since 2017 and are aware of the Court's views of their positions based on numerous written orders and lengthy motions hearings and they negotiated the Settlements' terms at arm's length. *Id.* They believe the Settlement is fair, reasonable, and adequate and support final approval. *Id.*; *McKee* Dkt. 192-1 (Defendants' settlement brief). This factor favors approval. *In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. Mar. 9, 1989) ("The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement.") (quotation omitted).

## 15. Presence of a governmental participant.

There is no governmental participant in this litigation. Soderstrom Decl. ¶ 44. The Parties complied with the Class Action Fairness Act's notice requirements and no governmental participant filed an objection or other paper concerning the Settlement. *Id.* The existence of a governmental participant actually could have helped Plaintiffs' claims insofar as an attorney general would not be bound by arbitration agreements or waivers. *Id.* Yet Plaintiffs still defeated several motions to compel arbitration and secured important corrective action and, as a result, were able to secure significant relief on a class basis. *Id.* This factor favors approval.

## 16. Positive reaction of class members.

Over 99% of Class Members received individualized notice and only 46 opt outs (0.0005%) and 18 valid objections (0.0002%) were received. Massello Decl. ¶¶ 4-7; Wakefield Decl. ¶ 5; Soderstrom Decl. ¶ 45. Class Counsel has spent many hours responding to around 1,500 emails and 400 phone calls from Class Members, answering questions and reminding them to review the Settlement Website and specifically the "Frequently Asked Questions" webpage. Soderstrom Decl. ¶ 45. A majority of the communications from Class Members thanked Plaintiffs for bringing the case or sought confirmation that Class Members did not need to take any immediate action or personally attend the fairness hearing. *Id.* A few class members inquired into whether they could be added as class representatives. *Id.* Others objected to the very existence of the lawsuits because they believed Defendants' terms and policies were clear and proper. *Id.* Some others indicated they had incurred overdraft fees and were collecting records to submit following final approval. *Id.* Some expressed dissatisfaction with one aspect of the case or Settlement or another and were reminded to follow the instructions if they wanted to opt out or submit an objection. *Id.*

The few opt outs and objections and many favorable responses from Class Members reflect an overwhelmingly positive response to the Settlement. *Id.*; *see Fowler v. Wells Fargo Bank, N.A.*, 2019 WL 330910, at *5 (N.D. Cal. Jan. 25, 2019) (citing cases

showing low opt out and objection rates are evidence of class member approval); *Asghari v. Volkswagen Group of America, Inc.*, 2015 WL 12732462, at *23-25 (C.D. Cal. May 29, 2015) (same). This factor favors approval.

## IV. The Notice Plan satisfied Rule 23's requirements.

The class received reasonable notice of the Settlement. *In re Hyundai*, 2019 WL 2376831, at *14. Rule 23(e)(1) requires settlement notices to "present information about a proposed settlement neutrally, simply, and understandably." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Id.* (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *see* Fed. R. Civ. P. 23(c)(2)(B) (requiring the "best notice that is practicable under the circumstances," including notice by electronic and other appropriate means); Fed. R. Civ. P. 23(e)(1) (requiring notice be given in a "reasonable manner"). Reasonable efforts must be made to give notice to the class as a whole, but each class member does not need to receive actual notice. *In re Lenovo Adware Litig.*, 2019 WL 1791420, at *4 (N.D. Cal. Apr. 24, 2019); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 411 (S.D.N.Y. 2018).

The Class Notice and Settlement Website clearly and concisely stated in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Wakefield Decl. ¶ 3, Ex. A; Soderstrom Decl. ¶ 46; *see* Fed. R. Civ. P. 23(c)(2)(B). The website included copies of the Settlement and other relevant documents and a "Frequently Asked Questions" page addressing 15 common questions in easily understandable terms. Wakefield Decl. ¶ 3, Ex. A. Individualized email notice with a supporting website constituted the best practicable notice to the class under the

circumstances. Soderstrom Decl. ¶¶ 46-48. It was also a successful Notice Plan. *Id.*

Over 8.6 million individualized notices were emailed to Class Members' designated email addresses and over 99.9% of the notices sent to the class were successfully delivered. Massello Decl. ¶ 4. The only Class Members who did not receive individualized notice were due to bouncebacks (0.02%), use of mobile phone accounts instead of email accounts (0.07%), and accounts designated as not in "normal status" (around 52,700 accounts) based on past fraudulent activities or other uncommon circumstances. *Id.* ¶¶ 5-7. The over 8.6 million Class Members who received the notice were fully capable of considering and raising all possible objections to the Settlement (and 18 did so). Soderstrom Decl. ¶¶ 46-48; *see In re Facebook*, 343 F. Supp. 3d at 411 (observing that the relevant question is not whether every class member received notice but "whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised"); *In re Online DVD-Rental Antitrust Litig.*, 79 F.3d 934, 946-47 (9th Cir. 2015) (finding a settlement notice "merely must give class members 'enough information so that those with 'adverse viewpoints' could investigate and 'come forward and be heard.'") (quoting *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012)).

The Court should confirm the Notice Plan and Class Counsel's and Defendants related efforts ensured that reasonable and adequate notice was given to the class and satisfied Rule 23's requirements. Soderstrom Decl. ¶¶ 46-48.

## V. Conclusion.

The Settlement is fair, reasonable, adequate, and free from collusion, and the requirements for certification of a Settlement Class for settlement purposes are met. Considering the serious risks that no recovery could ever be secured on a classwide or individual basis, the Settlement is an excellent result for over 8.6 million consumers nationwide. Plaintiffs respectfully ask the Court to grant this motion, overrule all objections to the Settlement, award the full attorneys' fee request, award the full service awards request, fully and finally approve the Settlement, and enter final judgment in these consolidated actions.

Dated: June 24, 2019

SODERSTROM LAW PC

By: */s/ Jamin S. Soderstrom*
    Jamin S. Soderstrom
*Counsel for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 24, 2019 I caused the foregoing document to be served on all counsel of record by the Court's CM/ECF electronic filing system.

By: */s/ Jamin S. Soderstrom*

Jamin S. Soderstrom