UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-1941-GW(Ex) | Date | August 8, 2019 |
|---|---|---|---|
| Title | *Grant McKee v. Audible, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Katie E. Thibodeaux | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Jamin S. Soderstom | Jedediah Wakefield |
| | David Greifinger, Objector |

**PROCEEDINGS:** **PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ENTRY OF JUDGMENT [198]**

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND SERVICE AWARDS [197]**

Court and counsel confer. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. Plaintiffs' Motion for Final Approval [198] is GRANTED. A revised proposed order is to be filed forthwith.

Plaintiffs' Motion for Attorneys' Fees [197] is continued to September 16, 2019 at 8:30 a.m. Plaintiff will have until August 23, 2019 to file his supplemental brief. Defendant and the objector may respond by no later than September 6, 2019.

                                                                                                                :  09

                                                                                       Initials of Preparer   JG

*Mckee v. Audible*, Case No. 2:17-cv-01941-GW-(Ex)
*Weber v. Amazon*, Case No. 2:17-cv-08868-GW-(Ex)
Tentative Ruling on Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Motion for Attorney Fees and Service Awards

## I. Background

In *McKee v. Audible* (2:17-cv-01941-GW-(Ex)), Plaintiffs Grant McKee ("McKee"), Eric Weber ("Weber"), Michael Rogawski ("Rogawski," and collectively with McKee, Weber, and similarly situated individuals, "*McKee* Plaintiffs") sue Audible, Inc. ("Audible") for: (1) violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; (2) Common Law Fraud and Misrepresentation; (3) violation of Credit Card Accountability Responsibility and Disclosure Act of 2009 ("CARD"), Pub. L. No. 111-24, § 102(a), 123 Stat. 1734, 1739 (2009) (codified at 15 U.S.C. § 1637(k)(7)), and Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693*l*-1(a)(2)(B); (4) violation of the California Gift Certificate Law ("GCL"), Cal. Civ. Code §§ 1749.45 *et seq.*; (5) Violation of EFTA, 15 U.S.C. § 1693; (6) Common Law Conversion; (7) violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq.; and (8) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* including Violation of California's Automatic Purchase Renewals Law, Cal. Bus. & Prof. Code § 17600 *et seq. See generally* Third Amended Class Action Complaint ("*McKee* TAC"), Docket No. 115.

In the related case of *Weber v. Amazon* (2:17-cv-08868-GW-(Ex)), Weber and Bryan Rees ("Rees") sue, on behalf of themselves and similarly situated individuals (collectively with Weber and Rees, "*Weber* Plaintiffs")[1], Amazon.com, Inc. ("Amazon") and Amazon Services, LLC ("Amazon Services") for: (1) violation of the EFTA, 15 U.S.C. § 1693 *et seq.*; (2) violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510 *et seq.*; (3) Fraud in the Inducement; (4) Conversion; (5) Interference with Contracts; (6) violation of California's FAL, Cal. Bus. & Prof. Code § 17500 *et seq.*; (7) violation of CLRA, Cal. Civ. Code § 1750 *et seq.*; (8) violation of California's UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*; (9) violation of North Carolina's Unfair Competition Law; and (10) Restitution/Unjust Enrichment. *See generally* First Amended Complaint ("*Weber* FAC"), Docket No. 25.

---

[1] When referring to the *Weber* Plaintiffs and *McKee* Plaintiffs together, the Court will simply use the term "Plaintiffs."

1

As per Plaintiffs' counsel's representations, both cases' claims generally fit into four categories of allegations:

> (1) unlawful expiration of audiobook "credits" included as part of Audible's membership offerings based on federal and California gift card laws; (2) false advertising based on the fact that these audiobook credits are capable of expiring; (3) inadequate disclosures related to auto-pay policies; and (4) inadequate disclosures and unlawful policies related to charging cards on file with Amazon that were not initially designated for making payments to Audible.

*See* Declaration of Jamin S. Soderstrom in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement ("Soderstrom MPA Decl.") ¶ 3, Docket No. 164-2.[2]

Originally, the Court denied without prejudice Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("MPA I"), Docket No. 164-1.[3] *See generally* Dec. 10, 2018 Civil Minutes ("Ruling I"), Docket No. 169.[4] Though the MPA I was unopposed, the Court applied the requisite standard for preliminarily approving the settlement and decided to tentatively deny the motion. More specifically, the Court noted that there were at least three signs of collusion present in the Settlement, that the Settlement did not fall within the range of possible approval, that there were indicators of preferential treatment, and that there were a number of obvious deficiencies in the Settlement. *See id.*

Plaintiffs filed a subsequent motion for preliminary approval, which was granted on March 14, 2019. *See* Amended Civil Minutes on Plaintiff's Renewed Motion for Preliminary Approval of Class Action Settlement ("Prelim. App. Ruling"), Docket No. 196. The Court granted preliminary certification for a nationwide class including three groups:

> **Regular Member Class:** "all individual consumers of Audible in the United States who, between March 10, 2013 and August 17, 2018, lost any unredeemed Paid Membership Credits." [Revised Settlement] § 2.jj.
>
> **Gift Member Class:** "all individual consumers of Audible in the United States who, between August 11, 2011 and August 17, 2018, purchased or redeemed an Audible Gift Membership that resulted in one or more unredeemed Audible gift membership credits being lost." *Id.* § 2.t.

---

[2] Plaintiffs file the Soderstrom Declaration under seal, so the cited docket number is an unredacted version of the declaration.

[3] Plaintiffs filed the MPA I under seal, so the cited docket number is an unredacted version of the MPA I.

[4] Docket No. 169 houses the unredacted version of Ruling I, whereas the redacted version is located at Docket No. 168.

>**Payment Card Class:** "all individual consumers of Audible in the United States who, between March 10, 2013 and August 17, 2018, incurred charges from Audible to a credit or debit card other than the card originally designated as the primary payment card for the customer's Audible membership." *Id.* § 2.bb.

*Id.* at 3.

Members of these three groups are in combination referred to as "Class Members." *See id.* Release of claims was limited to the following:

>All Settlement Class Members will give Defendants a general release of "any and all claims, known or unknown, alleged or asserted in the Lawsuits or that could have been alleged or asserted related to the advertisement, purchase, receipt, charges for, or loss of an Audible membership, Audible gift membership, Audible credits or other Audible membership benefits, or the use of an alternative payment method in connection with Audible services through August 17, 2018." [Revised Settlement] §§ 41-43. Class Members are not releasing any claims that arose after August 17, 2018 even if they involve the same conduct or causes of action, and they are not releasing claims that do not relate to the allegations in the Lawsuits. *Id.* [The named] Plaintiffs separately agreed to give Defendants general releases of all possible claims through November 28, 2018, including any claims that do not relate to the Lawsuits or relate to Audible. *Id.* § 42; Soderstrom Decl. ¶ 22.
>
>Persons not granting releases include: (1) Audible customers who only purchased Audible products or services on an a la carte basis; (2) Audible customers who signed up for a free trial membership but cancelled before they were charged; (3) Audible members who never lost a paid credit and never had a back-up card charged; (4) persons who were never Audible customers; and (5) Class Members who opt out. Soderstrom Decl. ¶ 23.

*Id.* at 3-4.

The Settlement gives participating Regular Class Members and Gift Class Members in-kind relief in the form of 12 million free audiobook selections from a Settlement Catalog containing over 200,000 audiobook titles (more titles than Audible had in its entire library when this case was filed) with list prices from around $5.00 to over $25.00. *See* Stipulation § 21.a-f; Soderstrom MPA Decl. ¶ 4. Depending on how a credit was lost and how many credits were lost, each qualifying Settlement Class Member will have the right to select a minimum of one and up to four free audiobooks. *Id.* § 21.d. The Settlement Catalog will be open for at least a year and will include titles that have the same general listing price as Audible's overall library. *Id.* § 21.e; Soderstrom Decl. ¶ 4. Soon after the Settlement is approved, Audible will send an email to each qualifying Settlement Class Member telling them how many free audiobook selections they can make and giving them instructions on how to make their selections. Stipulation § 21.d. Audible

will send an email 15-30 days before the end of the selection period reminding members who have not made all of their selections to do so to maximize the number of selections made. *Id.* Settlement Class Members do not need a paid Audible membership and they do not need to submit a claim, make a purchase, or provide any payment information to Defendants to participate in the Settlement; all they need is their free Amazon account.

Presently before the Court is a motion for final approval of the proposed class action settlement. *See* Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Entry of Judgment ("Motion"), Docket No. 198. Plaintiffs received 19 objections, one of which was included as part of a notice of intent to appear.[5] *See* Plaintiffs' Response to Objections ("Pl. Resp."), Docket No. 199, Exs. 1-19.

## II. Legal Standard

### A. *Legal Standard*

Under Rule 23(e) of the Federal Rules of Civil Procedure, "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The requirements of Rule 23(e) set forth the procedures for approval of class action settlements. First, the court must direct notice in a reasonable manner to all Class Members who would be bound by the settlement. Fed. R. Civ. P. 23(e)(1). Class Members should be given the opportunity to opt-out of the settlement and to object to the settlement. Fed. R. Civ. P. 23(e)(4)-(5). A court may only approve a binding settlement after a hearing and on finding that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2).

A court must engage in a two-step process to approve a proposed class action settlement. First, the court must determine whether the proposed settlement deserves preliminary approval. *Nat'l Rural Telecommc'ns Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). This step has already been completed here, as the Court preliminarily approved the settlement on March 14, 2019. *See* Prelim. App. Ruling. Second, after notice is given to Class Members, a court must determine whether final approval is warranted. *Nat'l Rural Telecommc'ns Coop.*, 221 F.R.D. at 525.

To grant final approval, the court must find that the proposed settlement is fair, adequate,

---

[5] The Court notes that both notices to appear were filed after the deadline.

and reasonable. *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (*citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). In making this determination, the court may consider any or all of the following factors:

> (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the Class Members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Hanlon*, 150 F.3d at 1026. This list is not exhaustive, and "[t]he relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. At least where settlement is reached prior to formal class certification, courts also look for signs of collusion or other conflicts of interest. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

Under recent amendments to the Federal Rules of Civil Procedure, district courts must now consider a list of factors delineated in Rule 23(e)(2), which are somewhat similar to the Ninth Circuit's longstanding factors and considerations:

> **(2) *Approval of the Proposal.*** If the proposal would bind Class Members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
>> **(A)** the class representatives and class counsel have adequately represented the class;
>>
>> **(B)** the proposal was negotiated at arm's length;
>>
>> **(C)** the relief provided for the class is adequate, taking into account:
>>
>>> **(i)** the costs, risks, and delay of trial and appeal;
>>>
>>> **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>>
>>> **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and
>>>
>>> **(iv)** any agreement required to be identified under Rule 23(e)(3); and
>>
>> **(D)** the proposal treats Class Members equitably relative to each other.

5

Fed. R. Civ. P. 23(e)(2).

Regarding these recent amendments, the Advisory Committee recognizes that federal "[c]ourts have generated lists of factors" to decide the fairness, reasonableness, and adequacy of a settlement, and that "each circuit has developed its own vocabulary for expressing these concerns." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 amendment. Recognizing that, the Advisory Committee explained that it did not intend to "displace any factor [used by federal courts], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."[6] *Id.* As such, to the extent possible the Court would apply the factors listed in Rule 23(e)(2) through the lens of the Ninth Circuit's factors and existing relevant precedent. The Court would also take heed of the Advisory Committee's warning not to let "[t]he sheer number of factors . . . distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. If the Court's analysis of the Ninth Circuit's longstanding factors does not encompass any of the Rule 23(e)(2) factors, the Court will explicitly discuss such factors at the conclusion of its analysis.

Despite the importance of fairness, the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class actions. *See*, *e.g.*, *Officers for Justice*, 688 F.2d at 625 ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation"). While balancing all of these interests, the court's inquiry is ultimately limited "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Id.* "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026. "Settlement is the offspring of compromise; the question ... is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* at 1027.

### III. <u>Analysis</u>

#### A. Continued Certification of the Class for Settlement Purposes

On March 19, 2019, the Court preliminarily certified the class, finding that the class definition met the Rule 23(b)(3) requirements for class certification. Docket No. 191. Nothing in

---

[6] "[T]he Advisory Committee Notes provide a reliable source of insight into the meaning of a rule . . . ." *See United States v. Vonn*, 535 U.S. 55, 64 n.6 (2002).

the intervening period has suggested to the Court that the class should be decertified. Accordingly, the Court would continue to hold that class certification is appropriate for the purposes of settlement.

### B. Adequacy of Notice to Class Members

For a class judgment to bind an absent class member, Rule 23(e) requires that the absent Class Members receive adequate notice. *See Hanlon*, 150 F.3d at 1025; *Moralez v. Whole Foods Mkt., Inc.*, 897 F. Supp. 2d 987, 997 (N.D. Cal. 2012) ("for a class judgment to bind an absent class member, due process requires that the absent Class Members receive adequate notice and representation by the class representative").

Here, class notice was sent to Class Members' email on file with Audible. *See generally* Declaration of Jason Massello Concerning Notice Plan ("Massello Decl."), Docket No. 198-2. Of the 8,621,100 class notices sent, 8,612,876 (99.9%) were successfully delivered. *See id.* ¶ 4. Audible reported that 52,782 potential Class Members were not sent the class notice email because their Amazon account linked to audible had been closed or suspended, and was not in "normal status." *See id.* ¶ 7. 46 Class Members submitted opt outs and 19 Class Members submitted objections (including two Class Members who included written objections with their notices of intent to appear at the fairness hearing). *See* Motion at 2.

The majority of the class will receive benefits without opting into the class. However, members of the payment card class will be required to send documentation showing that they were charged an overdraft fee by their banking institution as a result of an audible charge to a non-primary account credit or debit card. Because the payment card class has not yet been given the opportunity to submit documentation, the Court cannot determine the participation rate for the payment card class at this time. However, the Court is satisfied with Plaintiffs' Counsel's explanation, given at the fairness hearing, for delaying the opt-in period until after final approval for the payment class. Given that it may be burdensome for some payment Class Members to locate evidence to substantiate their claim, it is reasonable to delay the submission period until after approval of the settlement is certain. Furthermore, given that the vast majority of Class Members need not opt in to receive benefits, and that over 99% of the class received class notice, the Court is satisfied that the overall participation rate will not be low enough to raise concerns about adequate notice.

### C. Fairness

1.  Presumption of Fairness

Generally speaking, courts afford a presumption of fairness to a settlement, if: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected. *See In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528.  Settling Plaintiffs, who are represented by experienced counsel, reached a settlement that was negotiated with JAMS mediator, Robert Meyer.  *See* Docket No. 185-1 at 17.  The use of an experienced mediator would weigh in favor of finding that the negotiations leading to that settlement were at arm's length, and not the product of any conflict or collusion. The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution[.]"  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Additionally, the parties came to this settlement after conducting formal and informal discovery on certain issues and after the Court had ruled on numerous motions that "revealed some of the strengths and weaknesses of each side's case . . . ."  *See* Soderstrom MPA Decl. ¶ 17.  Finally, there were only 19 objections filed (the substance of which the Court addresses, below) out of a total class of over 8 million.  All of these factors weigh in favor of affording a presumption of fairness to the settlement currently before the Court.

2. Strength of Plaintiffs' Case

In briefing, Defendant has expressed in significant detail why the federal and state gift card claims could fail on summary judgment, why Plaintiffs' claims based on losing credits upon cancellation could fail, why Plaintiffs' claims based on rollover limits could also fail, and why Plaintiffs' claims for charges to back-up payment cards could fail.  *See* Defendants' Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Def.'s Br."), Docket No. 174-1, 11-17.  The Court considers Defendant's arguments viable; there is a significant chance the Court would have agreed with those arguments over the course of litigation. In addition, the Court recognizes the likelihood that a large portion of Class Members would have been forced to arbitrate, with resulting limitations to their potential recovery.  *See id.* at 17; *see also* Plaintiffs' Renewed, Unopposed Motion for Preliminary Approval of Class Action Settlement ("MPA II"), Docket No. 180, 19-20 (discussing litigation risks and complexities), 23-24 (discussing the relief in the Revised Settlement).  Thus, Plaintiffs' case had clear weaknesses, and Class Members faced the significant risk of failing to obtain any relief if settlement was not

reached. Thus, the weaknesses in Plaintiffs' case afford a strong inference of fairness to the settlement currently before the Court.

### 3. Risk, Expense, Complexity, and Likely Duration of Further Litigation

The expense and possible duration of the litigation should also be considered in evaluating the reasonableness of a settlement. *See Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 458 (9th Cir.2000); *see also Nat'l Rural*, 221 F.R.D. at 526 ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

The present litigation is complex. Since this case was filed in 2017, three related cases have been pursued in federal court. *See* Declaration of Jamin S. Soderstrom in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Entry of Judgment ("Soderstrom MFA Decl."), Docket No. 198-1, ¶ 3. Defendants have appealed the Court's denial of their motion to compel arbitration and the Court's order granting corrective action. *See* Docket Nos. 107, 120. Plaintiffs have also indicated that they intend to appeal the Court's tentative order requiring Weber to pursue his claims in arbitration if the Settlement is not approved and the tentative order becomes final. *See* Soderstrom MFA Decl. ¶ 26. Significant resources would be needed to litigate due to the complex nature of the case, and the pending appeals. The case, if not settled, would be costly and likely last many years into the future. Furthermore, Plaintiffs would have taken a risk in pursuing further litigation, given the weaknesses in the case identified above, and the significant chance that many Class Members would be compelled to arbitrate their claims.

### 4. The Risk of Maintaining Class Action Status Throughout Trial

The Court did grant preliminary approval to the settlement and certified the class for settlement. There is no clear indication that class certification would have been particularly difficult to achieve in this case. However, as noted above, a large portion of the class may have been forced to arbitrate their claims, making it likely that the certified class would be far less inclusive than the settlement class.

### 5. The Amount or Type of Relief Offered in Settlement

The Settlement includes three main components: (1) monetary compensation for certain Class Members, (2) non-monetary compensation for other Class Members, and (3) injunctive relief improving Audible's disclosures and policies. *See* MPA II at 4-7 (citing the Revised Settlement).

9

As to monetary compensation, the Revised Settlement reimburses Class Members who incurred overdraft fees or similar fees for exceeding an available balance due to Audible's charging of a backup payment card. *See* Declaration of Jamin S. Soderstrom in Support of Plaintiffs' Renewed Unopposed Motion ("Soderstrom MPA II Decl."), Docket No. 180-1, ¶56. As to the in-kind compensation, the Court would conclude that the free audio books that certain Class Members would receive bear value despite not being a monetary payment. *See* Def.'s Br. at 4-5; *see also* MPA II at 23-24; *see also* Soderstrom Decl. II ¶ 58. Even if each audiobook credit was only valued at a few dollars, which the Court need not determine at this stage, the total value of the settlement would still be significant given the size of the settlement class. Therefore, the Court would find that the amount of relief offered in the settlement is significant, which weighs in favor of finding the settlement adequate.

### 6. The Extent of Discovery Completed and the Stage of the Proceedings

The parties reached settlement in this case after months of extensive procedural and merits motions practice, and had been engaged in both formal and informal discovery. *See* Soderstrom MFA Decl. ¶ 42. Therefore, this factor weighs in favor of finding the settlement fair.

### 7. The Experience and Views of Counsel

Both Plaintiffs' counsel and Defendants' counsel support approval of the settlement. The recommendation of counsel is entitled to "great weight," as counsel is best positioned to evaluate and produce a fair settlement. *National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). In the absence of fraud or collusion of the parties, courts typically defer to the views of counsel. *Id.* The experienced counsel in this matter approve the settlement, therefore, this factor weighs in favor of final approval.

### 8. The Reaction of Class Members to the Proposed Settlement

Prior to the final approval hearing, 18 formal objections were submitted, and 2 notices of intent to appear at the fairness hearing were submitted to counsel or filed with the court. One of the notices of intent to appear did not overlap with an objection, and included a separate written explanation of the class member's objections to the settlement. Therefore, the Court will conclude that there were 19 objectors. Additionally, 46 Class Members chose to opt out. Given the class size of over 8 million, the number of opt-outs and objections is low. *Compare Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) (affirming district court's conclusion that settlement was fair when Class Members filed 500 opt-outs and 45 objections out of approximately

90,000 notified Class Members). The low number of objections and opt-outs weighs in favor of final settlement approval. The Court will address the specific objections, below.

### 9. Objections

Although a court must give objectors an opportunity to "air [their] objections" and provide a reasoned response, it generally need not make detailed findings of fact relating to the objections. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242-43 (9th Cir. 1998); *United States v. Oregon*, 913 F.2d 576, 582 (1990). Of the 19 objections submitted, including the one-overlapping notice of intent to appear, 14 complain that the relief provided to Class Members is inadequate, three object to the make-up of the settlement catalogue, two object that the in-kind relief offered is equivalent to coupons, two object to the adequacy of class notice, and five contend that the attorney's fees were inappropriate. *See generally* Pl. Resp., Ex. 1-19. Other objectors complained about miscellaneous aspects of the settlement. *See id.*

As to the argument that the in-kind payments do not fairly compensate Class Members, the Court would conclude that the relief is fair and adequate in light of the risks involved in litigating further. A settlement inherently involves balancing the risks of litigation with the safety of having an assured recovery. *See Hanlon*, 150 F.3d 1011 (stating that just because the settlement could have been better "does not mean the settlement presented was not fair, reasonable or adequate."). Although some Class Members may have lost more credits than they receive in the settlement, that does not indicate that the settlement is unfair or unreasonable, given the weaknesses the Court previously identified in the case, and the risk of receiving no relief were the case to proceed to trial.

As to the argument that the settlement catalogue is insufficient, the Court is unpersuaded. The settlement catalogue will include over 200,000 audiobooks with titles of the same general listing price as those available in Audible's overall library, including celebrity narrations, exclusive content, award winners, and best sellers. This library is larger than the library at the time that the majority of Class Members' credits were purchased. *See* Soderstrom MFA Decl. ¶ 4. Furthermore, as explained above, the Court is not persuaded that relief for Class Members need be of the exact quantity or quality as the loss allegedly suffered, particularly given the significant weaknesses in Plaintiffs' case.

The Court does find at least somewhat persuasive the argument that the in-kind relief is to a degree equivalent of a "coupon." However, this does not indicate that the settlement itself is

unfair or inadequate. Whether or not the settlement is a "coupon" settlement bears instead on the appropriateness of the attorney's fees to be granted, which the Court will analyze separately.

As to the adequacy of notice, as the Court analyzed above, the Court is satisfied that Class Members received adequate notice and opportunity to opt-out or object. The Court is not persuaded to change this position based on the arguments of the objectors.

As to attorney's fees, the Court notes that the request for attorney's fees is quite high, and that there is a "clear sailing provision" contained in the settlement. However, the Court is not convinced that this warrants denial of final approval. The Court notes that this is not a common fund case, and therefore, any award to Plaintiffs' counsel does not come at the expense of the class. Although the Court will consider "the reasonableness of the fees sought, so as to ensure that Class Members have been afforded adequate relief, and that the fees their lawyers receive are proportionate to the value of the classes' recovery" when considering Plaintiffs' motion for fees, the Court would not find that the fee provision raises an inference of collusion or warrants denial of final approval as a whole. *Shvager v. ViaSat, Inc.*, No. CV-12-10180-MMM-(PJWx), 2014 WL 12585790, at *14 (C.D. Cal. Mar. 10, 2014).

As to the miscellaneous objections relating to the settlement, these have all been addressed at previous points in the case or in this tentative order, or they relate to individual issues that do not bear on the fairness of the overall settlement.

### 10. Other Considerations

After reviewing the Ninth Circuit's fairness factors and the objections from Class Members, the Court is satisfied that the settlement is fair and adequate. However, for the sake of thoroughness the Court will address below a few of the Rule 23(e)(2) factors that may not have been adequately covered in the above analysis.

#### a) *Adequate Representation of the Class*

The Court is satisfied that Plaintiffs' Counsel and the Named Plaintiffs have served as adequate representatives of the class. The Named Plaintiffs reviewed records and shared information with counsel while foregoing the possibility of pursuing settlement on an individual basis. *See* Soderstrom MFA Decl. ¶ 19. Plaintiffs' Counsel has also adequately represented the class. Plaintiffs' Counsel has dedicated a significant amount of time and resources to this case, as evidenced by the robust motions practice and discovery that was pursued prior to settlement. The Court has no reason to believe that Plaintiffs' Counsel did not adequately represent the class.

*b)*     *Equitable Treatment of Class Members*

The Settlement contains a formula which allows for equitable treatment of Class Members. Class Members who qualify for in-kind settlement are allocated credits based on the number of credits they individually lost, and whether they qualified as members of more than one subclass. Thus, Class Members who lost multiple credits will receive greater benefit than Class Members who only lost a single credit. *See id.* ¶ 31. Card Payment Class Members, in addition to any relief they may have received if they also qualified for membership in another settlement class, will also receive monetary compensation commensurate with the harm caused to them, and the right to get reimbursed for any overdraft is the same for all Payment Card Class Members. *See id.* Named Plaintiffs are only requesting $5,000 service awards in exchange for their service to the class and for their broader release of claims against Defendants. The Court would not find this service request unreasonable, particularly given that it will not be satisfied out of a common fund.

Given that consideration of the remaining Rule 23(e)(2) factors does not indicate any signs that the settlement is unfair or inadequate, the Court would grant final approval of the settlement.

**D. Attorney's Fees and Costs**

Named Plaintiffs and Class Counsel seek an order awarding $1.5 million in attorneys' fees (inclusive of costs) and $5,000 to each Named Plaintiff. *See generally* Plaintiffs' Motion for Attorneys' Fees and Service Awards ("Fees Motion"), Docket No. 197. Plaintiffs' Counsel argues that the Court should utilize the lodestar method to calculate attorneys fees. *See id.* at 11. He claims that the current lodestar was $940,000 based on 1,333.2 hours worked by Mr. Soderstrom at his 2019 regular hourly rate of $700, and 112.5 hours worked by an experienced paralegal at her 2019 regular hourly rate of $250. Plaintiffs' counsel applied a 2.2% "haircut" to his calculation to account for any inadvertent administrative or duplicative tasks. *See* Declaration of Jamin S. Soderstrom in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Fees Decl."), Docket No. 197-1, ¶ 24. Plaintiffs' Counsel adjusts this figure to around $100,000 to account for an estimated "50 to 100 hours of future work needed to continue responding to Class Member communications, to seek final approval of the Settlement, and to ensure Defendants' compliance with the Settlement's terms." *Id.* ¶ 27. Plaintiffs' counsel requests a 1.58 multiplier of the unadjusted lodestar to support an award of $1.5 million. *See* Fees Motion at 14.

The Court is not certain that a lodestar multiplier is the appropriate method for determining

13

appropriate attorney's fees in this case. Under 28 U.S.C. § 1712 "[i]f a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to Class Members of the coupons that are redeemed." 28 U.S.C. § 1712(a). The Ninth Circuit has indicated that under § 1712:

> the district court must perform two separate calculations to fully compensate class counsel. First, under subsection (a), the court must determine a reasonable contingency fee based on the actual redemption value of the coupons awarded. Second, under subsection (b), the court must determine a reasonable lodestar amount to compensate class counsel for any non-coupon relief obtained. This lodestar amount can be further adjusted upwards or downwards using an appropriate multiplier. § 1712(b)(2). In the end, the total amount of fees awarded under subsection (c) will be the sum of the amounts calculated under subsections (a) and (b).

*In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1184-85 (9th Cir. 2013).

Plaintiffs' Counsel argues that Section 1712 does not apply to this settlement, because the Court has never explicitly determined that its jurisdiction is based on the Class Action Fairness Act ("CAFA"). The Court is unpersuaded by this argument. The Court is unaware of any cases indicating that Section 1712 is inapplicable to actions brought in federal court based on federal question or diversity jurisdiction. There is no mention whatsoever of CAFA jurisdiction in the statute. The statute defines "class action" as "any civil action filed in a district court of the United States under rule 23 of the Federal Rules of Civil Procedure or any civil action that is removed to a district court of the United States that was originally filed under a State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representatives as a class action." 28 U.S.C. § 1711 (2). Furthermore, Plaintiffs explicitly alleged CAFA jurisdiction in their Complaint, because the amount in controversy exceeded $5,000,000, there were more than 100 proposed Class Members and at least one member of the proposed class and one of the Defendants were citizens of different states. *See* Complaint, Docket No. 1, ¶ 21. For the reasons put forward in the Complaint, there is little doubt that there is CAFA jurisdiction in this case.

The question that remains, however, is whether the in-kind relief which constitutes the majority of the relief available in this case, is equivalent to coupon relief. The Court is not convinced that the in-kind relief is necessarily equivalent to a typical coupon settlement in which Class Members would be required to purchase more goods, potentially incurring additional costs to do so, in order to avail themselves of the offered relief. However, the relief offered is a credit

which can only be used for a limited universe of products − namely audiobooks included in the settlement catalogue. *In re Easysaver Rewards Litig.*, 906 F.3d 747, 757 (9th Cir. 2018) (finding that $20 credit to smaller retailer which can only be used for limited universe of products was a "coupon" settlement). This case is arguably distinguishable from cases like *Easysaver*, in which the credits were given to compensate for complaints about the defendant's business practices, and utilization of the credit would require re-engaging the defendant's business, a prospect which may be completely unappealing to class members. Here, Plaintiff's alleged harm was loss of credits, not an unrelated business practice, and they are being given in-kind relief that directly addresses the Complaint. Furthermore, there is no indication that Class Members would have to hand over any more money to Defendant, such as for shipping fees, in order to redeem their settlement credit. Thus it is not entirely clear that this is a coupon settlement.

However, the Court is also not convinced that the settlement should be valued as if the in-kind relief was akin to monetary relief. Thus, the Court would request further briefing from Plaintiffs' counsel and any interested objectors addressing: (1) whether the in-kind relief available through this Settlement should be considered "coupons;" (2) if the Court determines that the in-kind relief qualifies as "coupons" how should attorney's fees be allocated to account for coupon relief, monetary relief, and injunctive relief respectively; and (3) what value should be assigned to the in-kind relief.

### IV. Conclusion

Overall, the fairness factors indicate that this settlement is fair, adequate, and reasonable. The Court would **GRANT** final approval of the settlement, but will require further briefing to determine the appropriate award of attorney's fees.